## Issue in Dispute

Whether Plaintiffs may subpoena records and take records depositions of Digital Domain 3.0, Inc., ("DD3"), Greg LaSalle, and Ken Pearce to preserve evidence?

## Factual and Procedural Background

**Factual background as alleged by Rearden:**  Prior to August 17, 2012, Rearden possessed a facial performance capture technology called Contour that it offered to studios through Rearden-controlled entities including "MOVA LLC."  LaSalle and Pearce were then Rearden entity employees working on Contour projects.  After February 11, 2013, LaSalle and Pearce took possession of Contour, delivered it to DD3, ended their employment, and took their Rearden computers.  DD3 hired LaSalle and Pearce, and began offering facial performance capture using Contour.

On February 20, 2015, a Chinese entity filed *Shenzhenshi. v. Rearden*, NDCA Case No. 15-797 ("*SHST*"), seeking a declaratory judgment that it owned the Contour assets and intellectual property ("Mova Assets") and had licensed them to DD3.  On June 17, 2016, the Court entered an injunction ordering DD3 to place the Mova Assets into escrow. SHST ECF No. 188.  After trial, the Court ruled on August 11, 2017, that Rearden owned the Mova Assets, and ordered them returned to Rearden.  SHST ECF No. 427.  In October, DD3 returned some physical Mova Assets to Rearden.

These cases were filed by Rearden in July 2017 against companies that allegedly hired DD3 to provide facial capture services using Contour technology.  Rearden alleges that the defendants are liable for copyright and patent infringement as a result.

**Case Management Deadlines and procedure:**  The Case Management Conference in the present cases was held on March 7, 2018.  Plaintiffs had filed amended complaints shortly before, and defendants stated that they would move to dismiss them.

The Court set a Further Case Management Conference for July 11, and ordered that discovery should commence after the second conference.  But the Court invited counsel to raise any issues arising from delaying discovery after reflecting on the Court's ruling.

On March 13, Rearden notified defendants that it would seek leave to issue third party subpoenas to DD3, LaSalle and Pearce, because it believes they possessed material evidence that they may fail to preserve.  Defendants did not consent to the motion.

**Plaintiffs' Substantive Position**

**A.      Rearden has shown a reasonable risk that evidence may be lost or destroyed.**

On August 30, 2017, Rearden's SHST counsel, Turner Boyd, sent DD3 an evidence preservation letter (Ex. B to the attached subpoenas).  DD3's reply denied that any records created after DD3 took Contour were subject to the Court's orders in SHST, and though DD3 said it would preserve Rearden's records, in fact, it deleted them.

DD3 deleted *terabytes* of Rearden's records on over 60 Contour disk drives.  DD3 deleted records from the development of Contour, Contour executables and source code, Contour facial capture and processed works, and Contour capture contracts and bids between Rearden entities and studios including defendants.  And DD3 deleted the records it created after taking Contour, including bids and contracts for performance capture for defendants, communications and records with defendants relating to DD3's contracts, communications with defendants related to the subpoenas and injunction in the SHST Case, and the Contour output that DD3 created in the accused works in this case.

The pre-theft Rearden records on the Contour drives were subject to Court orders to preserve and return to Rearden, and the post-theft DD3 records were subject to Rearden's evidence preservation letter.  But DD3 deleted almost all of them.  It is reasonable to conclude that no records now *remaining* in DD3's possession are safe.

**B.      Rearden seeks to preserve evidence relevant to the present cases, not SHST.**

The subpoenas narrowly target material evidence.  Many requests are limited to documents related to the "Accused Works," defined as the films and videogame at issue in these cases.  *See*, Ex. 1-3 hereto (Subpoena Ex. A at pp. 1-3).  Others are limited to documents and communications between defendants and DD3, LaSalle or Pearce.  *Id.* And many are further limited to documents related to the Contour Technology.  *Id.*

**Conception and reduction to practice of Contour (invention and priority):** The requests seek the original Contour research and development documents.

**Industry acclaim and respect (secondary evidence of non-obviousness):**  The requests seek captured and processed data from films and videogames that used Contour, and Disney's withdrawal from negotiations to acquire the MOVA Assets.

**Infringement:**  The requests seek bids for DD3's facial performance capture using Contour (to show when Contour was used and thus which patents had issued and were infringed), DD3's use of Contour including captured and processed Contour works for defendants, the source and/or object code for the Contour Program whether stored in isolation or incorporated in some other software (to establish that the technology DD3 used was covered by the patents-in-suit), and evidence related to DD3's use of Contour in the United States for *Beauty and the Beast* (to prove infringement occurred domestically).

**Knowledge and intent:**  The requests seek evidence related to communications between DD3 and defendants regarding ownership, licensing, or right to use Contour, whether the MOVA Assets were subject to intellectual property protection, LaSalle and Pearce's attempts to sell or license Contour to Disney and Disney-controlled entities, communications between DD3 and defendants regarding Rearden or its intellectual property, communications regarding the SHST litigation including Rearden's subpoenas and the injunction, and Rearden's copyright notice on Contour output works.

**Damages:**  The requests seek evidence showing what defendants paid DD3 for facial performance capture services and works, and the value of the Contour technology.

**Evidence destruction and entities involved:**  The requests seek evidence related to deletion of documents to show when and why they were deleted, who deleted them, and whether they were copied or transferred before deletion.

## C.     Defendants' opposition to preserving third party evidence makes no sense.

First, defendants argue this motion should be filed in SHST.  But the SHST trial is over, and all unresolved claims dismissed, so there are no claims for which evidence must be preserved.  And DD3 denies that the most relevant records—created *after* DD3 took Contour—were subject to the SHST orders.  Defendants argue Rearden would have to serve this motion on DD3, LaSalle and Pearce in SHST, and thus is evading service here.  But they are not parties in SHST, and this motion seeks no relief with respect to the SHST orders, so service would not be required.  And defendants' representation that "Rearden has refused" to send DD3 an evidence preservation letter is clearly false.

Second, defendants argue this motion should be denied because Rearden has not met and conferred with DD3, LaSalle and Pearce.  But DD3, LaSalle and Pearce are not parties in SHST or these cases, so Rearden is not required to confer with them before seeking leave to serve third party subpoenas on them.  And defendants' hearsay account that Rearden's SHST counsel, Turner Boyd, conferred with DD3's counsel in SHST and was satisfied with DD3's response is misinformed.  In fact, discussions between Turner Boyd and DD3's counsel over DD3's destruction of evidence ended in impasse.  Finally, Rearden's counsel here were fully informed of the facts by Turner Boyd regarding their discussions with DD3's counsel over DD3's destruction of evidence and the resulting impasse.  Defendants' representation that Rearden's counsel said otherwise is untrue.

Third, defendants argue "there is no reason to further complicate this litigation with … whether third parties have complied with the Court's orders in a different case." They persist in making the issue DD3's compliance with the SHST order.  But much of the most relevant evidence here is records created *after* DD3 took Contour, which DD3 denies were subject to the Court's orders.  This motion seeks preservation of all evidence relevant to the present cases and *is not limited to records deleted from the Mova Assets*.

Finally, Crystal Dynamics argues Rearden opposed Crystal's summary judgment motion on the ground that it *requested* discovery under Rule 56(d), and therefore this motion is an "end-run" around the District Court.  This is not true.  This motion <u>was</u> originally filed before Judge Tigar, but he has referred it to this Court.  And the discovery Rearden's opposition identifies for a denial of summary judgment under Rule 56(d) cannot occur until discovery commences in July.  This motion seeks only to collect and preserve evidence *prior* to commencement of discovery, including evidence relevant to *all defendants*, not just Crystal.  Crystal seeks to render this motion moot by delaying its resolution until after discovery would commence in this case anyway.

<u>**Defendants' Substantive Position**</u>

As Rearden acknowledges, the Court ordered that discovery in these cases wait until after the next status conference in July.  But Rearden seeks to serve three subpoenas now based on (1) the accusation that DD3 did not preserve evidence in *SHST* and (2) the suggestion that DD3, LaSalle, and Pearce cannot thus be trusted to preserve evidence.

Defendants had no involvement in *SHST*, the *SHST* preservation order, the *SHST* order requiring DD3 to return materials to Rearden, or DD3's compliance with those orders.  Defendants believe this dispute should be resolved in *SHST* case, with the participation of DD3.  If Rearden seeks to ensure that evidence is preserved going

forward, Rearden should simply ask the third parties whether they will preserve evidence for this case.  We cannot help but note that Rearden has refused in the past six weeks to send DD3 a letter asking for preservation in this case, the first step when a party is actually worried about preservation.  Defendants are concerned also that Rearden's counsel in these cases do not know the underlying facts, and that there has been no showing of either spoliation or DD3's inability to preserve evidence.

**Rearden Should First Meet and Confer With DD3 About Preservation.**  To the extent Rearden is concerned with whether DD3, LaSalle, and Pearce will preserve documents going forward, that concern would be best addressed not with subpoenas but with Rearden asking them to preserve evidence.  If they decline, then there might be something for the Court to do.  Rearden refuses, however, to even discuss the issue with DD3.  Defendants have repeatedly suggested that Rearden ask DD3 to preserve evidence for this case.  Meet and confer is intended to avoid unnecessary disputes, clarify facts, and promote compromise. Six weeks have passed since Rearden first raised this issue with us.  If preservation of existing evidence were a serious concern, Rearden would have at least taken the obvious and commonplace step of asking DD3 to preserve evidence for this case.  The refusal to do so casts doubt on the stated purpose for this discovery. Rearden is not, notably, even seeking a preservation order from the Court.

**This Dispute Belongs in the *SHST* Case.**  The real purpose of this discovery seems to be to investigate DD3, LaSalle, and Pearce's compliance with the *SHST* Order. Rearden denies that but the materials Rearden identifies—"Rearden's records and data, Contour[1] program executables, and source code", "Contour output that DD3 created", and documents relating to DD3's use of the Contour system—are all materials Rearden

---

[1] Rearden's original complaints called the system "Mova Contour."  Rearden has refused, however, to use that name here, insisting on calling the system just "Contour," presumably to support a trademark infringement theory.

itself claims were ordered returned in *SHST*.  *See, e.g.,* Mot. at 11 (Dkt. No. 67) (arguing that DD3 destroyed evidence that, inter alia, "was subject to a Court order to preserve [in *SHST*]," and "was ordered by the Court [in *SHST*] to be returned to Rearden").  The most specific and tangible discovery requests relate to events in the *SHST* case.  *See, e.g., Draft Subpoenas* at topics 5, 7 & Exhibit A at requests 13-15 (seeking discovery into DD3's response to a document preservation letter in *SHST*, DD3's preservation of documents in *SHST*, and DD3's alleged spoliation of materials ordered returned to Rearden in *SHST*).

If Rearden is concerned materials were not returned or not preserved as ordered in *SHST*, then those concerns should be raised and resolved in that case, not in these cases. Rearden says *SHST* is over, but Judge Tigar just decided Rearden's own challenge in *SHST* to an order finding its documents subject to the crime-fraud exception.  And even if *SHST* were over, the Court obviously would retain continuing jurisdiction to enforce its prior orders.  By filing in these cases, Rearden has avoided serving DD3, LaSalle, or Pearce.  As a result, Defendants are left to respond to allegations of non-compliance with orders to which they are not parties. If this motion were filed in *SHST*, DD3, LaSalle, and Pearce would have to be served.  They would then be heard on these allegations, and the Court could have all the relevant facts before making any rulings.

**Rearden Has Not Established Any Risk of Spoliation.**  Rearden asserts that DD3 (and thus LaSalle and Pearce) cannot be trusted because it has already deleted files from harddrives provided to Rearden in the *SHST* case.  Although it now references an "internal forensic analysis," Rearden's counsel admitted during meet and confer that they had not conducted a "forensic analysis" and were relying instead on an Rearden engineer. When asked to share whatever evidence they had of spoliation, Plaintiffs' counsel refused.  Defendants then learned from DD3's counsel that it had extensive meet-and-

confer discussions about these very issues last year with Rearden's counsel in the *SHST* lawsuit, *i.e.*, the Turner Boyd firm. DD3's counsel said that they believed they had addressed all of Turner Boyd's concerns. We have found no record of Turner Boyd seeking relief on these issues thereafter from the Court. Plaintiffs' counsel told the undersigned during meet and confer that they had not even spoken to Turner Boyd about DD3's supposed lack of compliance with the Court's *SHST* Orders. It appears that Rearden's counsel in these cases do not even know what transpired in the *SHST* lawsuit.

There is no reason to further complicate this case with disputes over whether third parties complied with Court orders in a different case. The requested discovery would require Defendants to familiarize themselves with the procedural history of the *SHST* case, the Court's Orders, and the technical details of DD3's compliance with those Orders. Plaintiffs have provided no reason for Defendants to undertake this effort.

**Plaintiff Seeks to Circumvent the Court's Consideration of Its Rule 56(d) Request.**  Crystal Dynamics and Square Enix have moved for summary judgment. Plaintiffs oppose summary judgment under Rule 56(d), seeking to conduct some of the same discovery sought here. *See Rearden LLC et. al. v. Crystal Dynamics, Inc. et. al.*, Case No. 3:17-cv-04187-JST, D.I. 70, at 16. To be granted discovery in lieu of summary judgment, Plaintiff must show that it "diligently pursued its previous discovery opportunities and show 'how allowing additional discovery would have precluded summary judgment.'" *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2018 WL 692022, *3 (N.D. Cal. Feb. 2, 2018) (citations omitted.) This issue, and specifically, whether Plaintiffs have made the required showing under Rule 56(d), should be addressed by Judge Tigar in connection with the pending summary judgment motion. The Court should not permit an end-run around Rule 56(d) by allowing discovery here.