UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al., <br> Plaintiffs, <br> v. <br> THE WALT DISNEY COMPANY, et al., <br> Defendants. | Case No. 17-cv-04006-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br><br> Re: ECF No. 69 |
| REARDEN LLC, et al., <br> Plaintiffs, <br> v. <br> CRYSTAL DYNAMICS, INC., et al., <br> Defendants. | Case No. 17-cv-04187-JST <br><br> Re: ECF No. 65, 79 |
| REARDEN LLC, et al., <br> Plaintiffs, <br> v. <br> TWENTIETH CENTURY FOX FILM CORPORATION, et al., <br> Defendants. | Case No. 17-cv-04191-JST <br><br> Re: ECF No. 46 |
| REARDEN LLC, et al., <br> Plaintiffs, <br> v. <br> PARAMOUNT PICTURES CORPORATION, et al., <br> Defendants. | Case No. 17-cv-04192-JST <br><br> Re: ECF No. 45 |

Now before the Court are the consolidated motions to dismiss by three defendants in these four consolidated cases and a motion for joinder from the fourth defendant. The Court will grant the motions to dismiss in part and deny them in part.

**I.     BACKGROUND**

This action centers on the MOVA Contour Reality Capture Program ("MOVA Contour" or "MOVA"), which – as the name suggests – is a program for capturing the motion of the human face to create images used in motion pictures. The ownership of this program and related hardware (collectively, the "Mova assets") was contested in an earlier action.[1] *See Shenzhenshi, et al. v. Rearden, et al.*, No. 15-CV-00797 JST, ECF No. 1 (N.D. Cal. Feb. 20, 2015). On August 11, 2017, the Court found that Rearden owns the MOVA assets. *See Shenzhenshi, et al. v. Rearden, et al.*, No. 15-CV-00797 JST, ECF No. 427 at 18 (N.D. Cal. Aug. 11, 2017).

Plaintiffs Rearden LLC and Rearden Mova LLC (collectively, "Rearden") now bring these actions against Defendants for copyright, patent, and trademark infringement. No. 17-cv-04006 JST ECF No. 63 ("Disney FAC"); No. 17-cv-04187 JST ECF No. 49 ("Crystal FAC"); No. 17-cv-04191 JST ECF No. 41 ("Fox FAC"); No. 17-cv-04192 JST ECF No. 40 ("Paramount FAC"). Rearden alleges that the Defendants' special effects vendor, Digital Domain 3.0 ("DD3"), directly infringed patents and the copyright in the MOVA Contour program. *See id.* Rearden alleges that Defendants contracted with DD3 "to provide facial performance capture services and output works made with the patented Contour systems and methods and the copyrighted Contour program." Disney FAC ¶ 97. *See also* Crystal FAC ¶ 94; Fox FAC ¶ 103, Paramount FAC ¶ 91. The Court previously issued an order granting in part and denying in part Defendants' motions to dismiss the complaint. Rearden filed amended complaints on March 6, 2018. The studio Defendants – Disney, Fox, and Paramount (hereinafter "Defendants") – move for partial dismissal of the first amended complaint. Defendant Crystal Dynamics joins the motion.

---

[1] The Statement of Decision in that action includes a summary of the facts underlying the ownership dispute. *See Shenzhenshi, et al. v. Rearden, et al.*, No. 15-CV-00797 JST, ECF No. 427 (N.D. Cal. Aug. 11, 2017).

## II. LEGAL STANDARD

While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d at 1072. If the motion to dismiss is granted, the court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks and citation omitted).

## III. DISCUSSION

Defendants argue that Rearden's secondary copyright liability claims for vicarious and contributory copyright infringement should be dismissed. ECF No. 69 at 13.[2] They also argue that Rearden's amended direct patent infringement claims should be dismissed. *Id.* at 24.

### A. Vicarious Copyright Infringement

"To succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Defendants argue that the studios are not vicariously liable for DD3's

---

[2] Unless otherwise noted, all electronic case filing number citations are to documents filed in *Rearden LLC, et al., v. The Walt Disney Company, et al.*, Case No. 17-cv-04006.

3

use of unlicensed software because (1) Rearden does not allege that any studio had both the right and practical ability to supervise DD3's use of infringing software and (2) Rearden does not allege that any studio obtained a direct financial benefit. ECF No. 69 at 14-18.

### 1. Requisite Control

"A vicarious infringer 'exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'" *Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018) (quoting *Amazon.com*, 508 F.3d at 1173).

First, Defendants argue that Rearden does not plausibly allege that the Studios had the right to stop or limit the infringing conduct because Rearden does not allege that any Studio has "the contractual right to control the selection or operation of the software DD3 used or otherwise had any involvement in the process of operating the equipment that DD3 used to supply its services." ECF No. 69 at 14. Defendants cite *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173-74 (9th Cir. 2007) for this proposition. ECF Nos. 69 at 14; 78 at 7.

In *Amazon.com*, plaintiff Perfect 10 appealed the denial of a preliminary injunction against defendants Amazon.com and Google. *Amazon.com*, 508 F.3d at 1157. The Ninth Circuit evaluated Perfect 10's arguments that Google was vicariously liable for third-party websites' reproduction, display, and distribution of unauthorized copies of Perfect 10's images on the internet. *Id.* at 1173. The Ninth Circuit held that Perfect 10 did not demonstrate a likelihood of success in establishing that Google had the right and ability to stop or limit the infringing activities of third party websites. *Id.* 1173. The court noted that Google had the contractual right to terminate Perfect10's "Adsense partnership" but that this did not "give Google the right to stop direct infringement by third party websites" because "[a]n infringing third-party website can continue to reproduce, display, and distribute its infringing copies of Perfect 10 images after its participation in the Adsense program has ended." *Id.* at 1173-74.

The Ninth Circuit contrasted Google's capabilities to those of the swap meet operators in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-63 (9th Cir. 1996). In *Fonovisa*, the Ninth Circuit found that a swap meet operator's "broad contract with its vendors" was sufficient to satisfy the control requirement because it "had the right to terminate vendors for any reason

4

1  whatsoever and through that right had the ability to control the activities of vendors on the

2  premises." *Id.* at 263. Unlike *Fonovisa*, Google did not have "contracts with third-party websites

3  that empower Google to stop or limit them from reproducing, displaying, and distributing

4  infringing copies of Perfect 10's images on the Internet." *Amazon.com*, 508 F.3d at 1173.

The Ninth Circuit also noted that Google was not similarly situated to Napster in *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001). "Because Napster had a closed system requiring user registration, and could terminate its users' accounts and block their access to the Napster system, Napster had the right and ability to prevent its users from engaging in the infringing activity of uploading file names and downloading Napster users' music files through the Napster system. By contrast, Google cannot stop any of the third-party websites from reproducing, displaying, and distributing unauthorized copies of Perfect 10's images because that infringing conduct takes place on the third-party websites." *Amazon.com*, 508 F.3d at1174 (internal quotation marks and citations omitted.)

Here, the Studios are more similarly situated to the swap meet operator and Napster. Rearden alleges that DD3 provided services pursuant to contracts that gave each studio "the unrestricted right to cancel any portion of the Services." Disney FAC ¶¶ 137, 151, 168; Fox FAC ¶¶ 133, 146; Paramount FAC ¶¶ 115, 128. Thus, Rearden alleges that the Studios had the right to prevent DD3 from engaging in the infringing activity because they had the unrestricted right to cancel the use of the MOVA Contour program. Unlike in *Amazon.com*, where Google only had the right to terminate the Adsense partnership—which would not have stopped direct infringement by third parties—the studios could have ended the direct infringement by cancelling the use of the MOVA Contour program. *See Perfect 10*, 508 F.3d at 1174. *See also Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 714-15 (9th Cir. 2014) ("A defendant has control over a third party's infringing conduct when the defendant can directly put an end to that conduct.").

Next, Defendants argue that Rearden "fails to allege that any Studio had the practical ability to supervise the loading of MOVA Contour into RAM." ECF No. 69 at 15. However, Rearden alleges that "[Defendants were] in a position to police DD3's infringing acts. [They] had the authority and practical ability to observe and evaluate services provided by DD3 and—if [Defendants]

5

deemed those services inadequate, improper, or unlawful—require DD3 to remedy the services or cancel DD3's provision of services to defendants but declined to exercise that right." Disney FAC ¶¶ 137, 168; Fox FAC ¶¶ 133,146; Paramount FAC ¶¶ 115, 128. Thus, Rearden provides factual allegations that at least suggest that Defendants had control of DD3 through their ability to observe and evaluate DD3's services.

Defendants contend that these allegations are not plausible because Rearden "does not allege that any Studio had any interaction with the technical aspect of the MOVA Contour system or the software itself" and that "all of the practical hands-on involvement" is alleged to have rested with DD3. ECF No. 69 at 15. At this stage, however, the Court must "accept all factual allegations in the complaint as true." *Knievel*, 393 F.3d at 1072. It is not implausible that through their observation and evaluation of services, Defendants could have observed the infringing activity and directed DD3 to stop using the MOVA Contour program.[3] Therefore, Rearden sufficiently alleges "a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Williams*, 885 F.3d at 1177 (internal citation and quotation marks omitted).

### 2. Direct Financial Benefit

"Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (internal quotation marks and citations omitted). "[T]he size of the 'draw' relative to a defendant's overall business is immaterial. Indeed, [t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir.), *cert. denied*, 138 S. Ct. 504, (2017) (internal quotation marks and citation omitted). "There is no requirement that the draw be substantial." *Ellison*, 357 F.3d 1072, 1079 (9th Cir. 2004).

---

[3] Vicarious liability "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005).

6

Rearden alleges that Defendants "had an obvious and direct financial interest in exploitation of Rearden's copyright in the Contour program" because they believed that Contour performance motion capture would make movie characters more believable which would in turn "draw a wider audience to the films." Disney FAC ¶ 138, 169; Fox FAC ¶ 134; Paramount FAC ¶ 116. Defendants argue that the relationship "between loading MOVA Contour into RAM and the ultimate appearance on screen of 'believable and compelling' CG characters that 'draw a wider audience' to theaters is highly attenuated." ECF No. 69 at 17. They contend that "Rearden has not plausibly alleged that DD3's use of unlicensed software constitutes a draw for moviegoers, as opposed to providing an added benefit to the finished movie." ECF No. 69 at 18.

Defendants cite *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) to support their arguments. Notably, in *Ellison*, the Ninth Circuit considered the lower court's summary judgment dismissal of a copyright infringement action against America Online, Inc. (AOL). *Id.* at 1074. The question before the court was "whether there [was] a triable issue of a material fact regarding whether AOL received a direct financial benefit from the copyright infringement." *Id.* at 1079. Ultimately, the court concluded that plaintiff had not offered enough evidence for a reasonable juror to find a direct financial benefit. *Id.*

Here, the Court is not asked whether Rearden has sufficient evidence to create a triable issue of material fact. The Court is only asked whether Rearden plausibly alleged a direct financial benefit. It has. *See Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (finding that plaintiffs sufficiently alleged that a recording artist benefited financially from the use of a copyrighted portrait on various marketing and advertising materials, including the album cover of a hit single and its remixes, despite the attenuated connection between the image and the profits[4]); *c.f.*, *Thomson v. HMC Grp.*, No. CV1303273DMGVBKX,

---

[4] The court held that plaintiffs sufficiently alleged that the recording artist, Felton, benefitted financially from the infringing activity "[b]ecause the image of Rams with her index finger perpendicular to her closed lips is commonly understood to mean "Shh, don't tell," [therefore] the image communicates the title of Felton's song, 'Don't Tell 'Em.' As the literal 'face' of Felton's single, Flemming's portrait of Rams therefore plays a role in the song's, and therefore, Felton's marketability, reaping him direct financial benefits in the form of album sales." *Rams*, 202 F. Supp. 3d at 385.

2014 WL 12589313, at *4 (C.D. Cal. July 25, 2014) (finding that plaintiff had not sufficiently alleged that defendant had a financial interest in the infringing activity because he did "not allege that the use of his designs acts as a 'draw'" for [defendant's] patients).

Therefore, Rearden has sufficiently alleged vicarious copyright infringement. Defendants' motion to dismiss is denied.

### B. Contributory Copyright Liability

"[A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) "induces, causes, or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Regarding the first element, generally speaking, "'actual knowledge of specific acts of infringement' is required for contributory infringement liability." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)).

#### 1. Knowledge

Rearden alleges that Disney "had previously contracted with Rearden and/or its controlled entities to provide authorized facial performance capture services and Contour program output works . . . and had performed intellectual property due diligence." Disney FAC ¶ 116. It alleges that Disney performed intellectual property due diligence when it contracted with DD3, and based upon this due diligence it knew or should have known that DD3 did not have the right to offer or provide services and works made using the patented and copyrighted program. *Id*. Assuming the truth of these allegations, it is not an unreasonable inference that Defendants became aware of Rearden's copyright and DD3's infringing activity before contracting with DD3. As the Court previously stated, the allegations are unquestionably thin, but they are enough to survive a motion to dismiss.[5]

Rearden alleges that Fox and Paramount "had previously contracted with Rearden and its

---

[5] The Court previously noted that it "has its doubts that Disney actually engaged in the kind of intellectual property due diligence with either Rearden or DD3 that plaintiff alleges, but nonetheless concludes that the allegation survives an *Iqbal/Twombly* challenge." *See* ECF No. 60.

controlled [entities] to provide authorized [Contour] facial performance capture services and Contour program output works." Fox ¶ 98, 107, 117; Paramount ¶ 92. Significantly, Rearden does not allege that Fox and Paramount previously performed due diligence when they directly contracted with Rearden, but instead simply alleges that "[o]n information and belief, Fox [and Paramount] likewise conducted due diligence to determine whether DD3 was authorized to offer the Contour system, methods, and Contour program." *Id.* The plaintiff may "plead facts 'alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Kelsey K. v. NFL Enterprises*, LLC, 254 F. Supp. 3d 1140, 1143 (N.D. Cal. 2017) (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017)). Here, unlike with Disney, Rearden does not have any additional factual information about the Paramount and Fox allegations to make the inference of culpability plausible.

However, Rearden does argue that the due diligence allegations are bolstered by allegations that the studios, through employees and agents, "reviewed color and grayscale Contour output works that were consistently and extensively marked with Rearden's [] copyright notice." Fox ¶ 117; Paramount ¶ 92. Both parties debate the likelihood that a studio representative would actually have seen the copyright notice and whether it would adequately alert that employee that DD3 was using the software without a license. *See* ECF No. 69 at 21-22; 74 at 24-26; 78 at 13-14. At this early stage, however, the Court must "construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072. Even if it is unlikely that a studio representative saw the copyright notice, it is not implausible. And it is not implausible that a copyright notice would have given the studio representative reason to know of the direct infringement. See *Ellison*, 357 at F.3d at 1076 ("We have interpreted the knowledge requirement for contributory copyright infringement to include both those with actual knowledge and those who have reason to know of direct infringement.").

### 2. Material Contribution

Rearden also alleges that Defendants, either directly or through an agent, contracted with DD3 to provide facial performance capture services and output works using the patented and

9

copyrighted Contour program. Disney FAC ¶ 113 Fox FAC ¶137; Paramount FAC ¶ 119. They allege that Defendants "initiated and scheduled each facial performance capture session with DD3 using the Contour program" and that "[e]ach of the requests for facial performance captures caused DD3 to use the Contour program, which created an infringing copy of the program for non-transitory duration in the RAM of Contour system computers." *See, e.g.*, Disney FAC ¶¶ 131, 144, 174, 175; Fox FAC ¶¶ 138, 139; Paramount FAC ¶¶ 109, 120, 121.

Defendants argue that "hiring a vendor does not materially contribute to the vendor's infringing use of unlicensed software." ECF No. 69 at 18. But, Rearden does not simply allege that Defendants hired a vendor. It alleges Defendants directed that vendor to use the copyrighted MOVA program by contracting with DD3 to use the MOVA Contour program. *See Med-Sys., Inc. v. Masterson Mktg., Inc.*, No. 11CV695 JLS BLM, 2011 WL 5873399, at *7 (S.D. Cal. Nov. 23, 2011) (finding that counterclaimant had not adequately alleged material contribution because the counterclaimant merely alleged that counter defendant "was involved in all of the contracting with [counterclaimant], and not that [counter defendant] took any affirmative steps to foster [] distribution and display of the copyrighted materials...[The counterclaimant] must allege that counter defendant had some involvement in directing the infringing use of the photos in order to state a claim for contributory infringement....")

Defendants argue that "DD3 loaded the Contour software program into computers' RAM without any knowledge, assistance, or encouragement from any Studio" and that "the Studios were not directly (or indirectly) involved in DD3's decision to use the MOVA Contour software program, DD3's alleged decision to use the software without a license, or any of the technical elements of DD3's interactions with the software." ECF Nos. 69 at 19, 78 at 10. This very well may be true and Defendants are free to argue at summary judgment or trial that Rearden has not sufficiently established that Defendants directed DD3 to use the copyrighted MOVA Contour program. However, at this motion to dismiss stage, these allegations plausibly allege that Defendants induced, caused, or materially contributed to the infringing conduct. *See Visa*, 494 F.3d at 795.

### C. Direct Patent Infringement

Under the patent law, one is liable for direct infringement if she "without authority makes,

uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). In *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011), the Federal Circuit held that "to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." This requires "a party . . . to use each and every . . . element of a claimed [system]." *Id.* However, a party is not required to "exercise physical or direct control over each individual element of the system." *Id.*

The Federal Circuit has since explained that "[i]n an analysis of a system claim under *Centillion*, proof of an infringing 'use' of the claimed system under § 271(a) requires the patentee to demonstrate that the direct infringer obtained 'benefit' from each and every element of the claimed system." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017). And, it recently explicitly clarified that *Centillion* pertained to a situation where each party possessed at least some of the elements of the system. *Grecia v. McDonald's Corp.*, No. 2017-1672, 2018 WL 1172580, at *3 (Fed. Cir. Mar. 6, 2018).[6]

The Court dismissed Rearden's first direct infringement claim against Disney because Rearden did not plausibly allege that Disney used the patented MOVA Contour system under *Centillion*. ECF No. 60. Rearden argues that *Centillion* applies to its amended complaint because the "FACs allege that the components of the claimed system were in the joint possession of Defendants and DD3." ECF No. 74 at 31. Rearden alleges that the contract between DD3 and Disney MPG was a "Facility Use and Services Agreement" where DD3 authorized Disney to use designated portions of DD3's facilities in connection with the shoot, subject to supervision by any DD3 employee which DD3 may deem appropriate. Disney FAC ¶ 195, 232, 267, 305, 341. DD3 also alleges that the contract grants Disney the right to cancel any portion of the services subject only to the duty to pay for costs and services performed before the allegation and that Disney transmitted a request to DD3 to initiate and schedule each performance capture session. *Id.*

---

[6] Pursuant to Ninth Circuit Rule 36-3, *Grecia* is not precedential. Nevertheless, the Court uses it as persuasive authority.

11

¶¶ 196, 233, 268, 306, 342. Finally, Rearden alleges that Disney provided facial performers and directors to start and terminate each session, start and stop each take, and to choose "Selects."[7] *Id.* ¶¶ 132-33; 145-46; 163-64; 176-77; 199-200; 236-27; 309-10 345-46.

These allegations show that Disney contracted with DD3. However, they fail to show that that Disney was in possession of any of the elements of the MOVA system.w Therefore, *Centillion* does not apply.

Without *Centillion*, Rearden does not provide any authority that it adequately alleges direct infringement. Rearden does not argue that it can allege use without possessing any element of the claimed system nor does it provide any authority supporting this contention. Rearden having twice failed to allege a sufficient direct infringement claim, Defendant's motion to dismiss that claim is granted with prejudice. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended.").

### D. Motions for Joinder

Defendants in *Rearden LLC, et al., v. Crystal Dynamics, Inc.*, et al., Case No. 17-cv-4187-JST, filed a motion for joinder in the studio Defendants' motions to dismiss and reply briefs, ECF Nos. 65, 79. The Court grants the motion.

### CONCLUSION

The motions to dismiss the vicarious and contributory copyright infringement claims are denied. The motions to dismiss the direct patent infringement claims are granted with prejudice.

**IT IS SO ORDERED.**

Dated: June 18, 2018

JON S. TIGAR
United States District Judge

---

[7] The FAC defines "Selects" as "the Contour capture takes which were deemed 'good takes' by the director." FAC ¶ 133.

12