1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10            SAN FRANCISCO DIVISION

| | |
|---|---|
| 11 REARDEN LLC, REARDEN MOVA LLC, California limited liability companies, | Case No. 3:17-cv-04006-JST |
| 12 | 3:17-cv-04191-JST |
| 13 Plaintiffs, | 3:17-cv-04192-JST |
| | 3:17-cv-04187-JST |
| 14 v. | |
| 15 THE WALT DISNEY COMPANY, a Delaware corporation, WALT DISNEY MOTION PICTURES GROUP, INC., a California corporation, BUENA VISTA HOME ENTERTAINMENT, INC. a California corporation, MARVEL STUDIOS, LLC, a Delaware limited liability company, MANDEVILLE FILMS, INC., a California corporation, | **JOINT REPORT AND DISCOVERY PLAN PURSUANT TO FED. R. CIV. P. 26(f)** |
| 16 | |
| 17 | **Case Mgmt. Conf.:  July 25, 2018** |
| 18 | |
| 19 | |
| 20 Defendants. | |
| 21 REARDEN LLC and REARDEN MOVA LLC, | |
| 22 Plaintiffs, | |
| 23 v. | |
| 24 TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation and TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC, a Delaware limited liability company, | |
| 25 | |
| 26 | |
| 27 Defendants. | |

28

REARDEN LLC and REARDEN MOVA LLC,

                             Plaintiffs,

      v.

PARAMOUNT PICTURES CORPORATION, a
Delaware corporation, and PARAMOUNT HOME
ENTERTAINMENT DISTRIBUTION INC. a
Delaware corporation,

                             Defendants.

REARDEN LLC, REARDEN MOVA LLC,
California limited liability companies,

                             Plaintiffs,

      v.

CRYSTAL DYNAMICS, INC., a California
corporation, SQUARE ENIX INC., a
Washington Corporation,

                             Defendants.

1

**Fed. R. Civ. P. 26(f) Report**

2      On July 13, 2018, the undersigned counsel-of-record for the parties in the above-captioned

3   cases met and conferred in compliance with Fed. R. Civ. P. 26(f).  They jointly submit this report

4   outlining their agreements and issues for resolution by the Court at the July 25, 2018 Further Case

5   Management Conference.  Where the parties have disagreements, they have noted their respective

6   positions under sub-headings within the particular category.

7                                         **I.      Discovery Plan**

8      **A.  Initial Disclosures**

9      The parties have agreed to exchange Rule 26(a)(1)(A) initial disclosures by August 3, 2018.

10     **B.  Subjects for Discovery, Phasing or Limiting**

11     The parties agree that it is advisable to consolidate the cases for purposes of pretrial

12  discovery.  Beyond that, the parties have different positions regarding the scope of discovery that

13  should be permitted at this juncture.

14     **Plaintiffs' Position**

15     The scope of discovery is expected to encompass documents, Electronically Stored

16  Information (ESI) files, audio files, and things in the parties' possession, custody, or control relating

17  at least to Rearden, Steve Perlman, Gregory LaSalle, Kenneth Pearce, DD3, the Contour technology

18  (program, system, and methods referred-to by defendants as "MOVA"), the Contour intellectual

19  property (copyright, patents, and the MOVA trademark) including the extent of defendants'

20  knowledge thereof, defendants' Contour performance capture sessions and receipt or distribution of

21  Contour output works, defendants' knowledge of the *Shenzhenshi Haitiecheng Science and*

22  *Technology Co., Ltd., et al. v. Rearden LLC, et al.*, Case No. 3:15-cv-00797-JST case ("SHST

23  Case"), defendants' intellectual property due diligence with respect to Contour, Rearden, and DD3

24  (including Disney's due diligence and discussions relating to acquiring or licensing the Contour

25  "MOVA" assets), and the relationships between defendant entities.

26     Non-party discovery is expected to encompass documents, data files, audio files, and things

27  relevant to the issues identified above in the possession, custody, or control of at least DD3 and its

28

1

JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2\8974749.2 39343941.1

representatives, Greg Lasalle, Ken Pierce, and all participants in defendants' Contour facial performance capture sessions including directors, performers, and crew, as well as any non-party visual effects companies that received and used Contour output works. Non-party depositions are expected to include representatives of DD3, Messrs. LaSalle and Pearce, actors, directors, and crew who were present for or participated in Contour performance captures, and visual effects company representatives who received and used Contour output works.

Without limitation, discovery will be needed on at least the following subjects:

1.     The evidence relating to the elements of plaintiffs' vicarious and contributory copyright infringement claims and their trademark claims.

2.     The evidence relating to the elements of defendants' factual and other defenses.

3.     The evidence relating to the elements of plaintiffs' requests for equitable relief.

4.     The evidence relating to the quantum of plaintiffs' damages, including but not limited to plaintiffs' lost profits, defendants' marketing, projections, advertising, budgets, sales and revenue figures, gross receipts, defendants' costs and expenses, defendants' profits, and the portion of defendants' profits attributable to their infringements.

5.     The evidence relating to the elements of plaintiffs' willful infringement claim and exceptional case claim.

Plaintiffs do not agree to phase or otherwise limit discovery except as expressly provided herein. Defendants' bifurcation proposal would be extraordinarily burdensome to the parties and the Court for at least the following reasons.

First, the boundaries of what would be permissible versus impermissible discovery are indefinite. This is certain to lead to multiple discovery motions wherein the Court would have to repeatedly act as referee on whether otherwise permissible interrogatories, document requests, and deposition questions address subject matters that are in or out of defendants' indefinite bounds for phased discovery.

1  Second, the parties will have to serve and respond to successive waves of written discovery.

2  They will serve interrogatories and document requests addressed to matters relating to the first phase,

3  followed by gathering information from client representatives and searching for responsive

4  documents and ESI.  Then, when defendants' "hail Mary" summary judgment motions fail (as they

5  most likely will for reasons stated by Rearden in the Further Case Management Statement), the

6  parties will serve a second round of interrogatories and document requests addressed to all other

7  matters in the cases.  They will have to gather information a second time from client representatives

8  and perform further searches for documents and ESI.  And this would present an almost

9  insurmountable obstacle to Rearden because under defendants' proposed discovery limits it can only

10  propound three interrogatories to each defendant.

11  Third, the parties will have to re-depose multiple witnesses.  There will by Rule 30(b)(6)

12  depositions of each entity covering subject matters in phase one, then a second round of entity

13  depositions in phase two.  DD3, LaSalle, Pearce, and other individuals will have to be re-deposed in

14  each phase covering the subject matters in phase one and again for subject matters in phase two.

15  And again, Rearden will be hobbled under defendants' proposed discovery limits because after

16  deposing the eleven defendant entities, some individual officers or employees of defendants

17  (including those who admitted the causal link between the infringements and defendants' film

18  profits), DD3, LaSalle and Pearce and any experts in phase one, Rearden will at best have no

19  depositions left for phase two.  At worst, Rearden will run out of depositions in phase one.

20  Denying defendants' requests for bifurcation does not prejudice them in any way.  They

21  would still be free to bring a summary judgment motion whenever they believe that the motion is

22  ripe.  There is no legal or efficiency justification for bifurcating these cases merely because

23  defendants, like many other defendants in any other case, hope to move for summary judgment.

24

25

26

27

28

3

1   **Studio Defendants'[1] Position**

2        For reasons explained in detail in Section I.B of the parties' Joint Amended Case

3   Management Statement (Dkt. 97 in 3:17-cv-04006-JST), the Studio Defendants believe that the

4   discovery plan proposed by Rearden is vastly disproportionate to the needs of this case at this

5   juncture.

6        Before launching into discovery that will be unduly burdensome to parties and non-parties, a

7   determination should be made of which movies are in and out of the case.  Why should the parties

8   waste time deposing actors, directors, special effects vendors, etc., for movies in which no scenes

9   appeared in which MOVA Contour software was involved in facial scans, movies for which the

10  downloading of the software occurred outside the three-year limitations period, and movies for

11  which the downloading occurred outside the United States and is not actionable?  Similarly, the

12  parties and Court should expeditiously determine whether Rearden can carry its burden of showing a

13  causal link between the alleged infringing act—DD3 loading the MOVA Contour software program

14  into RAM before any facial performances were captured—and any revenue the Studios realized from

15  the ultimate distribution of the completed movies.  This issue is particularly appropriate for

16  resolution on an early motion, and the Court's ruling on the motion likely will narrow the case and

17  put it in a posture for early resolution.  For a number of the movies in issue, any characters whose

18  appearance actually did involve the scanning of an actor's face by DD3 appear for only seconds, and

19  the ultimate appearance of any of the characters in issue is so attenuated from the loading of MOVA

20  Contour software into RAM that any alleged causal link will necessarily be speculative and

21  insufficient to meet Rearden's burden.

22       The Studios respectfully submit that the most efficient way for the parties to know what is

23  really at stake—and to define the scope of discovery—is for discovery to be bifurcated, with initial

24  discovery (fact and expert) and an early motion on two issues.  Specifically, the parties can and

25

26

27      [1] The "Studio Defendants" are the defendants in Nos. 3:17-cv-04006-JST ("Disney Defendants"), 3:17-cv-04191-JST ("Fox Defendants"), and 3:17-cv-04192-JST ("Paramount Defendants").

28  JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2\8974749.2 39343941.1

4

1   should conduct targeted discovery limited to the following issues, which are not "indefinite" (p.2,

2   *supra*):

3       (1)      which movies are actually in this case, and to what extent were the results of DD3's

4   facial motion capture services even involved with screen time:  (whether facial motion picture scans

5   by DD3 actually were used in the creation of any on-screen characters; and which loading of

6   software is outside the three-year statute of limitations or was done outside the United States; and

7       (2)      whether Rearden can show the required causal link between the loading of software

8   and the Studios' profits.

9       The parties then can brief these issues on an early motion.  Once the parties know what

10  movies are in issue and whether Rearden can raise a triable question, both sides can assess the

11  relative value of this case and be in a position to resolve it—before proceeding to costly and

12  burdensome discovery on the specific motion capture sessions, the elements of secondary copyright

13  liability, financial information, and the like.

14      Relying on a parade of horribles, Rearden argues that bifurcated discovery will require

15  gathering documents from the same custodians and deposing the same people multiple times.  P.3,

16  *supra*.  Rearden is wrong.  The parties will only have to take discovery once regarding which movies

17  are even possibly in issue or whether there is a link between DD3 loading software into RAM and

18  people paying to see movies.  Rearden asserts that "DD3, LaSalle, Pearce, and other [unidentified]

19  individuals" will have to be deposed once in phase 1 and again in phase 2.  *Id*.  If Rearden cannot

20  show the required causal link to get the profits of the Studios' movies, there will not be a phase 2,

21  which means that numerous witnesses (from parties and non-parties) will be spared the scores of

22  depositions Rearden seeks to conduct.  The only advantage to plunging headlong into boundless

23  discovery at this juncture is to impose massive costs and burdens on parties and non-parties alike.

24  While that suits Rearden's objective of driving up the in terrorem value of the case, it makes no

25  sense as a matter of efficiency and case management.

26

27

28

JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2\8974749.2 39343941.1

**Crystal Dynamics Defendants' Position**

In addition to the above motion identified by the Studio Defendants (which could apply to Crystal Dynamics and Square Enix, *mutas mutandi*), Crystal Dynamics and Square Enix intend to renew their motion for summary judgement on the issue of whether the MOVA Contour technology was used or authorized to be used in *Rise of the Tomb Raider*. Crystal Dynamics and Square Enix have proposed that Plaintiffs' discovery be initially directed only to whether the MOVA Contour technology was used or authorized to be used in *Rise of the Tomb Raider*. And even assuming arguendo that captures were used to promote the game, Rearden has not made such an allegation in its complaint. Rather than advance through a protracted discovery phase, Crystal Dynamics and Square Enix propose having discovery taken on this narrow issue within three months upon which they would file a renewed early motion for summary judgment.

**C.  Disclosure, Discovery, and Preservation of Electronically Stored Information**

The parties are negotiating the terms of an ESI order. Their respective positions regarding the timing of submission are set forth in Section V (pages 21-22) of the Joint Amended Case Management Statement.

**D.  Privilege and Waiver**

1.      Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or other protection from discovery in this case or in any other federal or state proceeding.

2.      If information produced in discovery is subject to a claim of privilege or of protection as work product or other trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; and must take reasonable steps to retrieve the information if the party disclosed it before being notified. The producing party must preserve the information until the claim is resolved.

6

JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2:8974749.2 39343941.1

3.    When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as work product or other trial-preparation material, the party must expressly make the claim in accordance with the provisions of Fed. R. Civ. P. 26(b)(5).

4.    Privileged communications that post-date the filing of the complaint need not be placed on a privilege log.

**E.  Limitations on Discovery**

For purposes of applying the following limitations on discovery, the parties of the four above-captioned cases agree to coordinate discovery.  Plaintiffs collectively and defendants collectively shall respectively coordinate such that discovery is non-duplicative.

1.    **Depositions:  The parties disagree on presumptive deposition limits.**

**Plaintiffs' Position**

Plaintiffs propose that the following limitations apply to depositions taken without leave of court unless the parties have stipulated to the deposition:

a.    Each party entity may be deposed pursuant to Fed. R. Civ. P. 30(b)(6) only once.  A Fed. R. Civ. P. 30(b)(6) deposition may be taken pursuant to successive notices on more than one day, but is subject to a 14-hour total limit. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

c.    A party may take up to ten depositions of officers and employees of a party in their individual capacities.

d.    A party may take up to ten depositions of non-parties.

e.    An individual deposed in her or his personal capacity may be deposed only once, limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the

1                  deponent or if the deponent, another person, or any other circumstance

2                  impedes or delays the examination.

3        Rearden served its proposed deposition limits on defendants nearly three weeks ago.

4 Defendants served their proposed "20 deposition per side limit" at 10:00 AM yesterday.  Studio

5 defendants' counsel represents that he informed Rearden's counsel that Rearden's proposal was

6 unreasonable in the Rule 26(f) conference, which is true.  What he fails to disclose is that his only

7 alternative proposal was that Rearden should be limited to just ten depositions—not enough to

8 depose even the eleven entity defendants, much less DD3, LaSalle, and Pearce—and declined to

9 negotiate any further.

10        Defendants' new proposal that each side be limited to 20 depositions is not rational.  Rearden

11 has 9 employees, and Rearden Mova has none.  So defendants can take Rearden and Rearden Mova's

12 30(b)(6) depositions and depose every employee in the company, and would still have nine

13 depositions in reserve.  But Rearden must take 30(b)(6) depositions of each of eleven defendants,

14 and then depose at least some officers and employees individually.  Under defendants' 20 deposition

15 proposal, Rearden could not depose even one individual from each defendant.  Nor could it depose

16 DD3, LaSalle, Pearce, or any of the witnesses to the Contour captures and processing.  It is

17 unreasonable to limit Rearden and Rearden Mova to the same number of depositions as defendants,

18 when defendants have only two entities and not more than nine officers or employees to depose,

19 while Rearden has eleven entities with hundreds if not thousands of employees and officers each, in

20 addition to third parties.  Defendants newly proposed "20 deposition per side" limit in fact limits

21 only Rearden, and is a non-starter.

22        Defendants' arguments against Rearden's proposal are equally unreasonable.

23        First, they aggregate the depositions for individual defendants, and proclaim that Rearden

24 proposes "up to 131 depositions."  That is not Rearden's proposal.  Rearden proposes that each party

25 may be deposed once, and up to ten officers and employees of a party may be deposed, which is only

26 one deposition more than would be presumptively reasonable under the Federal Rules of Civil

27 Procedure if the defendants had been sued individually.  The fact that defendants counsel undertook

28

8

JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2\8974749.2 39343941.1

1    to jointly-represent too many distinct clients—apparently biting off more than they can chew—does

2    not justify limiting Rearden to a fraction of the depositions deemed presumptively reasonable under

3    the civil rules for a party.

4         Second, 20 depositions in total is obviously unreasonable in a case having eleven defendant

5    entities.  After taking each defendant's Rule 30(b)(6) deposition, Rearden would have only nine

6    remaining depositions for DD3, LaSalle, Pearce, any individual officer or employee of defendants,

7    and defendants' expert witnesses.  A Rule 30(b)(6) deposition and an individual deposition of one

8    employee or officer of each defendant would exceed Rearden's allotted depositions.

9         Third, defendants' proposal that they might designate a single witness as a Rule 30(b)(6)

10   representative for multiple parties only makes the problem worse.  There is simply no way that a

11   single witness can be adequately informed on all of the information known by multiple entities

12   relating to multiple Rule 30(b)(6) matters.  With defendants designating inadequately-informed Rule

13   30(b)(6) witnesses, Rearden will have no alternative but to depose multiple individuals of each party,

14   and yet will not be able to do so due to having exceeded the 20 deposition limit.

15        And Fourth, if the facts are indeed as defendants represent—that some films never used

16   Contour, others used Contour for only a few seconds of footage, and no infringing acts reachable by

17   United States copyright law occurred in the making of *Beauty and the Beast*—then why would

18   Rearden's counsel take over a hundred *more* depositions?  If this case is as worthless as defendants

19   assure the Court that it is, Rearden has no incentive to invest hundreds if not thousands of additional

20   attorney hours taking pointless depositions.

21        Defendants' deposition "limits" are nothing more than an attempt to hamstring Rearden in

22   discovery with a proposal that is transparently inadequate for the needs of this multi-defendant case.

23        **Studio Defendants' Position**

24        The deposition "limits" that Rearden proposes are manifestly unreasonable, as the Studio

25   Defendants told Rearden during the conference of counsel, not at 10 a.m. yesterday.  Rearden has

26   named nine separate entities across the three Studio cases, and two entities in the Crystal Dynamics

27   case.  Under Rearden's proposal of one 30(b)(6) deposition (of up to 14 hours, i.e., two days) of each

28

9

1    entity, **plus** up to 10 individual depositions for each party, plus up to 10 non-party depositions,

2    Rearden's proposal would allow it to notice and take up to **121** party depositions and an additional

3    10 non-party depositions without having to obtain agreement of the other side or, if necessary, leave

4    of court.  A discovery plan that makes it presumptively reasonable for one side to take up to **131**

5    depositions is excessive, and it underscores the need for limits before the discovery costs quickly

6    overwhelm the actual value of these cases.

7         Rearden's argument also ignores that it named parties that are parent holding companies that

8    had no involvement in the production of the movies in issue (e.g., The Walt Disney Company);

9    named multiple parties involved with the production of the same movie (e.g., Walt Disney Motion

10   Pictures and Mandeville); and named parties that simply distribute home entertainment products for

11   their related studios (e.g., Buena Vista Home Entertainment, Twentieth Century Fox Home

12   Entertainment, and Paramount Home Entertainment Distribution).  Accordingly, it is more accurate

13   to view this case as involving four sets of defendants—not eleven.  Simply because Rearden has

14   improperly named parties that have nothing to do with the production of the movies in issue or

15   multiple entities involved with the same movie, does not entitle Rearden to an excessive number of

16   depositions.

17         The Studio Defendants recognize that, with discovery consolidated across the four cases, the

18   provisions of Fed. R. Civ. P. 30(a)(2)(A)(i) would limit Plaintiffs and all Defendants to 10 total

19   depositions without further leave of Court.  The Studio Defendants believe that 10 depositions may

20   well be sufficient, particularly if discovery is phased as the Studio Defendants have proposed.  The

21   Studio Defendants anticipate that most, if not all, of the motion pictures in issue, will be eliminated

22   in this first phase—which will also eliminate a number of parties.   It is reasonable to believe that

23   the various defendants in each case will designate the same individual to testify as 30(b)(6) witnesses

24   on behalf of more than one defendant (if not all defendants in the same case), and that the same

25   individual may also be deposed in their individual capacity.

26         At this juncture, the Studio Defendants believe it is reasonable to establish a presumptive

27   limit of 20 depositions per side, which is double the 10 per-side presumption set forth in Fed. R. Civ.

28

P. 30(a)(2)(A)(i).  If a party believes it needs to exceed that limit, the party can propose taking additional depositions.  If one side or the other hits the 20 deposition mark and has an actual need— rather than a hypothetical need—to take more depositions, the party can ask the other side to agree to exceed the limit.  That is exactly what happens in every case with the limits that Rule 30(a)(2)(A)(i) already establishes:  each side gets the number of depositions the Rule allows, and if a side needs more, it asks for more.  Rearden has not demonstrated any actual need for establishing a baseline in which it is reasonable for it to notice up to 131 separate depositions.

The Studio Defendants do not believe there is any cause for the presumptive limit for any 30(b)(6) deposition to exceed seven hours.  Of course, if a party produces more than one witness in response to a 30(b)(6) notice and the deposition is reasonably likely to exceed seven hours, the parties can agree in good faith to reasonable time limits.  In the unlikely event of a disagreement, a party can always seek leave for additional time, but that really should be unnecessary.

**Crystal Dynamics' Defendants' Position**

The Crystal Defendants join in the Studio Defendants' proposal.

  2. **Interrogatories:  The parties disagree on prospective interrogatory limits.**

**Plaintiffs' Position**

Plaintiffs propose that, unless otherwise stipulated or ordered by the court, each party shall be required to respond to no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).

Defendants' proposal that each *side* be limited to 35 interrogatories again fails to account for the fact that there are only two plaintiffs and eleven defendants.  Defendants would have 17 interrogatories per plaintiff, while Rearden would be limited to three interrogatories per defendant. Under Rearden's proposal, no party would have to answer more than 25 interrogatories, which is consistent with the presumptive limit imposed by the Federal Rules of Civil Procedure.  In contrast, defendants' unreasonable proposal drastically limits Rearden's written discovery and has little effect on defendants' written discovery.

1    And like depositions, defendants aggregate all interrogatories for eleven independent parties

2    to complaint that Rearden can serve 275 interrogatories.  But Rearden proposed only the

3    presumptively-reasonable limit of 25 interrogatories per party, embodied in the civil rules.  If

4    Rearden had sued each defendant separately, defendants' counsel could not complain that 25

5    interrogatories is unreasonable.  The fact that defendants' counsel undertook to represent too many

6    separate defendant entities does not justify limiting Rearden to three interrogatories per party.

7    **Studio Defendants' Position**

8    With nine separate entities named on the Studio Defendants' side, and two Crystal Dynamics

9    defendants, Rearden's proposal would presumptively allow the service of 275 interrogatories in this

10   litigation.  The Studio Defendants propose that each party group (Rearden Plaintiffs, the Disney

11   Defendants, the Fox Defendants, the Paramount Defendants, and the Crystal Dynamics Defendants)

12   to be required to respond to no more than 35 written interrogatories, including all discrete subparts.

13   Those numbers could be varied by stipulation or court order on good cause shown.

14   **Crystal Dynamics Defendants' Position**

15   The Crystal Defendants join in the Studios proposal.

16   **F.  Protective and Other Orders**

17   The parties are negotiating the terms of a protective order based on the Northern District's

18   form protective order and will submit it in accordance with their plans for submitting the ESI Order.

19   *See* Section V (pages 21-22) of the Joint Amended Case Management Statement.

20   **II.    Scheduling Order**

21   The parties' respective positions on dates are set forth in separate sections of Exhibit A.

22

23   Respectfully submitted:

24   **DATED:** July 19, 2018                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

25

26   By: */s/ Steve Berman*
                                     Steve Berman

27

28
12

1                                         *Attorney for Plaintiffs*

2         **DATED:**  July 19, 2018        **MUNGER, TOLLES & OLSON LLP**

3

4                                        By:  */s/ Kelly Klaus*

5                                              Kelly Klaus

6                                        *Attorneys for Studio Defendants*

7

8         **DATED:**  July 19, 2018        **DUANE MORRIS LLP**

9

10                                        By:  */s/ Karineh Khachatourian*

11                                          Karineh Khachatourian

12                                       *Attorneys for Square Enix and Crystal Dynamics*

JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2\8974749.2 39343941.1

## CIVIL LOCAL RULE 5-1 ATTESTATION

I, Steve Berman, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(*i*)(3), I hereby attest that Kelly Klaus and Karineh Khachatourian concurred in the filing of this document.

*/s/ Steve Berman*

Steve Berman

JOINT REPORT AND DISCOVERY PLAN
PURSUANT TO FED. R. CIV. P. 26(f)
CASE NO.: 3:17-CV-04006-JST; 3:17-CV-04191-JST; 3:17-CV-04192-JST; 3:17-CV-04187-JST
DM2\8974749.2 39343941.1

1

**[PROPOSED] ORDER**

2

    Pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure and Rule 502 of the

3

Federal Rules of Evidence, **IT IS SO ORDERED**.

4

5

                                        _____
The Honorable Jon S. Tigar

6

                                        United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28