UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC, California limited liability companies,<br><br>Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, a Delaware corporation, WALT DISNEY MOTION PICTURES GROUP, INC., a California corporation, BUENA VISTA HOME ENTERTAINMENT, INC. a California corporation, MARVEL STUDIOS, LLC, a Delaware limited liability company, MANDEVILLE FILMS, INC., a California corporation,<br><br>Defendants. | Case No. 3:17-cv-04006-JST<br>3:17-cv-04191-JST<br>3:17-cv-04192-JST<br><br>**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |
| REARDEN LLC and REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation and TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC, a Delaware limited liability company,<br><br>Defendants. | |

| | |
|---|---|
| REARDEN LLC and REARDEN MOVA LLC, | |
| Plaintiffs, | |
| v. | |
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation, and PARAMOUNT HOME ENTERTAINMENT DISTRIBUTION INC. a Delaware corporation, | |
| Defendants. | |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

For each party, the ESI liaisons are as follows:

| Party | Liaison |
|---|---|
| Rearden LLC | Mark Carlson |
| Rearden Mova LLC | Mark Carlson |
| The Walt Disney Company | Victor Gonzales |
| Walt Disney Motion Pictures Group, Inc. | Victor Gonzales |
| Buena Vista Home Entertainment, Inc. | Victor Gonzales |
| Marvel Studios, LLC | Victor Gonzales |
| Mandeville Films, Inc. | Victor Gonzales |
| Twentieth Century Fox Film Corp. | Victor Gonzales |
| Twentieth Century Fox Home Entertainment LLC | Victor Gonzales |
| Paramount Pictures Corp. | Victor Gonzales |

| Paramount Home Entertainment Distribution, Inc. | Victor Gonzales |

**4. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a. The parties will exchange a list of the types of ESI that they believe should be preserved and the custodians, or general job titles or descriptions of custodians (e.g., "HR head," "scientist," and "marketing manager"), for whom they believe ESI should be preserved within 14 days after this stipulated order is entered by the Court. The parties shall add or remove custodians as reasonably necessary;

b. The parties will agree on the number of custodians per party for whom ESI will be preserved within 14 days after exchanging lists of custodians;

c. For identified custodians, ESI created or received prior to August 7, 2017 will be preserved; ESI financial information related to the accused films will be preserved through the date of final judgment; and existing litigation holds will remain in place through the date of final judgment;

d. Among data sources that the parties agree are not reasonably accessible for purposes of this order, the parties agree that the following need not be preserved: voicemail messages, instant messages and chats, information from mobile phones, smart phones, or PDAs that is not duplicative of data stored on servers or other reasonably accessible sources, and dynamic fields of databases or log files that are not stored or retained in the ordinary course of business;

e. In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: (1) materials retained in tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purpose; (2) archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are created for disaster recovery purposes.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6. PRODUCTION FORMATS**

The parties agree as follows:

**a. The form or forms in which ESI should be produced.**

i. ***Format for production of documents – documents existing in electronic format.*** The parties agree that all documents existing in electronic format shall be produced in single page, Group IV tagged image file format ("TIFF"), or equivalent, at a resolution of at least 300 dpi in accordance with the following:

   1. Image files shall be produced along with Concordance/Opticon image load files linking the images to the corresponding document that indicate the beginning and ending of each document. Each image file shall be named according to a unique corresponding Bates number associated with the document. Each image file shall be branded according to the Bates number and the agreed-upon confidentiality designation. Image files shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes.

   3. For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text. Also, if extracted text is not available in the native file, the documents should be processed by an OCR tool prior to production to extract available text so that the record is searchable.

   2. Notwithstanding the foregoing, all documents that the producing party received from Third Parties or reproduces in whole or in part from the production files of a historical litigation should be produced in

the same manner and form, including native files and all metadata, as the producing party received from the producing Third Party or originally produced in the relevant historical litigation.

    ii. ***Format for production of documents – hardcopy or paper documents.*** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format in accordance with the following: In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* hardcopy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly. Metadata for such documents should include custodian information, to the extent such information is reasonably available, and OCR.

    iii. ***Production media and encryption of productions.*** Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data via FTP, unless the volume of the production renders FTP transfer impracticable, in which event the production data may be produced via external hard drives. The FTP transmittal, or physical media label as relevant, should contain the case name and number, producing party, confidentiality designation, production date, and Bates range being produced. The parties are encouraged to encrypt the production data using an industry acceptable encryption method. In such a case, the producing party shall forward the password to decrypt the production data separately from the FTP transfer, CD, DVD, or external drive on which the production data is saved.

    iv. ***Deduplication.*** Data may be deduplicated on a global level, provided that loose e-documents are deduplicated separately from email attachments. Additionally, (1) attachments to e-mails shall not be eliminated from their parent e-mails, and (2) hard-copy documents shall not be eliminated as duplicates of

responsive ESI. The identity of other custodians of de-duplicated items must be listed in the "Custodian" field of the copy of the single record that is produced. Custodians should be identified using the convention "last name_first name." A producing party shall use a uniform description of a particular custodian across productions. Multiple custodians in the "Custodian" field shall be separated by a semicolon.

    v. *Parent and child emails.* The parties shall produce email attachments sequentially after the parent email. With respect to an email chain, the parties are permitted to produce the longest unique chain and the parties do not need to separately produce the lesser-included emails unless those lesser-included emails include unique attachments not included in the longest chain. If a lesser- included email includes a unique attachment, then the lesser-included email must be separately produced with the attachment.

    vi. *Native files.* The parties agree they may produce Microsoft Excel or other spreadsheet files, CSV files (comma separated value files), files containing video and/or audio and any files that are an exception to the TIFF process in native format, along with a TIFF placeholder which will contain language indicating that the document is being produced as a Native File. Native files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. For documents that contain redacted text, the parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image. . Other than as specifically set forth above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may

request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. If a dispute arises with regard to requests for the production of files or file types in native format, the parties will meet and confer in good faith to try to resolve it. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court. Notwithstanding the foregoing, a party may produce a document in a non-native format where production in native format would result in the production of privileged or otherwise non-discoverable information. The parties will meet and confer regarding reasonable requests for production of documents described in the foregoing sentence in a native or other appropriate format.

vii. *Embedded files.* The parties are not required to produce files embedded in other produced documents in the first instance where doing so is burdensome. Where a produced document contains embedded files that a party does not produce, the party shall populate an Embedded Files metadata field indicating the presence of unproduced embedded files. The parties agree to produce embedded files in response to reasonable and specific requests for the production of unproduced embedded files.

viii. *Color Images.* The producing party may produce color documents as black and white documents with the receiving party having the option to obtain color documents from the producing party if the receiving party requests color copies of specific documents. Reasonable requests for color copies of color documents produced in black and white include, but are not limited to, the following: (a) the documents include schematics, diagrams, graphs, charts, etc.; (b) the

documents are unclear or illegible; or (c) the color version of the document serves to differentiate the information presented in the document.

    ix. ***Images with Poor Legibility.*** If a document is originally produced in an illegible or difficult to read form, the producing party shall have the option of responding by producing a native-file version of the document or producing a replacement image of legible quality. If a dispute arises with regard to requests for legible images, the parties will meet and confer in good faith to resolve it.

    x. ***Culling and Filtering.*** Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, general log files (log), DRYS, C++ Program File (c), C++ Builder 6 (cpp), MP3, MP4, WAV, M4a, Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers. The parties agree to meet and confer regarding which file types may be appropriate to cull or filter in an effort to preserve files relevant to this litigation.

### b. Metadata

The parties agree that load files should include, where applicable, the information listed in the Table of Metadata Fields, set forth below. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original.

**Table of Metadata Fields**

| Field Name | Specifications Field Name | Field Type | Description Email | Description (E-Files/Attachments) |
|---|---|---|---|---|
| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
| Bates Begin | Bates number | Text | The Bates number associated with the first page of an email | The Bates number associated with the first page of a document |
| Bates End | Bates number | Text | The Bates number associated with the last page of an email | The Bates number associated with the last page of a document |
| BegAttach | Bates number | Text | Beginning document number of family unit | Beginning document number of family unit |
| End Attach | Bates number | Text | Ending document number of family unit | Ending document number of family unit |
| Attachment Count | Attachment_Count | Text | Number of attachments | |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description Email** | **Description (E-Files/ Attachments)** |
|---|---|---|---|---|
| Confidential Designation | | Text | The confidentiality designation endorsed on the document. If no designation is present, the value will be left blank. | The confidentiality designation endorsed on the document. If no designation is present, the value will be left blank. |
| Redaction | | Text | "Yes" provides an indication as to whether the email contains any text redacted by the party | "Yes" provides an indication as to whether the document contains any text redacted by the party |
| Email Date Received | | Date (MM/DD/YYYY format) – indicate time zone (*e.g.*, PST) | The date the email was received | For email attachments, the date the parent email was received |
| Email Date Sent | | Date (MM/DD/YYYY format) – indicate time zone (*e.g.*, PST) | The date the email was sent | For email attachments, the date the parent email was sent |
| Email Time Received | | Time (HH:MM:SS AM/PM) – indicate time zone (*e.g.,* | The time the email was received | For email attachments, the time the parent email was received |
| Email Time Sent | | Time (HH:MM:SS AM/PM) – indicate time zone (*e.g.,* | The time the email was sent | For email attachments, the time the parent email was sent |

| Field Name | Specifications Field Name | Field Type | Description Email | Description (E-Files/ Attachments) |
|---|---|---|---|---|
| Email From | Sender | Text | The display name of the sender of an email | N/A |
| Email To | Recipient | Text | The display name of the recipient(s) of | N/A |
| Email CC | CC | Text | The display name of the copyee(s) of an email | N/A |
| Email BCC | BCC | Text | The display name of the blind copyee(s) of an email | N/A |
| Email Subject | Subject (e-mail) | Paragraph | The subject line of an email | N/A |
| Author | Author | Text | N/A | If available, the author field in electronic loose documents. |
| Custodians | Custodian | Paragraph | The custodian of an email, any custodians of deduplicated copies | The custodian of a document, any custodians of deduplicated copies. |

| Field Name | Specifications Field Name | Field Type | Description Email | Description (E-Files/ Attachments) |
|---|---|---|---|---|
| Date Created | | Date (MM/DD/YYYY format) – indicate time zone (*e.g.*, PST) | N/A | Date the file was created |
| Date Modified | | Date (MM/DD/YYYY format) – indicate time zone (*e.g.*, PST) | N/A | Date the file was last modified |
| Time Created | | Time (HH:MM:SS AM/PM) – indicate time zone (*e.g.*, PST) | N/A | Time the file was created |
| Time Modified | | Time (HH:MM:SS AM/PM) – indicate time zone (*e.g.*, PST) | N/A | Time the file was last modified |
| File Name | | Paragraph | N/A | Original file name |
| File Type | | Text | Field should indicate email file type (e.g., "Microsoft Outlook Message Mail") | A description of the type of file (e.g., "Microsoft Excel 2000") |
| MD5 HASH | Unique ID | | A calculated value unique to each identical file - the file "fingerprint" –using MD5 Hash | A calculated value unique to each identical file-the file "fingerprint"—using MD5 Hash |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description Email** | **Description (E-Files/ Attachments)** |
|---|---|---|---|---|
| Parent ID | Parent Documents BatesBegin | Text | The Bates number associated with the first page of the Parent email | The Bates number associated with the first page of the Parent document |
| Text Link | | | Full path to the supplied text (to be left blank when no text file is supplied). | Full path to the supplied text (to be left blank when no text file is supplied) |
| Native Link | | | Full path to the supplied native (to be left blank when no Native Format file is supplied) | Full path to the supplied native (to be left blank when no Native Format file is supplied) |

    c.    If particular documents warrant a different format from that described in subparts a-b above, then the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the search ability of documents as part of the document production process.

**7.    PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. The parties will exchange lists prioritizing initial ESI production after the disclosures and agreements required in Section 4, above. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

   a. Protection against waiver of privilege or other protection from discovery shall be governed by the Stipulated Protective Order. The parties do not waive the right to conduct a full and comprehensive review for privilege and other protections.

   b. Communications between or among a party's counsel-of-record or between or among a party and its counsel-of-record that post-date May 1, 2017, need not be placed on a privilege log.

   c. If a document is produced with redactions, the redaction stamp shall include redaction language specifying the reason for redaction (*e.g.,* "AC/WP," "Privacy," "Non-responsive," etc.), and shall also be separately logged. If a party redacts a document, the accompanying metadata should so indicate. If an attachment to an email is withheld in its entirety, a slip-sheet placeholder for the withheld family member shall include language specifying the reason (*e.g.,* "AC/WP," "Privacy," "Non-responsive," etc.) and the accompanying metadata should so indicate, and shall also be separately logged .

**9. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: January 4, 2019                HAGENS BERMAN SOBOL SHAPIRO LLP

                                       By:  ___*/s/ Mark Carlson*[1]_____
                                              Mark Carlson
                                       *Attorneys for Plaintiffs*

---

[1] Signed electronically by Erin J. Cox with the concurrence of Mark S. Carlson, pursuant to L.R. 5-1(*i*)(3).

| | | |
|---|---|---|
| 1 | DATED: January 4, 2019 | MUNGER, TOLLES & OLSON LLP |
| 2 | | By: */s/ Erin J. Cox* |
| 3 | | Erin J. Cox |
| | | *Attorneys for Studio Defendants* |

Pursuant to the foregoing stipulation, **IT IS SO ORDERED**.

DATED:  January 4 , 2019    _____
                            The Honorable Jon S. Tigar
                            United States District Judge