**VIA CM/ECF**

April 11, 2019

The Honorable Jon S. Tigar
United States District Court
 for the Northern District of California
Courtroom 9 – 19th Floor
450 Golden Gate Avenue
San Francisco, California  94102

Re: *Rearden LLC et al. v. The Walt Disney Company et al.*, No. 17-CV-04006-JST
*Rearden LLC et al. v. Twentieth Century Fox Film Corporation et al.*, No. 17-CV-04191-JST

Dear Judge Tigar:

      The parties respectfully submit this jointly prepared summary of their meet-and-confer on Plaintiffs' requested discovery to oppose the causal-nexus summary judgment motion.  *See* Orders at Dkt. Nos. 128, 141 (Case No. 17-CV-04006-JST); and 94, 107 (Case No. 17-CV-04191-JST).  The parties this date are filing separate letter briefs regarding the points of disagreement identified below.

Respectfully submitted,


HAGENS BERMAN SOBOL SHAPIRO LLP

By:    */s/ Mark S. Carlson*
        Mark S. Carlson[1]

*Attorneys for Plaintiffs*


MUNGER, TOLLES & OLSON LLP

By:    */s/ Kelly M. Klaus*
        Kelly M. Klaus

*Attorneys for Defendants*

---

[1] Electronically signed by Kelly M. Klaus with consent of Mark S. Carlson.  L.R. 5-1(*i*)(3).

41715272.1

*Meet-and-Confer Discussions*

On February 28, 2019, Defendants filed their motion for summary judgment on the causal-nexus issue.  Dkt. No. 139 (Case No. 17-CV-04006-JST); and 105 (Case No. 17-CV-04191-JST).

On March 14, 2019, Plaintiffs sent Defendants a letter identifying their requested discovery for opposing the motion.

On March 26 and March 29, 2019, counsel met-and-conferred by telephone on Plaintiffs' requests and Defendants' responses.

*Plaintiffs' Requests and Defendants' Responses*

Plaintiffs and Defendants agreed wholly or partially on certain requests and disagreed as to others.  The following sections include the text of Plaintiffs' requests and below each, where the parties are in agreement or disagreement.  To the extent the parties disagree in Sections A and B, the parties address their respective positions in their separately filed letter briefs.

A. <u>Areas of Agreement or Partial Agreement</u>

   1. *Promotional materials for the movies in issue*.  Rearden requested: "All documents comprising promotional materials for the Accused Films that refer or relate to the Contour Characters or the Contour Technology, including but not limited to trailers, television advertising, behind the scenes segments, bonus materials and featurettes, and scenes or compilations of scenes posted on on-line platforms."

      a. Defendants agreed to produce trailers, video advertisements, and written advertising copy, to the extent those materials are maintained in reasonably accessible centralized repositories and can be produced in a format that does not involve an expense that is disproportionate to the needs of the case.  The Fox Defendants' trailers and TV ads are stored in master format with a third-party vendor.  The Fox Defendants have asked that Plaintiffs either pay for the cost of digitizing and producing copies of the same (estimated at $10,000) or inspect the masters at the vendor's facility and identify the particular trailers and TV ads, if any, they would like digitized and copied.

      b. Plaintiffs agreed to accept trailers, video advertisements, and written advertising copy for the movies at issue, distributed in any medium as sufficient compliance with this discovery request.  Plaintiffs contend that the cost to the Fox Defendants of producing these materials is not disproportionate to the needs of the case.  Plaintiffs further disagreed that Defendants' duty to respond to discovery requests is limited to "materials [that] are maintained in … centralized repositories."  Plaintiffs further disagree that a proportionality objection may be asserted generically and self-administered by Defendants; rather, Plaintiffs believe that any

contention that a particular production involves "an expense that is disproportionate to the needs of the case" must be asserted specifically.

2. *Any decision to use MOVA Contour Technology in connection with the movies in issue.* Rearden requested: "All documents that refer or relate to the decision to use the Contour Technology in the Accused Films"; and "[a]ll documents that refer or relate to evaluation or consideration of the use or merits of the Contour Technology for the Accused Films, including but not limited to any comparisons of the Contour Technology to alternative facial motion capture technologies."

    a. Defendants agreed (i) to do key-word searches of the emails of certain custodians for each movie in issue who would be likely to have responsive documents, if any, regarding these subjects; and (ii) to produce non-privileged results, if any, containing "MOVA" or "Contour."

    b. In the parties' conference, Defendants agreed to perform key-word searches of the emails of only a single self-selected custodian for each film. Plaintiffs disagreed that searching the emails of only a single custodian for each film was sufficient. Plaintiffs contend that the search should be extended to documents in the possession of all persons who are reasonably likely to have discoverable information, which includes (i) the persons identified in Defendants' motion papers as having been involved with selecting DD3 for motion capture or supervising DD3's performance under its contracts with Defendants' production subsidiaries, (ii) the persons associated with Defendants who were signatories to the contracts with DD3, and (iii) the persons who were identified in the contracts with DD3 as having decision-making authority with respect to DD3's performance under its contracts (i.e.., "Studio Representatives," "Picture Representatives" and "Fox Executives"). And plaintiffs disagreed that the production should be limited to emails; Plaintiffs contend that the searches should be run across all reasonably accessible document storage locations (e.g., file servers, Exchange servers) that are reasonably likely to contain responsive documents. Plaintiffs would accept the following key word searches, run in a standard manner (e.g., across metadata as well as text). as sufficient, at this time, to move discovery forward:[2]

        i. "MOVA."

        ii. "Contour."

        iii. "facial" or "face" within five words of "performance" or "motion" or "capture" or "mocap" or "dots" or "points" or "VFX."

---

[2] The particular search syntax suggested here is illustrative only, as Plaintiffs do not know what search engine Defendants intend to use to conduct these searches.

      iv. "DD3" and "motion" or "capture" or "mocap."

      v. "face" or "facial" within ten words of the name of each of the characters for which Contour motion capture was used (including any nicknames or code names used by Defendants or DD3).

      vi. "face" or "facial" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

      vii. "Medusa" or "Disney Zurich" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

      viii. "Dimensional Imaging" or "DI4D" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

      ix. "VFX" within five words of "facial," and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

      x. "facial" or "face" and "Direct Drive" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

3. *Prosthetics as an alternative to facial motion capture.* Rearden requested: "All documents that refer or relate to evaluation or consideration of the use or merits of prosthetics as an alternative to facial motion capture technologies (including but not limited to the Contour Technology) for the Contour Characters"; and "[a]ll documents that refer or relate to any evaluation or consideration of the rendered face of the Beast (La Bête) in "*Beauty and the Beast*" ("*La Belle et la Bête*") released in 2014, starring Vincent Cassel and Léa Seydoux, and directed by Christophe Gans." Rearden stated that *La Belle et la Bete*, which was not produced by any Defendant, used prosthetics, and not facial motion capture, for the face of the Beast character. Rearden stated that, if internal documents for the *Beauty and the Beast* movie at issue here discussed this use of prosthetics and a comparison to facial motion capture technology, those documents might be relevant.

    a. Defendants agreed to add to the email search described in 2.a relating to *Beauty and the Beast* the term "prosthetic"; and to produce non-privileged documents, if any, containing "prosthetic" and relating to *Beauty and the Beast*.

    b. Plaintiffs disagreed that the production should be limited to emails.  Plaintiffs would accept the following key word searches, if they are run on the document sources and persons described in 2(b) above:

        i. "prosthetic" or "mask," or "facial" within 5 words of "practical," and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

        ii. "La Belle et la Bete" That

        iii. "Beauty and the Beast" within five words of "2014," or within the same document as "Cassel" or "Gans" or "Seydoux."

        iv. "prosthetic" or "mask," or "facial" within five words of "practical," and "La Belle et la Bete" or "La Belle et la Bête"or "Beauty and the Beast" within five words of "2014," or within the same document as "Cassel" or "Gans" or "Seydoux."

If the searches set forth in (ii) and (iii) above yield more than 1,000 hits, Plaintiffs will accept a report showing the number of hits.  The parties will then meet and confer regarding production of the documents captured by the list of hits.

4. *Impact or effect of Contour technology on movies in suit*.  Rearden requested:  "All documents that refer or relate to the impact or effect of the Contour Technology on the quality of the rendered performances of the Contour Characters"; and "[a]ll documents that refer or relate to the importance of the Contour Characters in the Accused Films or to the success of the Accused Films."

    a. Defendants agreed (i) to do key-word searches of the emails of certain custodians for each movie in issue regarding these subjects; and (ii) to produce non-privileged results, if any, containing "MOVA," "Contour," or the name of the relevant CG character ("Beast," "Thanos," "Colossus," "Caesar," and "Thing"), subject to the following caveat, provided that if there are a substantial number of hits that contain only the character name, but not "MOVA" or "Contour," Defendants will provide Plaintiffs with the number of hits but will not review or produce those documents.

    b. Plaintiffs disagreed that the production should be limited to emails.  And plaintiffs disagreed with the approach of not producing "documents that refer or relate to the importance of the Contour Characters in the Accused Films or to the success of the Accused Films" where the responsive documents do not also include the words "MOVA" or "Contour."  Plaintiffs would accept, in addition to the key word searches identified in 2(c) above, the following key word searches, if they are run on the document sources and persons described in 2(b) above:

      i. "fluor!" or "flor" or "phosphor!" and "DD3"

      ii. "fluor!" or "flor" or "phosphor!" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

      iii. "LitCam!"

      iv. "facial" or "face" and "tracking mesh" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

In addition, Plaintiffs accept Defendants' proposal regarding searches on the names of the relevant CG characters, provided that the search is extended to the document sources and persons described in 2(b) above. In the event that Defendants produce a list of hits rather than documents, the parties will then meet and confer regarding production of the documents captured by the list of hits.

5. *Industry praise or awards for Contour.* Rearden requested: "All documents that refer or relate to industry praise or awards garnered by the Contour Technology, including the Award for Science and Technology from the Academy of Motion Picture Arts and Sciences for the Contour Technology (referred to in the award as the "MOVA Facial Performance Capture system")."

    a. Defendants agreed to search for and produce non-privileged internal documents, if any, that consolidate industry accolades or awards relating to visual effects that are maintained in reasonably accessible centralized repositories.

    b. Plaintiffs disagreed with Defendants that their duty to search for documents is limited to those "that are maintained in … centralized repositories." In addition, Plaintiffs have not requested and are not interested in production of documents in response to this request that do not reference the Contour Technology. Plaintiffs would accept production of all non-privileged internal documents that consolidate industry accolades or awards and that reference the Contour Technology.

6. *Movie reviews.* Rearden requested: "All reviews of the Accused Films that reference any of the Contour Characters or the Contour Technology."

    a. Defendants agreed to produce non-privileged internal documents, if any, that consolidate reviews (or excerpts thereof) for the movies in issue that are maintained in reasonably accessible centralized repositories.

    b. Plaintiffs disagreed with Defendants that their duty to search for documents is limited to those "that are maintained in … centralized repositories." Plaintiffs

would accept production of all non-privileged internal documents that consolidate reviews or excerpts thereof for the movies in issue.

7. *Surveys and reports relating to consumer awareness or recall of the CG characters in issue*. Rearden requested: "All surveys, research, reports, analyses and other materials that refer or relate to consumer awareness or recall of the Contour Characters."

    a. Defendants agreed to produce non-privileged analyses and studies, if any, of marketing effectiveness for the movies in issue that are maintained in reasonably accessible centralized repositories.

    b. Plaintiffs disagreed with Defendants that their duty to search for documents is limited to those "that are maintained in … centralized repositories." Plaintiffs further disagree with Defendants' limitation of their search to post-production documents looking back on marketing effectiveness.

8. *Consumer demand for movies generally*. Rearden requested: "All surveys, research, reports, analyses and other documents that refer or relate to the factors that motivate or influence consumers to view a particular motion picture, including but not limited to … [a]ll surveys, research, reports, analyses and other documents that refer or relate to the impact that the use of particular motion capture solutions may have on the consumer response to characters generated using such solutions," and "[a]ll surveys, research, reports, analyses and other documents that refer or relate to the factors that motivate or influence consumers to purchase a ticket or otherwise pay to see a particular motion picture in theatrical release or any non-theatrical release, including airplanes, hotels, streaming video, DVD and Blu-ray."

    a. Defendants agreed to produce non-privileged studies or analyses, if any, regarding why consumers see movies that are reasonably accessible in centralized internal repositories.

    b. Plaintiffs disagreed with Defendants that their duty to search for documents is limited to those "that are maintained in …  centralized repositories." Plaintiffs would accept production of all non-privileged surveys, research, reports, analyses and other documents regarding why consumers see movies in any channel of distribution.

9. *Documents relied upon by declarants*. Rearden requested: "From each person who submitted a declaration in support of defendants' summary judgment motions, all documents reviewed, considered or relied upon for each averment of the witness's respective declaration. In addition, from Mimi Steele or DD3, the demo reel of DD3's Direct Drive technology referred to in paragraph three of her declaration."
    a. Defendants agreed to produce non-privileged documents, if any, that declarants who are within Defendants' control relied on in making the statements in their declarations. Defendants have not confirmed whether Mimi Steele has the Direct Drive demo reel. If she does, Defendants will produce it. Defendants will not oppose

       Rearden requesting from any declarants not within Defendants' control documents those declarants relied on in making the statements in their declarations.

    b. Plaintiffs agree.

10. *Residual documents that mention Contour.* Rearden requested: "To the extent not responsive to the requests above, all documents in which the Contour Technology is referenced."
    a. Defendants' position is that the searches they have agreed to that include "MOVA" or "Contour" as key words are sufficient.

    b. Plaintiffs agree, provided that their positions set forth herein are adopted by Defendants or by the Court.

B.    <u>Areas of Broader Disagreement</u>: In addition to points of disagreement noted above, the parties do not agree regarding the following requests. The parties will address these requests in more detail in their separate letter briefs.

1. *Inclusion of "Thanos" character in credits of Avengers: Age of Ultron.* Rearden requested: "All documents that refer or relate to the decision to include the Thanos sequence in *Avengers: Age of Ultron*, including but not limited to the reasons why the sequence was included in the film and the reasons why it was placed within the credits section"; and "[a]ll documents that refer or relate to the importance of Thanos, as the character was presented in *Avengers: Age of Ultron*, to subsequent Marvel Cinematic Universe motion pictures produced or distributed by Disney, or to the promotion of Thanos in connection with *Avengers: Age of Ultron*."

    a. Defendants' position is that searches they have agreed to are sufficient to capture relevant documents, if any, addressing the use of MOVA in connection with Thanos's face.

    b. Plaintiffs believe that the request properly seeks documents addressing reasons for including the Thanos sequence and reasons for including that sequence in the closing credits to rebut arguments Defendants made in their summary judgment briefs.

2. *Detailed production budgets and profit information.* Rearden requested: "Detailed production budgets for each of the Accused Films"; and "[d]ocuments sufficient to show the profit generated by each Accused Film, separately, including but not limited to:" (a) "[a]ctual revenue and costs categorized by media and broken out separately for domestic (US) and foreign as of December 31, 2018"; and (b) "[a]ctual tax credit receipts and payments from US and foreign governments or public agencies that provide economic incentives to film productions for locating production and/or post production activity in a

particular jurisdiction."

    a. Defendants agreed to produce high-level revenue, expense, overhead, and tax numbers for the Track 2 movies (*Beauty and the Beast* and *Deadpool*), consistent with what Defendants have already produced for the Track 1 movies. The documents relied upon by Defendants' declarants may also contain additional detail, including additional detail concerning the amounts paid to DD3. Defendants will not produce more detailed budgets or profit information.

    b. Plaintiffs believe that the request properly seeks information that is necessary to respond to arguments Defendants made in their summary judgment briefs.

3. *Depositions*. Rearden requested depositions of: Digital Domain 3.0, Inc.; Bill Condon; Steve Gaub; David Feinsilber; Jonathan Rothbart; Vincent Cirelli; Hao Li; Chip Pictures, Inc.; Fox US Productions 40, Inc.; Twentieth Century Fox Film Corporation; The WDPP affiliate referred to by Mimi Steele in her declaration ¶ 2; Walt Disney Pictures; Marvel Studios, LLC; ABC, Inc.; Luma Pictures; and Greg LaSalle. Rearden believes none of these depositions should count against the presumptive 10 depositions per side under Rule 30(a)(2)(A)(i).

    a. Defendants' Position.

        i. Defendants do not oppose depositions of the individuals who submitted declarations in connection with Defendants' motion and who are within Defendants' control: Joe Conmy, Danielle Costa, Todd Isroelit, Mike Mulvihill, and Mimi Steele. Defendants do not agree that all such depositions are necessary.

        ii. Defendants do not oppose the deposition of their expert witness Hao Li.

        iii. Defendants do not oppose depositions of declarants not within Defendants' control: Vincent Cirelli, Greg LaSalle, Patrick Ledda, Erik Nash, and Jonathan Rothbart.

        iv. Defendants oppose the additional depositions unless Rearden can demonstrate a need for a particular deposition based on documents produced in discovery or deposition testimony.

        v. Defendants believe the depositions Plaintiffs take to oppose the summary judgment motion should count for purposes of 30(a)(2)(A)(i). If at some future point Plaintiffs want to exceed 10 depositions, the parties can meet and confer about whether the number of depositions is excessive in light of depositions Plaintiffs already have taken, including any depositions taken pursuant to these requests.

      c. Plaintiffs' Position.

           i. Plaintiffs believe that all of the proposed deponents to which Defendants object – Bill Condon; Steve Gaub; David Feinsilber; Chip Pictures, Inc.; Fox US Productions 40, Inc.; Twentieth Century Fox Film Corporation; The WDPP affiliate referred to by Mimi Steele in her declaration ¶ 2; Walt Disney Pictures; Marvel Studios, LLC; ABC, Inc.; and Luma Pictures – are likely to possess information relevant to the issues raised in Defendants' causal nexus motion, and that Plaintiffs' entitlement to this discovery should be resolved at this time.

          ii. Plaintiffs believe that depositions that they are required to take for purposes of opposing Defendants' early motion for summary judgment—before general liability discovery and limited to questions relevant to causal nexus—should not count against the deposition limits imposed by the Court's discovery order or under Fed. R. Civ. P. 30(a)(2)(A)(i) for purposes of the remaining issues in the case that could not be addressed in the proposed causal nexus depositions.

4. *Requests for Admission.*
    a. Plaintiffs believe that they should be permitted to serve requests for admission directed to authenticity and admissibility of documents produced by Defendants.
    b. Defendants believe the parties should meet-and-confer first to determine whether there are any areas of disputed authenticity and admissibility before Plaintiffs serve requests for admission.