

Mark S. Carlson
Attorney
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WA  98101
www.hbsslaw.com
**Direct (206) 268-9346**
**Direct Fax (206) 623-0594**
**markc@hbsslaw.com**

April 11, 2019

**VIA CM/ECF**

The Honorable Jon S. Tigar
United States District Court
for the Northern District of California
Courtroom 9 – 19th Floor
450 Golden Gate Avenue
San Francisco, California  94102

Re:     *Rearden LLC et al. v. The Walt Disney Company et al.*, No. 17-CV-04006;
*Rearden LLC et al. v. Twentieth Century Fox Film Corporation et al.*, No. 17-CV-04191

Dear Judge Tigar:

Plaintiffs Rearden LLC and Rearden Mova LLC submit the attached (1) letter brief in support of proposed discovery and (2) proposed discovery and briefing order pursuant to this Court's order granting Defendants leave to file a causal nexus summary judgment motion (Dkt. 127, No. 17-cv-04006; Dkt. 93, No. 17-cv-04191).

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Mark Carlson*
Mark Carlson

1.  **Defendants' limitation of document production to "materials [that] are maintained in … centralized repositories."**

In several instances, Defendants limit their agreement to search for responsive documents to those that are "maintained in … centralized repositories."  But the scope of discovery should be governed by Fed. R. Civ. P. 26(b), which contains no such limitation.  Rather, Fed. R. Civ. P. 34(a)(1) provides that a party may request copies of documents "in the responding party's possession, custody, or control."  And while Rule 26(b) limits discovery to matters that are "proportional to the needs of the case," the burden is on the producing party to make a showing that the scope of the document request is not proportional.  Defendants offered no such showing in the Court-ordered discovery conference.  Accordingly, Rearden requests that the Court order Defendants to search repositories of documents that are reasonably likely to contain discoverable materials, regardless of whether such repositories may be "centralized."

2.  **Defendants' proportionality limitation.**

In several instances, Defendants agreed to produce "trailers, video advertisements, and written advertising copy, to the extent those materials … can be produced in a format that does not involve an expense that is disproportionate to the needs of the case."  Rearden does not disagree that discovery must be proportionate to the needs of the case as defined by Rule 26(b).  But in the parties' discovery conference, defendants asserted that while Disney had no formatting issues, the responsive Fox materials would have to be re-formatted for production at the cost of $10,000, and that Rearden must pay that expense.  Rearden disagrees that a $10,000 expense is not proportional here.  Furthermore, Rearden will accept Fox's files in native format, and perform any required re-formatting itself.

Rule 26(b) provides that proportionality is considered in view of the importance of the issues, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the expense outweighs its likely benefit.  The causal nexus issue is the foundation of defendants' summary judgment motion, so the issue is both important and potentially dispositive.  While the total amount in controversy cannot be known (because Rearden has not had full discovery on damages), the total will certainly exceed seven figures, dwarfing Fox's $10,000 expense for re-formatting trailers.  Fox has access to the trailers, and Rearden has no access to them.  And in terms of the likely benefit, film trailers are a primary means of marketing films to audiences.  To the extent the trailers feature CG characters animated using Contour technology, they certainly support the conclusion that Contour had at least *some* impact on film goers.

3.  **Defendants' limitation of document production to emails.**

In several instances, Defendants limit their agreement to produce responsive documents to emails.  But Fed. R. Civ. P. 34(a)(1)(A) is not so limited.  Rearden requests that the Court order Defendants to produce responsive materials within the scope of Rule 34(a)(1)(A).

**4.   Defendants' proposed search terms.**

In several instances, Defendants propose using "Mova" and "Contour" as search terms sufficient to identify documents related to the Contour technology.  But Rearden reasonably believes that Defendants or their privies may have created at least email that refers to the Contour technology but does not use the terms "Mova" or "Contour," or refers to competing facial motion capture solutions that may have been considered but rejected for the films at issue.  Rearden proposed a series of keyword searches at section 2(b) of the parties' joint letter regarding their meet and confer efforts, filed concurrently herewith A and incorporated herein by reference.  The relevance of most of these search terms is readily apparent, directed as they are to various ways of capturing references to facial motion capture and the use of facial motion capture in the accused films.  Several of these search terms – such as those directed to "Medusa" and "Disney Zurich" (another way of referring to Medusa), and "Dimensional Imaging" or "DI4D" – are directed to competing facial motion capture technology that may have been considered for the accused films but rejected due to Contour's superiority in rendering realistic facial performances.  "VFX" is the film industry's convention for "Visual Effects."  And "Direct Drive" is technology DD3 allegedly used to retarget Contour output to CG characters' faces.[1]

In addition, Rearden served two requests that seek comparisons between using Contour/CG and the alternative of filming an actor with practical facial prosthetics and makeup with or without CG, an approach that apparently was used in a previous French version of *Beauty and the Beast* called *La Belle et la Bête*.  Defendants proposed adding "prosthetic" to the "Mova" and "Contour" search terms.  Rearden believes this will be insufficient to identify responsive documents, and proposed additional search terms at section 3(b) of the joint letter.

The additional search terms and phrases proposed by Rearden are focused on relevant content and do not impose an undue burden on Defendants.  While they are likely to result in the capture of a larger universe of documents than will Defendants' proposed search words, this is a function of the fact that Defendants' summary judgment motion is directed to a highly fact and evidence-dependent issue.  They decided to file an early summary adjudication motion on this ground, and so can hardly be heard to complain that a search of proper breadth imposes an undue burden.  Accordingly, Rearden requests that the Court order Defendants to search for the keywords and phrases proposed by Rearden in the joint discovery letter, as modified herein.

**5.   Defendants' limitation of document search to those of a single custodian.**

In the Court-ordered discovery conference, Defendants agreed to search for responsive documents in the possession of only a single designated custodian per accused film.  But Fed. R. Civ. P. 34(a) provides for no such limitation.  Rearden requests that the Court order Defendants to search the files of all custodians who are reasonably likely to possess responsive materials.

---

[1] Rearden originally proposed "facial" or "face" and "Direct Drive," but upon further reflection believes that the search should be broadened to simply "Direct Drive" because on the accused films that solution would have necessarily been used with the Contour facial capture.  Rearden's current position is reflected in its proposed order.

6. **Defendants' limitation of document search to those "that refer or relate to the importance of the Contour Characters in the Accused Films or to the success of the Accused Films" that also include the words "MOVA" or "Contour."**

Defendants' summary judgment brief argues that Contour's contribution to the relevant films' success is *de minimis* based on the CG character's screen time in relation to the films' total running time.  But this is not the only measure of a character's impact on film revenue. Rearden has requested documents relating to the importance of the CG characters in the relevant films or to the films' success. Defendants propose to limit their search to responsive documents that also include the "Mova" or "Contour" terms.  Rearden proposes a broader set of search terms, as set forth at section 4(b) of the joint discovery letter.  Limiting the search as proposed by Defendants will foreclose documents addressing the significance of the relevant CG characters to the success of the accused films, which is pertinent to Defendants' causal nexus argument.  If the character is important to the success of the film, then it follows that technology used to animate the character is also important.  Accordingly, Rearden requests that the Court order Defendants to search for responsive documents using the keywords and phrases proposed by Rearden at section 4(b) of the joint discovery letter.

7. **Defendants' limitation of document search to post-production documents looking back on marketing effectiveness.**

Rearden requested surveys, analyses, studies and reports regarding factors that influence audiences to see films distributed in any medium.  Defendants proposed to limit their search to marketing documents that reviewed "what worked and what didn't work" for the relevant films. This proposal is too narrow, as it is limited to the accused films and would capture only post-production documents.  It is reasonable to believe that defendants may have done studies or research about factors that influence audiences to see films independent of any particular film. Accordingly, Rearden requests that the Court order Defendants to search for responsive documents whether or not they relate to any particular film.

8. **Inclusion of "Thanos" character in credits of *Avengers: Age of Ultron*.**

Defendants' summary judgment brief implies that Contour's contribution to the animation of the Thanos character is insignificant because he appears in only one scene in the closing credits.  Rearden has requested documents relating to the decision to place the Thanos scene in the closing credits of the film.  Defendants proposed that their search for documents with the "Mova" or "Contour" terms and the Thanos character is sufficient.  This is insufficient because defendants may have considered that including the Thanos scene at the end of the credits would be more impactful than working it into the pre-credits film, and therefore its placement in the credits correlates to greater, not diminished, importance.  Thanos is a Marvel character that has his own fan base, who would be drawn to the see his character in the film.  Accordingly, Rearden requests that the Court order Defendants to search for responsive documents regardless of whether they also include the "Mova" or "Contour" search terms.

**9. Detailed production budgets and profit information.**

Defendants argue in their summary judgment brief that the line item expense for Contour was insignificant in comparison to the line item for all VFX or the total budget for the relevant films, as proof that there is no causal nexus between use of Contour and the relevant films' revenue.  This argument is a fallacy, because if any particular line item is isolated, it is insignificant in comparison to a group of line items or the total budget for the film, so under Defendants' argument, no expense matters to a film's success.  Rearden believes that the line item for Contour is comparable to other line items that Defendants will have to concede *do* affect a film's success.  Accordingly, Rearden requests that the Court order Defendants to produce detailed production budgets and profit information for each of the relevant films.

**10. Depositions**

**a.  Number of Depositions**

Defendants chose to submit eleven declarations from percipient witnesses in support of their summary judgment motion, and chose the declarants.  They propose that Rearden's deposition discovery be limited to the 11 declarants selected by defendants, and they offer to not oppose third party depositions of DD3 and LaSalle.  In other words, they propose 13 depositions limited to causal nexus discovery, *all of which would count against the 20 deposition limit imposed by the Court's discovery order (ECF No. 113 at 5 (Disney)).*  If Rearden prevails on summary judgment, it will have only seven depositions remaining to complete discovery on all other liability issues in the case, and DD3 and LaSalle could not be re-deposed on other issues without leave of Court.

Defendants chose to seek a pre-discovery summary judgment motion on an issue of fact, *i.e.*, causation, and to allow limited discovery on the causal nexus between infringement and revenue.  It would be profoundly unfair to Rearden if, having defeated Defendants' motion, it is stripped of more than 2/3 of the depositions allowed by the Court, and stuck with 11 of those depositions of deponents that were hand-selected by defendants.

**b.  Deponents**

Rearden accepts Defendants' offer of depositions of declarants Rothbart, Cirelli, and Li for deposition.  In addition, Rearden requests depositions of the following:

**Production entities responsible for VFX:**  Chip Pictures, Inc. and/or the Disney affiliate referred to in the Mimi Steele declaration (*Beauty and the Beast*); Fox US Productions 40, Inc. (*Deadpool*), Luma Pictures and Marvel Studios (*Guardians of the Galaxy, Avengers: Age of Ultron*), Walt Disney Pictures (*Beauty, Guardians,* and *Avengers*), DD3 (all relevant films. These entities were close to the decision to choose Contour, or directly supervised the entities that chose to use Contour.

**Production entity employees responsible for VFX:**  Steve Gaub and David Feinsilber (*Beauty and the Beast*), and Greg LaSalle (all relevant films).  These individuals would have been most directly involved in the decision to choose Contour and its use.

**Persons who lauded Contour's contribution to the accused films:**  Bill Condon (director of *Beauty and the Beast*), who specifically praised Contour during a promotional event for *Beauty and the Beast*.  The original and first amended complaints all cite the laudatory comments of Mr. Condon when discussing Contour's contribution to the success of *Beauty and the Beast*.  When Defendants opposed Condon's deposition, Rearden asked defendants whether they would waive hearsay objections to Condon's public statements, but they did not respond.  At minimum, Condon must be deposed to permit introduction of his admissions that the film could not have been made but for Contour technology, and to obtain his testimony concerning the reason why he praised Contour.

**Controlling entities:**  ABC, Inc. (*Beauty, Guardians, Avengers*), Twentieth Century Fox Film Corporation (*Deadpool, Fantastic Four, Night at the Museum.*  ABC, Inc. and Twentieth Century Fox controlled all of the Disney and Fox entities who acted within the Disney and Fox umbrellas.