**VIA CM/ECF**

May 6, 2019

The Honorable Sallie Kim
United States District Court
for the Northern District of California
Courtroom C – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *Rearden LLC et al. v. The Walt Disney Company et al.*, No. 17-CV-04006-JST
      *Rearden LLC et al. v. Twentieth Century Fox Film Corp., et al.*, No. 17-CV-04191-JST

Dear Judge Kim:

      In accordance with the Court's Orders, the parties respectfully submit this joint-prepared letter addressing "the manner in which they plan to proceed to identify holders of documents and the date and time of [a] monthly discovery conference call," and the requests for documents that plaintiffs say they need to oppose the causal-nexus summary judgment motion. *See* Orders at ECF Nos. 147, 148 (Case No. 17-CV-04006-JST) and 114, 115 (Case No. 17-CV-04191-JST).

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Mark S. Carlson*
      Mark S. Carlson[1]

*Attorneys for Plaintiffs*


MUNGER, TOLLES & OLSON LLP

By:   */s/ Kelly M. Klaus*
      Kelly M. Klaus

*Attorneys for Defendants*

---

[1] Electronically signed by Mark S. Carlson with the consent of Kelly M. Klaus. L.R. 5-1(*i*)(3).

A.  **Identification of Custodians**

Defendants' Position:

For purposes of discovery relating to Defendants' causal-nexus summary judgment motion, Defendants have agreed to search the ESI (emails and hard drives) of 14 named custodians who Plaintiffs believe would be the persons likely to have documents, if any, that would be responsive to Plaintiffs' requests.  The identified custodians include individuals Plaintiffs proposed as custodians, individuals who submitted declarations in support of Defendants' motion, and individuals involved in the marketing for the movies at issue, including individuals employed by non-party affiliates of the named defendants in the Disney case and individuals employed by named defendant Buena Vista Home Entertainment.  Further, Defendants have told Plaintiffs they will not oppose Plaintiffs' service of subpoenas on an additional two individuals whose files are not within Defendants' control but who would be likely to have documents, if any, responsive to Plaintiffs' requests.

For the ESI of each of the 14 identified custodians, Defendants will run hit counts on the search strings that Plaintiffs have proposed below.  If any hit counts return numbers that Defendants believe would entail a disproportionate burden to review, Defendants will confer with Plaintiffs about how to proceed.  (Defendants note that several of the search strings Plaintiffs propose below have been modified from Plaintiffs' proposal memorialized in the April 11 joint letter to the Court.  Defendants will proceed to run hit counts on this most recent set of proposed search strings.)

In addition to searching for and producing responsive documents from 14 identified custodians (and consenting to the subpoena of two additional third parties), Defendants have agreed, in accordance with Rules 26 and 34, to conduct a search of reasonable diligence of reasonably accessible internal sources not tied to particular custodians, for documents responsive to Plaintiffs' requests for which Plaintiffs have not proposed search strings, *i.e.*, promotional materials for the movies at issue, movie reviews, and marketing surveys and strategy documents.

While Defendants believe that much of Plaintiffs' requested discovery is not relevant to the pending causal-nexus summary judgment motion—or, more broadly, to the issues in this case—Defendants have nevertheless agreed to the foregoing in an effort to avoid unnecessary discovery disputes and move forward with summary judgment briefing.  To that end, Defendants respectfully submit that the Court order the following procedure:  Defendants conduct the searches and make the productions as set forth herein (and Plaintiffs obtain documents pursuant to the subpoenas, should they serve them) within the next 45 days.  Plaintiffs should review the documents and identify proposed deponents 30 days after that.  Defendants believe that Plaintiffs' proposal below to conduct Rule 30(b)(6) depositions of seven named defendants "for the purpose of identifying document custodians and causal nexus deponents" is unnecessary, inefficient, and unduly burdensome.

Plaintiffs' Position:

      Defendants misrepresent the history regarding identification of custodians for ESI purposes. Defendants initially identified only two custodians for three of the Disney defendants, neither of whom was employed by a defendant at the relevant time. They proposed no custodian for defendants Buena Vista or Mandeville. Then, rather than performing their own investigation to identify custodians, defendants threw the burden of identifying *their* custodians on Rearden. Rearden reviewed documents produced by *DD3* (defendants have produced no documents in response to Rearden's requests for production, which were due in October, 2018) and guessed who might have been an appropriate custodian for defendants to have identified, only some of whom defendants have subsequently agreed to include. But Rearden has no way of knowing who at the studios would or would not be proper custodians unless their names appeared on a document produced by DD3. It is *defendants'* burden to make a diligent inquiry to identify persons who are likely to possess relevant documents, and they have refused to do so.

      To resolve this problem, the Court suggested at the April 29 hearing that Rearden should take Rule 30(b)(6) depositions of defendants to identify appropriate custodians and deponents. Rearden's counsel agreed with the Court, and now proposes the following procedure. Each named defendant shall submit to a Rule 30(b)(6) deposition for the purpose of identifying document custodians and causal nexus deponents. Each deposition is limited to two hours of examination, and will not count against any deposition limits otherwise applicable. Permissible subject matters for examination include the following:

1. The corporate organizations and relationships to the extent that they relate to the films at issue in defendants' motion for summary judgment. Prior to the depositions, defendants will produce one or more organization charts that illustrate the relationships between the relevant corporate entities.

2. Defendants' email, document and media storage, backup and archiving systems for the documents responsive to plaintiffs' document requests.

3. The identities of persons who are reasonably likely to have documents that are responsive to plaintiffs' document requests.

4. The identities of persons who are reasonably likely to have knowledge of matters relevant to the subject matters of plaintiffs' document requests, defendants' motions for summary judgment, and plaintiffs' arguments in response, including subject matters relevant to documents produced by defendants in response to plaintiffs' document requests.

5. The subject matter of any document produced by defendants in response to plaintiffs' document requests to the extent that it relates to 1-3, above.

B. **<u>Requests for Production of Documents</u>**

The parties have made progress on some of the disputes previously presented to the Court. The following provides the document requests and a brief statement of the parties agreements and remaining disputed issues for the Court to resolve.

1. *Promotional materials for the movies in issue:*

Plaintiffs requested: "All documents comprising promotional materials for the Accused Films that refer or relate to the Contour Characters or the Contour Technology, including but not limited to trailers, television advertising, behind the scenes segments, bonus materials and featurettes, and scenes or compilations of scenes posted on on-line platforms."

*Areas of Agreement:*

Defendants have agreed to conduct a search of reasonably accessible sources within the scope of Rules 26 and 34 of the Federal Rules of Civil Procedure and produce trailers, video advertisements, and written advertising copy stored therein to the extent they can be produced in a format that does not involve an expense that is disproportionate to the needs of the case. This caveat regarding disproportionate expense is being invoked only as to the Fox Defendants' trailers and TV ads, as discussed below.

*Dispute:*

Defendants' Position:

The Fox Defendants' trailers and TV ads are stored in a master format with a third-party vendor. The Fox Defendants have asked that Plaintiffs either pay for the cost of digitizing and producing copies of the same (estimated at $10,000) or inspect the masters at the vendor's facility and identify the particular trailers and TV ads, if any, they would like digitized and copied for production. Plaintiffs' request to date that these trailers and TV ads be "produced in native format" is inapt—such a request essentially asks that the masters be relinquished to Plaintiffs. Likewise, the suggestion that the Fox Defendants relinquish the masters to Plaintiffs to enable them to directly pay the cost of digitizing is not workable or necessary.

Plaintiffs' Position:

Plaintiffs believe that the expense of digitizing the trailers should be borne by the party that performs the digitizing. Consequently, Plaintiffs request that Fox either <u>copy</u> the trailers and produce the <u>copies</u> (*not* "relinquish the masters") in their present format for plaintiffs to digitize at plaintiffs' expense, or that Fox bear the cost of digitizing the trailers prior to production itself.

2. *Any decision to use MOVA Contour Technology in connection with the movies in issue:*

Plaintiffs requested: "All documents that refer or relate to the decision to use the Contour Technology in the Accused Films" and

"All documents that refer or relate to evaluation or consideration of the use or merits of the Contour Technology for the Accused Films, including but not limited to any comparisons of the Contour Technology to alternative facial motion capture technologies."

*Areas of Agreement / Potential Further Meet-and-Confer:*

Defendants agree to conduct a search of the ESI (emails and hard drives) of identified custodians (*viz.* those who would be likely to have responsive documents, if any, regarding these subjects) within the scope of Rules 26 and 34 of the Federal Rules of Civil Procedure, and to produce responsive non-privileged results, if any, containing "MOVA" or "Contour." Additionally, Defendants will run hit counts on the search strings Plaintiffs propose below and will confer with Plaintiffs if the counts for any particular searches would entail a disproportionate burden to review. Defendants agree to produce responsive non-privileged results, if any, of agreed-upon search strings.

a. <u>Additional Search Terms</u>: "facial" or "face" within five words of "performance" or "motion" or "capture" or "mocap" or "dots" or "points" or "VFX," and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3)

b. "DD3," and "motion" or "capture" or "mocap" within five words of "facial."

c. "face" or "facial" within ten words of the name of each of the characters for which Contour motion capture was used (including any nicknames or code names used by Defendants or DD3).

d. "face" or "facial" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

e. "Medusa" or "Disney Zurich" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

f. "Dimensional Imaging" or "DI4D" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

 g. "VFX" within five words of "facial," and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

 h. "facial" or "face" and "Direct Drive" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

3. *La Belle et la Bete, and Prosthetics as an alternative to facial motion capture:*

Plaintiffs requested: "All documents that refer or relate to evaluation or consideration of the use or merits of prosthetics as an alternative to facial motion capture technologies (including but not limited to the Contour Technology) for the Contour Characters" and

"All documents that refer or relate to any evaluation or consideration of the rendered face of the Beast (La Bête) in "*Beauty and the Beast*" ("*La Belle et la Bête*") released in 2014, starring Vincent Cassel and Léa Seydoux, and directed by Christophe Gans."

*Areas of Agreement / Potential Further Meet-and-Confer:*

Defendants agree to conduct a search of the ESI (emails and hard drives) of identified custodians (*viz.* those who would be likely to have responsive documents, if any, regarding these subjects who are connected to *Beauty and the Beast*), and to produce responsive non-privileged results, if any, containing "prosthetic" and relating to *Beauty and the Beast*. Additionally, Defendants will run hit counts on the search strings Plaintiffs propose below and will confer with Plaintiffs if the counts for any particular searches would entail a disproportionate burden to review. Defendants agree to produce responsive non-privileged results, if any, of agreed-upon search strings.

Additional Search Terms:

 a. "prosthetic," or "mask," or "facial," or "practical" within one word of "makeup" "or make-up," and the names of each of the accused films (including any early or code names for the film, including but not limited to "Beast" ).

 b. "La Belle et la Bete" or "La Belle et la Bête."

 c. "Beauty and the Beast" within five words of "2014," or within the same document as "Cassel" or "Gans" or "Seydoux."

 d. "prosthetic," or "mask," or "facial," or "practical" within one word of "makeup" "or make-up,"," and "La Belle et la Bete," or "La Belle et la Bête," or "Beauty and the Beast" within five words of "2014," or within the same document as "Cassel" or "Gans" or "Seydoux."

e. "Dimensional Imaging" or "DI4D" and "La Belle et la Bete," or "La Belle et la Bête," or "Beauty and the Beast" within five words of "2014."

4. *Impact or effect of Contour technology on movies in suit:*

Plaintiffs requested: "All documents that refer or relate to the impact or effect of the Contour Technology on the quality of the rendered performances of the Contour Characters" and

"All documents that refer or relate to the importance of the Contour Characters in the Accused Films or to the success of the Accused Films."

*Areas of Agreement / Potential Further Meet-and-Confer:*

Defendants agree to conduct a search of the ESI (emails and hard drives) of identified custodians (*viz.* those who would be likely to have responsive documents, if any, regarding these subjects), and produce responsive non-privileged results, if any, containing "MOVA," "Contour," or the name of the relevant CG character ("Beast," "Thanos," "Colossus," "Caesar," and "Thing"), provided that if there are a substantial number of hits that contain only the character name, but not "MOVA" or "Contour," Defendants will provide Plaintiffs with the number of hits but will not review or produce those documents. Additionally, Defendants will run hit counts on the search strings Plaintiffs propose below and will confer with Plaintiffs if the counts for any particular searches would entail a disproportionate burden to review. Defendants agree to produce responsive non-privileged results, if any, of agreed-upon search strings.

Additional Search Terms:

a. "fluor!" or "flor" or "phosphor!" and "DD3"

b. "fluor!" or "flor" or "phosphor!" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

c. "LitCam!"

d. "facial" or "face" and "tracking mesh" and the names of each of the accused films (including any early or code names for the films, including but not limited to "Beast," "Wham," and the names used in the contracts with DD3).

5. *Industry praise or awards for Contour:*

Plaintiffs requested: "All documents that refer or relate to industry praise or awards garnered by the Contour Technology, including the Award for Science and Technology

from the Academy of Motion Picture Arts and Sciences for the Contour Technology (referred to in the award as the "MOVA Facial Performance Capture system")."

*Agreement:*

Defendants agreed to search for and produce non-privileged internal documents, if any, that consolidate industry accolades or awards relating to visual effects that are maintained in reasonably accessible locations within the meaning of Rules 26 and 34 of the Federal Rules of Civil Procedure.

Plaintiffs accept without waiver of their right to request supplemental discovery within the scope of Rules 26 and 34.

6. *Movie reviews:*

Plaintiffs requested: "All reviews of the Accused Films that reference any of the Contour Characters or the Contour Technology."

*Agreement:*

Defendants agreed to search for and produce non-privileged internal documents, if any, that consolidate reviews (or excerpts thereof) for the movies in issue that are maintained in reasonably accessible locations within the meaning of Rules 26 and 34 of the Federal Rules of Civil Procedure.

Plaintiffs accept without waiver of their right to request supplemental discovery within the scope of Rules 26 and 34.

7. *Surveys, research, reports, and analyses relating to consumer awareness or recall of the CG characters in issue:*

Plaintiffs requested: "All surveys, research, reports, analyses and other materials that refer or relate to consumer awareness or recall of the Contour Characters."

*Agreement:*

Defendants agreed to search for and produce non-privileged analyses and studies, if any, regarding the effectiveness of the marketing for the movies in issue (both pre-release and post-release), including the trailers for the movies in issue, that are maintained in reasonably accessible locations within the meaning of Rules 26 and 34 of the Federal Rules of Civil Procedure.

Plaintiffs did not request documents "regarding the effectiveness of the marketing for the movies in issue." The request seeks documents regarding "consumer awareness or recall

of the Contour Characters," which includes surveys, research, reports, and analyses of potential audience response to the films at issue and their respective trailers.

8. *Consumer demand for movies generally:*

Plaintiffs requested: "All surveys, research, reports, analyses and other documents that refer or relate to the factors that motivate or influence consumers to view a particular motion picture, including but not limited to … [a]ll surveys, research, reports, analyses and other documents that refer or relate to the impact that the use of particular motion capture solutions may have on the consumer response to characters generated using such solutions," and

"All surveys, research, reports, analyses and other documents that refer or relate to the factors that motivate or influence consumers to purchase a ticket or otherwise pay to see a particular motion picture in theatrical release or any non-theatrical release, including airplanes, hotels, streaming video, DVD and Blu-ray."

*Areas of Agreement:*

Defendants agreed to search for and produce non-privileged studies or analyses, if any, regarding why consumers see movies from reasonably accessible locations within the meaning of Rules 26 and 34 of the Federal Rules of Civil Procedure.

Plaintiffs accept defendants' search of reasonably accessible locations, without waiver of their right to request supplemental discovery within the scope of Rules 26 and 34, but request that defendants include responsive documents related to the specific films and their respective trailers.

9. *Documents relied upon by declarants:*

Plaintiffs requested: "From each person who submitted a declaration in support of defendants' summary judgment motions, all documents reviewed, considered or relied upon for each averment of the witness's respective declaration.  In addition, from Mimi Steele or DD3, the demo reel of DD3's Direct Drive technology referred to in paragraph three of her declaration."

*Agreement:*

The parties agree that Defendants will produce non-privileged documents, if any, that declarants who are within Defendants' control relied on in making the statements in their declarations.  Defendants have not confirmed whether Mimi Steele has the Direct Drive demo reel.  If she does, Defendants will produce it.  Defendants will not oppose Rearden requesting from any declarants not within Defendants' control documents those declarants relied on in making the statements in their declarations.

10. *Residual documents that mention Contour:*

   Plaintiffs: "To the extent not responsive to the requests above, all documents in which the Contour Technology is referenced."

   *Agreement:*

   Defendants' position is that the searches they have agreed to (*i.e.,* ESI containing "MOVA" or "Contour") are sufficient.

   Plaintiffs agree, subject to the Court's rulings on other disputes herein.

11. *Inclusion of "Thanos" character in credits of Avengers: Age of Ultron:*

   Plaintiffs requested: "All documents that refer or relate to the decision to include the Thanos sequence in *Avengers: Age of Ultron*, including but not limited to the reasons why the sequence was included in the film and the reasons why it was placed within the credits section" and

   "All documents that refer or relate to the importance of Thanos, as the character was presented in *Avengers: Age of Ultron*, to subsequent Marvel Cinematic Universe motion pictures produced or distributed by Disney, or to the promotion of Thanos in connection with *Avengers: Age of Ultron*."

   *Dispute:*

   Defendants' Position:

   Defendants' position is that searches they have agreed to are sufficient to capture relevant documents, if any, addressing the use of MOVA in connection with Thanos's face.

   Plaintiffs' Position:

   Plaintiffs believe that the request should include documents addressing reasons for including the Thanos sequence and reasons for including that sequence in the closing credits, as those reasons could be relevant to Defendants' pending causal nexus summary judgment motion.

12. *Detailed production budgets and profit information:*

   Plaintiffs requested: "Detailed production budgets for each of the Accused Films" and

"Documents sufficient to show the profit generated by each Accused Film, separately, including but not limited to:" (a) "[a]ctual revenue and costs categorized by media and broken out separately for domestic (US) and foreign as of December 31, 2018"; and (b) "[a]ctual tax credit receipts and payments from US and foreign governments or public agencies that provide economic incentives to film productions for locating production and/or post production activity in a particular jurisdiction."

*Dispute:*

Defendants' Position:

Defendants agreed to produce high-level revenue, expense, overhead, and tax numbers for the Track 2 movies (*Beauty and the Beast* and *Deadpool*), consistent with what Defendants have already produced for the Track 1 movies, and the documents relied upon by Defendants' declarants in support of their causal nexus motion. The documents relied upon by Defendants' declarants will contain additional detail, including additional detail concerning the amounts paid to DD3. Defendants will not produce more detailed budgets or profit information.

Plaintiffs' Position:

Plaintiffs believe that the request properly seeks information that is necessary for Plaintiffs' opposition.

**C. Monthly Discovery Status Conference Calls**

The parties agree to a discovery status call with the Court on the first Monday of each month until discovery is concluded at 10:30 AM or at such other time as is convenient for the Court.