<u>**VIA CM/ECF**</u>

August 19, 2019

The Honorable Sallie Kim
United States District Court
 for the Northern District of California
Courtroom C – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:     *Rearden LLC et al. v. The Walt Disney Company et al.*, No. 17-CV-04006-JST
        *Rearden LLC et al. v. Twentieth Century Fox Film Corporation et al.*, No. 17-CV-04191-JST

Dear Judge Kim:

        Plaintiffs have responded to every grant of additional discovery by expanding their

discovery requests to encompass new and ever more irrelevant topics.  The result has been a

proliferation of discovery disputes spiraling further and further away from the only issue at this

preliminary stage: identifying 15 custodians whose documents must be searched so that Plaintiff

can respond to Defendants' MSJ, which is now six months old.

        Plaintiffs have followed their "give us an inch, we'll take a mile" script with the Order

giving them leave to serve 10 interrogatories (none of which count against Plaintiffs' Rule

33(a)(1) limit) to each of Disney, Marvel, and Twentieth Century Fox Film Corporation

("TCFFC").  The Order specifically said the interrogatories "must be based on the questions

highlighted" in deposition transcripts Plaintiffs provided the Court.  (7/12/19 Order (Dkt. No.

166) at 3.)  Plaintiffs completely disregarded that instruction and instead served what amounts to

more than 89 interrogatories covering questions that Plaintiffs never even asked at deposition.

The new interrogatories have no relevance to what was supposed to be the final step in proposing

15 custodians whose documents must be searched.  The Court should either strike the

interrogatories in their entirety based on Plaintiffs' continuing disregard of the scope of

Hon. Sallie Kim
August 19, 2019
Page 2

permitted discovery or in the alternative instruct Plaintiffs to identify 10 discrete interrogatories

they want answered and that Plaintiffs can establish were actually asked at the depositions.

The discovery that Judge Tigar referred to Your Honor is limited to what Plaintiffs need

to oppose Defendants' February 28, 2019 MSJ.  (Dkt. No. 139.)  The MSJ argues that Plaintiffs

cannot show a causal nexus between the alleged copyright infringement—the third-party visual-

effects vendor DD3's loading of allegedly unlicensed MOVA software into computer RAM—

and the profits from six motion pictures.  DD3's copying of MOVA into RAM was a tiny and

early step in the complex and labor-intensive process of creating the visual effects for the facial

movements that required the combined efforts of hundreds of artists and technicians.

We are not even at the stage of document production or depositions on the merits of the

MSJ.  To date, Your Honor has allowed Plaintiffs to take 30(b)(6) depositions not for MSJ-

merits discovery, but rather to assist in identifying 15 custodians whose documents will be

collected for responsive documents.  Defendants' witnesses already identified the individuals

likely to have information responsive to Plaintiffs' MSJ-related discovery requests—broadly

speaking, individuals involved in the decision to hire DD3 and to use MOVA Contour, who

interfaced with DD3 regarding visual effects, and who were responsible for the marketing of the

films—whom Plaintiffs may select from to create a list of 15 proposed custodians.  Plaintiffs will

have the opportunity to take more depositions after the documents have been produced.

Plaintiffs claimed the 30(b)(6) representatives should have been prepared to answer questions

that Plaintiffs had highlighted in the transcripts.  Rather than re-opening the depositions, Your

Honor gave Plaintiffs leave to ask (of each Defendant) 10 of the previously asked questions that

were within the scope of the custodian-identification topics.

Hon. Sallie Kim
August 19, 2019
Page 3

Plaintiffs' propounded interrogatories go so far beyond the questions Plaintiffs asked in the depositions and unabashedly ignore the Court's instructions in seeking to narrow—and not expand—Plaintiffs' search in identifying potential document custodians.  Defendants discuss the objectionable interrogatories under separate headings below.

**All persons who "worked on visual effects" or "approved the appearance" of characters (Disney Rog. Nos. 2-4; Marvel Rog. Nos. 2-3; TCFFC Rog. Nos. 2-4)**

Plaintiffs ask each Defendant to identify all employees "or independent contractors" who "worked on visual effects for [a particular] character," and in most cases for the "persons who approved the appearance of the [particular] character."[1]  The questions (a) were not asked at the depositions, (b) are irrelevant to the MSJ discovery, or (c) both.

First, almost all of the questions are not "based on the questions highlighted," as the Court said they must be.  (7/12/19 Order (Dkt. No. 166) at 3; *see* Dkt. Nos. 159-4, 159-5, 159-6 (deposition transcripts highlighted by Plaintiffs); Exs. A-C hereto (interrogatories served on Disney, Marvel, and TCFFC).)  Plaintiffs did not provide transcript cites for these interrogatories, which is in marked contrast to other interrogatories, which Plaintiffs did support with transcript cites.  During the meet-and-confer on this motion, Defendants asked Plaintiffs for the cites for these interrogatories.  Plaintiffs refused the request.  In searching the highlighted transcripts, Defendants have found only one interrogatory—concerning "Colossus," from TCFFC's *Deadpool*—that roughly corresponds to a question that was asked.  (*Compare* TCFFC Tr. at 72:7-73:1 (Dkt. No. 159-6) *with* Ex. C, Rog. No. 2.) Other character names either do not appear in the transcripts at all (for TCFFC, Ben Grimm, The Thing, Caesar, Lord Nelson, and

---

[1] *See* Ex. A, Disney Rog. Nos. 2 (Beast), 3 (Thanos in *Guardians*), 4 (Thanos in *Avengers*); Ex. B, Marvel Rog. Nos. 2 (Thanos in *Guardians*), 3 (Thanos in *Avengers*); Ex. C, TCFFC Rog. Nos. 2 (Colossus), 3 (Ben Grimm/The Thing), 4 (Bust of Caesar, Lord Nelson, Charles Darwin).

Hon. Sallie Kim
August 19, 2019
Page 4

Charles Darwin,[2] and Thanos in the Disney transcript) or, in one case (Thanos, in the Marvel

transcript) were referenced in connection with a question unrelated to the interrogatory.

All of these interrogatories (including the one for Colossus, noted above) should also be

stricken because they are beyond the scope of the authorized deposition topics and are too broad

to lead to the identification of Defendants' 15 MSJ-related document custodians.  Hundreds of

individuals worked on the visual effects in the accused motion pictures over many months and

years, and almost all of those individuals have zero connection to Plaintiffs' MOVA contour

technology, the use of which lasted at most a few *hours*.  Likewise, the identity of individuals

who "approved the appearance" of the character—whatever that is intended to mean—has no

connection to the third-party visual effects vendor DD3's loading of MOVA Contour software

into computer RAM, the basis for Plaintiffs' alleged indirect copyright infringement claims.  As

noted, Plaintiffs already have the names of individuals involved with the decision to hire DD3

and who interacted with DD3.  Beyond the names Plaintiffs already have, the list of all

animators, artists, etc. who worked on visual effects for the characters will not yield potential

MSJ-related document custodians.

**Contracts (Disney Rog. No. 5(a) through 5(l); TCFFC Rog. No. 1(a) through 1(l))**

Most of Plaintiffs' contract-related interrogatories were not asked at the depositions or

are irrelevant.  Moreover, the interrogatories to Disney and TCFFC have embedded within them

multiple questions and call for responses concerning multiple contracts—more than 60 in total.

As a result, the interrogatories greatly exceed the Court's 10 interrogatory limit.

---

[2] The characters of Lord Nelson and Charles Darwin (from *Night at the Museum: Secret of the Tomb*) are not mentioned in the TCFFC complaint.

Hon. Sallie Kim
August 19, 2019
Page 5

First, many of the interrogatories are not based on questions asked at the deposition.  This

is the case with Disney Rog. No. 5, subparts (i) through (l).  (Here, too, Plaintiffs did not provide

transcript cites when requested during the meet-and-confer.)  Even as to Disney Rog. No. 5(i),

Plaintiffs ask about "contracts identified in [deposition] Exhibit 6."  Defendants voluntarily

prepared Exhibit 6 to identify the roles of all affiliates involved in the production, marketing,

promotion, distribution, or profit-sharing of the subject movies.  Exhibit 6 lists the more than

three dozen contracts with these entities on these subjects.  Plaintiffs' counsel did not ask about

all of these contracts in the deposition and should not be allowed to use these interrogatories to

ask questions they did not ask at the deposition.  The same is true of subparts (j) through (l) to

Disney Rog. No. 5.

TCFFC Rog. Nos. 1(a)-(l) likewise are not based on questions asked at the deposition.

These interrogatories ask TCFFC to *identify* contracts with "FOX," which is broadly defined to

include dozens of entities other than TCFFC.  Nor are the interrogatories related to contracts

between affiliates that concern the production, marketing, promotion, distribution, or profit-

sharing of the subject movies, which is the scope of deposition Topic 1.  Defendants already

identified the contracts that are within the scope of Topic 1 in the chart that Defendants provided

to Plaintiffs.

Second, the interrogatories are irrelevant to identifying MSJ-related document

custodians.  Subparts (j) and (k) of Disney Rog. No. 5, and Subparts (g) through (l) of TCFFC

Rog. No. 1, ask for the custodian of contracts with either (1) the directors of the movies or

(2) unaffiliated entities.  Plaintiffs have not explained, and cannot explain, how any of these

contracts is relevant to the causal nexus issue in the MSJ.  Indeed, Plaintiffs' discovery requests

(listed in Mr. Carlson's 3/14/19 letter, Ex. D hereto) do not even request these contracts.  Hence,

Hon. Sallie Kim
August 19, 2019
Page 6

even if these interrogatories were based on questions asked at the 30(b)(6) depositions (as is the

case with Disney Rog. Nos. 5(a)-(h), where Plaintiffs did provide transcript cites), the

interrogatories would be beyond the scope of the authorized topics.  The Court should strike

these interrogatories.

This use of discrete subparts within a single interrogatory—including subparts that

themselves connect to dozens of contracts—far exceed the 10 interrogatory limit for each of

Disney and TCFFC.  Disney Rog. No. 5 asks about more than 50 contracts. TCFFC Rog. No. 1

contains 12 discrete subparts, each referencing at least one contract. The use of discrete subparts

tied to different contracts is not a loophole to the Court's limit of 10 follow-up interrogatories.

Plaintiffs' transparent attempt to end-run the 10-interrogatory limit is improper.  In *United Life*

*Ins. Co. of City of New York v. Trustmark Ins. Co.*, 2005 WL 8168057 (D. Conn. Dec. 1, 2005),

the court rejected a similar attempt to evade the interrogatory limit where a party crammed sub-

parts concerning 18 different contracts into a single interrogatory.  As the court explained:  "a

complete answer to interrogatory one would yield information on contract A that is unnecessary

to the understanding of Contract B and, 'a subpart is independent and thus discrete when it is

unnecessary to the understanding of a second subpart.'" *Id*. at *4-5.  The same result follows

here.[3]

**Digital and Physical Repositories, Persons "Primarily Responsible" for "Visual Effects,"**
**Email Addresses of Employees and Independent Contractors (TCFFC Rog. Nos. 5-6)**
TCFFC interrogatory No. 5 is improper for multiple reasons.

---

[3] As noted, the 30 interrogatories the Court allowed here do not count against Plaintiffs' Rule
33(a)(1) limit.  (7/12/19 Order (Dkt. No. 166) at 3.)  This is all the more reason why Plaintiffs
should be held to the numerical limits the Court established in the Order.

Hon. Sallie Kim
August 19, 2019
Page 7

First, the interrogatory includes multiple discrete subparts and thereby exceeds the 10-interrogatory limit.  It asks questions on five discrete topics relating to three separate entities.[4]

Hence, the single interrogatory has embedded within it 15 separate interrogatories.  *See*

*Hernandez, Kroone & Assocs., Inc. v. United States*, 2008 WL 4725433, at \*3-4 (Fed. Cl. June

16, 2008) (subparts of an interrogatory asking about (a) the negotiation and (b) the performance

of a contract covered separate subjects and thus were separate interrogatories).

Second, some subparts were not asked at the deposition.  For example, the interrogatory

asks about independent contractors.  Plaintiffs did *not* ask whether these entities employed

independent contractors, or whether those independent contractors had "fox.com" email

addresses.  Because the interrogatory about "independent contractors" is not based on questions

actually asked, it is improper.

Third, the parts of the interrogatory that Plaintiffs did ask at deposition were sufficiently

answered.  In particular, the interrogatory asks for the email domain and host entity for every

TCFFC employee involved in the visual effects on the subject movies.  TCFFC's 30(b)(6)

representative explained that not every employee uses a fox.com email address.  But the TCFFC

representative repeatedly testified that TCFFC *could search* the emails of its employees, and

employees of subsidiaries, *regardless* of whether the employee's email used the fox.com domain

or whether the subsidiary used TCFFC's primary cloud-based computing solution (Microsoft

---

[4] The separate questions are:  (1) does the entity maintain a physical document repository; (2) does it maintain a digital document repository; (3) what officers, employees and independent contractors of each entity were "primarily responsible" for "visual effects in ACCUSED films"; (4) for each of those people, did they use a fox.com email address, and (5) if not a fox.com email address, what email address did they use, and what is the "host entity" of the non-fox.com email address.

Hon. Sallie Kim
August 19, 2019
Page 8

365) or a different approved cloud-based solution.  (*See, e.g.*, TCFFC Tr. at 36:2-37:24.)[5]

Plaintiffs do not need—and have no authorization to ask for—email domains and hosting entities

for every such employee.  Plaintiffs are simply trying to create more busywork and further delay

having to respond to the MSJ.


Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: _____ */s/ Erin J. Cox* _____


*Attorneys for Defendants*

---

[5] The representative's answer about TCFFC's ability to search its systems also explains why the first two subparts of Rog. 5 ("physical" and "digital" databases) and the entirety of Rog. 6 are unnecessary: the representative testified that TCFFC can search the emails and the documents of its subsidiaries and that any such search request, whether made directly to the subsidiary or to TCFFC, would go to the representative's department at TCFFC and the representative's department would conduct the search.  (TCFFC Tr. at 36:2-37:24.)