# EXHIBIT D

T 206.623.7292   F 206.623.0594



Mark S. Carlson
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Ave., Ste. 2000
SEATTLE, WA 98101
www.hbsslaw.com
**Direct (206) 268-9346**
**markc@hbsslaw.com**

March 14, 2019

**VIA ELECTRONIC MAIL**

Kelly M. Klaus
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105

    Re:    *Rearden LLC, et al. v. The Walt Disney Company, et al.*,
            Case No. 3:17-cv-04006-JST;
            *Rearden LLC, et al. v. Twentieth Century Fox Film Corporation, et al.*,
            Case No. 3:17-cv-04191-JST

Dear Kelly,

Pursuant to the Court's January 30, 2019 Order (Dkt. 133), Plaintiffs identify discovery they need to oppose Defendants' Motions for Summary Judgment on Casual Nexus Issue.

- **Definitions**
  - **Contour Technology:** the facial performance capture technology described in the First Amended Complaint, whether identified as "Contour" or "MOVA."
  - **Accused Films:** *Beauty and the Beast; Deadpool; Guardians of the Galaxy; Avengers: Age of Ultron; Night at the Museum: Secret of the Tomb; Fantastic Four.*
  - **Contour Characters:** The Beast (*Beauty and the Beast*); Colossus (*Deadpool*); Thanos (*Avengers: Age of Ultron, Guardians of the Galaxy*); Bust of Augustus (*Night at the Museum: Secret of the Tomb*); The Thing (*Fantastic Four*).
  - **Production Entities:** Chip Pictures, Inc.; Extinction Productions Ltd.; Fox US Productions 40, Inc.; Infinity Productions LLC; Assembled Productions II LLC; Fox Louisiana Productions LLC; Fox US Productions 31, Inc.; TCF Vancouver Productions, Ltd.
  - **Additional Disney Entities:**  ABC, Inc.; Walt Disney Pictures;
  - **DD3**: Digital Domain 3.0, Inc.
  - **Documents**: Documents as defined in Plaintiffs' previously-served Requests for Production of Documents, including but not limited to electronically stored information.

Kelly M. Klaus
March 14, 2019
Page 2

- **Document Discovery.** Directed to Defendants, the Production Entities, the Additional Disney Entities, DD3 and possibly other third parties not yet identified, as appropriate.

    o All documents comprising promotional materials for the Accused Films that refer or relate to the Contour Characters or the Contour Technology, including but not limited to trailers, television advertising, behind the scenes segments, bonus materials and featurettes, and scenes or compilations of scenes posted on on-line platforms.
    o All documents that refer or relate to the decision to use the Contour Technology in the Accused Films.
    o All documents that refer or relate to evaluation or consideration of the use or merits of the Contour Technology for the Accused Films, including but not limited to any comparisons of the Contour Technology to alternative facial motion capture technologies.
    o All documents that refer or relate to evaluation or consideration of the use or merits of prosthetics as an alternative to facial motion capture technologies (including but not limited to the Contour Technology) for the Contour Characters.
    o All documents that refer or relate to the impact or effect of the Contour Technology on the quality of the rendered performances of the Contour Characters.
    o All documents that refer or relate to industry praise or awards garnered by the Contour Technology, including the Award for Science and Technology from the Academy of Motion Picture Arts and Sciences for the Contour Technology (referred to in the award as the "MOVA Facial Performance Capture system").
    o To the extent not responsive to the requests above, all documents in which the Contour Technology is referenced.
    o All documents that refer or relate to any evaluation or consideration of the rendered face of the Beast (La Bête) in "*Beauty and the Beast*" ("*La Belle et la Bête*") released in 2014, starring Vincent Cassel and Léa Seydoux, and directed by Christophe Gans.
    o All documents that refer or relate to the importance of the Contour Characters in the Accused Films or to the success of the Accused Films.
    o All surveys, research, reports, analyses and other materials that refer or relate to consumer awareness or recall of the Contour Characters.
    o All reviews of the Accused Films that reference any of the Contour Characters or the Contour Technology.

Kelly M. Klaus
March 14, 2019
Page 3

- o   All documents that refer or relate to the decision to include the Thanos sequence in *Avengers: Age of Ultron*, including but not limited to the reasons why the sequence was included in the film and the reasons why it was placed within the credits section.
- o   All documents that refer or relate to the importance of Thanos, as the character was presented in *Avengers: Age of Ultron*, to subsequent Marvel Cinematic Universe motion pictures produced or distributed by Disney, or to the promotion of Thanos in connection with *Avengers: Age of Ultron*.
- o   All surveys, research, reports, analyses and other documents that refer or relate to the factors that motivate or influence consumers to view a particular motion picture, including but not limited to:
    - All surveys, research, reports, analyses and other documents that refer or relate to the impact that the use of particular motion capture solutions may have on the consumer response to characters generated using such solutions.
    - All surveys, research, reports, analyses and other documents that refer or relate to the factors that motivate or influence consumers to purchase a ticket or otherwise pay to see a particular motion picture in theatrical release or any non-theatrical release, including airplanes, hotels, streaming video, DVD and Blu-ray.
- o   Detailed production budgets for each of the Accused Films.
- o   Documents sufficient to show the profit generated by each Accused Film, separately, including but not limited to:
    - Actual revenue and costs categorized by media and broken out separately for domestic (US) and foreign as of December 31, 2018; and
    - Actual tax credit receipts and payments from US and foreign governments or public agencies that provide economic incentives to film productions for locating production and/or post production activity in a particular jurisdiction.
- o   From each person who submitted a declaration in support of defendants' summary judgment motions, all documents reviewed, considered or relied upon for each averment of the witness's respective declaration.  In addition, from Mimi Steele or DD3, the demo reel of DD3's Direct Drive technology referred to in paragraph three of her declaration.

- **Depositions**.  Rearden contends that the following depositions should not count against otherwise applicable limits on the number of depositions, due to the fact that Rearden must take them at this stage of the case before document production only because Defendants chose to move for early summary judgment on a highly fact-intensive issue that requires substantial evidentiary development.  Further,

Kelly M. Klaus
March 14, 2019
Page 4

Defendants submitted 11 declarations by individuals with this summary judgment, many deeply technical, each requiring a deposition. It is not reasonable that Defendants may exhaust Rearden's depositions by their choice to support their summary judgment motion with numerous declarents.

- o Digital Domain 3.0, Inc.
- o Bill Condon
- o Steve Gaub
- o David Feinsilber
- o Jonathan Rothbart
- o Vincent Cirelli
- o Hao Li
- o Chip Pictures, Inc.
- o Fox US Productions 40, Inc.
- o Twentieth Century Fox Film Corporation
- o The WDPP affiliate referred to by Mimi Steele in her declaration ¶ 2.
- o Walt Disney Pictures
- o Marvel Studios, LLC
- o ABC, Inc.
- o Luma Pictures

- **Requests for Admission.** To streamline the depositions, Rearden will propound Requests for Admission directed to the admissibility of documents produced in response to the document requests above.

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Mark Carlson*
Mark Carlson

cc: Steve Berman
Philip Graves