STEVE BERMAN (*pro hac vice*)
MARK CARLSON (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

PHILIP GRAVES (CBA No. 153441)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
philipg@hbsslaw.com

RIO PEARCE, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:   (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*
Rearden LLC and Rearden Mova LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, et al.,<br><br>                  Plaintiffs,<br><br>  v.<br><br>THE WALT DISNEY COMPANY, *et al.*,<br><br>                  Defendants.<br><br>REARDEN LLC, et al.,<br><br>                  Plaintiffs,<br><br>  v.<br><br>TWENTIETH CENTURY FOX FILM CORPORATION, *et al.*,<br><br>                  Defendants. | No. 4:17cv04006-JST-SK<br>No. 4:17cv04191-JST-SK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ON CAUSAL NEXUS ISSUE [ECF NO. 297/NO. 255]**<br><br>Judge:   Hon. Jon S. Tigar |

**INTRODUCTION**

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration "is not an opportunity to relitigate issues that have already been thoughtfully decided." *GSI Tech., Inc. v. United Memories, Inc.*, 2015 WL 4463742, *4 (N.D. Cal. 2015), citing *In re Google AdWords Litig.,* 2012 WL 1595177, *1 (N.D. Cal. 2014). The basis for reconsideration that defendants rely upon, Civil L.R. 7-9(b)(3), is that a party presented a material fact or a dispositive legal argument in its motion papers that the Court manifestly did not consider in its Order. Consequently, reconsideration is permitted only if defendants meet the burden imposed by Civil L.R. 7-9(b)(3) to "*specifically show*:"

> A manifest failure by the Court to consider material facts or dispositive legal arguments *which were presented to the Court before such interlocutory order*."

Civil L.R. 7-9(b)(3) (emphasis supplied). If the allegedly material facts or dispositive legal arguments proffered as the basis for reconsideration were not previously presented, then the Court cannot have manifestly failed to consider them as required by the governing local rule.

On reconsideration, defendants primarily attack the sufficiency of Rearden's evidence with a host of *non*-dispositive legal arguments *that were not previously presented to the Court*. Then, to fake compliance with the local rule, they mischaracterize the *conclusion* of those arguments—that the evidence is allegedly insufficient—as a "material fact" that this Court failed to consider. This rhetorical slight of hand fails. If the Court had no opportunity to consider the *evidentiary argument* because it was not previously presented, then the Court had no opportunity to consider its *conclusion* either, regardless of whether the conclusion is characterized properly as part of the argument or *mis*characterized as a "material fact." Defendants present almost nothing on reconsideration that the Court had the opportunity to consider, because they present almost nothing that they included in their opening or reply briefs. In the only instance of an argument that finds any vestige in defendants' reply brief, the argument is so transparently wrong that even if it was not specifically addressed in the Order, it cannot justify this Court reversing itself now on reconsideration.

Defendants fail to meet the specific showing burden required for reconsideration imposed by the local rule and fail to present any basis for this Court to reverse itself. In the interests of finality and conservation of judicial resources, and because defendants failed to meet their burden under Civil L.R. 7-9(b)(3), their motion for reconsideration should be denied.

## ARGUMENT

### I. REARDENS' BURDEN ON SUMMARY JUDGMENT

On "summary judgment, a copyright infringement plaintiff seeking to recover indirect profits damages under 17 U.S.C. § 504(b) must proffer *some evidence* to create a triable issue regarding whether the infringement *at least partially* caused the *profits* that the infringer generated as the result of the infringement." *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002) (emphasis supplied); *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). Rearden is not required to submit declarations from filmgoers that their purchasing decisions were because of defendants' unauthorized copying. *Polar Bear*, 384 F.3d at 715; *Griffo v. Oculus VR, Inc.*, 2018 WL 6265067 at n. 13 (C.D. Cal. 2018); *Charter Sch. Capital, Inc. v. Charter Asset Mgmt. Fund, L.P.*, 2016 WL 5921062 at n. 3 (C.D. Cal. 2016). Nor is Rearden required to show that defendants' copying of MOVA was the only or even the main reason for film revenue. *Griffo*, 2018 WL 6265067 at *12; *Garcia v. Coleman*, 2009 WL 799393 at *4 (N.D. Cal. 2009); see also, *Mackie*, 296 F.3d at 911 (plaintiff must proffer evidence that the infringement "at least partially caused the profits that the infringer generated as the result of the infringement."). And importantly here, causal nexus may be proved by *circumstantial evidence*. *Polar Bear*, 384 F.3d at 712; *Hendricks v. Physicians Skin & Weight Ctrs.*, 2014 WL 12561621, *3 (C.D. Cal. 2014).

The court cannot engage in credibility determinations or weigh the evidence on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party's evidence must be believed. *Id*. And the court must draw all reasonable inferences from the evidence in favor of the nonmovant, Rearden. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 US 574, 587 (1986).

## II. DEFENDANTS FAIL TO MEET THEIR BURDEN UNDER CIVIL L.R. 7-9(B)(3) AS TO *GUARDIANS OF THE GALAXY*

### A. The Joint Marvel/Luma Pictures Press Release.

Defendants argue that the Joint Marvel and Luma Pictures Press Release (ECF No. 263-17, Ex. 16)[1] is allegedly a "draft press release." ECF No. 300, at 3-4. The press release touts the use of "a relatively new, hi-fidelity facial capture system called Mova" to make the Thanos character in *Guardians*. ECF No. 263-17, Ex. 16, at DIS-REARDEN-0010942. Defendants argue "[t]he Order did not consider the material fact that Rearden presented no evidence showing that Defendants actually 'advertised their use of MOVA' in connection with *Guardians of the Galaxy*." ECF No. 300, at 3-4. In other words, they argue there was no evidence the press release was published.

But the document is a press release, which defendants do not dispute. And a press release is inherently intended to be published. Thus, even an alleged draft is evidence that defendant Marvel intended to promote *Guardians* to filmgoers by touting the film's use of MOVA. As the non-moving party on summary judgment, Rearden is entitled to the reasonable inference that an alleged draft press release was, in fact, released in the total absence of any proof that it was not. At minimum, the alleged draft is circumstantial evidence of publication. Therefore, this Court properly considered the Marvel/Luma press release in denying defendants summary judgment motion as to *Guardians*.

Significantly here on reconsideration, while defendants' *attorneys* characterized the document as a "draft," defendants did not argue that the alleged draft was <u>not</u> published. Not even in their motion for reconsideration. And they presented no evidence that it was not published in any of their their motion papers—even though that evidence (if any) would be entirely within their control. A simple declaration could have established this allegedly material fact, but they did not submit one. Thus, defendants have not specifically shown that they "presented to the Court before [the summary judgment] Order" a material fact—the non-publication of the Marvel/Luma press release—that this Court failed to consider as required by Civil L.R. 7-9(b)(3). Nor did they attempt to rebut the reasonable inference that an allegedly draft press release in apparently final form was, in fact,

---

[1] Docket references in this Motion are to ECF entries in Case No. 4:17-cv-04006-JST. The same filings appear with different ECF numbers in Case No. 4:17-cv-04191-JST.

MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION FOR RECONSIDERATION
Case Nos.: 4:17-CV-04006; -04191-JST -3-

1  published.  Nor did they present any argument that an alleged draft press release cannot be

2  considered as at least circumstantial proof of causal nexus on summary judgment as a matter of law.

3  The argument that defendants make now on reconsideration was not "presented to the Court

4  before [the summary judgment] Order."  *See*, ECF No. 280 at 15:8-21.  Therefore, defendants have

5  not met their burden under Civil L.R. 7-9(b)(3).

6  **B.  The Online Interview of Kevin Feige, Marvel's CEO.**

7  Defendants argue that the on-line interview of Marvel's CEO, Kevin Feige, cannot be

8  considered as proof of causal nexus because he did not say the word "MOVA" and because his

9  mention of the actor, Josh Brolin, putting "the dots on his face" to do the facial performance capture

10  for Thanos in *Guardians* cannot refer to MOVA because MOVA allegedly does not use dots.

11  Defendants did not make this argument in either their opening or reply briefs, so it was not

12  "presented to the Court before [the summary judgment] Order" and this Court did not manifestly

13  failed to consider it.  *See*, ECF No. 280 at 15:8-21. Therefore, defendants have not met their burden

14  under Civil L.R. 7-9(b)(3).

15  Furthermore, defendants are wrong.  The "dots" that Feige refers to are trackable points on

16  the actor's face.  Low resolution facial performance capture uses 10-20 dots affixed on the actor's

17  face as trackable points.  MOVA's high resolution facial performance capture uses fluorescent (UV

18  reactive particulate) makeup applied with an airbrush, which results in many thousands of glowing

19  trackable dots on the actor's face under UV light.  *See, e.g.,* ECF No. 263-17, Ex. 16 at DIS-

20  REARDEN-0010942.  It is undisputed that Marvel used MOVA for facial performance capture of

21  Josh Brolin's performance as Thanos for *Guardians*.  Therefore, when Feige speaks of "facial

22  performance" technology used to capture Brolin's Thanos performance in *Guardians*, he is in fact

23  speaking of MOVA to promote *Guardians* to film goers.  He used the infringed facial performance

24  capture technology to drive interest in the film.  And Rearden is entitled to the inference that this

25  promotion had its intended effect—to motivate filmgoers to see *Guardians*.

26  Finally, defendants note in a footnote that "[t]he Court did not cite the interview in the

27  Order."  Notwithstanding, the Feige interview is evidence that Rearden duly submitted in support of

28

MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION FOR RECONSIDERATION
Case Nos.: 4:17-CV-04006; -04191-JST -4-

a causal nexus between *Guardians* film profits and infringement of the MOVA copyright.  It would be odd, indeed error, for the Court to fail to consider this material evidence now on reconsideration.

### C. The Marvel/Luma press release and Feige online interview confirm that MOVA was essential to animate the CG Thanos character in a realistic human-like manner.

Defendants argue Rearden's that evidence that MOVA was important to enable creation of a more human-like CG character should be disregarded because audiences are not supposed to empathize with the villainous Thanos.  ECF No. 300, 4:1-7.  They focus on the declaration of Dr. Tinwell regarding the CG Beast of *Beauty and the Beast*, and argue that Rearden presented no evidence as to *Guardians*.  This argument was not presented in their opening or reply briefs, and therefore does not meet the burden imposed by Civil L.R. 7-9(b).

Furthermore, defendants are wrong.  They ignore the Marvel/Luma press release regarding *Guardians*, which lauds the "great capture" of the nuances of Josh Brolin's performance as Thanos that "provided a lot of emotion that the animators could build off of and translate to the larger than life super villain."  ECF No. 263-17, Ex. 16, at DIS-REARDEN-0010942.  They also ignore the online interview of Feige regarding *Guardians*, who stated that the facial performance capture technology was "the reason we were comfortable moving forward with seeing as much Thanos as we do in *Guardians* … because we had a great actor who was willing to put the dots on his face and do the performance."  ECF No. 264-4 at 4.  The Marvel/Luma press release and Feige online interview confirm that MOVA's unsurpassed capability of transferring a performer's genuine human emotion to a CG character was necessary to make even a villainous character like Thanos seem authentic to audiences and essential to allow a substantial role for Thanos in *Guardians*.

### D. Reduced cost is relevant to the causal nexus between infringement and profits.

Defendants argue that this Court failed to consider defendants' argument that "the causal nexus inquiry focuses on the link between the alleged infringement and the defendant's *revenues*, not its costs." ECF No. 300 at 4:10-13.  They assert that they cited the *Polar Bear* case and 17 U.S.C. § 504(b) for this proposition in their reply brief.  *Id.*  Although this argument has vestigial support in defendants' briefs, it erroneously conflates the evidentiary burdens to prove infringer profits *at trial*

with the *threshold inquiry* of whether the copyright holder has shown a causal link between profits and infringement.

Defendants rely on a sentence in *Polar Bear* that discusses 17 U.S.C. § 504(b), citing *Polar Bear*, 384 F.3d at 711.  But Section 504(b) allocates the shifting burden of proof in a damages case for the infringer's profits *at trial*, in which the copyright owner must first prove total revenue, and then the burden shifts to the infringer to prove costs and profit.  *Id.*  It does not address the judicially created causal nexus *threshold* element.  Rather, after discussing Section 504(b)'s burden of proof scheme, *Polar Bear* defined the standard to prove causal nexus as *a relationship between infringement and profits*:

> This appeal requires us to apply the fundamental standard articulated in our decision in *Mackie*: that a copyright infringement plaintiff seeking to recover indirect profit damages "must proffer some evidence ... [that] the infringement **at least partially caused the profits** that the infringer generated as a result of the infringement."  *Mackie*, 296 F.3d at 911 (discussing the standard for summary judgment). From this principle, it is implicit that **the profits sought are those that arise from the infringement**.

*Id.* (emphasis supplied).  Section 504(b)'s allocation of the burdens of proving profits comes into play at trial only *after* the copyright owner has made a threshold showing that it is entitled to seek profits in the first place by showing their causal nexus to infringement.

Thus, defendants' argument is logically bankrupt, and any alleged failure to consider it does not justify the Court overruling itself now on reconsideration.  Section 504(b) does not address the standard to prove the threshold element of causal nexus, and *Polar Bear* does not hold that "the causal nexus inquiry focuses on the link between the alleged infringement and the defendant's *revenues*, not its costs," as defendants argue.  Rather, *Polar Bear* holds that the threshold causal nexus inquiry focuses on the link between the alleged infringement and the defendant's *profits*.  *Id.*  And as Rearden correctly stated in its opposition brief, "[r]evenue and expense are two sides of the same coin; in other words, all else being equal, an increase in revenue or reduction of expense equals increased profit." ECF No. 263-4, Ex. 2 at 19:12-13.

Defendants argue also that this Court erred in relying on *Charter Sch. Cap., Inc. v. Charter Asset Mgmt. Fund, L.P.*, 2016 WL 5921062 (C.D. Cal. Apr. 1, 2016), because although that case

held that evidence of cost savings attributable to copyright infringement is sufficient to defeat a causal nexus summary judgment motion, the *Charter* case "did not discuss the legal argument Defendants made here or explain why that argument should be rejected." ECF No. 300 at 4.  But the *Charter* case supports the proposition that a reduction of costs attributable to copyright infringement is proof of increased profit.  And *Charter's* persuasive authority is not diminished in any way for not considering the legal argument defendants proffer here, because that argument is flatly wrong.

Finally, defendants argue "that Rearden presented no evidence showing that the use of MOVA actually saved any costs with respect to the production of *Guardians of the Galaxy*." ECF No. 300 at 4:19-21.  This argument is flat wrong too.  Rearden presented the Ph.D. thesis of defendants' own technical expert, Dr. Hao Li, who wrote that high resolution capture provides cost savings in CG character animation:

> In his PhD thesis, defendants' expert Hao Li wrote that "[t]he main advantage of using high resolution capture data over alternative animation techniques, such as physical simulation or keyframing, is that realistic and complex surface dynamics come for free." Ex. 32 (Li 66:7-13).

ECF No. 263-4 at 19:16-19.  And in his deposition, Li testified that use of high-resolution facial performance capture technology, like MOVA, reduces time and labor in CG character animation *without limitation or qualification*:

> Q. What you're saying here is that, you know, if you want to do realistic and complex surface dynamics, you know, for – for facial performance using physical simulation or keyframing, it takes a lot of time and animators to do that work, its labor intensive, whereas all of the—you know, the—you know, the nuances, the realistic and complex nuances of a person's facial expression, those—those come along for free, essentially, if you have a high-resolution capture data.
> […]
> THE WITNESS: That's right.

*Id*. (citing Li 67:16-68:5).  Rearden also presented the testimony of Dr. Tinwell, who agreed with Li on the cost savings provided by using MOVA for CG character animation.  ECF No. 264-16, Tinwell Decl. ¶¶1, 104, 107; *see* ECF No. 263-4, at 19:19-20:2.

In a footnote, defendants argue that this Court erred in crediting this evidence because neither Li nor Tinwell said that the cost savings realized *in general* by using high resolution facial

performance capture, like MOVA, were realized *in particular* in *Guardians*. ECF No. 300 at 4, n. 5. First, this argument makes no sense. If high resolution capture technology avoids costs in animating CG characters in general, it cannot matter what particular film or videogame into which the animated CG character is ultimately inserted.[2] And second, most pertinently here on reconsideration, defendants never "presented this argument to the Court" before its Order denying their summary judgment motion as to *Guardians*, so this Court did not manifestly fail to consider it as required by Civil L.R. 7-9(b)(3).

### III. DEFENDANTS FAIL TO MEET THEIR BURDEN UNDER CIVIL L.R. 7-9(B)(3) AS TO *DEADPOOL*

Defendants argue that this Court manifestly failed to "consider material facts showing that the *Deadpool* featurette did not 'drive interest' in consumers to pay to see the movie." ECF No. 300 at 5:9-10. They argue that the *Deadpool* featurette appeared on a Blu-ray, DVD, or stream of the film, and they assert that this Court did not consider the following allegedly material facts:

> A Blu-ray (or DVD or streaming) featurette is bonus material at the end of a copy of a movie on a disc (or at the end of a streamed performance). The consumer cannot watch the featurette unless he or she already has paid for the copy of the movie (or the streamed performance). By definition, such material would not have a causal nexus to the consumer's decision to buy the Blu-ray disc, because the consumer already would have bought the disc before viewing the featurette.

ECF No. 300 at 5:14-19.

First, this argument ignores the likelihood that a purchaser of a Blu-ray, DVD, or stream may view the featurette and be motivated to see *Deadpool* again in a theater. Certainly, a jury could reasonably infer that was defendants' intent when they touted their use of MOVA in the featurette. Second, and again most pertinently here, defendants never presented the above-quoted alleged material facts, or more correctly the *argument* they urge here, to this Court before the Court's Order denying their summary judgment motion as to *Deadpool* as required by Civil L.R. 7-9(b)(3). *See,*

---

[2] To the extent that defendants attempted to rebut their own expert's testimony in their reply with the declaration of Darrel Hendler (*see*, ECF No. 280 at 15:5-7), the material fact of cost savings is at least disputed and therefore not amenable to resolution on summary judgment.

ECF No. 280, at 15:8-21. Therefore, they have again failed to carry their burden on reconsideration under the local rule.[3]

## CONCLUSION

For the foregoing reasons, Rearden respectfully requests that defendants' Motion for Reconsideration of Order Granting in Part and Denying in Part Motion for Summary Judgment on Causal Nexus Issue be denied.

DATED: March 18, 2022                HAGENS BERMAN SOBOL SHAPIRO LLP


By /s/ Mark Carlson
        Mark Carlson

STEVE BERMAN (pro hac vice)
MARK CARLSON (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

PHILIP GRAVES (CBA No. 153441)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
philipg@hbsslaw.com

RIO PEARCE, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

Attorneys for Plaintiffs
*Rearden LLC and Rearden Mova LLC*

---

[3] To the extent that defendants rely on unspecified *Guardians* arguments in support of reconsideration of *Deadpool*, those arguments fail for the same reasons stated in Section II.