

T 206.623.7292   F 206.623.0594

Mark S. Carlson
Attorney
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WA  98101
www.hbsslaw.com
**Direct (206) 268-9346**
**Direct Fax (206) 623-0594**
**markc@hbsslaw.com**

January 20, 2023

**VIA CM/ECF**

The Honorable Sallie Kim
United States District Court
Northern District of California
Courtroom C – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:     *Rearden LLC et al. v. The Walt Disney Company et al.*, No. 17-CV-04006-JST

Dear Judge Kim:

     Pursuant to the Court's order on January 17, 2023, Rearden submits the attached supplemental letter brief in opposition to Disney's motions to quash the subpoena of Emma Watson.

                    Respectfully submitted,

                    HAGENS BERMAN SOBOL SHAPIRO LLP

                    By:     */s/ Mark Carlson*
                           Mark Carlson

                    *Attorneys for Plaintiffs*

MSC:kcr

Defendants rely heavily on skeptical comments Judge Tigar made about the prospect of deposing Emma Watson during a July 25, 2018 case management hearing.  With no record before him, the Court found it "far-fetched" that Watson's views on MOVA Contour would "help the plaintiff survive summary judgment."  ECF No. 102, at 6:17-21.[1]

But three years later, on a full evidentiary record and briefing, he changed his mind.  Judge Tigar _cited Watson's interviews_ among other evidence in his ruling that Rearden survived summary judgment as to _Beast_.  Summarizing the evidence, the Court noted "Highlighted by Rearden are interviews with Condon and _Beauty and the Beast_ actors Dan Stevens and Emma Watson, in which MOVA is referenced by name and the process described in detail to the press."  ECF No. 102, 7:13-15.  He then ruled "This non-speculative evidence supports Rearden's theory of a causal nexus between the infringement and profits from _Beauty and the Beast_ ..."  _Id._, at 10:2-3.

Three witnesses attended every MOVA Contour capture session and then described it in promotional interviews: director Bill Condon and actors Stevens and Watson.  _Ms. Watson's testimony is not "cumulative."_  Of the three, she is by far the most knowledgeable and experienced in visual-effects-dominated films because of her starring role as Hermione in the four _Harry Potter_ films—two of which were made using MOVA Contour in addition to countless other visual effects.  In fact, at the _Beauty and the Beast_ debut press conference, Stevens observed after describing the MOVA Contour capture experience with Ms. Watson:

> Fortunately for me, there are few actresses on the planet who have worked with this amount of technology as Emma Watson….

Her observations on MOVA Contour's artistic contribution compared to any other visual effects one could mention carry even heavier weight than those of Messrs. Stevens and Condon.  The jury would benefit from her unique perspective, knowledge, and experience.

Rearden knew at the July 25, 2018 hearing that defendants would excerpt Judge Tigar's comments and use them to argue he had prohibited Watson's deposition.  So Rearden asked the Court directly.  ECF No. 33:11-18.  He replied "No, I wouldn't say that."  _Id.,_ at 33:19.  He said "she's not categorically off-limits.  No one is categorically off-limits."  _Id.,_ at 34:11-12.

The Court should not be swayed by defendants' empty offer to "stipulate that the press conference recording captures what Ms. Watson said…."  Of course it does.  But Rearden will offer her statements _to prove the truth of the matters asserted_.  For that purpose, Rearden must establish that the statements are not hearsay, or establish an exception to the hearsay rule.  That requires her deposition.  Furthermore, Rearden must establish the foundation for her statements, including her extensive prior experience with visual effects including MOVA Contour.  And the jury should have the opportunity to judge her credibility.  But it cannot judge her credibility by hearing an empty Disney stipulation that a video "captures what she said" read to them.

Defendants' accusation that the purpose of Watson's deposition is "to harass Ms. Watson, put pressure on Defendants, and garner publicity" is frivolous.  Rearden deposed David Hoberman, one of Hollywood's most famous producers, twice:  once as an individual and once

---

[1] Judge Tigar self-deprecatingly acknowledged that his comments about deposing Watson were "grumpy" (ECF No. 102, at 22:21-22), and he was "probably putting too much emphasis on Emma Watson…" (_Id._, at 32:21-22).

as the 30(b)(6) designee of his renowned company Mandeville Films.  Rearden deposed Bill Condon, a famous Hollywood director.  Defendants did not object that the witnesses were "harassed."  Defendants did not object that they were being "pressured."  They did not object that the depositions were used to "garner publicity."  And if they fear that Ms. Watson's deposition will be published, they can make it confidential under the protective order.  Rearden will not object because it has no intent to use her deposition for any improper purpose.