<u>VIA CM/ECF</u>                                          <u>PUBLIC-REDACTED VERSION</u>

March 9, 2023

The Honorable Sallie Kim
United States District Court for the Northern District of California
Courtroom C – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

    Re:    *Rearden LLC et al. v. Walt Disney Pictures*, No. 17-CV-04006-JST

Dear Judge Kim:

    Defendants respectfully submit this letter brief regarding Defendants' motion to compel a complete document production from Rearden. The parties have met and conferred telephonically before filing this letter. The undersigned counsel attests that she has complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this letter. If it pleases the Court, counsel will be prepared to discuss this motion at the discovery hearing set for March 13, 2023 or at any other time that is convenient to the Court. Dkt. 353.

    Defendants understood from the discovery conference held on February 2, 2023 that the Court prefers the parties to file joint letter briefs pursuant to the Court's standing order, with each side allocated four, double-spaced pages. Plaintiffs say they have a different understanding, and have declined to file a joint letter brief. They have advised that they will instead be filing a separate six page double-spaced brief. Defendants are therefore also filing a separate six page double-spaced brief.

    We thank the Court for its attention to this matter.

                                      Respectfully submitted,

                                      MUNGER, TOLLES & OLSON LLP

                                      By:      */s/ Blanca F. Young*

                                      *Attorneys for Defendants*

Defendants bring this motion to ensure that Rearden's production is untainted by the interference of its key witnesses. Despite assurances that counsel would be responsible for Rearden's document collection, very recent depositions have revealed for the first time that Rearden's CEO Stephen Perlman and its controller, Cindy Ievers, self-collected all of its documents. Additionally, those depositions revealed that Mr. Perlman—not counsel or a vendor—ran all ESI search terms for all custodians and then provided documents to counsel. Such self-collection, by a non-lawyer at the center of his own case, is inherently suspect. *See, e.g., DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 937 (N.D. Ill. 2021) (self-collection "is not defensible" (citation omitted)).

There is a simple remedy to ensure that Rearden's document production is complete: Rearden should export its custodians' mailboxes to a database, have someone other than Rearden's executives run the search terms, de-duplicate the results against the set Mr. Perlman provided to counsel, and produce any remaining documents that were not previously produced. This process would not require Rearden to "redo" its production. It would involve a few largely automated steps. Indeed, if Rearden is correct that its witnesses actually collected and searched everything they should have, the de-duplication process should result in no additional documents for Rearden to review and produce. The relief Defendants seek should not be burdensome, but it is imperative to ensure that Defendants receive a complete production.

I.  **BACKGROUND**

Through months of meet-and-confer, Defendants tried to get a straight answer as to whether Mr. Perlman and other Rearden executives were self-collecting their documents. They never got one until Rearden witnesses had to sit for depositions and answer questions under oath. Only then did Defendants learn that Rearden had entirely self-collected all of the documents it produced, that Mr. Perlman had personally run all search terms on all documents, and that he ran

2

the search terms across only a subset of emails maintained by a key custodian.

Defendants have been attempting to engage with Rearden about ESI discovery since September of last year. In September 2022, Rearden's counsel told Defendants that "we will run the specified queries on the designated custodians" and provide resulting hit counts. In October, however, counsel advised that Rearden "lacks the capability of running queries across its network." Defendants asked why Rearden could not simply export email boxes to a discovery vendor to search—a standard process for an ESI collection. Rearden conceded it could do so, and thereafter repeatedly assured Defendants that "our discovery vendor is working with Rearden personnel to export the [requested] email boxes to a searchable platform" where its vendor would run Defendants' proposed search terms.

In early December, however, Rearden abruptly reversed course and informed Defendants that it would *not* export email boxes for two of the four custodians Defendants requested (Mr. Perlman and Ms. Ievers) because they contained "classified information" and only Mr. Perlman could review them. Defendants questioned why any classified information had not already been segregated and whether Ms. Ievers ever even had access to that information. Defendants also objected to Mr. Perlman acting as a "gatekeeper." In response, Rearden represented that the classified information issue had been mooted by a "work around."

Counsel also assured Defendants that "we are not self-collecting here." Defendants noted that if Mr. Perlman was running searches, that "appears to be self-collection," and pressed counsel for more information about Rearden's search methods, including who was running searches on Rearden's document repositories. Once again, Defendants did not get a straight answer. In response, counsel stated that "Rearden has conducted its search subject to our direction and control," and that "we ran" the search terms. Rearden did not disclose Mr. Perlman

3

was running searches on his own, even as to custodians who did not have classified information. Nor did it disclose that Rearden would not search each custodian's email box in full.

New information came to light during the February 9, 2023 deposition of Rearden's controller, Cindy Ievers. Ms. Ievers testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1 (Ievers Dep. Tr.) at 163:2-9, 164:11-20, 182:16-183:9, 187:6-12, 187:22-188:4, 196:8-14. Rearden's counsel has confirmed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Mr. Perlman's deposition three days ago revealed further problems. Mr. Perlman testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for searching. Ex. 2 (Perlman rough) at 448:18-449:18. Instead, Mr. Perlman ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 447:17-448:1, 456:23-457:23. Mr. Perlman acknowledged that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 458:9-459:5.

Mr. Perlman offered two implausible explanations ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. First, he claimed that certain MOVA files had ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 448:18-452:19. Mr. Perlman also testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

---

[1] Exec. Order No. 13526, 75 Fed. Reg. 707, at *720 (Dec. 29, 2009) (listing restrictions on

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so a disinterested party could run the search terms. Second, Mr. Perlman claimed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 448:18-449:3, 449:12-14.

In short, Rearden executives—including its key witness who is the owner and CEO of Rearden and has a personal, financial stake in the outcome of this case—controlled every aspect of the document collection and search process before giving the documents to counsel to review.

## II.  ARGUMENT

Self-collection "is not defensible; counsel who rely on self-collection cannot have confidence in the accuracy and thoroughness of the process or determine how much relevant information custodians may have failed to produce or even intentionally delete[d.]" *DR Distributors*, 513 F. Supp. 3d at 937 (citation omitted). The client may fail "to identify all sources of responsive information" or fail to "find or provide to counsel all responsive documents and ESI." *Id.* at 935-37. These risks are heightened where, as here, the custodian has "a stake in the outcome of the litigation." *Id.* at 936.

Here, Rearden engaged solely in self-collection. *Id.* Both Mr. Perlman and Ms. Ievers collected their own documents. And, in Ms. Ievers's case, that collection occurred in 2017 before Defendants had served any document requests. Mr. Perlman—Rearden's primary fact witness—then served as the gatekeeper for *all* documents that counsel reviewed for production: he ran search terms, reviewed hits, and uploaded documents without counsel present. While Mr. Perlman has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 (Perlman rough) at 462:12-17.

---

access to classified information); 32 C.F.R. §§ 2001.41, 2001.43 (same)

5

The fact that Rearden's counsel consulted with Mr. Perlman during his collection is insufficient: "an attorney may not simply rely on custodian self-collection of ESI. Instead, counsel must 'test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 636 (E.D. Mich. 2021). Here, counsel was not present each time Mr. Perlman conducted a search and uploaded the results. Counsel also apparently did not verify whether Ms. Ievers and her husband conducted a complete collection in 2017.

Nor can Rearden point to the volume of its production as evidence that its production is supposedly complete. Showing an adequate search requires more than "merely eyeballing the volume of documents produced." *DR Distributors*, 513 F. Supp. 3d at 901. Indeed, it would be easier to hide the omission of a few key documents in a dump of 45,000 documents—like the one Rearden buried Defendants with four weeks before the close of fact discovery—than it would be to omit documents from a small production.

And there are serious gaps in Rearden's production. For instance, Rearden has not produced a complete set of financial statements for MOVA's pre-2012 work. These documents are highly relevant to damages as they show what MOVA has previously been paid for facial motion capture. Rearden has produced some statements, primarily from Ms. Ievers's files, but they are incomplete and, for some years, missing entirely. Rearden claimed that it does not possess a complete set of certain documents because they would have been stored on the OnLive.com email domain and, in 2012, control of that domain passed from OnLive (a Rearden-controlled company) to OL2, Inc., a separate entity. But Rearden's document production to date has included MOVA financial documents from Mr. Perlman's and Ms. Ievers's Rearden.com

email accounts, such as a July 10, 2006 email from Ms. Ievers regarding a "MOVA Business Plan." (REARDEN_MOVA066316).

Rearden's document production is highly suspect for additional reasons. Rearden first implausibly claimed it could not run ESI searches at all, and then it put the kibosh on the standard process of exporting email boxes to a vendor. Rearden wanted to maintain control of the process, and it did. Rearden has also been less than transparent about its process. Rearden led Defendants to believe it was searching Ms. Ievers's entire email box, but Mr. Perlman was really running searches through a subset of emails hand-picked by Ms. Ievers and her husband in 2017, before Rearden even had Defendants' document requests. Rearden also repeatedly assured Defendants that it was not self-collecting, but deposition testimony showed that Mr. Perlman and Ms. Ievers collected their own documents and Mr. Perlman ran all searches.

Relief is necessary to ensure Rearden's document production is complete. Contrary to Rearden's arguments, Defendants are not asking for a burdensome "do-over". Defendants are asking the Court to compel Rearden to engage in a simple, largely automated process that will confirm the collection is complete. *See Procaps S.A. v. Patheon Inc.*, 2014 WL 800468, at *3 (S.D. Fla. Feb. 28, 2014) (ordering forensic analysis as a remedy for self-collection). Specifically, Rearden should be ordered to: (1) export its custodians' mailboxes to a database (a largely automated step of zipping up mailboxes), (2) have someone other than Rearden's executives run the search terms (a step that involves typing in search terms), (3) de-duplicate the results against the set Mr. Perlman provided to counsel (an automated step), and (4) produce any remaining responsive documents that were not previously produced—a step that would require document review only if Rearden's production were *not* complete, in which case the review would be critical to ensure completeness. The Court should grant the motion.