1   KELLY M. KLAUS (SBN 161091)
    kelly.klaus@mto.com
2   BLANCA F. YOUNG (SBN 217533)
    blanca.young@mto.com
3   SHANNON AMINIRAD (SBN 324780)
    shannon.aminirad@mto.com
4   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, 27th Floor
5   San Francisco, California 94105-2907
    Telephone:      (415) 512-4000
6   Facsimile:      (415) 512-4077

7   JOHN L. SCHWAB (SBN 301386)
    john.schwab@mto.com
8   ROWLEY J. RICE (SBN 313737)
    rowley.rice@mto.com
9   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, 50th Floor
10  Los Angeles, California 90071-3426
    Telephone:      (213) 683-9100
11  Facsimile:      (213) 687-3702

12  *Attorneys for Defendants*

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                        OAKLAND DIVISION

17  REARDEN LLC and REARDEN MOVA LLC,      Case No. 4:17-cv-04006-JST-SK

18                Plaintiffs,               **REDACTED VERSION**

19          vs.                            **NOTICE OF MOTION AND MOTION TO
                                           PRECLUDE REARDEN'S RELIANCE ON
20  WALT DISNEY PICTURES, a California      UNTIMELY "MAYA SCRIPTS
    corporation, MARVEL STUDIOS LLC, a      INFRINGEMENT" THEORY**
    Delaware limited liability company, MVL
21  PRODUCTIONS LLC, a Delaware limited     Date:     August 31, 2023*
    liability company, INFINITY PRODUCTIONS Time:     2:00 p.m.
22  LLC, a Delaware limited liability company, and Judge: Hon. Jon S. Tigar
    ASSEMBLED PRODUCTIONS II LLC, a         Ctrm.:    6 (2nd Floor)
23  Delaware limited liability company,
                                           [Filed concurrently: Declaration of Kelly M.
24                Defendants.               Klaus, Declaration of Stephen H. Lane,
                                           Proposed Order, *Stipulation and Proposed
25                                          Order to Shorten Time on Briefing and
                                           Hearing]
26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.      FACTUAL BACKGROUND .........................................................................................4

    A.      Throughout This Litigation, Rearden Has Claimed The Copyrighted Work
At Issue Is The MOVA Contour Program, Not Maya Scripts ...................................4

    B.      Throughout Fact Discovery, Rearden Said The MOVA Contour Program
Consisted Of Source Code Files That Rearden Produced In 2019—That
Source Code Did *Not* Include Maya Scripts ............................................................5

    C.      Rearden's Technical Expert Reports—Served Months After The Close Of
Fact Discovery—Attempt To Expand The Scope Of Software That
Constitutes The Copyrighted Work And How It Was Infringed ...............................7

II.     RULE 8 BARS REARDEN FROM PURSUING ITS UNALLEGED NEW MAYA
SCRIPTS INFRINGEMENT THEORY AT TRIAL ......................................................10

    A.      Rearden Failed To Provide Timely Or Fair Notice Of Its Maya Scripts
Infringement Theory ................................................................................................11

    B.      Defendants Will Be Severely Prejudiced If Rearden Is Permitted To
Proceed With A New, Unpleaded Maya Scripts Infringement Theory After
The Close Of Fact Discovery ..................................................................................12

III.    RULES 26 AND 37 BAR REARDEN FROM OFFERING UNDISCLOSED
EVIDENCE ON ITS NEW MAYA SCRIPTS INFRINGEMENT THEORY ...................16

CONCLUSION ......................................................................................................................20

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,
    658 F.3d 100 (1st Cir. 2011) ..............................................................................10

*Amini Innovation Corp. v. Anthony Cal. Inc.*,
    No. CV 03-8749, 2006 WL 6855371 (C.D. Cal. Sept. 21, 2006)..................................10, 12, 13

*Antonick v. Electronic Arts, Inc.*,
    841 F.3d 1062 (9th Cir. 2016)..............................................................................11

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994)..............................................................................12

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000)..............................................................................3, 12

*Cyberian v. M.M. Primas Grp. Inc.*,
    No. SACV 08-01019 JVS (MLGx), 2010 WL 11507802 (C.D. Cal. Dec. 22,
    2010)..............................................................................17

*Davis v. Pinterest, Inc.*,
    601 F. Supp. 3d 514 (N.D. Cal. 2022) ..............................................................................19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ..............................................................................4, 12

*Giddings v. Vision House Prod., Inc.*,
    584 F. Supp. 2d 1222 (D. Ariz. 2008)..............................................................................10, 13

*Glob. Apogee v. Sugarfina, Inc.*,
    No. CV 18-05162-PSG-E, 2023 WL 3235934 (C.D. Cal. Mar. 31, 2023) ..........................10, 13

*Jackson v. United States*,
    No. C 05-3006 MHP, 2007 WL 4532223 (N.D. Cal. Dec. 19, 2007)........................................18

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
    457 F.3d 963 (9th Cir. 2006)..............................................................................10, 11

*Pineda v. City & Cnty. of S.F.*,
    280 F.R.D. 517 (N.D. Cal. 2012) ..............................................................................17

*Rearden LLC v. The Walt Disney Co.*,
    293 F. Supp. 3d. 963 (N.D. Cal. 2018) ..............................................................................4

*Reilly v. Wozniak*,
    No. CV-18-03775-PHX-MTL, 2021 WL 2138780 (D. Ariz. May 26, 2021) ..........................10

### TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ...........................................................................................................10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ..........................................................................................18

**FEDERAL STATUTES**

17 U.S.C. § 411 ........................................................................................................................15

**FEDERAL RULES**

Federal Rule of Civil Procedure 8 .............................................................................1, 3, 10

Federal Rule of Civil Procedure 15 ...............................................................................1, 10

Federal Rule of Civil Procedure 26 .........................................................1, 3, 16, 17, 18, 19

Federal Rule of Civil Procedure 37 .........................................................................1, 16, 18

Federal Rule of Evidence 402 .........................................................................................1, 10

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 31, 2023, at 2:00 p.m., or as soon as the matter may be heard, in Courtroom 6 (2nd Floor) of the above-captioned Court,[1] Defendants will and hereby do move for an Order precluding Plaintiffs (or "Rearden") from introducing evidence or argument at summary judgment or trial related to a theory that DD3 infringed copyright by allegedly copying "Maya Script" files.  Plaintiffs did not plead this "Maya Scripts infringement" theory, and Plaintiffs did not disclose it as an infringement theory until they served their expert reports, months after the close of fact discovery.

Defendants make this motion pursuant to Federal Rules of Civil Procedure 8, 15, 26, and 37 and Federal Rule of Evidence 402.  This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Kelly M. Klaus and Stephen H. Lane; all pleadings on file; and any other document or argument submitted at or prior to the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants move to preclude Rearden from introducing a completely new theory of copyright infringement that Rearden raised for the first time after the close of fact discovery. Rearden's new infringement theory is based on the alleged copying of various script lines in Maya files ("Maya Scripts").  Rearden never produced these Maya Scripts during fact discovery.  In fact, Rearden never identified these Maya Scripts in its pleadings, discovery responses, or source code production through more than five years of litigation.  It also is apparent that Rearden never registered the Maya Scripts with the Copyright Office.  Rearden elected to introduce this entirely new theory of DD3 infringing by copying Maya Scripts into RAM in its rebuttal technical expert report, which was served *three months* after the close of fact discovery, with summary judgment and trial on the immediate horizon.  Rearden's attempt to rely on untimely Maya Scripts as support for a new, unpleaded theory of direct infringement months after the fact discovery cut-off

---

[1] The parties are filing contemporaneously a stipulation to shorten the time for the briefing and hearing on this motion.

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

threatens incurable prejudice to Defendants and a massive disruption of the case management schedule.

Defendants have no direct knowledge of the MOVA Contour software.  Rearden claims to have developed that software and at all times material to this case, the software was operated exclusively by third-party visual effects vendor DD3 in its work to develop the face of the computer generated ("CG") Beast in *Beauty and the Beast*.  Defendants therefore had to spend years and extensive resources conducting discovery to investigate and establish a record regarding the fundamental who, what, when and how concerning the direct copyright infringement theory that Rearden pleaded.

Defendants relied on Rearden's stated allegations as a roadmap and conformed their discovery plan according to—and also because of—what Rearden alleged to be the copying in issue:  specifically, DD3 copying the MOVA Contour software program into computer random access memory ("RAM") at two, *and only two*, points in the facial animation process:  (1) when operating the physical rig, cameras, and lights to capture the facial performance of the actor who portrayed the Beast, Dan Stevens; and (2) when processing the data from those sessions to produce output files, including most notably a "tracked mesh."  Defendants questioned multiple deponents about Rearden's stated allegations, including who created MOVA Contour software, how it captured facial animation, how and when it processed MOVA Contour data, and the details surrounding how DD3 used the MOVA "tracked mesh" output in its visual-effects pipeline.  The discovery record conclusively showed that the copying alleged by Rearden was a small and preliminary portion of a massively complex pipeline for creating the CG Beast's face.

Rearden is clearly unsatisfied with what discovery revealed about MOVA Contour's extremely limited contribution to the on-screen appearance of the Beast's face.  That is why, months after the conclusion of fact discovery, Rearden is now attempting to raise a completely different theory of infringement that alleges copying of *different* code at *different* points in the visual-effects pipeline.  Rearden, through its technical expert's *rebuttal* report, now claims for the first time that thousands of never-previously-produced animation files show that various pieces of software within "Maya Scripts" were copied into RAM *throughout* the pipeline for animating the

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

Beast's face—not just at the preliminary stage when the facial performance was captured and processed.  This new infringement theory affects almost every important issue in the case, including whether there is infringement, and if so, what comprises that infringement; whether Defendants may be deemed secondarily responsible for that infringement; and, if there is liability, whether and to what extent this newly alleged infringement was responsible for any portion of the movie's profits.  It is difficult to conceive of a more unfair and improper expansion of the case long after the close of fact discovery.

The Federal Rules do not sanction Rearden's attempt to upend the case in this manner.  Under Rule 8, Rearden was required to give Defendants fair notice of what copyrighted work is at issue, and how the copyright allegedly was infringed.  Under Rules 26 and 37, Rearden was required to make full disclosure of the copyrighted work that it alleged to be at issue or face the consequence of not being able to present that evidence at trial.  And, under this Court's scheduling order, Rearden was required to litigate this case under the Court-ordered deadlines for fact discovery, expert discovery, and trial.  Rearden did none of this with respect to its new and untimely Maya Scripts infringement theory.  Courts have routinely rejected similar efforts to inject new theories in the case after discovery is closed.  *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).  The Court should do so here.

Defendants move at this juncture because it is imperative that the Court and parties know now, and not weeks before trial, whether Rearden may proceed with its Maya Scripts infringement theory.  Rearden's untimely disclosure of that theory affects every major remaining task between now and trial, including completing expert discovery, drafting summary judgment motions, and preparing for trial.  It will significantly impact the parties' preparations, and it threatens to derail the summary judgment and trial schedules and cause Defendants to suffer massive prejudice in defending this case.  Defendants respectfully request that the Court enter an order precluding Rearden from presenting evidence or argument based on this untimely theory.

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

1

## I.      FACTUAL BACKGROUND

2

### A.      Throughout This Litigation, Rearden Has Claimed The Copyrighted Work At Issue Is The MOVA Contour Program, Not Maya Scripts

3

4      The threshold question in any copyright case is:  what is the copyrighted work?  *See Feist*

5  *Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360–61 (1991).  From the date this case was

6  filed, Rearden's pleadings have pointed to the same alleged copyrighted work:  "[t]he MOVA

7  Contour computer program."  Dkt. 1 ¶ 59 (Compl.); Dkt. 63 ¶ 61 (First Am. Compl.); Dkt. 315

8  ¶ 63 (Second Am. Compl.).  Rearden's Certificate of Registration from the Copyright Office

9  identifies the work as "MOVA Contour," and says it was completed in 2009 as a work made for

10  hire for the Rearden-controlled company OnLive, Inc.  *Id.* Ex. 1 to each complaint.

11      Rearden originally claimed that the copyright in "MOVA Contour" included not only the

12  computer software program but the "output" files created after an actor provides his or her facial

13  performance.  Dkt. 1 ¶¶ 42, 123, 140.  Rearden alleged that Defendants directly infringed "MOVA

14  Contour" by incorporating output files into *Beauty and the Beast.*  The Court dismissed this claim,

15  holding it was implausible "that the MOVA Contour output is created by the program without any

16  substantial contribution from the actors or directors."  *Rearden LLC v. The Walt Disney Co.*, 293

17  F. Supp. 3d. 963, 970 (N.D. Cal. 2018).

18      Rearden amended its complaint in 2018 and in 2022.  The amended complaints did not

19  allege Defendants directly infringed Rearden's copyright.  Rearden instead alleged Defendants

20  were secondarily liable for DD3's infringement.  In both amended complaints, Rearden alleged

21  that DD3 directly infringed the copyright in the "MOVA Contour" software program by copying it

22  into computer RAM at *only two* points in the production process:  (1) when DD3 operated the

23  physical Mova apparatus to capture an actor's facial performance; and (2) when DD3 processed

24  the resulting data to produce output files, including the tracked mesh.  Dkt. 63 ¶¶ 43, 115, 129–

25  155; Dkt. 315 ¶¶ 45, 120, 160–186.  Rearden never alleged that the "MOVA Contour" program

26  included scripts embedded in Maya files, or that these Maya Scripts were loaded into RAM and

27  copied throughout the facial animation pipeline whenever Maya files were opened.  Indeed,

28

1    Rearden's complaints have never mentioned computer "script" files or even "Maya."[2]  *See*

2    *generally* Dkt. 63; Dkt. 315.

3        **B.        Throughout Fact Discovery, Rearden Said The MOVA Contour Program
               Consisted Of Source Code Files That Rearden Produced In 2019—That
4              Source Code Did *Not* Include Maya Scripts**

5        This case was in fact discovery for nearly five years.  At no point during fact discovery did

6    Rearden's discovery responses or source code production mention or include any Maya files, let

7    alone the newly identified Maya Scripts.

8        In 2018, Defendants asked Rearden to produce "[a]ny and all versions of the MOVA

9    CONTOUR SOFTWARE that DD3 allegedly infringed."  Klaus Decl. Ex. 2 (Rearden's Response

10   to Request for Production No. 7, served Oct. 3, 2018) at 5.  Rearden agreed to produce that

11   program.  *Id.*  Between January 15 and 17, 2019, Rearden made the source code for the MOVA

12   Contour program available for review by Defendants' consulting source code expert, Dr. David

13   Cummings.  Klaus Decl. Ex. 3.  At the time of Dr. Cummings's review, Rearden produced a

14   complete listing of all MOVA Contour files that comprised the program.  Klaus Decl. ¶ 4.  The list

15   of files did not include any "script" files.  Klaus Decl. Ex. 3 (2019 Source Code Directory); Lane

16   Decl. ¶ 17.  Almost all the files that Rearden produced were written in the C++ computer

17   language.  Lane Decl. ¶ 12.

18       Moreover, and critically, Rearden never told Defendants that Maya Scripts (or any other

19   files) were missing from the MOVA Contour program Rearden produced in response to

20   Defendants' requests.  Klaus Decl. ¶ 5.  Rearden's omission to say anything about missing Maya

21   Scripts can only be explained by the fact that Rearden did not contend the Maya Scripts were part

22   of the alleged copyrighted work or that their copying constituted infringement.  After all, Rearden

23   claims to own and know the contents of the MOVA Contour program.  If Rearden believed the

24   Maya Scripts were part of that program, Rearden would have known they were missing and was

25   obligated to tell Defendants they were missing.

26

27

28   [2] The second amended complaint refers only to the "script" or screenplay for the film *Beauty and
     the Beast*.  Dkt. 315 ¶ 118.

1    Rearden did nothing of the kind.  Instead, Rearden's initial disclosures, served in August

2    2018 and twice amended (most recently in March 2023), said nothing about Maya Scripts or that

3    they were in DD3's rather than Rearden's possession (as Rearden now claims).  Rearden's

4    disclosures repeatedly identified the MOVA Contour program as a document on which it would

5    rely, and the disclosures repeatedly represented, without qualification, that the program was in

6    *Rearden's* possession.  Klaus Decl. Ex. 10 (Plaintiffs' Initial Disclosures, served Aug. 28, 2018);

7    Ex. 11 (Plaintiffs' Amended Initial Disclosures, served Jan. 17, 2023); *id.* Ex. 12 (Plaintiffs'

8    Second Amended Initial Disclosures, served Mar. 28, 2023).  Rearden's disclosures thus

9    confirmed that the files Rearden produced for inspection in 2019 constituted the copyrighted work

10   that DD3 allegedly infringed.

11   Rearden's 30(b)(6) designee, its founder and CEO Steve Perlman, likewise testified that

12   the source code Rearden had made available for Defendants to review in 2019 was the MOVA

13   Contour software program at issue in this case.  Klaus Decl. Ex. 14 (Perlman Dep.) at 377:6–13;

14   *see also id.* at 164:2–11 (Perlman acknowledging that "MOVA Contour software program" means

15   "the program that Rearden claims was copied in this case").

16   Rearden also failed to raise the Maya Scripts infringement theory in response to

17   Defendants' October 2020 "causal nexus" summary judgment motion.  Defendants introduced

18   undisputed evidence that that the MOVA Contour program was not used after the tracked mesh

19   output was delivered from DD3's "Mova" team to its visual effects team.  The Darren Hendler

20   Declaration in support of that motion stated that after MOVA Contour was used to capture and

21   process the facial performance into a tracked mesh, "Mova software was not used at any other

22   point in the process of creating the Beast."  Dkt. 249-4 ¶ 16.  Mr. Hendler's declaration further

23   described in detail the numerous additional steps that were necessary to animate the Beast after the

24   handoff of the tracked mesh output file.  *Id.* ¶¶ 21–47.  Rearden did not submit any evidence

25   contesting these or any other factual statements in the Hendler declaration.

26

27

28

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

**C.      Rearden's Technical Expert Reports—Served Months After The Close Of Fact Discovery—Attempt To Expand The Scope Of Software That Constitutes The Copyrighted Work And How It Was Infringed**

By the time that fact discovery closed on March 2, 2023, Dkt. 313,[3] Defendants had collected evidence showing precisely how the MOVA Contour program was used only in the earliest stages of the process of developing the CG Beast's face, and that the program's operation only minimally impacted the on-screen appearance of the Beast's face.  Discovery established that intervening steps caused much of the nuance from the facial-captured data to be lost.  Discovery further established that thousands of hours of work by numerous artists, using many different technologies, were required to convert the mask-like tracked mesh rendering of Dan Stevens's facial motions into a Beast with a totally different facial structure, a heavy groom of hair, expressive eyes and mouth, skin, and other features that brought the Beast to life.  *See generally* Lane Decl. Ex. B (Lane Opening Rep.).

Months after fact discovery was closed, and while expert discovery was well underway, Rearden attempted to obfuscate MOVA Contour's limited capabilities and disclosed for the first time its new theory that the alleged copyright infringement included DD3 copying Maya Scripts into RAM throughout the facial animation pipeline.  Maya is a computer graphics application that was used (among numerous other tools) for many tasks in the laborious process to further develop the tracked mesh MOVA output into the CG Beast that audiences see on the screen.  Lane Decl. ¶ 13.  Maya is not owned by Rearden; it was developed and is owned by Autodesk, a third party. *Id.*

Maya .ma animation files are project files that contain art assets, and these files are typically created, edited, and executed to produce 3D graphics content.  *Id.* ¶ 14.  An example of a Maya animation file is shown below.

---

[3] By agreement of the parties, a small number of depositions took place after the fact discovery cut-off.  The last deposition concluded on April 18, 2023.  Klaus Decl. ¶ 17.



*Id.* ¶ 24.  Maya users may also use scripts, written in Maya Embedded Language ("MEL") or Python, to automate repetitive tasks, customize the software, and extend its functionality.  *Id.* ¶ 19.[4]

In his reports, Rearden's technical expert, Alberto Menache, advanced a theory that the Maya Scripts are also part of the MOVA Contour software program, and (in his rebuttal report) that DD3's copying of the scripts within these animation files also constituted infringement.

Mr. Menache's opening report, served on April 20, 2023 (*seven weeks* after the fact discovery cut-off), generically asserts that Rearden developed Maya Scripts, and that the Maya scripts are copied into RAM when an animation file is opened in Maya.  Klaus Decl. Ex. 15 (Menache Opening Rep.) at 16, 18.  Notably, however, Mr. Menache's opening report does *not* opine that any Maya Scripts were actually copied into RAM or used in connection with *Beauty*

---

[4] MEL scripts can be saved out and stored in files with a .mel extension, and Python scripts can be saved out and stored in files with a .py extension.  Lane Decl. ¶ 15.  MEL scripts may also be embedded within a Maya .ma animation file.  *Id.* ¶ 21.

Case No. 4:17-cv-04006-JST-SK
MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

*and the Beast*.  Rearden waited to introduce this theory of infringement until June 1, 2023, *three months* after the discovery cut-off, when Rearden served Mr. Menache's rebuttal report.  There, and for the very first time, Rearden alleged that DD3 caused Rearden's Maya Scripts to be copied into RAM throughout the animation pipeline during DD3's work on *Beauty and the Beast*.  Specifically, Mr. Menache asserts:

> All of the [DD3 visual effects] teams that accessed the Maya animation files for
> any work after the tracked mesh was ingested, potentially including simulation,
> lighting, and others, loaded MOVA software into the random access memory
> ('RAM') of their workstations when they opened Beast animation files containing
> ingested MOVA Contour tracked mesh.

Klaus Decl. Ex. 16 (Menache Rebuttal Rep.) at 30.  Mr. Menache further asserts that there is "[n]o clear demarcation between Mova Contour capture/processing"—Rearden's theory of infringement throughout fact discovery—"and other steps in the animation pipeline."  *Id*. at 32.

During the expert discovery period, and after Mr. Menache's opening report, Defendants asked Rearden to make available the source code for the Mova Contour software program for Defendants' new technical expert, Dr. Stephen Lane, to review.  Klaus Decl. ¶ 6.  Rearden permitted Dr. Lane to conduct a time-limited review, in counsel's office on a restricted computer.  *Id.* ¶ 7; Lane Decl. ¶¶ 9–11.

The production that Dr. Lane reviewed consisted of two tranches of files.  First, Rearden re-produced the same original source code repository that it had produced in 2019.  Klaus Decl. Ex. 5 (5/11/23 Email from Mr. Carlson) (indicating that source code files were "same as 2019").  Second, Rearden *added* more than *2,500* Maya (.ma) animation files that Rearden said had been "returned" by DisputeSoft/DD3 through the *SHST* asset return process, to which Disney is not a party.  Lane Decl. ¶ 10; Klaus Decl. Ex. 17 (6/7/23 Correspondence); *id.* Ex. 8 (3/23/23 Asset Return Production); *id.* Ex. 9 (4/7/23 Asset Return Production).  Based on Dr. Lane's review, the Maya files contained scripts, none of which are included in the MOVA Contour software program that Rearden originally produced in 2019.  *See* Lane Decl. ¶ 17.  Dr. Lane's review further confirmed that the MOVA software code that operates to capture the facial performance and

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

1   process the MOVA output files is *not* the same code in the Maya Scripts that Rearden's expert,

2   Mr. Menache, now claims was copied when animators did their work using Maya.  *See id.* ¶ 22.

3   **II.    RULE 8 BARS REARDEN FROM PURSUING ITS UNALLEGED NEW MAYA**
       **SCRIPTS INFRINGEMENT THEORY AT TRIAL**

4

5        "Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give

6   the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"

7   *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v.*

8   *Sorema N.A.*, 534 U.S. 506, 512 (2002)).  In accordance with this fair notice requirement, where a

9   plaintiff asserts a new, unpleaded liability theory after the fact discovery deadline, courts preclude

10  plaintiffs from asserting the new theory at trial pursuant to Federal Rule of Evidence 402 and

11  Federal Rule of Civil Procedure 15.  *See, e.g.*, *Amini Innovation Corp. v. Anthony Cal. Inc.*, No.

12  CV 03-8749, 2006 WL 6855371, at *9–10 (C.D. Cal. Sept. 21, 2006) (granting motion in limine

13  where plaintiff sought to pursue new theory of copyright infringement liability at trial); *Glob.*

14  *Apogee v. Sugarfina, Inc.*, No. CV 18-05162-PSG-E, 2023 WL 3235934, at *3 n.2 (C.D. Cal. Mar.

15  31, 2023) (precluding plaintiff from asserting new infringement period and theory of infringement

16  where plaintiff failed to comply with Rule 8's notice pleading requirements); *Giddings v. Vision*

17  *House Prod., Inc.*, 584 F. Supp. 2d 1222, 1224–26 (D. Ariz. 2008) (finding plaintiff was precluded

18  from asserting new moral rights theory of infringement, which was not alleged in complaint, after

19  the discovery deadline had passed); *Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2021 WL

20  2138780, at *3 (D. Ariz. May 26, 2021) (granting motion in limine to preclude plaintiff from

21  presenting argument and evidence on contributory and vicarious infringement theories because

22  "Plaintiff did not assert these claims in his complaint, nor did he seek to amend his complaint to

23  include them" and "[o]nly now, at the eve of trial, has Plaintiff indicated that these claims will go

24  forward").

25        Consistent with this authority, courts have refused to allow plaintiffs to insert late in the

26  case new infringement claims based on later, unregistered versions of source code that has been

27  the subject of prior copyright registrations.  *See, e.g.*, *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,

28  658 F.3d 100, 104–07 (1st Cir. 2011) (affirming grant of summary judgment where plaintiff

1   "ha[d] not produced the relevant source code"; evidence supporting infringement of 2009 version

2   of plaintiff's source code was insufficient to show that its earlier registered versions were

3   infringed, absent showing that they were substantially similar to allegedly infringing program

4   (citation omitted)); *see also Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016)

5   (rejecting infringement claim where plaintiff failed to introduce source code to permit substantial

6   similarity analysis).

7
8       **A.    Rearden Failed To Provide Timely Or Fair Notice Of Its Maya Scripts Infringement Theory**

9       As discussed, Rearden's Maya Scripts infringement theory is not stated anywhere in any

10  complaint in this case.  In its first and second amended complaints, Rearden alleged that DD3

11  infringed the copyright in the MOVA Contour program (1) when DD3 operated the physical

12  MOVA apparatus to capture an actor's facial performance and (2) when DD3 processed the

13  images to produce the "track[ed] mesh" output file.  Dkt. 63 ¶¶ 43, 115, 129; Dkt. 315 ¶¶ 45, 120,

14  160.  Nowhere did Rearden allege that further infringement occurred *after* the tracked mesh output

15  file had been produced, and whenever DD3 visual effects artists opened Maya animation files

16  containing the scripts that Rearden only now claims are part of the MOVA Contour program.  If,

17  as Rearden now claims, it intended to assert its Maya Scripts infringement theory earlier in the

18  case, then Rearden should have amended its complaint to state that explicitly.  Had Rearden done

19  that, the parties could have engaged in motion practice and fact discovery.

20      But Rearden did not seek to amend its complaint.  Nor did it produce any scripts when

21  producing its entire repository of MOVA Contour source code in 2019.  Klaus Decl. ¶ 9; Lane

22  Decl. ¶ 17.  Additionally, while Rearden now claims that it did not have the Maya Scripts because

23  they were in DD3's possession, Rearden did not tell Defendants that its 2019 source code

24  production was incomplete.  Klaus Decl. ¶ 9.  On the contrary, Rearden has always indicated the

25  MOVA Contour source code was entirely in its possession.  Klaus Decl. Exs. 10–12 (Initial

26  Disclosures).

27      Rearden also cannot claim it provided fair notice that the scripts were part of the allegedly

28  infringed copyrighted work through its expert reports.  Disclosure in an expert's report served

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

1   after the close of fact discovery is not sufficient.  *Pickern*, 457 F.3d at 969 ("[B]ecause the

2   expert's report was not filed and served until after the discovery deadline, that report cannot be

3   construed as notice that would prompt the [defendants] to seek discovery regarding the new

4   allegations.").

5          During pre-motion meet-and-confer discussions, Rearden claimed it had informally

6   disclosed the Maya Scripts infringement theory by asking questions about "scripts" at the

7   depositions of Steve Perlman (on March 6, 2023, after the fact discovery cut-off) and Darren

8   Hendler (on February 16, 2023).  This claim is baseless.  Vague questions at a deposition do not

9   provide notice of a completely new infringement theory, nor do they amend Rearden's existing

10  discovery responses or complaint.  Even if those questions were deemed to provide some inkling

11  that Rearden was considering a new Maya Scripts infringement theory, that would not excuse

12  Rearden's failure to allege that theory expressly.  On the contrary, if Rearden knew at Mr.

13  Hendler's February 16, 2023 deposition that it intended to press a new infringement theory based

14  on the Maya Scripts, Rearden had both the time and opportunity after Mr. Hendler's deposition to

15  seek to amend its complaint before the fact discovery cut-off.  *See Amini*, 2006 WL 6855371, at

16  *10 (finding that even "if Plaintiff indeed gave notice informally . . . about its plan to pursue an

17  additional legal theory, then Plaintiff had the opportunity" to take action such that "Defendants

18  could be certain about the need to re-open discovery").  Rearden did not seek to amend its

19  complaint.

20          **B.      Defendants Will Be Severely Prejudiced If Rearden Is Permitted To Proceed**
             **With A New, Unpleaded Maya Scripts Infringement Theory After The Close**
21           **Of Fact Discovery**

22          Rearden's failure to provide fair notice prejudices Defendants.  The "complaint guides the

23  parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to

24  defend against the plaintiff's allegations."  *Coleman*, 232 F.3d at 1292.  "The lack of notice"

25  concerning a particular theory of liability "makes it difficult, if not impossible, for [the defendant]

26  to know how to defend itself."  *Id.*  This is particularly true where the plaintiff asserts a new

27  infringement theory or type of copyrighted work, since determining what comprises the

28  protectable elements of the copyrighted work is the foundation of an infringement claim.  *Feist*,

499 U.S. at 361 (copyright infringement claim requires proof of "copying of constituent elements of the work that are original"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (distinguishing between licensed and unlicensed elements of the software to determine whether there was copying).

Courts have repeatedly found that defendants are prejudiced where a plaintiff belatedly asserts new elements or aspects of the copyrighted work. *See, e.g.*, *Amini Innovation Corp.*, 2006 WL 6855371, at *9–10; *Glob. Apogee*, 2023 WL 3235934, at *3 n.2; *Giddings*, 584 F. Supp. 2d at 1224–26. For example, the plaintiff in *Amini Innovation Corp.* originally pursued a copyright infringement claim based on its registered copyright. 2006 WL 6855371, at *9–10. Before trial, the plaintiff also sought to pursue a new legal theory of copyright infringement liability based on a compilation copyright. *Id.* This theory was not alleged in the complaint and not covered by the copyright registrations. *Id.* at *10. The court therefore precluded the plaintiff from pursuing this new theory, reasoning that the compilation copyrights were "sufficiently different that substantial preparation would be required to defend against" it and that defendants "[would] be prejudiced if [the plaintiff was] allowed to pursue a new theory of liability." *Id.* at *9–10.

Here, Defendants will be severely prejudiced if Rearden is permitted to pursue its untimely Maya Scripts infringement theory. For years, the parties have been litigating this case based on a shared understanding that the MOVA Contour software program at issue was embodied in the source code production that Rearden made in 2019—a production that did not include the Maya Scripts that Rearden is now attempting to assert were infringed. And the parties have been litigating this case—and taking third-party discovery—based on the understanding that the alleged copying of that software program occurred when the facial performance was captured and the data was processed into MOVA output files—not after that point.

Rearden's attempt to inject a new infringement theory into the case has deprived Defendants of the ability to conduct discovery and build a record addressing the fundamental questions of the who, what, when, and how of infringement. Defendants had no knowledge of the MOVA Contour program's operation before this case started or how exactly the program was used by DD3. Guided by the allegations in the complaint, Defendants have spent years discovering

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

who operated the software, when the software was copied into RAM, and what it did.  This case has included 41 depositions, and the production of more than 250,000 pages of documents.  Klaus Decl. ¶ 15.  The record compiled through years of discovery shows that MOVA Contour was copied into RAM and its programs executed only at the earliest stages of the facial motion capture process.

Through its post-eleventh-hour attempt to expand what constitutes the copyrighted work and how it was infringed, Rearden is trying to present a different record concerning different infringement occurring throughout the facial animation pipeline.  Rearden's attempt to inject a new infringement theory has deprived Defendants of the opportunity to take discovery on multiple issues, including:

- *What the scripts are.*  Rearden has not provided any listing of the Maya Scripts it claims to be part of the MOVA Contour software program.  Klaus Decl. ¶ 10; Lane Decl. ¶ 30.  Defendants therefore cannot determine which of the dozens of scripts contained in the Maya animation files are allegedly infringing.  *Id.*

- *Whether the scripts are protectable.*  Rearden's late disclosure has prevented Defendants from pursuing discovery on whether the scripts, which are written in the Maya program using the Autodesk's proprietary MEL language, are even protectable expression.

- *Who owns copyright in the scripts.*  Rearden's late disclosure has prevented Defendants from pursuing discovery on whether Autodesk, DD3, or any other parties own copyright in the scripts.  For example, DD3 obtained possession of the MOVA Contour software in or about May 2013, and the earliest date modified for any Maya animation file produced is July 24, 2013.  Klaus Decl. ¶ 9; Lane Decl. ¶ 29.  Based on the Maya animation files alone, Defendants therefore cannot determine which scripts were written by Autodesk, DD3, or Rearden.  Moreover, the number of scripts in each Maya animation file varies over time, indicating that Maya Scripts changed while the MOVA technology was being used at DD3, from 2013 forward.  Lane Decl. ¶¶ 27–29.  With fact discovery closed, Defendants cannot obtain evidence to further support this defense.

- *Whether the scripts were part of the work that Rearden registered with the Copyright Office.*  Rearden has never disclosed what source code it deposited with the Copyright Office.  If the Maya Scripts were not deposited with the Copyright Office (as appears almost certainly to be the case), or if Rearden did not tell the Copyright Office that it claimed the Maya Scripts were to be included in the deposited work but were in the possession of a third party, then the Maya Scripts are not part of the work covered by Rearden's registration.[5]  Moreover, it is impossible to square Rearden's new claim that the Maya Scripts are part of the "MOVA Contour" represented to have been completed in 2009 with even the limited evidence showing that Maya Scripts continued to be written and deleted from 2013 forward. *Compare* Dkt. 315 ¶ 45, *with* Lane Decl. ¶¶ 27–29.

- *Whether the scripts were copied in connection with* Beauty and the Beast.  Defendants have been unable to pursue full discovery on whether the Maya Scripts were actually copied in connection with DD3's work on *Beauty and the Beast*.  For example, some of the produced Maya animation files appear to relate to projects or films other than *Beauty and the Beast*.  Lane Decl. ¶ 22.  The files also lack complete metadata, such as when they were opened, closed, or created, as would be necessary to determine whether any copying occurred. *Id.* ¶ 29.  Defendants have also been unable to review DD3's records to determine whether these scripts were copied after the tracked mesh output files were provided to the visual effects team.  The limited available evidence suggests, in fact, that that DD3 had a practice of sending files to downstream teams in the animation pipeline that did not include scripts. *See* Klaus Decl. Ex. 13 (Hendler Dep.) at 218:18–21 (deposition testimony that a script "would only have been stored in that file until the first publish process, by which stage that would have been scraped out as it was handed off to downstream teams").  But Rearden's late disclosure has prevented Defendants from fully developing the facts relevant to this issue.

---

[5] Only the registered work may form the basis of a copyright infringement claim.  17 U.S.C. § 411.

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

- *Whether the scripts were used after the tracked mesh was delivered to the DD3 visual effects team.*  Defendants have been unable to conduct depositions of third-party witnesses at DD3 regarding if, how, when, and for what purpose they used the Maya Scripts, and what the Maya Scripts actually contributed to the Beast's final appearance or to the film's profits—if anything.

These fact questions—now unanswerable—go to every significant liability and damages issue in the case, including whether there was infringement, whether Defendants can be held responsible for it, and whether (and if so to what extent) the alleged script copying had any causal nexus to the movies' profits.

It does not cure this prejudice that Rearden made certain Maya files available for Defendants' expert to review for a three-day period in May 2023 after Defendants requested an opportunity to review the source code repository.  There were more than 2,500 Maya files.  *See* Lane Decl. ¶ 10.  Defendants could not fully examine these files in just the three days that Rearden made them available; nor could Defendants do any other discovery related to what the scripts are, what they do, who owns them, whether or how they were used or copied in connection with *Beauty and the Beast,* when they were used or copied, and for what purpose.

The prejudice to Defendants from Rearden's new infringement theory is manifest.

## III.   RULES 26 AND 37 BAR REARDEN FROM OFFERING UNDISCLOSED EVIDENCE ON ITS NEW MAYA SCRIPTS INFRINGEMENT THEORY

Preclusion is also warranted under Federal Rules of Civil Procedure 26 and 37.

Federal Rule of Civil Procedure 26 requires Rearden to provide "a description by category and location . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Rule 26 also requires Rearden to supplement its response to a request for production "in a timely manner if [Rearden] learns that in some material respect the disclosure or response is incomplete or in correct, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(1)(A).  Rule 26 further requires that Rearden provide an opening expert report that contains "a complete statement

1   of all opinions the witness will express and the basis and reasons for them" at the time ordered by

2   the Court.  Fed. R. Civ. P. 26(a)(2)(B)(i), (D)

3       Rearden failed to comply with Rule 26 by failing to timely disclose the location of alleged

4   elements of the copyrighted work and to supplement its response to Request for Production No. 7 .

5   To date, Rearden has consistently represented in its initial disclosures that the "Contour program

6   source code" was in the possession of "Rearden LLC."  *See* Klaus Decl. Exs. 10–12 (Initial

7   Disclosures).  It never described the source code in Rearden's possession as only a *portion* of the

8   entire alleged copyrighted work.  Klaus Decl. ¶ 5.  Similarly, in response to Defendants' Request

9   for Production No. 7, Rearden agreed to produce copies of "[a]ny and all versions of the MOVA

10  CONTOUR SOFTWARE from the date of conception to the present."  Klaus Decl. Ex. 2

11  (Rearden's Response to Request for Production No. 7, served Oct. 3, 2018) at 5.  Rearden made

12  that source code available in January 2019.  Klaus Decl. ¶ 4.  Since then, Rearden has never

13  updated its response to disclose that its January 2019 production was incomplete, and that Rearden

14  also contended that Maya Scripts were part of the "MOVA CONTOUR SOFTWARE."  *Id.* ¶ 5;

15  *see also* Klaus Decl. Ex. 1 (Defendants' Requests for Production) at 2 (defining "MOVA

16  CONTOUR SOFTWARE" as "the computer software program, including without limitation

17  source code, that is the subject of the COMPLAINTS").

18      Rearden also failed to comply with Rule 26 by not properly disclosing that Mr. Menache

19  would express the opinion that DD3 infringed Maya Scripts whenever DD3 employees opened

20  Maya animation files in their work on *Beauty and the Beast*.  The Court's scheduling order

21  required parties to serve their opening expert reports "on all other issues unrelated to damages" by

22  April 20, 2023.  Dkt. 368 at 2.  Mr. Menache offered no opinions regarding any alleged copying in

23  connection with *Beauty and the Beast* in his opening report.  *See* Klaus Decl. Ex. 15 (Menache

24  Opening Rep.).  With respect to Maya Scripts, Mr. Menache only stated generically that when a

25  Maya animation file is opened, a script can be copied into RAM.  *See id.* at 16, 18.  He never

26  connected this statement in any way to *Beauty and the Beast*.  Rearden's failure to disclose all of

27  Mr. Menache's opinions in his opening report violates Rule 26(a).  *See Cyberian v. M.M. Primas*

28  *Grp. Inc.*, No. SACV 08-01019 JVS (MLGx), 2010 WL 11507802, at *7 (C.D. Cal. Dec. 22,

1    2010) (precluding expert testimony where the expert was not timely identified as an expert

2    infringement witness); *see also Pineda v. City & Cnty. of S.F.*, 280 F.R.D. 517, 520 (N.D. Cal.

3    2012) (expert's report violated Rule 26 where it did not contain opinions that were "properly and

4    thoroughly set forth and supported"); *Jackson v. United States*, No. C 05-3006 MHP, 2007 WL

5    4532223, at *4–5 (N.D. Cal. Dec. 19, 2007) (finding cursory and incomplete expert report did not

6    meet requirements of Rule 26(a)(2)(B), which provides that "an expert's report must be 'detailed

7    and complete' in order 'to avoid the disclosure of "sketchy and vague" expert information'"

8    (citation omitted)).

9          Under Rule 37, Rearden is "not allowed to use" information that it failed to timely disclose

10   "to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."

11   Fed. R. Civ. P. 37(c)(1).  Rule 37 "gives teeth to [Rule 26's] requirements by forbidding the use at

12   trial of any information .  . . that is not properly disclosed."  *Yeti by Molly, Ltd. v. Deckers*

13   *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (only two "exceptions ameliorate the

14   harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose

15   the required information is substantially justified or harmless").

16         For reasons set forth above, Rearden's failure to timely disclose its theory is not harmless.

17   *See* Section II.B, *supra*.  Nor is it substantially justified.  During the meet-and-confer process,

18   Rearden previewed its excuses for not disclosing its Maya Scripts infringement theory while fact

19   discovery remained open.  None of Rearden's excuses justify, much less excuse, its untimely

20   disclosure.

21         First, Rearden claimed that it was not asserting a new theory of infringement, because it

22   has previously claimed its alleged copyright in the MOVA Contour software program is infringed

23   whenever DD3 copied code from that program into RAM.  Klaus Decl. Ex. 17 (6/7/23

24   Correspondence).  Rearden has not shown, and cannot show, that its complaints alleged that

25   scripts allegedly embedded in Maya animation files were part of the copyrighted work, or that

26   such scripts were copied into RAM when those files were opened by DD3.

27         Second, Rearden claimed that it "did not describe all of the means by which MOVA

28   Contour software code was copied from NVM to RAM in response to a discovery request because

-18-                                      Case No. 4:17-cv-04006-JST-SK

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

1    no discovery request asked [Rearden] to do so."  Klaus Decl. Ex. 17 (6/7/23 Correspondence).

2    This response ignores Defendants' 2018 request that asked Rearden to produce all versions of the

3    alleged copyrighted work, and the fact that Rearden did not include the scripts or otherwise

4    represent that any components were missing when Rearden made the MOVA Contour program

5    available for Defendants' expert to review in 2019.  *See* Klaus Decl. ¶¶ 4–5 & Ex. 2 (Rearden's

6    Response to Request for Production No. 7, served Oct. 3, 2018) at 5.

7        If the Maya Scripts actually were part of the MOVA Contour software program, Rearden

8    should have known they were not in the source code that it produced in 2019 or that it registered

9    with the Copyright Office.  Rearden should have disclosed that Maya Script files were missing

10   from its production of the program and that Rearden needed to obtain them from DD3.  Rearden

11   did not do that.  Klaus Decl. ¶ 5.  On the contrary, Rearden's disclosures always stated plainly that

12   the Maya Contour program—the alleged copyrighted work—was in Rearden's possession.  *See*

13   Klaus Decl. Exs. 10–12 (Initial Disclosures).

14       Third, Rearden blamed the late production of the Maya animation files on DD3 and the

15   asset-return process in *SHST*.  Klaus Decl. Ex. 6 (5/11/23 Email from Mr. Carlson).  This belated

16   attempt at finger-pointing is specious.  The *SHST* litigation and asset-return process is a separate

17   proceeding.  If Rearden thought the Maya Scripts were relevant to *this* litigation, it should have

18   sought them in *this* litigation while fact discovery was still open.  Notably, Rearden served

19   subpoenas on DD3 on June 22, 2018 (over five years ago) and again on January 5, 2023.  If

20   Rearden believed that the Maya Scripts were responsive to those subpoenas and relevant to this

21   litigation, Rearden should have moved to compel their production *before* fact discovery closed.

22   *See Davis v. Pinterest, Inc.*, 601 F. Supp. 3d 514, 525–27 (N.D. Cal. 2022) (untimely disclosure

23   was not substantially justified where the plaintiff "chose to wait so long to obtain the information

24   he needed for his case" and failed to move to compel).  Instead, Rearden chose to obtain the files

25   through the *SHST* asset-return process to which Defendants are not parties, which meant

26   Defendants were in the dark about both the files being returned and Rearden's reasons for seeking

27   them.  To the extent that Rearden intended to rely on scripts in Maya animation files from the

28   asset return process to support its infringement claim, Rearden was obligated to timely supplement

MOTION TO PRECLUDE UNTIMELY "MAYA SCRIPTS INFRINGEMENT" THEORY

its disclosures to identify the existence of these files to Defendants.  Fed. R. Civ. P. 26(e)(1)(A).
Had Rearden complied with its obligations under the Rules, the parties could have accounted for
the need for discovery on these files in the case schedule.  Rearden failed to do so.  And its failure
to timely produce the Maya Scripts and also its failure to properly disclose the Maya Script
infringement theory necessarily precludes Rearden from relying on that theory for the first time in
its rebuttal expert report.

## CONCLUSION

For the reasons set forth above, the Court should preclude Rearden from introducing
evidence or argument related to Rearden's new, unpleaded theory of copyright infringement based
on the Maya Scripts.

DATED:  June 9, 2023                    MUNGER, TOLLES & OLSON LLP


By:      */s/ Kelly M. Klaus*
KELLY M. KLAUS

*Attorneys for Defendants*