Rearden requests an order compelling DD3 to produce certain files created during production of *Beauty and the Beast* by DD3 using CG animation software called Maya ("Maya animation files"). The MOVA tracked meshes were loaded (or "ingested") into Maya animation files to animate the Beast's face, and tools were then used in Maya to adjust the facial performance, add hair and lighting, and perform other tasks until the shot was finished (the "animation pipeline"). Rearden's requests are narrowly focused on the Maya animation files for only 64 shots that used the MOVA tracked meshes, including files that are linked to the Maya animation files (such as assets, textures, and references). *See* Ex. A. Rearden requested these files in a subpoena issued on January 5, 2023, which included the following request:

> 15.  Documents sufficient to show all use of the MOVA tracked mesh output in all shots for which it was used in BATB. [*See* Ex. B.]

MOVA software includes code that controls the apparatus (the camera apertures and lights), and processes the data captured by the cameras. That code is written in a number of programming languages, such as C++ and Python. MOVA also includes a library of scripts written in the Maya Embedded Language (MEL), which are plug-ins that allow MOVA to run as a skin over the Maya program when a Maya animation file having MOVA tracked mesh is opened and to perform other facial capture, retargeting and animation functions. When some such files are opened, the MOVA MEL scripts provide a "Mova UI" ("MOVA User Interface"), as shown in Image 10 in Exhibit C, hereto. Also, a Maya menu option allows a user to trace all of the code that was run when the file was opened, and to inspect the code embedded within the file, which in this case includes the MOVA MEL scripts, as shown in Image 11 in Exhibit C, hereto.[1]

---

[1] Rearden files Exhibit C without redaction because it shows only a small portion of the source code for one MEL script. Rearden does not waive confidentiality of its source code as a whole or any part.

According to Rearden's expert, Alberto Menache, each time DD3 opened a Maya animation file containing a MOVA tracked mesh that included embedded MOVA MEL scripts, these MOVA MEL scripts were copied into their workstations' RAM along with the Maya facial animation files, each constituting another infringement of Rearden's copyright:

> The Mova software includes scripts or plug-in components ("Programs") that run inside third-party software. For example, if a Maya project file is a computer graphics ("CG") character with Mova facial animation, and that file is opened in the Maya facial animation software, the Maya project file will have embedded links to Mova software components that Maya will copy from NVM into RAM. So, copying of Mova software occurs not only in capture and processing of facial performances, but also in the facial animation pipeline where third-party software is used.

Menache Opening Report at 7. This extends the copyright infringement in this case far beyond the initial performance capture and processing stage, and deep into DD3's animation pipeline.

Here, the parties' technical experts disagree on whether MOVA software was used, copied, and infringed in DD3's animation pipeline, which is why Rearden has consistently pressed for their production. Disney's technical expert, Dr. Stephen Lane, has asserted in his rebuttal report that there is no evidence that the *Beauty and the Beast* animation pipeline included any Maya files with MOVA code. Lane Rebuttal Report at 4. Dr. Menache disagrees. DD3's refusal to produce the Maya animation files has allowed Disney—and DD3, Disney's indemnitor in this litigation—to conveniently assert there is no evidence that any MOVA code was in the extended animation pipeline, and therefore no evidence of copyright infringement in a later stage of facial animation after ingestion of the MOVA Contour tracked mesh. The Maya animation files we are seeking will conclusively resolve this dispute between the experts.

A.  **The fact discovery cutoff should not bar Rearden's motion.**

    1.  **DD3 should not benefit from its own delay when Rearden timely requested the Maya animation files and diligently pursued them.**

DD3 served objections to the January 5, 2023 subpoena on January 19, and requested a discovery conference. It served supplemental objections on February 15, two weeks before the March 2 discovery cutoff. On the same date, DD3 agreed to produce *Beauty and the Beast* production files stored in its DMX system. But since the files would have to be reviewed by someone with technical expertise, Rearden asked if Mr. Perlman could review them. DD3 refused. On February 17, Rearden requested a discovery conference, but the issue was not resolved. On April 18, Rearden retained a technical expert, Alberto Menache, and requested that DD3 produce the files. DD3 agreed, although it was still in the process of restoring the requested files for review. DD3 did not make the files available for inspection until May 4.

Rearden consistently pressed DD3 to confirm that the May 4 DMX production would include the Maya animation files. DD3's counsel replied that he did not know. When Mr. Menache inspected the files in DD3's DMX system, he discovered that they *did not* include the Maya animation files. He identified 64 shots that included MOVA tracked meshes, and on May 10 Rearden requested the Maya animation files associated with them. Ex. A. On May 15, DD3 refused the request. The parties met and conferred on May 16, but were unable to agree.

In sum, Rearden timely requested the Maya animation files before the fact discovery cutoff. DD3—Disney's indemnitor—ran the clock out, and should not benefit from its delay.

    2.  **The Maya animation files present an expert discovery issue, and expert discovery is still open.**

The parties' respective expert reports frame the technical issue presented here. Dr. Lane's report states that any MOVA copyright infringement had to occur during the initial performance capture by the MOVA physical apparatus and the processing of captured data into tracked mesh

-3-

by MOVA software. According to Dr. Lane, once the tracked mesh entered DD3's extended animation pipeline, there was no further use or infringement of MOVA software.

Mr. Menache's opening and rebuttal reports discuss the MOVA MEL scripts, how they are copied into Maya animation files, and how those MEL scripts are used in Maya by DD3 animators using one of the few Maya animation files Rearden has obtained. He included images of the MOVA UI created by the MOVA MEL scripts in Maya, and of the MOVA MEL script code embedded in a Maya animation file. Ex. C. And he stated his opinion that infringement of the MOVA code was *not* limited to initial performance capture and processing, but rather extended deep into DD3's Maya animation pipeline. Production of the requested Maya files will permit Mr. Menache to show the specific code that was copied in the files themselves.

Expert discovery remains open until June 28. Accordingly, DD3 should be compelled to produce the requested Maya animation files to resolve the dispute between the experts.

**B.    DD3 should not be excused from producing the Maya animation files because its infringement was so extensive that production would be burdensome.**

DD3 argues that it would be unduly burdensome to restore the Maya animation files from tape archive because they are too numerous and/or voluminous. But DD3 is currently restoring Maya animation files dated after June 17, 2016 (the date of the Preliminary Injunction in the *SHST* case) for the MOVA asset return process in the *SHST* case. Rearden asks only that this ongoing process be extended to *Beauty and the Beast* Maya animation files dated a little more than a year before what DD3 is doing now. And in considering DD3's protestations about the burden of production, the Court should consider Judge Tigar's ruling that DD3 "knew that LaSalle did not own the Mova Assets, and did not have actual or apparent authority to sell the Mova Assets [to DD3 or its affiliates]." Statement of Decision, *SHST* ECF No. 427 at 15. DD3 used Rearden's MOVA system to animate the Beast in *Beauty and the Beast* without

authorization and with its eyes open. It should not be rewarded here because its direct infringement of Rearden's copyright was so extensive and pervasive that evidence of its infringement is too burdensome to produce.