Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DISNEY ENTERPRISES, INC., a Delaware corporation, DISNEY STUDIO PRODUCTION SERVICES CO., LLC f/k/a WALT DISNEY PICTURES PRODUCTION, LLC, a California limited liability company, WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC a Delaware limited liability company, MVL PRODUCTIONS LLC, a Delaware limited liability company, CHIP PICTURES, INC., a California corporation, INFINITY PRODUCTIONS LLC, a Delaware limited liability company, ASSEMBLED PRODUCTIONS II LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.    4:17-cv-04006-JST<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DR. STEPHEN LANE**<br><br>**[REDACTED PUBLIC VERSION]**<br><br>Date:    August 17, 2023<br>Time:   2:00 p.m.<br>Judge:  Hon. Jon S. Tigar<br>Ctrm.:   6 (2nd Floor) |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................1

II. FACTS ............................................................................................................................2

III. AUTHORITY AND ARGUMENT .................................................................................3

    A. DD3 witnesses are biased and should not be shielded from cross-examination by Rule 703. ...........................................................................................3

    B. Rule 703 prohibits Disney from disclosing inadmissible hearsay from DD3 and Disney witnesses to the jury through Lane's testimony. ..........................5

IV. CONCLUSION ................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ................................................................................................ 1

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) ............................................................................................. 2, 5

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) .............................................................................................. 1, 6

*McDevitt v. Guenther*,
   522 F.Supp.2d 1272 (D. HI 2007) ........................................................................................ 5

*Ramgen Power Systems LLC v. Agilis Eng. Inc.*,
   2014 WL 4113324 (W.D. WA 2014) ................................................................................... 5

*Teras Chartering, LLC v. Hyupjin Shipping Co. Ltd.*,
   2017 WL 2363632 (W.D. WA 2017) ................................................................................... 5

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   2014 WL 12586737 (C.D. Cal. 2014) .................................................................................. 6

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
   992 F.3d 1366 (Fed. Cir. 2021) ........................................................................................ 5, 6

**Other Authorities**

Rule 703 ................................................................................................................................ *passim*

**I.     INTRODUCTION**

Disney is using the report of Dr. Stephen Lane as a conduit for introducing statements into the record that would otherwise be inadmissible hearsay. Substantial portions of his report are mere recitations of the testimony of DD3 witnesses, with no "opinion" being offered other than that he credits their testimony without question. This is improper,[1] and it is especially inappropriate here because the witnesses that Dr. Lane quotes or paraphrases – former DD3 employees – have not been deemed credible by this Court in the *SHST* litigation. It is particularly important that these individuals be subject to cross-examination at trial, and that their testimony not be admitted through the back door of Dr. Lane's report. "Although the Rules permit experts some leeway with respect to hearsay evidence,…a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

This abuse of expert testimony is severely prejudicial to Rearden. First, Lane cannot be cross-examined about any of the facts that he parrots from DD3 sources because he did not observe or have personal knowledge of any of them. Second, DD3 is biased. It is contractually bound to indemnify and hold Disney harmless if Rearden succeeds in this case, a potential exposure to DD3 of over $40 million if Rearden succeeds. And third, DD3 has a well-documented history of making false statements in the related *SHST* litigation in its own service and the service of its indemnitee, Disney, and against the interest of Rearden. Disney should not be permitted to use Rule 703 to shield these witnesses from cross-examination.

Lane testified that his role is to "validate" the hearsay testimony that he quotes and paraphrases. But "[t]he appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events." *Marvel Characters,* 726 F.3d at 136. And the job of judging those fact witnesses' credibility belongs to the jury. *Id.* Disney cannot use FRE 703 to disclose the testimony of DD3 employee Darren Hendler and Disney employees to the jury

---

[1] *See In re Citric Acid Litig.,* 191 F.3d 1090, 1102 (9th Cir. 1999) ("[A]n expert report cannot be used to prove the existence of facts set forth therein.").

and "validate' that hearsay with the halo of Lane's expertise while shielding the fact witnesses themselves from cross-examination.

Rearden respectfully requests that this Court exercise its gate-keeping function with respect to Rule 703 to ensure that Lane's testimony is not used as a vehicle for circumventing the rules of evidence. *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013). The Court should strike the portions of Lane's report and testimony detailed below, highlighted for the Court's convenience in the excerpt of Lane's report attached as Exhibits A and B to the Declaration of Mark Carlson filed concurrently with these papers.

## II.   FACTS

*Section VIII*:  This Section is titled "How the Mova Contour System Was Used in the Process of Creating the Beast," and purports "to explain how the Mova Contour System was used in the production of the live-action *Beauty and the Beast* (2017)." Carlson Decl. Ex. A, at 24-43. Over 19 pages, there are 54 footnotes, nearly all of which cite to the deposition transcript or summary judgment declaration of DD3 employee Darren Hendler.[2] Lane purports to describe the historical facts of how and when DD3 actually did, and did not, use MOVA Contour in the overall process of finishing shots that included the CG Beast character (VIII, A) and in a specific scene from the film (VIII, B). But he did not personally observe any of these events.  In all of Section VIII, Lane states no opinions. He merely recites or paraphrases the testimony of fact witnesses, almost exclusively DD3's Hendler.

*Section X.A*:  In the first paragraph, Lane cites back to Section VIII to describe "aspects of the Beast character [that] were not created using Mova Software outputs." Carlson Decl. Ex. A at 44. He merely recites or paraphrases the testimony of DD3 employee Darren Hendler. The second paragraph purports to recite the "[n]umerous other tools, software technologies and processes [that] were used to create the Beast character" ("other" than MOVA Contour), in a bullet-pointed list. *Id.*, at 44-45. All but the first bullet point are drawn from Hendler's summary judgment declaration. *Id.*

---

[2] Hendler was employed by DD3 at the time he gave Disney his summary judgement declaration, but was employed elsewhere at the time of his deposition.

1   And the third paragraph is a recitation of other software tools that DD3 purportedly used, all taken
2   directly from Hendler's declaration. *Id.* Again, Lane did not personally observe DD3's alleged use of
3   these tools, and he states no opinions about them. He merely recites or paraphrases Hendler's
4   testimony.
5         *Section X.B*: Lane quotes Hendler's deposition for the proposition that "often Mr. Stevens'
6   retargeted facial expressions 'were extremely muted and did not look correct,' so significant hand
7   animation was needed." Carlson Decl. Ex. A at 45, n. 154. He likewise quotes Disney employee
8   Mimi Steele's deposition for the notion that "often 'a lot of the performance' is lost after the groom
9   is added to the Beast, so animators would need to go back in and fix or tweak the performance by
10  hand animation." *Id.*, n. 155. Lane was not present for any of these events.

### III.   AUTHORITY AND ARGUMENT

**A.   DD3 witnesses are biased and should not be shielded from cross-examination by Rule 703.**

13  DD3 is biased in favor of Disney and against Rearden. DD3 is contractually bound to
14  indemnify Disney for any and all losses related to this litigation. ████████████████
15  ████████████████████████████████
16  ████████████████████████████████
17  ████████████████████████████████
18  ████████████████████████████████
19  ████████████████████ Thus, DD3 is bound to reimburse Disney for all costs and
20  attorney's fees in this case, and all damages if Rearden succeeds.
21        There is a reason why Disney appears to be shielding these witnesses from cross-
22  examination: DD3 employees have proved themselves to be less than credible in their
23  representations to Rearden and the Court. DD3, acting through its affiliates Shenzhenshi Haitiecheng
24  Science and Technology Co., Ltd. (SHST) and Virtue Global Holdings Limited (VGH), sued
25  Rearden on February 20, 2015, seeking a declaration that they owned and were authorized to use
26  Mova Contour. SHST ECF No 1. After a bench trial, on August 11, 2017, the Court weighed the
27  evidence and made extensive factual findings in Rearden's favor. DD3's bad faith was confirmed as
28  follows:

> SHST, DD3, and VGH knew that LaSalle did not own the Mova Assets and did not have actual or apparent authority to sell the Mova Assets. *Neither SHST nor DD3 nor VGH took the Mova Assets in good faith*.

Carlson Decl. Ex. D (SHST ECF No. 427, at 15:7-9). The Court found that the MOVA Assets belonged to Rearden and had belonged to Rearden at all relevant times. *Id*. at 15:15-17. The Court found that DD3's explanations for its bad-faith taking of the Mova Assets were "false." *Id*. at 13:13. And the Court concluded by holding that "Rearden may take possession of the Mova Assets forthwith." *Id*. at 18:11-12. But DD3 did not comply, and on April 10, 2019, this Court granted Rearden's motion to enforce the judgment, finding that:

> VGH, DD3, LaSalle, and Pearce have, at various points, assured Rearden that they have located and returned all MOVA Assets. *Those assurances have repeatedly been proven incorrect*.

ECF No. 521 at 12:3-5.

Hendler in particular should not be shielded from cross-examination by Lane and Rule 703. On June 17, 2016, this Court entered a preliminary injunction that applied to SHST, VGH, DD3 and their studio clients that prohibited them "from selling, using, moving, concealing, transferring or otherwise disposing of any MOVA Asset in its possession, custody or control." SHST ECF No. 188 at 12:13-14, 13:20-21. Disney knew of the injunction at least as early as June 22, 2016. Carlson Decl. Ex. E (Taritero Dep. Tr. at 183:25-184:24). But in an internal DD3 email, Hendler acknowledged that he, LaSalle, and other DD3 employees were ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ He wrote to a team of DD3 employees and managers on June 28, 2016 that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Carlson Decl. Ex. E (LaSalle Ex. 103). And he wrote to that same team that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* In the email, Hendler openly acknowledged to a team of DD3 employees and managers— without protest ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ And his acknowledgement that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ contradicts his own

testimony in the declaration that Disney seeks to offer through Lane's testimony. Carlson Decl. Ex. G (Hendler Tr. 326:2-335:8).

**B.      Rule 703 prohibits Disney from disclosing inadmissible hearsay from DD3 and Disney witnesses to the jury through Lane's testimony.**

"Courts ... must serve a gate-keeping function with respect to Rule 703 opinions to ensure 'the expert isn't being used as a vehicle for circumventing the rules of evidence.'" *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (*quoting In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)). "Rule 703 does not make admissible otherwise inadmissible evidence." *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1374 (Fed. Cir. 2021) (quoting 4 *Weinstein's Federal Evidence* § 703.05 n.12). The rule "is not, itself, an exception to or exclusion from the hearsay rule or any other evidence rule that makes the underlying information inadmissible." *Id.* (citing *Weinstein,* § 703.05). Rule 703 does not authorize admitting inadmissible evidence "on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the [inadmissible evidence] other than transmitting [it] to the jury." *Id.* (quoting 29 Charles Alan Wright, Arthur R. Miller & Victor J. Gold, *Federal Practice and Procedure* § 6274 (2d ed. 2020)). "In such a case, Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control." *Id.*

Under Fed. R. Evid. 703, an expert may base her opinion on facts that are otherwise inadmissible and need not have personal knowledge of such facts. But where an expert's report simply recites facts that constitute inadmissible hearsay, those sections of the report are barred. *Teras Chartering, LLC v. Hyupjin Shipping Co. Ltd.*, 2017 WL 2363632, *4 (W.D. WA 2017); *Ramgen Power Sys. LLC v. Agilis Eng. Inc.*, 2014 WL 4113324, *2 (W.D. WA 2014); *McDevitt v. Guenther*, 522 F.Supp.2d 1272, 1294 (D. HI 2007). And if the facts on which the expert bases his opinion are also the facts in dispute, the probative value of any inadmissible facts is substantially outweighed by confusion of the jury and the prejudicial effect of having an expert recite inadmissible facts as though they are established. *McDevitt*, 522 F.Supp.3d at 1294. Disney's abuse of Rule 703 prejudicially admits inadmissible hearsay and further endows it with the aegis of Lane's expert validation.  Rule

PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE
REPORT AND TESTIMONY OF STEPHEN LANE - 5
Case No. 17-CV-04006

1  703 cannot be used as a backdoor to get hearsay evidence before the jury. *Universal Elecs., Inc. v.*
2  *Universal Remote Control, Inc.*, 2014 WL 12586737, *5 (C.D. Cal. 2014).
3        In *Wi-LAN*, plaintiff attempted to rely on custodial declarations as the basis to authenticate
4  printouts of source code and to meet the business records exception to the hearsay rule, but the
5  declarations and source code were excluded by the district court. On appeal, Wi-LAN argued that the
6  source code was independently admissible because it was relied upon by its infringement expert. *Wi-*
7  *LAN*, 992 F.3d at 1374. But the Federal Circuit affirmed the district court, ruling that it is
8  impermissible to use an expert as a substitute for a fact witness and a backdoor for inadmissible
9  evidence:

> Wi-LAN was attempting to use Rule 703 as a "'backdoor' to allow the admission into evidence of otherwise inadmissible declarations and other materials simply because they might assist the jury's evaluation of an expert's opinions." J.A. 31. We agree. *Wi-LAN attempts to do exactly what is impermissible under Rule 703 by using its expert as a substitute for a fact witness to circumvent the rules of evidence to admit otherwise inadmissible evidence.*

14  *Id.* at 1375 (emphasis added).
15        The Second Circuit reached a similar conclusion in *Marvel Characters*, 726 F.3d 119. At
16  issue was the working relationship between Marvel and comic book artist Jack Kirby. On summary
17  judgment, the district court excluded the expert reports and testimony of the plaintiffs' experts, "who
18  purported to offer historical perspective concerning the relationship between Marvel and Jack Kirby"
19  based on hearsay. *Id.*, at 135. The Second Circuit affirmed the district court, ruling that:

> Although the Rules permit experts some leeway with respect to hearsay evidence, Fed.R.Evid. 703, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 666 (S.D.N.Y.2007). *The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events. And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder.* See *Nimely v. City of New York,* 414 F.3d 381, 397–98 (2d Cir.2005).

25  *Id.*, at 136 (emphasis added).
26        Section VIII and portions of Sections X.A and X.B of Lane's report serve as mere conduits or
27  backdoors for Disney to transmit inadmissible hearsay to the jury, and improperly substitute Lane for
28

PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE
REPORT AND TESTIMONY OF STEPHEN LANE - 6
Case No. 17-CV-04006

the testimony of fact witnesses with personal knowledge such as Hendler. In Section VIII, Lane purports to describe exactly how DD3 used Mova Contour, the Mova Contour software, and the tracked mesh that is produced by Mova Contour software. Carlson Decl. Ex. A, at 24-26. And he purports to describe all of the remaining steps that DD3 animators took after receiving the Mova Contour tracked mesh to complete each shot. *Id.*, at 26-43. Lane has no personal experience in animating CG characters using Mova Contour software outputs or supervising anyone else doing so, as he admitted in his deposition:



Carlson Decl. Ex. B, Tr. at 52:3-11. 

*Id.,* at 54:10-55:7.

PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE
REPORT AND TESTIMONY OF STEPHEN LANE - 7
Case No. 17-CV-04006

██████████████████████████████████
██████
████████████
██████████████████████
████████

*Id.*, at 56:17-22. Rather, Lane admitted he was essentially repeating in Section VIII of his report what he had read in Hendler's declaration and deposition testimony:

████████████████████████████
██████████
████████████████████████████
████

*Id.*, at 57:25-58:9. When asked why the jury needed him to tell them what Hendler had said, Lane candidly replied ██████████████████████████████████████ *Id.*, 59:2-6.

Section X.A of Lane's report is no different. ██████████████████████
████████████████████████████████████████████████
██████████████████████ *Id.*, at 53:10-54:7. He offers no opinions of his own. And in Section X.B, Lane offers quotes from Hendler and Disney's Mimi Steele regarding the effect of adding hair to the CG Beast's face. Again, Lane was not present for this. Although he goes on to form his own opinion—which Rearden opposes but does *not* move to exclude—Lane should not be allowed to repeat the hearsay testimony from Hendler and Steele to the jury.

## IV.   CONCLUSION

For the foregoing reasons, Rearden respectfully requests that the Court strike Section VIII and the designated portions of Section X.A and X.B of the opening expert report of Dr. Stephen Lane as highlighted in Exhibit A to the Declaration of Mark Carlson.

| | | |
|---|---|---|
| 1 | DATED: July 13, 2023 | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 2 | | By:  /s/ Mark S. Carlson |
| 3 | | MARK S. CARLSON<br>Steve W. Berman (*pro hac vice*) |
| 4 | | Jerrod C. Patterson (*pro hac vice*)<br>1301 Second Avenue, Suite 2000 |
| 5 | | Seattle, WA 98101<br>Telephone: (206) 623-7292 |
| 6 | | Facsimile: (206) 623-0594 |
| 7 | | steve@hbsslaw.com<br>markc@hbsslaw.com |
| 8 | | jerrodp@hbsslaw.com |
| 9 | | Rio S. Pierce, CBA No. 298297 |
| 10 | | HAGENS BERMAN SOBOL SHAPIRO LLP<br>715 Hearst Avenue, Suite 300 |
| 11 | | Berkeley, CA 94710<br>Telephone: (510) 725-3000 |
| 12 | | Facsimile: (510) 725-3001 |
| 13 | | riop@hbsslaw.com |
| 14 | | *Attorneys for Plaintiffs* |

PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE
REPORT AND TESTIMONY OF STEPHEN LANE - 9
Case No. 17-CV-04006