Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DISNEY ENTERPRISES, INC., a Delaware corporation, DISNEY STUDIO PRODUCTION SERVICES CO., LLC f/k/a WALT DISNEY PICTURES PRODUCTION, LLC, a California limited liability company, WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC a Delaware limited liability company, MVL PRODUCTIONS LLC, a Delaware limited liability company, CHIP PICTURES, INC., a California corporation, INFINITY PRODUCTIONS LLC, a Delaware limited liability company, ASSEMBLED PRODUCTIONS II LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   4:17-cv-04006-JST<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF ROBERT WUNDERLICH**<br><br>**[REDACTED PUBLIC VERSION]**<br><br>Date: August 17, 2023<br>Time: 2:00 p.m.<br>Judge: Hon. Jon S. Tigar<br>Ctrm.: 6 (2nd Floor) |

**TABLE OF CONTENTS**

<u>Page</u>

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD ............................................................................................................1

III. FACTUAL BACKGROUND .................................................................................................2

IV. ARGUMENT .........................................................................................................................3

    A. Wunderlich's opinion on costs is unsubstantiated and should be excluded. ..............................................................................................................3

    B. Wunderlich's deduction for hypothetical taxes should be stricken because it is irrelevant. ..................................................................................5

    C. Wunderlich's history of exclusion is relevant to his credibility and reliability. .....................................................................................................6

V. CONCLUSION ......................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Active Sports Lifestyle v. Old Navy*,
  2013 WL 11239385 (Nov. 21, 2013) .................................................................................. 6

*In re AI Realty Mktg. of New York, Inc.*,
  304 B.R. 622 (Bankr. S.D.N.Y. 2004) ............................................................................... 5

*Anastasia Beverly Hills, Inc. v. Chisato Katoh Daiko*,
  2008 WL 11339107 (C.D. Cal. July 1, 2008) ................................................................... 7

*Bakst v. Comm. Mem. Health Sys, Inc.*,
  2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) ............................................................. 1, 7

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
  923 F. Supp. 2d 1245 (S.D. Cal. Feb. 12, 2013) .................................................... *passim*

*Burns v. Imagine Films Ent., Inc.*,
  2001 WL 34059379 (W.D.N.Y. Aug. 23, 2001) ............................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ...................................................................................................... 6, 7

*Doe v. Ortho-Clinical Diagnostics, Inc.*,
  440 F. Supp. 2d 465 (M.D.N.C. 2006) ............................................................................. 6

*Edmons v. Home Depot, U.S.A., Inc.*,
  2011 WL 127165 (D. Ore. Jan. 14, 2011) ........................................................................ 6

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................................................ 2

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (1985) ......................................................................................................... 4

*Gamevice, Inc. v. Nintendo Co., Ltd.*,
  2020 WL 13739193 (N.D. Cal. June 4, 2020) .................................................................. 7

*In re Jimmy John's Overtime Litig.*,
  2018 WL 3231273 (N.D. Ill. June 14, 2018) .................................................................... 6

*Lloyd v. Conseco Finance Corp.*,
  2001 WL 36097624 (C.D. Cal. Oct. 19, 2001) ................................................................. 7

*Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*,
    2010 WL 11458278 (C.D. Cal. Sept. 16, 2010) ............................................................... 7

*Parlour Enterprises v. the Kirin Group*,
    152 Cal. App. 4th 281 (2007) .............................................................................. 1, 4, 6, 7

*Qwest Corp. v. Elephant Butte Irrigation Dist.*,
    616 F. Supp. 2d 1110 (D.N.M. 2008) ........................................................................... 3

*Siqueiros v. Gen. Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ...................................................................... 1

*Stop Staring! Designs v. Tatyana, LLC*,
    2012 WL 12877991 (C.D. Cal. Feb. 21, 2012) .......................................................... 1, 7

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000), *Overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) ................................................... 5

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 .................................................................................................. 1

Federal Rule of Evidence 702's ............................................................................................... 2

## I. INTRODUCTION

Rearden moves to exclude portions of the expert report and testimony of Robert Wunderlich, Disney's proffered expert on apportionment, because he did not provide any expert opinion on key issues related to the profits Disney earned from *Beauty and the Beast* ("BatB"). Instead, he simply transferred numbers from Disney's spreadsheet into his own spreadsheet and offered it as an expert opinion, without questioning the validity or accuracy of Disney's figures. Wunderlich is merely serving as Disney's mouthpiece in this litigation, which adds nothing of value for the jury in assessing damages. He also deducts from Disney's profits an ▮▮▮▮▮▮▮ amount of taxes that is untethered to the amount taxes Disney actually paid on BatB profits. Wunderlich's habit of accepting self-serving statements from his clients has been harshly criticized by other courts, and his opinions have been repeatedly excluded because they were "entirely unsupported in the record" and "entirely speculative,"[1] and based on "pure speculation"[2] and "flimsy" evidence,[3] with one court noting that Wunderlich's numbers were "prophesized" and "conjectural at best."[4] Wunderlich's efforts to inject his unsubstantiated opinions into this litigation should be rejected as well.

## II. LEGAL STANDARD

"[I]n assessing the admissibility of expert testimony under Federal Rule of Evidence 702, the Court must perform 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *4 (N.D. Cal. Jan. 7, 2022) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). The following "non-exhaustive" factors may bear on the Daubert inquiry: (1) "whether the theory or technique can be or has been tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error with a scientific technique;" and (4) "acceptance of the technique by a relevant scientific community." *Id.* (quoting *Daubert*, 509 U.S.

---

[1] *Bakst v. Comm. Mem. Health Sys, Inc.*, 2011 WL 13214315, at *20 (C.D. Cal. Mar. 7, 2011).
[2] *Stop Staring! Designs v. Tatyana, LLC*, 2012 WL 12877991 (C.D. Cal. Feb. 21, 2012).
[3] *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245 (S.D. Cal. Feb. 12, 2013).
[4] *Parlour Enterprises v. the Kirin Group*, 152 Cal. App. 4th 281, 293 (2007).

at 593–94). The district court "must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 145–49 (1999)).

### III. FACTUAL BACKGROUND

In his opening report, Wunderlich provided the following chart to ostensibly calculate the "net income to Disney after taxes" (excluding consumer product revenue):[5]

| | DESCRIPTION | AMOUNT |
|---|---|---|
| | ▉▉▉▉▉▉▉▉ | ▉▉▉▉▉▉▉▉ |

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Wunderlich's April 2023 report relied on a revenue statement from Disney that was current only as of ▉▉▉▉▉. Patterson Decl. Ex. A at 3. Wunderlich did not request clarification as to why ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Patterson Decl. Ex. B at 65:4-66:3; Patterson Decl. Ex. C at 19 (Wunderlich Rebuttal Rep.). Wunderlich's opening report also excluded ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See* Patterson Decl. Ex. B at 63:24-65:3. He also excluded the industry-standard ▉▉▉▉▉▉▉▉

---

[5] *See* Patterson Decl. Ex. A at 3 (Wunderlich Expert Rep.).

PLAINTIFFS' MOT. TO EXCLUDE
ROBERT WUNDERLICH - 2 -
Case No. 17-CV-04006
005073-12/2313306 V4

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 65:23-67:5.  Although these
2  calculations and exclusions are errors in Mr. Wunderlich's analysis, Plaintiffs do not seek to exclude
3  them.

## IV.   ARGUMENT

### A.   Wunderlich's opinion on costs is unsubstantiated and should be excluded.

The central flaw in Wunderlich's analysis is that he simply regurgitated information Disney provided him, without any question about whether the information was accurate and supported.  All of his ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *See* Patterson Decl. Ex. B at 13:10-19.  Simply repeating figures provided to him offers nothing in the way of expert testimony.  *See Qwest Corp. v. Elephant Butte Irrigation Dist.*, 616 F. Supp. 2d 1110, 1116-17 (D.N.M. 2008) (witness not an expert when she simply compiled summary of information provided by her client; "untrained lay[person] could understand the addition, subtraction, multiplication, and division displayed in the Estimate without the assistance of an expert.").

Wunderlich's most glaring error is his deduction of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Patterson Decl. Ex. A at 2.  This figure is derived from adding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 5-6. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. at 5; Patterson Decl. Ex. B at 29:10-30:7. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Patterson Decl. Ex. A at 5.

Plaintiffs do not challenge the inclusion of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  But Wunderlich's report also included a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  This figure is entirely contrived for the purpose of lowering Disney's stated profits.  When asked to justify this exorbitant figure – ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Patterson Decl. Ex. B at 31:2-4.  When asked whether Disney provided Wunderlich with any underlying figures or data to justify the ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. at 31:17-20.  He also lacked any understanding of any details of these alleged expenses.  His report vaguely alludes to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1   ██████████████████████████████████████████████████████████████
2   ██████████████████████████████ Patterson Decl. Ex. A at 5. But he was unable to identify
3   *any* expenses in *any* of these categories that were actually incurred, let alone were related in any way
4   to *BatB*. Patterson Decl. Ex. B at 37:10-40:20. This opinion plainly fails to meet Disney's burden to
5   prove that deductible costs were actually incurred. *See Frank Music Corp. v. Metro-Goldwyn-*
6   *Mayer, Inc.*, 772 F.2d 505, 514 (1985).

7        Similarly, he included over ████████████████████████████████
8   ██████████████████████████████████████████████████████████████
9   ██████████████████████████████ Patterson Decl. Ex. B at 44:13-46:1. Wunderlich
10  also did not ask Disney for this information. *Id.* at 45:21-46:13. Similar to ████████
11  ██████████████████████████████████████████████████████████████
12  ██████████████████████████████████████████████████████████████
13  ██████████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████████ *Id.* at
15  48:7-49:8. Wunderlich's opinion on distribution and production expenses lacks any factual basis,
16  and his adoption wholesale of whatever Disney tells him is neither helpful to the jury nor reliable.

17       This is precisely why Wunderlich has been excluded in other cases. For example, in *Parlour*
18  *Enterprises*, Wunderlich relied on projected profits provided by his client, without questioning the
19  assumptions that underlaid those projections or obtaining supporting documentation. The court
20  noted that "Wunderlich did not know who created the projections or his or her education, training, or
21  experience." 152 Cal. App. 4th at 285. The projections were from an "offering circular prepared by
22  Parlour and given to potential investors," but the "record does not reveal the method used to
23  calculate the projections." *Id.* at 289. The projections also included "disclaimers stating the
24  projections 'were not based on actual operations,' were not assured to 'reflect actual results,' and
25  were 'estimate[s] of start up expenses of the project.'" *Id.*

26       The appellate court accordingly reversed the lower court's damages awards based in part on
27  Wunderlich's blind acceptance of projected profits provided by his client. *Id.* And in *Brighton*
28  *Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245 (S.D. Cal. Feb. 12, 2013), the court

concluded that Wunderlich's testimony in a copyright infringement case was "flimsy," and that he "did not perform any economic analysis to reach his conclusion." *Id.* at 1256.  Here, Wunderlich performed no analysis to confirm that Disney actually incurred ███████████████████ ████████████████████████████████████████████  He simply took Disney's word for it, which adds nothing of value for the jury.

**B.     Wunderlich's deduction for hypothetical taxes should be stricken because it is irrelevant.**

Wunderlich's opinion on taxes should be stricken because it is irrelevant and contrary to the law.  ████████████████████████████████████████████████████████ ███████████████████████████████████.  This is improper; copyright damages here are meant to measure Disney's unjust enrichment from the infringements, and the only deductible expenses are those that Disney actually paid, not hypothetical tax rates.  Directly on point is *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000).[6]  In that case, Sony attempted to deduct a tax liability under the applicable corporate tax rate, even though its net operating losses wiped out its taxes for that year.  The Ninth Circuit upheld the district court's ruling that Sony could not take this deduction in calculating damages because it did not incur a "concrete financial impact." *Id.* at 488.  As a result, the Ninth Circuit held that the district court correctly distinguished between "taxes actually paid and taxes not actually paid[.]" *Id.*; *see also Burns v. Imagine Films Ent., Inc.*, 2001 WL 34059379, at *10 (W.D.N.Y. Aug. 23, 2001) ("Defendants have not shown that attributing taxes at a 'stand alone' rate of 41% of net profits results in an accurate calculation of the taxes actually paid on profits from Backdraft.") (citing *Three Boys Music*); *In re AI Realty Mktg. of New York, Inc.*, 304 B.R. 622, 625 (Bankr. S.D.N.Y. 2004) ("a defendant may only deduct taxes that it actually paid from its calculation of profits.") (citing *Three Boys* and *Burns*).

Here, Wunderlich counterfactually treated the movie itself as a ███████████████  Patterson Decl. Ex. A at 8.  But Wunderlich did not treat it as such in the rest of his analysis if it benefitted Disney.  ████████████████████████████████████

---

[6] *Overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc).

1   ███████████████████████████████████████████████████████████████

2   ██  *Id*. at 5.  He (erroneously) considered the ███████████████████

3   ████████████████████████████████████  *See* Patterson Decl. Ex. B at 59:2-8.  Consistent

4   with this approach, it is self-evident that the revenue and profits earned by the movie were earned by

5   Disney,[7] and any gains from the movie could be offset by Disney's losses.  Wunderlich ignores this

6   reality altogether, and he has failed to meet Disney's burden to *prove* that Disney actually paid taxes

7   on *BatB* profits.  As a result, this portion of his opinion is irrelevant and should be stricken.

8   C.   **Wunderlich's history of exclusion is relevant to his credibility and reliability.**

9   Mr. Wunderlich's poor track record is relevant to the *Daubert* considerations because it

10  suggests that Mr. Wunderlich is merely an "expert for hire" who prioritizes serving his clients above

11  providing rigorous analysis for the Court and jury.[8]  *See, e.g., In re Jimmy John's Overtime Litig.*,

12  2018 WL 3231273, at *10 (N.D. Ill. June 14, 2018) (citing history of exclusion as relevant *Daubert*

13  factor); *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 471 (M.D.N.C. 2006) (finding

14  expert's history of exclusion "noteworthy" to *Daubert* analysis); *see also Edmons v. Home Depot,*

15  *U.S.A., Inc.*, 2011 WL 127165, at *6 (D. Ore. Jan. 14, 2011) ("where an expert "is a 'quintessential

16  expert for hire,' then it seems well within a trial judge's discretion to apply the Daubert factors with

17  greater rigor.") (citation omitted).

18  Greater rigor is warranted here based on his history.  Wunderlich's opinion has been stricken

19  at least ***eight times*** in other cases, on grounds ranging from dubious logic and unreasonable

20  assumptions to a failure to question information provided to him by his client.  In *Parlour*

21  *Enterprises*, the court struck Wunderlich's testimony on several grounds, including his use of

22  dissimilar models in calculating projected profits:  "Wunderlich's cursory description of Friendly's

23  business model failed to establish its profit-and loss experience is sufficiently similar to Farrell's to

24

---

25  [7] *See, e.g.*, "The Walt Disney Studios Hits $5 Billion in Global Box Office for 2017," *available at*
    https://thewaltdisneycompany.com/walt-disney-studios-hits-5-billion-global-box-office-2017.
26  [8] Disney may respond that Wunderlich has testified on dozens of occasions, such that eight
27  exclusions is not unusual.  But, based on counsel's research, there has only been *one occasion* where
    a *Daubert* motion to exclude Mr. Wunderlich's opinion was denied on the merits.  *See Active Sports*
28  *Lifestyle v. Old Navy*, 2013 WL 11239385 (Nov. 21, 2013).

1  be relevant to the question of plaintiffs' alleged lost profits." 152 Cal. App. 4th at 290.  Wunderlich
2  "could not identify the factual basis for his assumptions" *Id.* at 1256.
3  In another example, Wunderlich accepted as a given that his client would obtain employment
4  as a hospital CEO for purposes of measuring damages, even though this assumption was "entirely
5  unsupported in the record" and "entirely speculative." *Bakst*, 2011 WL 13214315, at *20.  Similarly,
6  in *Stop Staring!*, the court reversed a trial jury's verdict because the court admitted that it "erred" in
7  admitting Wunderlich's testimony, which relied on a premise that defendant received a "one-year
8  head start" by using plaintiff's head dress; the court concluded this was "pure speculation" by
9  Wunderlich.  2012 WL 12877991, at *2.  And in *Brighton Collectibles,* the court concluded that
10 Wunderlich's testimony in a copyright infringement case was "flimsy," and Wunderlich "could not
11 identify the factual basis for his assumptions." 923 F. Supp. 2d at 1256; *see also Lloyd v. Conseco*
12 *Finance Corp.*, 2001 WL 36097624, at *6 (C.D. Cal. Oct. 19, 2001) (rejecting Wunderlich's flawed
13 model to assess whether employee was terminated for performance because, "[w]hile Conseco
14 asserts that loan production was the key factor in each employee's decision to leave, many variables
15 may have contributed, and *Wunderlich apparently made no effort to screen for other causes*.")
16 (emphasis added); *Gamevice, Inc. v. Nintendo Co., Ltd.*, 2020 WL 13739193, at *12 (N.D. Cal. June
17 4, 2020) (excluding Wunderlich's opinion when he relied on the wrong third party royalty rate,
18 which Wunderlich dismissed as a "typo."); *Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*, 2010
19 WL 11458278, at *1 (C.D. Cal. Sept. 16, 2010) (excluding Wunderlich's opinions on reasonable
20 royalty, lost profits, lost sales, and corrective advertising).
21 In one notable example, Wunderlich submitted a report on behalf of his client in a default
22 judgment action.  Despite the lack of opposing counsel, the court denied plaintiff's summary
23 judgment motion because Wunderlich's damages calculations were unsubstantiated.  The court found
24 five "deficiencies" with his work, including calculating licensing fees based on a country's GDP, and
25 calculating worldwide damages, even though defendant's conduct was limited to Japan.  *Anastasia*
26 *Beverly Hills, Inc. v. Chisato Katoh Daiko*, 2008 WL 11339107, at *1-*2 (C.D. Cal. July 1, 2008).
27 Plaintiffs do not contend that the contested portions of Wunderlich's opinions should be
28 excluded solely because of his poor *Daubert* history.  But the decisions of eight other courts

PLAINTIFFS' MOT. TO EXCLUDE
ROBERT WUNDERLICH - 7 -
Case No. 17-CV-04006
005073-12/2313306 V4

underscore the persistent central error here, which is an acceptance of Disney's exorbitant costs without question or analysis. There is "simply too great an analytical gap between the data and the opinion proffered." *Brighton Collectibles*, 923 F. Supp. 2d at 1256 (citing *G.E Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## V. CONCLUSION

For the foregoing reasons, Mr. Wunderlich's opinions on ▮▮▮▮▮,[9] ▮▮▮▮▮▮▮▮[10] and ▮▮[11] should be excluded.[12]

DATED:  July 13, 2023              HAGENS BERMAN SOBOL SHAPIRO LLP

                                   By:   */s/ Jerrod Patterson*
                                         JERROD C. PATTERSON
                                   Steve W. Berman (*pro hac vice*)
                                   Mark S. Carlson (*pro hac vice*)
                                   1301 Second Avenue, Suite 2000
                                   Seattle, WA 98101
                                   Telephone: (206) 623-7292
                                   Facsimile: (206) 623-0594
                                   steve@hbsslaw.com
                                   markc@hbsslaw.com
                                   jerrodp@hbsslaw.com

                                   Rio S. Pierce, CBA No. 298297
                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                   715 Hearst Avenue, Suite 202
                                   Berkeley, CA 94710
                                   Telephone: (510) 725-3000
                                   Facsimile: (510) 725-3001
                                   riop@hbsslaw.com

                                   *Attorneys for Plaintiffs*

---

[9] *See* Patterson Decl. Ex. A § II.C.2.
[10] *See id.* § II.D.5.
[11] *See id.* § II.F.
[12] If the Court were to grant all or part of this motion, many of the other summed figures in Mr. Wunderlich's opinion would change as well. *See, e.g., id.* at 3.