KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
SHANNON AMINIRAD (SBN 324780)
shannon.aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
ROWLEY J. RICE (SBN 313737)
rowley.rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC and REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS LLC, a Delaware limited liability company, MVL PRODUCTIONS LLC, a Delaware limited liability company, INFINITY PRODUCTIONS LLC, a Delaware limited liability company, and ASSEMBLED PRODUCTIONS II LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 4:17-cv-04006-JST-SK<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF ALBERTO MENACHE'S TESTIMONY**<br><br>Date:     October 12, 2023<br>Time:     2:00 p.m.<br>Judge:    Hon. Jon S. Tigar<br>Ctrm.:    6 (2nd Floor)<br><br>[Filed concurrently with Reply Declaration of Kelly M. Klaus in Support of Motion to Exclude Portions of Alberto Menache's Testimony] |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Mr. Menache Did Not Timely Disclose His Maya Scripts Opinions ......................... 2

        1. Rearden's Opposition Confirms That Mr. Menache Should Be Precluded From Offering Opinions Related To Copyright Ownership Of Maya Scripts ............................................................................ 2

        2. Rearden Fails To Show That Mr. Menache Disclosed An Opinion About DD3 Copying Maya Scripts In His Opening Report .......................... 3

        3. Rearden Mischaracterizes The Court's Order And The Record To Argue That Mr. Menache Did Not Need To Address Maya Scripts' Function Or Use Until Surrebuttal ................................................................. 4

            (a) The Function And Use Of Maya Scripts Is A Causal Nexus Issue That Rearden Was Required To Address In Its Opening Reports ........................................................................................ 5

            (b) Because Rearden Also Relies On The Function And Use Of Maya Scripts To Rebut Dr. Lane, Mr. Menache Was Also Required To Address Those Topics In His Rebuttal Report .............. 6

        4. Rearden's Failure To Timely Disclose Mr. Menache's Opinions Is Neither Justified Nor Harmless ................................................................. 7

    B. Mr. Menache's "Experience" Does Not Provide An Adequate Foundation For His Testimony About How The Maya Scripts "Could Have Been" Copied And Used By DD3 ...................................................................................... 8

    C. Mr. Menache Should Be Precluded From Mentioning His Work On *Avatar* Sequels ...................................................................................................................... 11

    D. Mr. Menache Is Not Qualified To Opine On What Draws Audiences To Movies Or How Movies Are Marketed ...................................................................... 13

III. CONCLUSION ............................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ...................................................................................................10

*Cave Consulting Group, Inc. v. OptumInsight, Inc.*,
  No. 15-cv-03424-JCS, 2018 WL 1938555 (N.D. Cal. Apr. 25, 2018) ....................................2, 5

*FTC v. Qualcomm Inc.*,
  No. 17-CV-00220-LHK, 2018 WL 6460573 (N.D. Cal. Dec. 10, 2018)..................................10

*Lutron Elecs. Co. v. Crestron Elecs. Inc.*,
  970 F. Supp. 2d 1229 (D. Utah 2013) ..........................................................................................13

*Mackie v. Reiser*,
  296 F.3d 909 (9th Cir. 2002)...........................................................................................................5

*Ollier v. Sweetwater Union High School District*,
  267 F.R.D. 339 (S.D. Cal. 2010) ...................................................................................................9

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004)..........................................................................................................5

*Sementilli v. Trinidad Corp.*,
  155 F.3d 1130 (9th Cir. 1998).......................................................................................................9

**FEDERAL RULES**

Fed. R. Civ. Proc. 37(c)(1) ...............................................................................................................2

Fed. R. Evid. 703................................................................................................................................9

## I. INTRODUCTION

Rearden admits, as it must, that its technical expert Alberto Menache did not disclose any opinions about the ownership, functionality, or use of Maya Scripts until his *surrebuttal* report. Rearden has no excuse for this patent violation of Rule 26 and this Court's Order governing expert disclosures. Rearden's claim that Mr. Menache's Maya Scripts opinions are solely responsive to Defendants' rebuttal damages-apportionment reports is specious. These opinions go to the issues of infringement and causal nexus, on both of which Rearden bears the burden and was required to address in its *opening* expert reports. Additionally, these opinions directly and explicitly respond to opinions offered in the opening report of Defendants' technical expert, Dr. Stephen Lane. Any such rebuttal was required to be disclosed in Mr. Menache's *rebuttal* report, not withheld until surrebuttal.

Defendants have demonstrated in detail in prior briefing how Rearden unveiled a new theory of infringement based on Maya Scripts well after the close of fact discovery. The briefing on this motion demonstrates that Rearden's dilatory tactics have pervaded expert discovery and disclosures as well. By Rearden's own telling, it believed the Maya Scripts were an integral part of the MOVA Contour software program, and Rearden has been familiar with how the Maya Scripts function for more than a decade. Rearden's claim that it needed to receive files through the *SHST* asset-return process to know if Maya-Script copying was an element of its claim in this case is not plausible. But even taking that claim at face value, Rearden had received from DD3 *hundreds* of files with Maya Scripts as of the date for serving opening expert reports. Rearden, however, chose to withhold all of those returned files from Mr. Menache, ensuring there was no possibility he would address them in his opening report. And rather than make efforts to have Mr. Menache disclose his opinions concerning Maya Scripts in either his opening *or* rebuttal reports, Rearden chose to hide the ball until surrebuttal, when Defendants were precluded from responding. The resulting prejudice to Defendants from these sandbagging tactics is manifest.

As for the other aspects of Mr. Menache's opinions that Defendants have moved to exclude (regarding Mr. Menache's *Avatar* work, and his opinions about marketing), Rearden's

arguments are either non-responsive or mischaracterize the relevant facts. Defendants respectfully request that the Court grant their motion.

## II.     ARGUMENT

### A.     Mr. Menache Did Not Timely Disclose His Maya Scripts Opinions[1]

As detailed in Defendants' motion to exclude portions of Mr. Menache's testimony, Mr. Menache failed to timely disclose opinions about (1) Rearden's purported ownership of a copyright interest in the Maya Scripts; (2) DD3's purported copying of Maya Scripts in connection with its work on *BATB*; and (3) the functionality and purported use by DD3 of Maya Scripts including after delivery of the tracked mesh.

It is undisputed that an expert cannot present at trial "facts and opinions that should have been in the original reports" but were not disclosed until rebuttal. *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2018 WL 1938555, at *4 (N.D. Cal. Apr. 25, 2018); Fed. R. Civ. Proc. 37(c)(1). In this case, Mr. Menache did not disclose a Maya Scripts infringement opinion until rebuttal, and he did not disclose opinions about ownership, functionality, and DD3's purported use of Maya Scripts until *surrebuttal*. Rearden attempts to get around the clear rules precluding opinion testimony that was not timely disclosed by mischaracterizing the record.

#### 1.     Rearden's Opposition Confirms That Mr. Menache Should Be Precluded From Offering Opinions Related To Copyright Ownership Of Maya Scripts

Rearden asserts that Mr. Menache expressed no opinions about Rearden's ownership of the MOVA software code embedded in Maya Scripts "in any of his reports." Opp. at 6. Rearden thereby concedes the Court should *grant* this aspect of Defendants' motion.

To be clear, the order should make clear that Mr. Menache is barred not only from testifying that Rearden owns the Maya Scripts but also from testifying about the incidents of

---

[1] Rearden does not dispute that if the Court grants the pending motion to preclude reliance on Maya Scripts (Dkt. 395), Mr. Menache's opinions regarding the Maya Scripts are irrelevant and must be excluded.

1  ownership, namely, when Maya Scripts were created, who created them, and what the naming
2  conventions and references in Maya Scripts signify.  While Mr. Menache did not use the word
3  "ownership" in his reports or address "the law of copyright ownership," Opp. at 6, he most
4  certainly *did* offer opinions about the creation date and naming conventions and references in the
5  Maya Scripts.  Specifically, Mr. Menache's June 14, 2023 surrebuttal report states, for the first
6  time, that "[m]any of the imbedded scripts have MOVA references, and I ascertained that the rest
7  are also MOVA source code because they are referenced by other scripts that do have MOVA
8  references and by naming convention similarities."  Klaus Decl. Ex. D (Menache Surrebuttal Rep.)
9  at 2.[2]  And Mr. Menache expanded on this issue at his deposition, claiming, for the first time, that
10 he could tell from applying his expertise to his review of Maya files that almost 90% of the Maya
11 Scripts he reviewed were likely written at Rearden.

12     The obvious purpose of all this is to have Mr. Menache opine that source code in Maya
13 Scripts is Rearden-owned MOVA software code.  Because it is undisputed that Mr. Menache did
14 not disclose any of these opinions until his surrebuttal report and deposition, the Court should
15 preclude Mr. Menache from offering these opinions at trial.

### 2. Rearden Fails To Show That Mr. Menache Disclosed An Opinion About DD3 Copying Maya Scripts In His Opening Report

18     Mr. Menache's opinion about DD3's alleged copying of Maya Scripts also was not timely
19 disclosed and should be excluded.

20     Rearden does not dispute that any opinion about infringement had to be offered in Mr.
21 Menache's opening report.  Nor does it dispute that Mr. Menache's testimony about DD3 copying
22 Maya Scripts goes to the question of infringement.  Unable to avoid this objective reality, Rearden
23 claims that Mr. Menache's opening report "clearly disclosed his opinion that DD3 copied Contour
24 MEL scripts every time it opened a Maya animation file containing a Contour tracked mesh."
25 Opp. at 6.  But *none* of the block quotes from Mr. Menache's opening report that supposedly

---

[2] "Klaus Decl." refers to the Declaration of Kelly Klaus filed in support of Defendants' Motion to Exclude Portions of Alberto Menache's Testimony, Dkt. 422-1.  "Klaus Reply Decl." refers to the Reply Declaration of Kelly Klaus filed concurrently in support of this reply brief.

"clearly disclosed" this opinion mention DD3 at all. *Id.* at 6–7. Instead, they reflect a generic opinion that copying *theoretically* can occur "if a Maya project file is a computer graphics ("CG") character with Mova facial animation" with "embedded links to Mova," and "that file is opened in the Maya facial animation software." Klaus Decl. Ex. A (Menache Report) at 7. That is not the same thing as offering an opinion that *DD3* copied Maya Scripts into RAM *when it was working on Beauty and the Beast.*

Indeed, Mr. Menache had no basis to offer any such opinion in his opening report, because at that time, he says he "did not have files" that would have allowed him to offer an opinion "that the actual Maya project animation files that DD3 used in their work had Mova scripts in them." Klaus Decl. Ex. E (Menache Dep.) at 342:11–16. Defendants pointed out this testimony in their motion and Rearden's opposition brief simply ignores it. Rearden instead relies heavily on "Image 10" and "Image 11" from Mr. Menache's Report. But as Mr. Menache confirmed at his deposition, those images come from a file that was *not* used for *Beauty and the Beast*, and that he could not say was even returned by DD3. Klaus Reply Decl. Ex. A (Menache Dep.) at 78:5–80:1.

At most, Mr. Menache's opening report theorized that Maya Scripts can be copied into RAM if Maya project files with those scripts embedded in them are opened in Maya. It does *not* disclose an opinion that *DD3* opened Maya project files with such scripts in them when working on BATB and thereby made copies of them. Mr. Menache's opening report could not have made such a disclosure because, having not reviewed any such files, Mr. Menache had no factual basis to offer that opinion. Because Mr. Menache's opening report did not offer any opinion that DD3 infringed Rearden's copyright by making copies of MOVA code embedded in May Scripts, he should be precluded from offering that opinion at trial.

### 3. Rearden Mischaracterizes The Court's Order And The Record To Argue That Mr. Menache Did Not Need To Address Maya Scripts' Function Or Use Until Surrebuttal

Rearden's opposition brief acknowledges that the *first time* Mr. Menache offered an opinion on what the Maya Scripts do or how they were used by DD3 was in his *surrebuttal report.*

Opp. at 4–5, 7–8. Rearden attempts to excuse this late disclosure by grossly mischaracterizing the expert reports and this Court's expert disclosure order, Dkt. 368.

                (a)       The Function And Use Of Maya Scripts Is A Causal Nexus Issue That Rearden Was Required To Address In Its Opening Reports

Rearden argues that the function of Maya Scripts and how they were used by DD3 is a "damages issue" that Rearden was not obligated to address in its **opening expert reports**. Opp. at 8. That is plainly wrong. The Court's expert disclosure order required Rearden to address whether there is a "causal nexus" between the alleged infringement and gross revenues from BATB. Dkt. 368. Causal nexus is a damages issue, and it is an issue on which Rearden bears the burden of proof. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 715 (9th Cir. 2004); *Mackie v. Reiser*, 296 F.3d 909, 915–16 (9th Cir. 2002).

Mr. Menache expressly acknowledged in his surrebuttal report that his opinions about the function of Maya Scripts and DD3's alleged use of those Scripts "relates to the causal relationship argument." Klaus Decl. Ex. D (Menache Surrebuttal Rep.) at 1. Mr. Menache (and Rearden) could not claim otherwise: in order to show a causal nexus to revenues from the motion picture, it is not enough to show that DD3 simply copied the Maya Scripts; Rearden also has to show that DD3 used the results of the alleged copying to animate the Beast, for otherwise the copying would have no impact the Beast's appearance. Klaus Decl. Ex. E (Menache Dep.) at 53:5–14, 122:14–20, 344:24–343:9. If the Maya Scripts did not have an effect on the Beast's appearance, there would be no way for Rearden to draw a causal nexus between the copying of the Maya Scripts and any movie revenues generated because of what the Beast looked like.

Rearden concedes that Mr. Menache failed to disclose anything about what the Maya Scripts did or how they were used by DD3 to animate the Beast in his opening report. Rearden therefore should be precluded from offering any causal nexus opinion or argument based on the alleged copying of Maya Scripts. *Cave Consulting*, 2018 WL 1938555, at *4 ("facts and opinions that should have been in the original reports are not" permitted in a rebuttal report, and should be excluded if not in the opening report).

(b)  **Because Rearden Also Relies On The Function And Use Of Maya Scripts To Rebut Dr. Lane, Mr. Menache Was Also Required To Address Those Topics In His Rebuttal Report**

Rearden further argues that it was not required to address what the Maya Scripts did or how they were used by DD3 in Mr. Menache's ***rebuttal report***, because (1) Defendants' expert Dr. Lane "did not address the [Maya Scripts] in his opening report" and (2) no such disclosure was required under the Court's order. Opp. at 9. This argument rests on a mischaracterization of the expert reports and the Court's order.

In his opening report, Dr. Lane offered opinions relevant to the issue of profits from *BATB* that are not attributable to the alleged infringement. Among other things, Dr. Lane opined that MOVA's contributions to the Beast were minimal because numerous "subsequent steps" that "do not involve the use of Mova Contour Software" were required to animate the Beast's face after "the tracked mesh . . . was handed off from the Mova team to other visual effects teams at DD3." Klaus Decl. Ex. B (Lane Opening Rep.) at 26.

Mr. Menache's ***surrebuttal*** opinions about what the Maya Scripts do and how they were used by DD3 is ***directly responsive*** to Dr. Lane's opening-report opinion, and Mr. Menache should have disclosed those opinions in his rebuttal report. Mr. Menache's surrebuttal report, for instance, says that "there are many functions in the scripts that could have also been used *after the tracked mesh had been ingested*," Klaus Decl. Ex. D (Menache Surrebuttal Rep.) at 6, and that many "of the operations" performed by the Maya Scripts "were likely used" "*after the tracked mesh was handed off to the DD3 visual effects team*." *Id.* at 8 (emphases added); *see also id.* at 9 (opining that "it is reasonable to conclude that MOVA scripts were used by the animators because animators need many of the tools that are part of the scripts"); *id.* at 10 ("In my opinion, MOVA software was used not only for facial performance capture and processing captured data, but also for some or all of the functions described above by DD3 animators in the workflow *after the MOVA tracked mesh was ingested.*") (emphasis added). This is a direct rebuttal to Dr. Lane's opinion from his opening report that MOVA was *not* used in any way after the tracked mesh was delivered to other DD3 visual effects teams.

Mr. Menache's surrebuttal report makes no secret of the fact that he is responding to Dr. Lane's opening report: Mr. Menache states on the very first page of his surrebuttal report that he is responding to "Dr. Lane's *opening* and rebuttal report," and in particular Dr. Lane's "opinion that the MOVA Contour software's contribution to the animation of the Beast's face is limited to capturing the initial performance and processing the tracked mesh." Klaus Decl. Ex. D (Menache Surrebuttal Rep.) at 1. Although Dr. Lane did not reference Maya Scripts in his opening report, Rearden was obligated to raise the function and use of Maya Scripts in its rebuttal report if it intended to rely on them to rebut Dr. Lane's opinion that Mova software was not used after the tracked mesh was delivered to DD3's visual effects team. Instead, Rearden chose to ambush Defendants with that allegation by withholding it until Mr. Menache's surrebuttal report.

Rearden's argument that the Court's order did not require it to address Maya Scripts in Mr. Menache's rebuttal report fails once the actual substance of Dr. Lane's opening report is taken into account. The Court's expert disclosure order required Rearden's rebuttal reports to address "Disney's expert's opinions on …elements of profit not attributable to the copyrighted work." Dkt. 368. That is exactly what Dr. Lane was opining about in his opening report when he stated that DD3's use of MOVA ended when the tracked mesh was delivered and did not extend further into the visual effects pipeline. As Mr. Menache candidly acknowledged in his deposition, the question of how MOVA was used was "core" to Dr. Lane's opening report, Klaus Decl. Ex. E (Menache Dep.) at 344:14–345:9. If Rearden wanted to rebut that testimony with expert opinion that Mova's use extended further into the pipeline because DD3's animation team used Maya Scripts, the Court's order required it to disclose that opinion in a rebuttal report.

### 4. Rearden's Failure To Timely Disclose Mr. Menache's Opinions Is Neither Justified Nor Harmless

Rearden's opposition brief confirms that its failure to timely disclose these opinions was not justified. It offers no explanation whatsoever for why it failed to make a timely disclosure of these opinions—instead it disingenuously denies that its disclosures were untimely and recycles its specious arguments that Defendants are somehow to blame for Rearden's own failure to seek discovery of Maya Script files. Opp. at 10. Judge Kim has already found that Rearden has no

excuse for failing to pursue discovery of those files. And, moreover, Rearden had possession of hundreds of Maya project files associated with *BATB* by the time opening expert reports were due—it simply chose not to share them with Mr. Menache. Dkt. 408 at 7; Klaus Decl. Ex. E (Menache Dep.) at 132:15–21; *id.* Ex. D (Menache Surrebuttal Rep.) at 2.

Rearden also cannot show that its failure to make timely disclosures was harmless. It is obvious that Defendants are prejudiced by Rearden withholding critical, substantive expert opinions until a surrebuttal report to which Defendants have no opportunity to respond. Rearden argues that Defendants are somehow not harmed by Mr. Menache's surprise, last-minute expert disclosures because Defendants have been "collaborating" with DD3. Opp. at 10. DD3 is a third party. Defendants do not control DD3 and do not have unfettered access to DD3 witnesses and documents. Moreover, because fact discovery is closed, Defendants have had no opportunity—let alone a "full" opportunity (Opp. at 10–11)—to take depositions to discover the relevant facts about Maya Scripts and hold DD3 witnesses to sworn testimony delivered under oath. Rearden's late disclosures have completely denied Defendants that opportunity.

For all of these reasons, Rearden should be precluded from offering Mr. Menache's late-disclosed testimony about (1) Rearden's purported ownership of a copyright interest in the Maya Scripts; (2) DD3's purported copying of Maya Scripts in connection with its work on *BATB*; and (3) the functionality and purported use by DD3 of Maya Scripts including after delivery of the tracked mesh.

### B. Mr. Menache's "Experience" Does Not Provide An Adequate Foundation For His Testimony About How The Maya Scripts "Could Have Been" Copied And Used By DD3

Rearden's opposition brief confirms that not only did Mr. Menache wait until his surrebuttal report to offer opinions about how DD3 "could have" used Maya Scripts, thereby denying Defendants an opportunity to respond to that testimony, Mr. Menache also based his testimony about DD3's hypothetical usage on his "experience"—*not* on any actual facts about what DD3 actually did. An expert's testimony must rest upon a proper foundation, and here, that foundation is lacking.

Rearden argues that Mr. Menache should be able to offer testimony about how DD3 hypothetically "could have" used the Maya Scripts based on his "experience," but an expert's application of his experience needs to be tied to the facts of the case and based on sufficient facts and data. Fed. R. Evid. 703. If it is not, the expert's opinion is inadmissible. That was the court's holding in *Ollier v. Sweetwater Union High School District*, 267 F.R.D. 339, 341 (S.D. Cal. 2010), which excluded two experts who had relevant "experience" with the subject matter, but who made only a "superficial effort" to apply that experience to the relevant facts by examining the premises alleged to be problematic. *Ollier* confirms that an expert's general experience with a particular subject area cannot stand in for an examination of the actual facts or data about which the expert is supposed to be offering an opinion.

Rearden's opposition brief does not address, let alone attempt to distinguish, *Ollier*. Instead, it puts forward arguments that *Ollier rejected*. Rearden argues it is sufficient for Mr. Menache to offer opinions about how DD3 "could have" used Maya Scripts after the tracked mesh hand-off because he has "experience with visual effects studios and animators performing facial performance capture for motion pictures" and reviewed Maya Scripts in files that were *not* the tracked mesh files handed off to the DD3 visual effects teams. Opp. at 13. But the files alleged to have been used by DD3's visual effects teams after the hand-off were never examined by Mr. Menache—superficially or otherwise. Klaus Decl. Ex. E. (Menache Dep.) at 64:9–65:15, 163:16–165:17, 336:6–14, 336:12–337:9. Nor did Mr. Menache rely on DD3 witness testimony about what those files did or did not include. He did *even less* than the experts in *Ollier* to examine the relevant facts and data.

The cases on which Rearden relies do not dictate a different result and only reinforce the lack of foundation for Mr. Menache's opinions here. In *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998), the court held that a medical doctor could offer an expert opinion in a slip and fall case about the likely cause of the victim's injuries even though he did not personally examine *the victim*. The expert was permitted to testify only because he had examined *the victim's medical records*. Mr. Menache did not examine the relevant records here. He could not

do so, because Rearden's lack of diligence in pursuing those records in discovery meant they were not available to him.

*FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 6460573, (N.D. Cal. Dec. 10, 2018), is likewise inapposite. There, the court held that although an expert did not have first-hand knowledge of the subjective intent and motivation of third parties who negotiated licensing agreements with the defendant, he could permissibly rely on the testimony of those parties about their intent and form an opinion about their licensing practices based on that testimony. *Id.* at *2. The court also rejected a claim that the expert was improperly extrapolating his conclusions to hundreds of licenses based on a review of just six negotiations, noting that the expert's conclusions were based "on a review of hundreds of contemporaneous documents and the sworn testimony from nearly 40 witnesses, including those from key [third parties]." *Id.* at *3. Here, Mr. Menache does not have similar evidence—second-hand, or otherwise—about what was in the files about which he is speculating.

*In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 365 (N.D. Cal. 2018), on which Rearden also relies, is similar. That case stands for the unremarkable proposition that an expert need not conduct her own testing to render an opinion. But that does not dispense with Rule 703's requirement that the expert's opinion must be supported by facts or data *of some kind.* In *Arris,* the expert "relied on the results of tests that … had already [been] performed rather than running his own tests." *Id.* at 364. Mr. Menache didn't rely on *any* facts about the Maya files handed off to DD3's animation team because no such facts are in the record—other than percipient witness testimony that *contradicts* Mr. Menache's opinion. Klaus Reply Decl. Ex B (Hendler Dep.) at 417:5–418:19 ("the publishing process that hands off data from one team to another is generally not a Maya file. It's cached data that doesn't contain any scripts or anything in there and reassembled into a Maya file afterwards.").

Rearden cites no case in which a court has found expert opinion to have a proper foundation where the expert did not examine either the relevant documents or relevant percipient witness testimony. Mr. Menache is simply invoking his "experience" to speculate about what was

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF ALBERTO MENACHE

in files he never reviewed, which have never been produced in this case, and about which no witness has ever testified other than to say they *do not* contain any Maya Scripts.

Mr. Menache's opinions that DD3 "could have" and likely did use Maya Scripts after the tracked mesh was handed off lacks foundation and should be excluded.

### C. Mr. Menache Should Be Precluded From Mentioning His Work On *Avatar* Sequels

Defendants' motion also seeks to preclude Mr. Menache from testifying about the *Avatar* sequels. Defendants' argument is simple: either this testimony relates to work Mr. Menache did on the *Avatar* sequels and would violate his confidentiality agreement if offered, or it does not relate the work he did on the *Avatar* sequels, in which case it lacks foundation and is misleading. It is troubling that, despite Mr. Menache's acknowledgement that he has a strict confidentiality obligation not to disclose anything about his work on *Avatar*, Rearden is pressing for him to be able to do exactly that. Mr. Menache's retention as an expert for this litigation does not give him leave to breach his contract. Rearden's arguments about Mr. Menache's *Avatar* testimony are non-responsive and completely miss the mark.

First, Rearden argues that Disney hasn't shown that Lightstorm is a Disney affiliate. Opp. at 14. That argument is irrelevant. Rearden does not, and cannot, dispute that Mr. Menache is under a confidentiality obligation to Lightstorm not to disclose anything about the work he did on the *Avatar* sequels. Mr. Menache confirmed this fact at his deposition. Klaus Decl. Ex. E (Menache Dep.) at 271:12–272:20. Mr. Menache's confidentiality obligation binds Mr. Menache regardless of the relationship between Lightstorm and Defendants, and precludes him from disclosing anything about the work he did on the *Avatar* movies. Even if an anonymous "producer" at Lightstorm told Mr. Menache "there w[as] no objection" to Mr. Menache "serv[ing] as an expert for Rearden in this case," that would be irrelevant. Dkt. 445-5, Menache Decl. ¶ 2. Serving as an expert and disclosing confidential information about the *Avatar* sequels are two different things. Rearden has put *no* evidence before the Court, because there is none, that Lightstorm consented to Mr. Menache disclosing anything about his work on *Avatar* in this litigation.

Rearden's argument that Defendants did not object to Confidential or Highly Confidential material being shared with Mr. Menache under the Protective Order is similarly misplaced. Opp. at 14–15. Sharing such information with Mr. Menache under the Protective Order is not the same things as Mr. Menache disclosing information about the *Avatar* sequels that he is obligated to keep confidential. Defendants never agreed that Mr. Menache could make such a disclosure. To the contrary, when Rearden advised Defendants that it intended to retain Mr. Menache as an expert, Defendants expressly objected that while they "do not at this time object to 'Confidential' or 'Highly Confidential' material being shared with Mr. Menache under the protective order," they "continue to be very concerned" about the fact that he "has had access to Defendants' confidential information and remains bound by the terms of his agreement with Defendants, including his obligation to maintain such information in confidence and not make unauthorized use of that information (which would include use in this litigation)." Klaus Reply Decl. Ex. C (Apr. 5, 2023 email from Blanca Young to Mark Carlson et al.).

Finally, Rearden's attempt to justify its improper instructions to Mr. Menache not to answer questions at his deposition about the work he did on the *Avatar* sequels fails. Opp. at 16. The provision of the protective order Rearden cites, which provides for a 14-day notice and waiting period before the disclosure of non-party confidential information, applies only to a "*Non-Party's*" confidential information. Dkt. 114 ¶ 11 (emphasis added). Lightstorm is not a "Non-Party"; it is a Disney affiliate. And Rearden knew this was the case months before Mr. Menache's deposition when Defendants' counsel not only informed Rearden's counsel of this fact, but provided him with Mr. Menache's confidentiality rider from his agreement with Lightstorm—something Defendants could not have obtained from a non-party. Klaus Reply Decl. Ex. C (Apr. 5, 2023 email from Blanca Young to Mark Carlson et al.). Notably, Mr. Menache does not deny in his declaration that the document Defendants provided is the confidentiality rider to his contract with Lightstorm. The instruction to Mr. Menache not to answer questions about the work he did on the *Avatar* sequels was improper, and prevented Defendants from discovering if he even has a basis to make the statements about those sequels that he offers in his report. While the improper

instruction is not necessary to preclude Mr. Menache's testimony, it is a separate and independent additional reason why the testimony should be excluded.

### D. Mr. Menache Is Not Qualified To Opine On What Draws Audiences To Movies Or How Movies Are Marketed

Mr. Menache has no qualifications to speak of that would allow him to offer expert testimony on how motion pictures are marketed or what draws audiences to movies. While Rearden is correct that Mr. Menache has expertise in developing visual effects for motion pictures, that does not transform him into an expert on anything and everything related to motion pictures.

"[E]xpertise in one subject does not necessarily mean the expert will be qualified to testify on all issues that could arise from that subject." *Lutron Elecs. Co. v. Crestron Elecs. Inc.*, 970 F. Supp. 2d 1229, 1241 (D. Utah 2013). The only "qualifications" that Rearden points to in response to Defendants' argument that Mr. Menache is not qualified to opine about how movies are marketed and what draws audiences to see them is the fact that Mr. Menache has worked in "*entertainment technology*" for 35 years and provided *visual effects services* on big-name movies for major production companies and "famous film directors." Opp. at 17 (emphasis added). None of that explains how or why he is qualified to offer opinions on how movies are marketed or the factors that draw audiences to movies—just as those experiences do not qualify him to offer expert opinions on acting, directing, choreographing, or engaging in any number of other tasks that go into making a motion picture.

Mr. Menache admitted that he has no experience or expertise whatsoever in marketing motion pictures or analyzing what draws audiences to them. His opinions on these subjects should be excluded.

### III. CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion, the Court should exclude the opinions of Alberto Menache regarding Maya Scripts, his work on *Avatar* sequels, and what draws audiences to movies and how movies are marketed.

DATED: August 17, 2023

MUNGER, TOLLES & OLSON LLP

By:    */s/ Kelly M. Klaus*
      KELLY M. KLAUS

*Attorneys for Defendants*