Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DISNEY ENTERPRISES, INC., a Delaware corporation, DISNEY STUDIO PRODUCTION SERVICES CO., LLC f/k/a WALT DISNEY PICTURES PRODUCTION, LLC, a California limited liability company, WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC a Delaware limited liability company, MVL PRODUCTIONS LLC, a Delaware limited liability company, CHIP PICTURES, INC., a California corporation, INFINITY PRODUCTIONS LLC, a Delaware limited liability company, ASSEMBLED PRODUCTIONS II LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.    4:17-cv-04006-JST <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF ROBERT WUNDERLICH** <br><br> **REDACTED PUBLIC VERSION** <br><br> Date:    October 12, 2023 <br> Time:    2:00 p.m. <br> Judge:   Hon. Jon S. Tigar <br> Ctrm.:   6 (2nd Floor) |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT ......................................................................................................................1

       A.      ██████████████████████████████████
               ██████ ..........................................................................................1

       B.      Wunderlich's tax opinions should be stricken because they are
              irrelevant. ..................................................................................................6

       C.      Wunderlich's *Daubert* history of exclusion is relevant to Rearden's
              *Daubert* motion. .......................................................................................6

III.    CONCLUSION ...................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burns v. Imagine Films Ent., Inc.*,
  2001 WL 34059379 (W.D.N.Y. Aug. 23, 2001) .......................................................... 3, 4

*Edmons v. Home Depot, U.S.A., Inc.*,
  2011 WL 127165 (D. Ore. Jan. 14, 2011) .................................................................... 7

*Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ........................................................................... 1, 3, 4

*Kamar Int'l Inc. v. Russ Berrie & Co.*,
  752 F.2d 1326 (9th Cir. 1984) ................................................................................ 3

*Parlour Enterp. v. The Kirin Group*,
  152 Cal. App. 4th 281 (2007) ......................................................................... 1, 2, 7

*Three Boys Music. Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ................................................................................. 6

*Twest Corp. v. Elephant Butte Irrig. Dist.*,
  616 F. Supp. 2d 1110 (D.N.M. 2008) ........................................................................ 1

**Other Authorities**

5 Nimmer on Copyright § 14.03(C)(3) ......................................................................... 4

# I.   INTRODUCTION

The central flaw in Mr. Wunderlich's reports is that he fails to acknowledge what his burden is as Disney's expert.  After Rearden identified gross revenue attributable to the film, it is *Disney's* burden to prove deductible expenses.  *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985).  But Wunderlich has done the exact opposite of that.  He makes no effort to prove that Disney actually incurred many of the expenses he includes in his report, including ██████████████████████████████████████████████████ He is simply repeating Disney's fantastical numbers, with no effort expended to support these figures.  This opinion offers nothing of value for the jury.

In opposing Rearden's motion to exclude portions of Wunderlich's opinion, Disney also attempts to minimize his record of exclusion.  But the numbers are stark:  Rearden has identified eight different cases in which his opinions have been excluded, and only *one instance* in which his challenged opinion survived *Daubert* on the merits (which Disney did not dispute).  A 1-8 record on *Daubert* motions does not inspire confidence, particularly when he is following the same unreliable methodologies here as he did in the past.  *See, e.g., Parlour Enterp. v. The Kirin Group*, 152 Cal. App. 4th 281, 285 (2007) (excluding Wunderlich's opinion as unreliable when he relied on unsupported projected profit statements from client).

Wunderlich's opinions serve primarily as a vehicle to recycle Disney's figures, which are designed to minimize the profit earned by *Beauty and the Beast* at every turn.  Copying and pasting figures from Disney's spreadsheets does not require an expert.  *See Twest Corp. v. Elephant Butte Irrig. Dist.*, 616 F. Supp. 2d 1110, 1117-17 (D.N.M. 2008) (witness not serving as an expert by simply compiling information from client).  His layperson opinions are unreliable, and Plaintiffs' motion to exclude portions of his opinions should be granted.

# II.   ARGUMENT

**A.**   ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████ Opp. at 4.  But this begs the question of whether all of Disney's self-serving figures are reliable.  █████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████

Phil Fier explained the unreliability of Wunderlich's opinions in detail, particularly the impropriety of applying a ████████████████████████████████████████████████
████████████████████████ Fier stated that it is industry standard for terms like overhead expense or distribution expense to be specifically defined in a contract because they are not true third-party costs.  As he described, "[o]ther 'expenses' often found in studio accounting statements are contractual in nature and do not represent actual, third-party expenses attributable to a given motion picture."  ECF No. 419-8 ("Fier Rebuttal") at 15.  A contractual cost "is not a true third-party cost in that no funds are remitted by Disney to a third party based on an invoice for services rendered, for example.  This type of cost is similar to production or capitalized overhead.  It may be the studio's policy to account for such items, ***but they are not true expenses***.  Such costs are meant to inflate the costs and thus lower the (contractually defined) profits of the film."  *Id.*  As a result, Wunderlich's figures █████████████████████████████████████████████████
██████████████████████████

Disney tries to support his opinion by noting that he talked to some people at Disney (Opp. at 6), but Wunderlich did nothing to probe whether the account of Disney's employees was accurate or reliable.  He simply accepted them at face value.  This renders Wunderlich's opinion unreliable.  *See Parlour Enterp.*, 152 Cal. App. 4th at 285.  For example, although a Disney employee (Sarah Eggebrecht) told him that Disney applied a ███████████████████████████████████████
██████████████████████ ECF No. 430-5 ("Wunderlich Dep.") at 31:17-20.  Wunderlich's report also identified "examples" of ███████████████████████
█████████████████████████████████████████████████
████████████████████████████████ *Id.* at 37:10-17. But he could not identify how

much (if anything) was spent by *any* of these entities in support of *Beauty and the Beast*. *Id.* at 37:18 – 40:20.

In an attempt to change the subject, Disney next claims that "Mr. Fier accepts, without any critique, all of the numbers that support Rearden's position and increase Rearden's potential claimed damages—even though he did nothing to independently verify those numbers." Opp. at 6. This is clearly false, as demonstrated by Fier's efforts to fill the holes in Disney's data. When Fier prepared his opening report, he did not have revenue figures for 2022, even though these were available at Disney. (█████████████████████████████████████████ *See* Fier Rebuttal at 1-2). When Fier requested and obtained data for the second half of 2022, he saw that the ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *See* Fier Rebuttal at 10-11. He also conservatively estimated the consumer product ultimates at ███████████████████ ███████████████████████████████████ Fier Rebuttal at 11. There is no basis for Disney's assertion that Fier "did nothing" to verify his numbers; he dug deep into the numbers to independently confirm their accuracy – which Wunderlich conspicuously failed to do.

To buttress Wunderlich's opinions, Disney cites to cases that merely underline the unreliability of Wunderlich's approach. *See* Opp. at 7 (citing *Kamar Int'l Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1333 (9th Cir. 1984); *Frank Music I*, 772 F.2d at 516; *Burns v. Imagine Films Ent., Inc.*, 2001 WL 34059379, at *7 (W.D.N.Y. Aug. 23, 2001)). *Kamar* is directly on point for Rearden. In that case, the district court excluded the opinions of defendant's expert because he did not adequately justify his allocation of overhead methodology. The Ninth Circuit affirmed with respect to the overhead attributable to certain categories of expenses. For example, defendant attributed "design" overhead to each item it sold even if it did not design that item. *Id.* at 1333. It also attributed "credit" overhead, even if no credit was used to purchase the infringing products. *Id.* The Ninth Circuit remanded and directed the district court to recalculate allowable overhead based on what the company proved, as to each overhead category, that "***actually contributed to the production, distribution or sales***" of the products at issue. *Id.* (emphasis added). Wunderlich also

has not proven that the contested expenses actually contributed to the production of the movie; he relied on the unverified *ipse dixit* of Disney employees.

Disney cites *Burns* for the notion that courts have "approved of both revenue and cost-based approaches to calculating overhead." Opp. at 7. But this was in the context of summary judgment, not *Daubert*, and the *Burns* court noted that expenses that are nominally paid to entities owned by the defendants are not deductible "expenses" under § 504(b) because those funds "ultimately return[] to Defendants' coffers." 2001 WL 34059379, at *9. This is precisely Fier's point – nominal expenses not paid to third parties are not true costs and should not be deducted. Fier Rebuttal at 15.

In support, Defendants misleadingly cite *Frank Music I* for the proposition that defendants in that case "***properly***" "'allocated a portion of these [overhead] costs to the production of *Hallelujah Hollywood* based on a ratio of the revenues from that production as compared to MGM Grand's total revenues.'" Mot. at 7 (quoting in part 772 F.2d at 516). That is not what *Frank Music I* held at all; the Ninth Circuit held that it was "clearly erroneous" for the district court to adopt plaintiffs' overhead allocation because defendants offered "no evidence" that the overhead actually contributed to the production of *Hallelujah Hollywood*. 772 F.2d at 516. In deposition, ████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████ *Frank Music I* underscores the unreliability of Wunderlich's opinions

Similarly, Disney cites Nimmer on Copyright for the proposition that "[a] proper allocation of defendant's overhead attributable to the cost of the infringing item may be deducted." Opp. at 7 (citing 5 Nimmer on Copyright § 14.03(C)(3)). Rearden agrees, which is why Wunderlich's attempt to graft overhead expenses onto the movie based on a vague and unsupported percentage should be excluded. These overhead expenses are ***not*** attributable to the cost of the film. Nor could Wunderlich identify *any* production costs that were actually attributable to *Beauty and the* Beast. As he testified (Wunderlich Dep. at 48:7 – 49:8):

████████████████████████████████████████████████████ ████████████ ████████████████████████████████

1



Faced with these obvious deficiencies, Disney attempts to shift the blame to Rearden by alleging that "Rearden had ample opportunity to take discovery on the purported 'gaps' in Disney's evidence but made the strategic decision not to do so." Opp. at 7. Disney further suggests that Rearden asked Wunderlich "only a handful of questions about [distribution or production] overhead." *Id.* at 7-8. This contention is incorrect, for three main reasons. First, Disney served Wunderlich's opinions *after* the close of fact discovery, consistent with the pretrial order. ECF Nos. 313, 368. Plaintiffs did not have the opportunity to take discovery on Wunderlich's baseless assertions. Second, Disney is misstating the burden again. It is *Disney's* burden to demonstrate that

1    costs are attributable to the movie, not Plaintiffs' burden to prove that they are *not* attributable.

2    Third, Rearden's counsel asked only a "handful" of questions because Wunderlich did not know

3    anything or have any basis for his opinions.  His lack of knowledge was confirmed after only a few

4    questions, because he forthrightly admitted he had no substantive basis for his opinions and was only

5    repeating what he was told by Disney.  *See* 37:18 – 40:20. One cannot wring blood out of a

6    Wunderlich stone.

7    **B.      Wunderlich's tax opinions should be stricken because they are irrelevant.**

8            Disney challenges Rearden's contention that Wunderlich's calculation of taxes is unreliable

9    because "Disney paid the federal corporate rate on BATB profits."  Opp. at 8.  This is ***wrong***—

10   Disney did *not* pay the federal corporate tax rate on BATB profits—and illustrates why this portion

11   of Wunderlich's report is unreliable.  BATB is part of The Walt Disney Company, and Disney only

12   pays one tax rate, as its SEC filings confirm.  *See* Fier Rebuttal at 22.  It does not pay a different tax

13   rates for each film, and Disney has not suggested otherwise.

14           Hence, Rearden's critique is not with Wunderlich's "methodology" of calculating taxes (Opp.

15   at 9); it is that Wunderlich is engaging in an irrelevant exercise.  Under Ninth Circuit law, an

16   infringing party must prove the amount of taxes ***actually paid*** with respect to the work at issue.

17   Hypothetical tax rates are meaningless.  *See Three Boys Music. Corp. v. Bolton*, 212 F.3d 477, 488

18   (9th Cir. 2000) (affirming district court's ruling that Sony could not deduct taxes because it did not

19   incur a "concrete financial impact" due to other losses at Sony).  Disney has no meaningful response

20   to *Three Boys*, nor explains how it meets the *Three Boys* standard set by the Ninth Circuit.  It repeats

21   its contention that this is just a dispute over "Disney's internal tax accounting methodology" (Opp. at

22   9), but there is no methodology here – Wunderlich is simply repeating back a hypothetical tax rate

23   that is untethered to the tax rate Disney actually paid.

24   **C.      Wunderlich's *Daubert* history of exclusion is relevant to Rearden's *Daubert* motion.**

25           Disney attempts to distance itself from the track record of its own expert by characterizing his

26   exclusions as being in the "distant past" and concerning topics not relevant here.  Opp. at 10.  First,

27   the year 2013 is not exactly in the distant past.  And second, the bases on which he was excluded *are*

28

similar to what he did here, as Rearden has already explained.  *See* Mot. at 6-8.  All of his cases involve some version of estimating lost profits or revenue from infringement or defamation.  *See id.* The criticisms of his work also centered on the same flaws that Rearden identified here:  accepting assumptions from his client at face value without comment or question.  *See, e g., Parlour Enterps.*, 152 Cal. App. 4th at 285 (excluding Wunderlich's opinion because he adopted self-serving profit projections from his client, despite warnings that they were "not based on actual operations.").  And although it is true that the ***only case*** denying a *Daubert* motion on the merits with respect to Wunderlich's opinion noted that his previous exclusions are not dispositive (Opp. at 11), Rearden makes no such claim here.  But his history of exclusion and as an expert for hire warrants application of the *Daubert* standards with "greater rigor."  *Edmons v. Home Depot, U.S.A., Inc.*, 2011 WL 127165, at *6 (D. Ore. Jan. 14, 2011).

### III.   CONCLUSION

By uncritical adoption of Disney's figures, Wunderlich's opinions do not withstand scrutiny, rigorous or otherwise.  Plaintiffs' motion to exclude portions of Wunderlich's opinions should be granted.

DATED:  August 17, 2023

HAGENS BERMAN SOBOL SHAPIRO LLP

By: ___*/s/ Jerrod C. Patterson*_____
        JERROD C. PATTERSON
Steve W. Berman (*pro hac vice*)
Mark Carlson (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

1      *Attorneys for Plaintiffs*