Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DISNEY ENTERPRISES, INC., a Delaware corporation, DISNEY STUDIO PRODUCTION SERVICES CO., LLC f/k/a WALT DISNEY PICTURES PRODUCTION, LLC, a California limited liability company, WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC a Delaware limited liability company, MVL PRODUCTIONS LLC, a Delaware limited liability company, CHIP PICTURES, INC., a California corporation, INFINITY PRODUCTIONS LLC, a Delaware limited liability company, ASSEMBLED PRODUCTIONS II LLC, a Delaware limited liability company, <br><br> Defendants. | Case No.     4:17-cv-04006-JST <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DR. STEPHEN LANE** <br><br> **REDACTED PUBLIC VERSION PER COURT ORDER (ECF NO. 473)** <br><br> Date:    October 12, 2023 <br> Time:    2:00 p.m. <br> Judge:   Hon. Jon S. Tigar <br> Ctrm.:   6 (2nd Floor) |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ........................................................................................................1

II.  AUTHORITY AND ARGUMENT .............................................................................2

    A.  Fed. R. Civ. P. 703 prohibits introduction of Darren Hendler and Mimi Steele's testimony through Lane. ...............................................................2

    B.  Lane's testimony about images reproduced in Disney's brief is cumulative and prejudicial in view of Disney's promise to call Hendler at trial or offer his deposition. .................................................................3

    C.  The Hendler declaration and deposition transcript are *not* admissible evidence. ...................................................................................................4

    D.  The Hendler transcript and declaration do not become admissible evidence by laundering them through the Lane report and testimony. .......................5

    E.  Disney does not contest Rearden's motion to exclude Lane's testimony based on Mimi Steele's deposition. .........................................................7

III.  CONCLUSION .........................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013) .................................................................................. 6

*McDevitt v. Guenther*,
   522 F.Supp.2d 1272 (D. HI 2007) ...................................................................... 3, 4

## OTHER AUTHORITIES

Fed. R. Civ. P. 703 ................................................................................................... 2

Fed R. Evid. 403 ...................................................................................................... 3

Fed R. Evid. 703 ...................................................................................................... 2

Fed R. Evid. 803(6)(B), (C) ..................................................................................... 5

Fed R. Evid. 803(6)(D) ............................................................................................ 4

Fed R. Evid. 803(6)(E) ............................................................................................ 4

1

## I.    INTRODUCTION

2          Rearden's motion is narrowly tailored to three sections of Dr. Stephen Lane's report that

3    simply repeat testimony of key fact witnesses:  Sections VIII and X.A (repeating testimony of

4    Hendler) (*see,* ECF No. 428-4, "Lane Rep." at 24-44), and Section X.B (repeating testimony of

5    Hendler and Steele) (*Id.* at 44).  This testimony all concerns how and when DD3 used, or did not use,

6    the Contour software on *Beauty and the Beast*.  *Id.*  These three challenged sections attempt to

7    introduce into evidence facts that are in dispute and are of dubious credibility.  Dr. Lane did not

8    personally observe any of the events described by Hendler and Steele.  Carlson Reply Dec. Ex. H

9    (Lane Depo.) at 54:10-55:7.  And he brings no relevant experience to bear on their testimony because

10   he has no experience creating or animating a CG character using Contour software.  *Id.* at 52:3-11.

11   He expresses no opinions in these sections of his report.  He merely "read through" what DD3

12   witnesses said, and concluded "it all sounded right to me," so he repeated it and gave it his stamp of

13   approval.  *Id.* at 57:25-58:9.  He had no questions about the testimony, because he never met with or

14   interviewed Hendler.  *Id.* at 56:17-22.  His role, as he understood it, was to "validate" what these

15   other eyewitnesses had said under oath (*Id.* at 59:2-6), even though he lacked the background or

16   experience to do so (*Id.* at 52:3-11, 44:5-10, 46:7-23).

17         This testimony will not be helpful to the jury.  The parties agree that "[a] central issue in this

18   case is what the allegedly infringed MOVA computer software program did or did not do [in DD3's

19   work on *Beauty and the Beast*]."  ECF No. 439 ("Opp.") at 3-4.  And Disney has represented to the

20   Court that it will prove what DD3 did using the Contour software at trial through percipient DD3

21   witnesses whom they will call live or, if shown to be unavailable under Fed R. Evid. 804(a), whose

22   depositions it will read to the jury.  *Id.* at 1:17-18; 8:3-4.  Disney also intends to offer expert

23   testimony from Lane, an aeronautical engineer who teaches some courses on computer graphics, who

24   read and relied on the testimony of DD3 witnesses like Darren Hendler, Gayle Munro, Ken Pearce,

25   and Disney's Mimi Steele in forming his opinions.

26         The issue is not whether Disney may call DD3 percipient witnesses to testify to the disputed

27   facts on which Lane relied—it must.  Nor is the issue whether Lane may rely on the deposition

28   transcripts and declarations of those witnesses—he may.  Rather, the issue here is whether Disney

PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE
REPORT AND TESTIMONY OF STEPHEN LANE - 1
Case No. 17-CV-04006

1   may disclose the deposition and declaration testimony of Steele and Hendler, Munro, Pearce, and

2   other DD3 witnesses to the jury through the testimony of Lane.  Under Fed R. Evid. 703, it may not.

## II.   AUTHORITY AND ARGUMENT

3

4   **A.   Fed. R. Civ. P. 703 prohibits introduction of Darren Hendler and Mimi Steele's testimony through Lane.**

5

6   Disney asserts it is a "false premise" that Lane will be used as a "conduit" for hearsay, but

7   concedes that Lane will testify to factual details of specific past events relating to "how Defendants'

8   visual effects vendor for *BATB*, DD3, used MOVA in its production pipeline."  Opp. at 1:9-10.  He

9   can do that only by repeating the testimony of others who actually witnessed DD3's use.  But Disney

10  argues that Lane is not a mere conduit for the hearsay deposition testimony of Hendler (it does not

11  mention Steele) because:

12          Defendants will call the DD3 witnesses live; if those witnesses are
        unavailable, Defendants will play their sworn deposition testimony to
        the jury.

13

14  Opp. at 1:17-18.  In other words, Disney represents that it will call Hendler (but not Steele) at trial to

15  testify about how DD3 used Contour in its *Beauty and the Beast* production pipeline, and then will

16  call Lane to repeat that same testimony, apparently to "validate" it.  Disney argues that Fed R. Evid.

17  703 permits the admission of hearsay through Lane "to explain the basis of the expert's opinion."

18  Disney selectively reads Fed. R. Evid. 703, which distinguishes between the opinion and the

19  facts and data upon which the opinion is based.  Under the Rule, an expert's *opinion* is admissible

20  even if based on inadmissible facts or data, but not necessarily the inadmissible *facts or data*

21  themselves:

22          But if the facts or data would otherwise be inadmissible, the proponent
        of the opinion may disclose them to the jury *only if their probative
        value in helping the jury evaluate the opinion substantially outweighs
        their prejudicial effect.*

23

24  Fed R. Evid. 703.  Here, Lane's repetition of facts and data that he read about in Hendler's or

25  Steele's deposition transcripts *has no probative value*.  Lane did not personally observe any of the

26  events described by Hendler and Steele. Ex. H at 54:10-55:7. And he has no relevant experience to

27  apply in evaluating their testimony because he has no experience creating or animating a CG

28  character using Contour software.  *Id.* at 52:3-11.  Furthermore, if Disney calls Hendler and Steele at

trial or introduces their deposition testimony into evidence, as it represents to the Court it will do, then Lane's repetition of that same evidence to "validate" it is needlessly cumulative.  *See* Fed R. Evid. 403 (relevant evidence may be excluded where its probative value is substantially outweighed by "wasting time, or needlessly presenting cumulative evidence.")

Furthermore, the admission of evidence of disputed facts through an expert witness is *highly prejudicial* not only because it is needlessly cumulative and a waste of time, but because the jury may be confused by the expert reciting inadmissible facts as though they had been established:

> Generally, the facts on which [an expert] bases his opinion are also the facts in dispute before the factfinder in this case. For this reason, *the probative value of any inadmissible facts would be outweighed by confusion to the jury and the prejudicial effect of having an expert recite inadmissible facts as though they are established.* The Court concludes that the recitation of otherwise inadmissible facts contained in [expert]'s report are not admissible under Rule 703.

*McDevitt v. Guenther*, 522 F.Supp.2d 1272, 1294 (D. Haw. 2007).  Disney assures the Court that it will call the DD3 witnesses to testify at trial, and it promises to introduce DD3 documents that can only be admitted through Hendler or some other DD3 witness (certainly not Lane).  Opp. at 1:17-18.  The credibility of Disney's DD3 witnesses must be judged by the jury on its own merit after cross-examination.  Disney cannot place its thumb on the scales with its aeronautical engineer's endorsement or "validation" of that testimony.

**B.      Lane's testimony about images reproduced in Disney's brief is cumulative and prejudicial in view of Disney's promise to call Hendler at trial or offer his deposition.**

Disney reproduces in its "Background" section an image showing a grid of numerous frames from shots of the Waltz scene from *Beauty and the Beast*, and argues that jurors cannot understand the image without Lane repeating Hendler's deposition or declaration testimony.  Opp. at 5:3-28.  It reproduces a frame from a shot that Disney contends illustrates the process of "rotomotion" or "rotoscoping work," and argues that without Lane repeating Hendler's deposition or declaration testimony, the jurors will not be able to understand it.  *Id.* at 6:1-7:21. And Disney reproduces an image showing a composite frame from video showing Mr. Stephens as captured using Contour paired with the tracked mesh as rendered by Maya, and argues that Lane must repeat Hendler's deposition or declaration testimony so that jurors can understand the image.  *Id.* at 6:22-7:16.

But Lane did not produce any of the images that Disney relies on, and he was not present when DD3 produced them and did whatever DD3 did with them.  Nor can he authenticate them or establish a hearsay exception because they are DD3 documents, not his.  Lane can only repeat whatever Hendler said about them in his deposition or declaration.  Disney promises to call Hendler or offer his deposition at trial, so the images can be explained to the jury by Hendler to the extent that he has personal knowledge and subject to Rearden's cross-examination.  Lane's live repetition and "validation" of that testimony is cumulative and prejudicial.  *McDevitt*, 522 F.Supp.2d at 1294.

**C.     The Hendler declaration and deposition transcript are *not* admissible evidence.**

Disney contends that Fed R. Evid. 703's probative value/prejudicial effect balancing test does not apply to the Hendler deposition transcript and declaration because they are *admissible evidence*. In fact, they are not admissible.

Disney argues that the Hendler deposition transcript and declaration are admissible under Fed R. Evid. 804(b).  Opp. at 1:21-22.  But under Fed R. Evid. 804(b)(1)(A), deposition testimony is admissible only if the declarant "is unavailable as a witness."  Disney has made no showing under Fed R. Evid. 804(a) that Hendler will not be available as a witness at trial, so Fed R. Evid. 804(b) does not apply.  In fact, Disney has affirmatively represented to the Court that it *will* call him to testify live at trial.  *Id.* at 1:17. Therefore, Disney has made no showing that Hendler's deposition and declaration are admissible evidence under Fed R. Evid. 804(b).

Disney suggests that Hendler's deposition transcript and declaration are admissible evidence under Fed R. Evid. 803(6) as business records.  Opp. at 1:21-22.  But that is nonsense.  Disney makes no showing that the elements of Fed R. Evid. 803(6) are met.  *See* Fed R. Evid. 803(6)(D) (elements of business records exception must by shown by testimony or certification).  Nor could it. The writing of declarations to support Disney summary judgment motion and testifying in a copyright infringement deposition are not "a regularly conducted activity of [DD3]" nor were they "a regular practice" of any regularly conducted DD3 activity.  Fed R. Evid. 803(6)(B), (C). Furthermore, Rearden has shown that DD3's status as Disney's ███████ and Hendler's brazen violation of this Court's SHST injunction and other factors indicate a lack of trustworthiness.  Fed R. Evid. 803(6)(E); *see*, ECF No. 429 ("Mot.") at 4:12-5:2.

Finally, Disney attempts to distinguish all of the cases Rearden cited in its opening brief because they each address experts who offered inadmissible evidence, but "Dr. Lane bases his opinions on *admissible* testimony and documents …." Opp. at 8:7-17. Since it has made none of the required showings to render the Hendler transcript and declaration admissible under Fed R. Evid. 804(b) and 806(6)(E), Disney fails to distinguish any of the cases cited in Rearden's opening brief.

**D.   The Hendler transcript and declaration do not become admissible evidence by laundering them through the Lane report and testimony.**

Disney argues that Lane's "review and synthesis" of the Hendler transcript and declaration "and his incorporation of that evidence in his opinions" (1) establish the factual foundation for his opinions and (2) "discussion of those facts is necessary for the jury to understand how he arrived at those opinions." Opp. at 8:23-9:18. Similarly, it argues that the Hendler transcript and declaration become admissible evidence because Lane applied his "specialized knowledge" to them. *Id.* at 9:19-10:7. In effect, according to Disney, the inadmissible evidence is laundered through Lane's expertise and comes out admissible.

But Lane admitted that he has no opinions regarding the facts of how DD3 did and did not use the Contour software for *Beauty and the Beast.* Lane testified that since he was not present when DD3 used Contour, the only way to explain how DD3 used Contour was through a DD3 witness "because the -- the way that MOVA was used in -- in the production of the Beast was unique to DD3." Ex. H at 59:10-60:3. And he testified that he was not rendering an opinion about Hendler's testimony:

> What I'm asking you to do is if there is a sentence or two or a paragraph in section eight of your report that didn't come [from] Darren Hendler or someone else, right, that is your contribution, can you just point that out for me so I can see it?
>
> […]
>
> THE WITNESS:  This -- this is an overview of -- of the process. That's what I'm describing here.  I'm not rendering an opinion as to whether this is correct or not. I'm describing how the MOVA Contour System was used in the [unintelligible].
>
> THE COURT REPORTER:  In the what?
>
> THE WITNESS:  In the Beast, "Beauty and The Beast."

*Id.* at 61:5-21.  Like Disney, he claimed to have laundered Hendler's testimony through his

"experience and all":

> If -- if there's any language, any words in here that are yours, apart from any of -- anything that you read in those references, could you just point those out for me?
>
> […]
>
> THE WITNESS:· All the words are mine. I'm just citing facts that -- that basically detail, you know, how -- as the section says, how MOVA Contour was used.
>
> That's what this section is. It's an explanation of that. And in order to explain it, since I, you know, was not at DD3 and I did not personally use the MOVA system and the tracked mesh, I -- I relied on people who did.
>
> And they explained how it worked, and -- and that explanation, based on my experience and all, seemed right to me. And so that's what's reflected in this section.

*Id.* at 63:1-19.  Lane never could point to anything in Section VIII of his report that did not come

from Hendler or someone else.  And importantly, he has *no* "experience and all" to bring to bear on

DD3's animation of a CG character using Contour, because he has never done it before and has

never supervised anyone else who has.  *Id.* at 52:3-11.  He saw the Contour system only once at

SIGGRAPH in 2006, and cannot recall if he ever saw any Contour output.  *Id.* at 44:5-10, 46:7-23.

So Hendler's inadmissible transcript and declaration cannot be laundered through Lane's

"specialized knowledge" to make them admissible.

      What DD3 did or did not do with Contour software is comprised of factual details of specific

past events that Lane did not witness.  Disney cannot relay hearsay testimony of those facts to the

jury through Lane under the guise that Lane used the hearsay as a basis for his testimony:

> The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events. And the jobs of judging these witnesses' credibility and drawing inferences from their testimony belong to the factfinder. *See Nimely v. City of New York*, 414 F.3d 381, 397–98 (2d Cir.2005).

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

      Ultimately, Disney's argument misses the point.  There is no dispute that Lane can rely on

inadmissible evidence for his opinions.  But he admits that he has no opinions regarding the facts of

1    what DD3 actually did or did not do with the Contour software when animating the Beast in *Beauty*

2    *and the Beast*.  Disney must disclose the factual details of specific past events relating to what DD3

3    did or did not do with Contour through percipient DD3 witnesses, which Disney has promised the

4    Court it will do.

5    **E.     Disney does not contest Rearden's motion to exclude Lane's testimony based on Mimi**
     **Steele's deposition.**

6

7         Rearden moved to exclude Lane's testimony based on his quote from the deposition

8    transcript of former Disney employee Mimi Steele that "often 'a lot of the performance' is lost after

9    the groom is added to the Beast, so animators would need to go back in and fix or tweak the

10   performance by hand animation." Mot. at 3:8-10, 8:17-21; Lane Rep. at p. 45, fn. 155.  Disney's

11   opposition brief never mentions Steele and submits no argument why Lane should be permitted to

12   testify about Steele's inadmissible deposition transcript.

13                              **III.    CONCLUSION**

14        For the foregoing reasons, and those stated in Rearden's opening report, Rearden respectfully

15   requests that Sections VIII, X.a, and X.b of Dr. Lane's opening expert report (highlighted in ECF

16   No. 428-4 (Exhibit A)) be stricken, and testimony based on those sections be excluded.

17

18   DATED:  August 17, 2023            HAGENS BERMAN SOBOL SHAPIRO LLP

19                                     By:    */s/ Mark S. Carlson*
                                              MARK S. CARLSON
20                                     Steve W. Berman (*pro hac vice*)
                                       Jerrod C. Patterson (*pro hac vice*)
21                                     1301 Second Avenue, Suite 2000
                                       Seattle, WA 98101
22                                     Telephone: (206) 623-7292
                                       Facsimile: (206) 623-0594
23                                     steve@hbsslaw.com
                                       markc@hbsslaw.com
24                                     jerrodp@hbsslaw.com

25                                     Rio S. Pierce, CBA No. 298297
26                                     HAGENS BERMAN SOBOL SHAPIRO LLP
                                       715 Hearst Avenue, Suite 300
27                                     Berkeley, CA 94710
                                       Telephone: (510) 725-3000
28

Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*