Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

*Attorneys for Plaintiffs*
*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WALT DISNEY PICTURES, a California corporation, MARVEL STUDIOS, LLC a Delaware limited liability company, MVL PRODUCTIONS LLC, a Delaware limited liability company, CHIP PICTURES, INC., a California corporation, INFINITY PRODUCTIONS LLC, a Delaware limited liability company, ASSEMBLED PRODUCTIONS II LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.      4:17-cv-04006-JST<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE EXCLUDING DARREN HENDLER OPINIONS UNDER FRE 702**<br><br>**REDACTED PUBLIC VERSION**<br><br>Date:    October 27, 2023<br>Time:    2:00 p.m.<br>Judge:  Hon. Jon S. Tigar<br>Ctrm.:  6 (2nd Floor) |

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on October 27, 2023, at 2:00 p.m., or as soon as the matter

3    may be heard, in Courtroom 6 (2nd Floor) of the above-captioned Court, Plaintiffs will and hereby

4    do move for an Order to exclude the testimony in the highlighted excerpts from the declaration of

5    Darren Hendler attached as Exhibit A to the Declaration of Mark Carlson and corresponding

6    testimony in the Hendler deposition transcripts attached thereto as Exhibit B, filed concurrently with

7    this notice. Plaintiffs make this motion pursuant to FRE 702 and 403, and FRCP 26(a)(2). This

8    Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities;

9    the Declaration of Mark Carlson; all pleadings on file; and any other document or argument

10   submitted at or prior to the hearing on this Motion.

11

12   DATED:  September 15, 2023                HAGENS BERMAN SOBOL SHAPIRO LLP

13                                             By: ___*/s/ Mark S. Carlson*_____
                                                      MARK S. CARLSON
14                                             Steve W. Berman (*pro hac vice*)
                                               Jerrod C. Patterson (*pro hac vice*)
15                                             1301 Second Avenue, Suite 2000
                                               Seattle, WA 98101
16                                             Telephone: (206) 623-7292
                                               Facsimile: (206) 623-0594
17                                             steve@hbsslaw.com
                                               markc@hbsslaw.com
18                                             jerrodp@hbsslaw.com
19
                                               Rio S. Pierce, CBA No. 298297
20                                             Gayne Kalustian-Carrier, CBA No. 336814
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
21                                             715 Hearst Avenue, Suite 300
                                               Berkeley, CA 94710
22                                             Telephone: (510) 725-3000
                                               Facsimile: (510) 725-3001
23                                             riop@hbsslaw.com
                                               gaynek@hbsslaw.com
24

25                                             *Attorneys for Plaintiffs*
26

27

28   PLAINTIFFS' MOTION IN LIMINE
     REGARDING DARREN HENDLER - 1
     Case No. 17-CV-04006
     005073-12/2332821 V1

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

3    Rearden seeks to exclude purported expert opinions of Darren Hendler, a former employee at

4    Digital Domain 3.0 ("DD3").[1]  Disney seeks to offer Hendler's comparison of photos and videos

5    under the guise of expert opinion, even though he candidly and repeatedly acknowledged in

6    deposition that his opinion required no special expertise and a layperson could conduct the same

7    comparisons.  If admitted, this testimony will unduly prejudice the jury on an ultimate issue in the

8    case.  Rearden's motion based on FRE 702 and 403 should be granted.

9    ## II.    FACTS

10   **A.    Disney's expert "disclosure" of Darren Hendler did not comply with Rule 26(a)(2).**

11   On April 20, 2023, *after Mr. Hendler had been deposed twice and fact discovery had closed*,

12   Disney produced an ambiguous "expert disclosure" that stated as follows (Ex. C at 1):

13   > Based on the information presently known to them, Defendants expect that Mr.
       Hendler's testimony will be based on his knowledge as a percipient witness.
14   > However, to the extent Mr. Hendler's testimony is deemed to be subject to
       Federal Rule of Evidence 702, 703, or 705, Defendants expect Mr. Hendler to
15   > testify regarding visual effects services in connection with Beauty and the Beast
       and other motion pictures and the studio's involvement with the same; the extent
16   > to which the Mova Contour System and Mova Contour Software were used in
       visual effects work on Beauty and the Beast; and the extent to which the Mova
17   > Contour System and Mova Contour Software contributed to the visual effects that
       appeared in Beauty and the Beast. Defendants expect Mr. Hendler's testimony
18   > will encompass the topics addressed in his Declaration in Support of Defendants'
       Summary Judgment Motion (ECF No. 249) and his depositions dated June 12,
19   > 2020 and February 16, 2023.
20

21   The Court has identified Hendler as "Defendants' expert witness.  ECF No. 482 at 3:19-26.  Hendler

22   did not submit any written report conforming to FRCP 26(a)(2) in this litigation.

23

24

25

26   ─────────────────

27   [1] The specific portions are highlighted in the excerpts of the Declaration of Darren Hendler
     attached as Exhibit A to the Declaration of Mark Carlson, and the corresponding testimony in the
28   excerpts from the Hendler depositions attached as Exhibit B.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Hendler's summary judgment declaration included opinions that were not based on the facts of the case and were admittedly within the competence of any lay juror.**

Disney seeks to rely on Hendler's "expert" opinion, but he was not substantively involved with MOVA Contour facial capture or processing.  Hendler was the Digital Effects Supervisor for DD3's work on *Beauty and the Beast*, which included supervising the process by which the CG Beast character was animated.

Consequently, when asked if he was familiar with how the MOVA team worked at all, Mr. Hendler could answer only "somewhat, yes."  Hendler I Tr. 10:23-25.  He did not know the names of the people on the MOVA team or how many there were.  Hendler II Tr. 170:9-16.  When asked if the director of the film, Bill Condon, directed the MOVA facial capture sessions, he testified "I wasn't there for those performances.  I can't say exactly."  Hendler I Tr. 11:5-11.  He did not know whether Mr. Condon or someone from the production company made selects from the different "takes" of each shot.  *Id.*, 11:22-12:9.  He did not know who was responsible for capturing the actor's performance and processing the data.  *Id.,* 13:10-11; 14:6-19.

Mr. Hendler admitted that he is *not* an expert on and had *no* specialized education in MOVA Contour, and had never set up the physical MOVA Contour apparatus.  Hendler II Tr.

1    155:5-9; 156:13-15; 157:3.  And he has not used MOVA Contour software to process facial

2    performance capture data.  *Id.*, 157:20-25.  To prepare for his deposition, he had to call Mr. LaSalle

3    to learn how MOVA Contour processing works.  *Id.*, 135:16-137:21; 157:5-19.

4            Despite this lack of knowledge of MOVA Contour, Mr. Hendler submitted a declaration in

5    support of Disney's causal nexus summary judgment motion purporting to explain how Mr. LaSalle

6    and the MOVA team did its job, relying on his "understanding" of what they did. Hendler Dec. ₱₱15-

7    16.  But this "understanding" came primarily from Mr. LaSalle.  *Id.*, ₱18.  And he claimed to know

8    what visual effects artists did with the MOVA Contour video from the captured sessions contrary to

9    his deposition testimony.  *Id.*, 62.

10           Mr. Hendler also offered a number of opinions that were based on simply visually comparing

11   two frames from a shot in the film in an effort to minimize the impact of MOVA Contour on the

12   Beast's appearance.  In support of Disney's position, [h]e opined that "the impact of the MOVA

13   output on the final appearance of the Beast in such shots was negligible" based on his visual

14   comparison of them.  Hendler Decl. ₱1-6; Hendler II Tr. 172:16-173:4; 174:6-20; 175:9-16.  He

15   admitted that this comparison could have been performed by anyone, and agreed that his opinion

16   required no particular expertise.  *Id.*  181:2-183:3.

17           For example, he compared two frames of the Beast's face (Figures 7 and 8), and opined that

18   in one "the inner brows and eyes have been changed to give a more shocked and sad expression and

19   the mouth has been opened wider and dropped down."  Hendler Decl. ₱69.  He also relied on video

20   from the scene in which the frames were taken (Tr. Exhibit 242, 243; 262:3-264:14).  But he applied

21   no tests or methods that are generally accepted in the visual effects field to detect these differences,

22   and he conceded that any lay juror would have been able to see the differences.  *Id.* 265:7-266:1;

23   266:16-25; 267:2-271:8.

24           He also visually compared video of Dan Stevens performing as the Beast in the MOVA

25   Contour rig with video of him performing the same scene on the set, and opined on the differences

26   he observed. Hendler Decl. ₱70; Hendler II Tr. 271:10-273:6. But he conceded that any lay juror

27   could make that observation without his assistance.  *Id.*, 273:3-12.  He similarly compared MOVA

28

PLAINTIFFS' MOTION IN LIMINE
REGARDING DARREN HENDLER - 3
Case No. 17-CV-04006
005073-12/2332821 V1

facial capture video with video produced by his animation team, and opines on the visual differences. Hendler Decl. 107-108 and Fig. 10; Hendler II Tr. 285:8-286:11.  He once again conceded that a lay juror could make the same comparison.  *Id.*, 286:12-19.  Mr. Hendler made another comparison of Mr. Stevens in two screenshots, and offered similar opinions regarding differences.  *Id.*, 295:15-297:5.  But he conceded that anyone could make that comparison without his assistance.  *Id.*, 297:10-14.  Finally, Mr. Hendler compared MOVA Contour capture frames and video to shots produced by his animators, and observed that the animation more closely resembled the performance on the set. Hendler Decl. ¶113, Ex. 51.  But he acknowledged that a lay person could see the differences between the shots.  Hendler II Tr. 303:20-305:12.

## III.     ARGUMENT AND AUTHORITY

### A.     Mr. Hendler's opinions that do not require specialized skill or experience and are within the competence of a lay jury should be excluded under FRE 702.

An expert witness may testify in the form of an opinion or otherwise only "if . . . the expert's scientific, technical, or other specialized knowledge ***will help the trier of fact*** to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a).  Here, no expert knowledge is required to make the visual comparisons between frames or between videos cited in Hendler's declaration. Directly on point is *U.S. v. Brown*, 501 F.2d 146 (9th Cir. 1974), judgment rev'd on other grounds, 422 U.S. 225 (1975).  In that case, an FBI agent testified as an expert that the surveillance photos of two suspected bank robbers were the same as the suspects' mugshots.  *Id.* at 148.  The Ninth Circuit found error, holding that the similarity of the photographs is a question of common sense and not expert opinion.  *Id.*  Such lay opinion is properly excluded when it invades the province of the jury.  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) (applying FRE 702 and excluding expert testimony that would "merely substitut[e] the expert's judgment for the jury's").

Mr. Hendler's opinions based on visual comparison of two frames from a shot in the film are not admissible because they encompass matters committed to the jury.  His opinion on the "negligible" impact of MOVA's output based on his visual comparison of two or more images, or images and video, is one that the jury is as competent to make as he is.  Hendler Decl. ¶1-6; Hendler II Tr. 172:16-173:4;

174:6-20; 175:9-16.  Whether the images were, in fact, similar or different does not require expertise of any kind, and therefore his opinions on matters any lay juror is competent to form based on her or his own examination of the evidence is not helpful to "the trier of fact to understand the evidence or to determine a fact in issue."  Hendler admitted as much.  *Id.*  181:2-183:3. For example, his opinion on differences in the Beast's emotional expressions in Figures 7 and 8 of his declaration are opinions that anyone can reach without specialized knowledge or training.  As recounted above, he concedes that a lay person could do the same comparisons he did.  *See supra* Part II.B.  His opinions accordingly do not meet the standard for FRE 702.

**B.      Mr. Hendler's prejudicial expert testimony should be excluded because it will confuse the jury and inhibit it from making its own determinations based upon the evidence.**

The prejudice to Rearden is self-evident:  Mr. Hendler is endowing an opinion within the competence of any juror with the penumbra of his expertise.  *See* FRE 403.  Expert opinions require special care because "[j]uries are likelier to credit experts, who are perceived to possess special relevant knowledge and are expected to help the jury reach the right conclusion, more than simple documentary evidence."  *Apple, Inc. v. Samsung Elec. Co.*, 2014 WL 794328, at *9 (N.D. Cal. Feb. 24, 2015).

Hendler's testimony runs the same unacceptable risk.  He offers himself as an expert in visual effects, but his opinions are based on common sense that is prejudicial and confusing for the jury.  *See Topliff v. Wal-Mart Stores East LP*, 2007 WL 911891, at *16 (N.D.N.Y. Mar. 22, 2007) (excluding "common sense" opinion because it would "confuse and prejudice" the jury).

## IV.      CONCLUSION

For the foregoing reasons, Mr. Hendler should not be permitted to testify as an expert on the portions of his declaration highlighted in Exhibit A and the corresponding testimony highlighted in Exhibit B to the Declaration of Mark Carlson.

DATED:  September 15, 2023                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                                            By:   */s/ Mark S. Carlson*
                                                                   MARK S. CARLSON
                                                            Steve W. Berman (*pro hac vice*)

PLAINTIFFS' MOTION IN LIMINE
REGARDING DARREN HENDLER - 5
Case No. 17-CV-04006
005073-12/2332821 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jerrod C. Patterson (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com

Rio S. Pierce, CBA No. 298297
Gayne Kalustian-Carrier, CBA No. 336814
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com
gaynek@hbsslaw.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION IN LIMINE
REGARDING DARREN HENDLER - 6
Case No. 17-CV-04006
005073-12/2332821 V1