UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REARDEN LLC, et al.,

        Plaintiffs,

     v.

THE WALT DISNEY COMPANY, et al.,

        Defendants.

Case No. 17-cv-04006-JST

**ORDER DENYING PLAINTIFFS'
MOTION TO EXCLUDE PORTIONS
OF THE EXPERT REPORT AND
TESTIMONY OF ROBERT
WUNDERLICH**

Re: ECF No. 431

Before the Court is Plaintiffs' motion to exclude portions of the expert report and testimony of Robert Wunderlich.  ECF No. 431.  The Court will deny the motion.

## I.     BACKGROUND

The factual and procedural background of this case are summarized in greater detail in this Court's prior orders.  ECF Nos. 60, 85, 297.  In short, this case concerns claims for contributory copyright infringement, vicarious copyright infringement, and trademark infringement by Plaintiffs Rearden LLC and MOVA LLC (collectively, "Rearden") against Defendants The Walt Disney Company; Walt Disney Motion Pictures Group, Inc.; Walt Disney Pictures; Buena Vista Home Entertainment, Inc.; Marvel Studios LLC; Mandeville Films, Inc.; Infinity Productions LLC; and Assembled Productions II LLC (collectively, "Disney").  Rearden alleges that Digital Domain 3.0 ("DD3") directly infringed Rearden's copyright to Rearden's MOVA Contour Reality Capture ("MOVA")—a program for capturing the human face to create computer graphics ("CG") characters in motion pictures.  Rearden further alleges that Disney "contracted with DD3 to provide facial performance capture services using the copyrighted . . . program" to create the character Beast in its film *Beauty and the Beast* (2017).  ECF No. 315 ¶ 117.

Disney has moved for summary judgment on all of Rearden's claims in connection with

1    *Beauty and the Beast.*  ECF No. 421.  At trial, Disney intends to elicit testimony from its

2    apportionment expert, Robert Wunderlich.  Rearden has moved to exclude portions of Mr.

3    Wunderlich's expert report and testimony.

4    **II.       LEGAL STANDARD**

5          The proponent of expert testimony "has the burden of proving admissibility."  *Lust ex rel.*

6    *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).  Under Rule 702 of the

7    Federal Rules of Evidence:

8          A witness who is qualified as an expert by knowledge, skill,
           experience, training, or education may testify in the form of an
9          opinion or otherwise if:

10         (a) the expert's scientific, technical, or other specialized knowledge
               will help the trier of fact to understand the evidence or to
11             determine a fact in issue;

12         (b) the testimony is based on sufficient facts or data;

13         (c) the testimony is the product of reliable principles and methods;
               and
14

15         (d) the expert has reliably applied the principles and methods to the
               facts of the case.

16   Following *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), trial courts serve

17   a "gatekeeping" role "to ensure the reliability and relevancy of expert testimony."  *Kumho Tire*

18   *Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

19         "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection

20   to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the

21   knowledge and experience of the relevant discipline."  *Alaska Rent-A-Car, Inc. v. Avis Budget*

22   *Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th

23   Cir. 2010)).  The question "is not the correctness of the expert's conclusions but the soundness of

24   his methodology."  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

25   Thus, courts should "screen the jury from unreliable nonsense opinions, but not exclude opinions

26   merely because they are impeachable."  *Alaska Rent-A-Car*, 738 F.3d at 969.  "Shaky but

27   admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the

28   burden of proof, not exclusion."  *Primiano*, 598 F.3d at 564.

United States District Court
Northern District of California

2

III.     **DISCUSSION**

Rearden seeks to exclude Mr. Wunderlich's opinions on distribution overhead, production cost and overhead, and taxes.

  **A.**  **Distribution and Production**

In his opening expert report, Mr. Wunderlich provided a chart that calculates Disney's net income after taxes for *Beauty and the Beast*, excluding consumer products and music. Mr. Wunderlich wrote in his report that he obtained these figures in from Disney's "SAP accounting system." ECF No. 430-4 at 7. He wrote that "Disney's revenues and expenses are recorded in a general ledger within" this system, and that entries in the system "include reference fields that enable tracing the recorded amounts to invoices and other supporting documentation." *Id.* He further explained that these records are "audited on a regular basis by . . . PricewaterhouseCoopers" ("PwC"), and that PwC "audits the internal controls Disney has in place regarding . . . access to and the entry of data into the accounting system." *Id.* He also wrote that revenues from *Beauty and the Beast* were "subject to audit by the various guilds," that production costs "were subject to audit by production incentive authorities" in the New York, the United Kingdom, and Canada. *Id.* at 8. He noted that records in this system "are compiled to create the financial statements that Disney uses in its SEC reporting." *Id.* Mr. Wunderlich stated that he spoke with five Disney representatives about the expenses, including Disney's 30(b)(6) witness on financial topics. *Id.* at 6.

In his deposition, Mr. Wunderlich testified that the numbers in the chart "came from" the documents from Disney's system. ECF No. 430-5 at 2. He testified that he did not obtain the underlying data or figures as to certain calculations, such as Disney's 10% of gross revenue allocation to "distribution overhead," but that he understood the underlying process as relayed by Disney's representatives. ECF No. 430-5 at 5. He testified that he also did not know the breakdown of overhead expenses by category of expense. *See id.* at 8. Similarly, with respect to production costs and interest, Mr. Wunderlich testified that he did not ask Disney's representatives for "supporting documentation to support the production overhead amount," *id.* at 12, and that he could not break production costs down by category, *id.* at 13–14.

United States District Court
Northern District of California

1    Rearden argues that Mr. Wunderlich's expert report is unsubstantiated because he

2    "performed no analysis to confirm" Disney's record of approximately $102 million in distribution

3    overhead and $22 million in production overhead and interest.  ECF No. 431-1 at 9.  Disney

4    responds that Mr. Wunderlich adequately explained his reasoning insofar as he wrote that he

5    reviewed the documents from the SAP accounting system, "pointed to several independent signs

6    of accuracy that validated Disney's financial records and accounting system," and interviewed

7    four Disney employees about these figures.  ECF No. 441 at 9.

8    The relevant question is whether Mr. Wunderlich relied on the kind of facts or data upon

9    which experts in his field reasonably rely.  *Stiles v. Walmart, Inc.*, 639 F. Supp. 3d 1029, 1057

10   (E.D. Cal. 2022) (citing Fed. R. Evid. 703).  He appears to have done so.  There is no requirement

11   in the caselaw that an expert independently verify the figures contained in the records on which

12   the expert relies.  To the contrary, the First Circuit has expressly rejected the notion that an expert

13   is "obligated, as a condition of admissibility to present invoices, statements, documents,

14   breakdown or . . . supporting data to support" the data about which the expert will testify.  *Int'l*

15   *Adhesive Coating Co., Inc., v. Bolton Emerson Itnt'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1988)

16   (internal quotation marks omitted); *accord Tormenia v. First Investors Realty Co.*, 251 F.3d 128,

17   135 (3d Cir. 2000) (noting that an expert is not required to "eschew reliance on [a party's] account

18   of factual events").  In so concluding, the First Circuit wrote that such arguments against

19   admissibility "are simply a rehashing of the central factual disputes of the case dressed up as

20   attacks on the expert's testimony."  *Id.*  This conclusion is consistent with the Ninth Circuit's

21   observation that "the factual basis of an expert opinion goes to the credibility of the testimony, not

22   the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in

23   cross-examination."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14

24   (9th Cir. 2004) (quoting *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 865 (8th Cir.

25   2004))).  For this reason, courts reject challenges to the admissibility of expert testimony on the

26   ground that such testimony is predicated on a party's business records.  *See, e.g.*, *Total Control,*

27   *Inc. v. Danaher Corp.*, 338 F. Supp. 3d 566, 570 (E.D. Pa. 2004).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      Taxes**

Mr. Wunderlich calculated Disney's income taxes attributable to *Beauty and the Beast* each year at the applicable federal corporate tax rates for that year.  ECF No. 430-4.  He further wrote that the approach is "appropriate because, even if Disney corporate-wide pays a lesser or greater rate due to particular losses or gains in other part of the corporation, *Beauty and the Beast* . . . would not share in those los[s]es or gains."  ECF No. 430-4 at 12.

Rearden argues that Mr. Wunderlich's deduction of taxes from gross revenue "should be stricken because it is irrelevant and contrary to the law."  ECF No. 431-1 at 9.  Disney argues that Mr. Wunderlich's opinion is admissible because Rearden's "real dispute is that Disney's internal tax accounting methodology is flawed."  ECF No. 440-2 at 13.

The parties do not dispute that Disney is only entitled to deduct the taxes it "actually paid." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)). Mr. Wunderlich merely recites the method he used to determine what Disney actually paid in connection with *Beauty and the Beast*, and he opines as to why he deems the approach to be reasonable.  Rearden does not argue why the method Wunderlich used is inappropriate for the purposes of measuring a company's taxes attributable to a particular product, but instead argues that such treatment is wrong because Disney, as a corporation, "only pays one tax rate."  ECF No. 469-3 at 9.  None of the cases relied upon by Rearden disapproves of Mr. Wunderlich's method of determining the amount a company actually paid.  There is one Ninth Circuit case on the subject, *Three Boys Music Corp.*, in which the Court of Appeals upheld the district court's refusal to allow Sony Music to deduct its "Net Operating Loss Carry-forward (NOL) because the NOL did not have a concrete financial impact."  212 F.3d at 488 (internal quotation marks omitted).  But Disney's taxes attributable to *Beauty and the Beast* certainly had a concrete impact on Disney's net revenue from the film.  Rearden has thus failed to establish that Mr. Wunderlich's calculation is contrary to law.  If it wishes to contest the accuracy of Mr. Wunderlich's calculations, it can do so on cross-examination.

1

### C.     Wunderlich's Prior Testimony

Rearden suggests that the fact that Mr. Wunderlich's opinions have been excluded in eight other cases is relevant to the reliability of his expert report and testimony in this case.  Because there is no suggestion that the opinions excluded in the prior cases are the same as the opinion Wunderlich gives here, this point is irrelevant.[1]  Moreover, as one court observed in rejecting this same argument, "Wunderlich appears to have testified as an expert approximately 150 times . . . . Defendant does not challenge Wunderlich's qualifications, nor do [those] cases present similar questions to those here."  *Brighton Collectible, LLC v. Believe Prod., Inc.*, No. 2:15-CV-00579-CAS (ASx), 2017 WL 440255, at *8 (C.D. Cal. Jan. 30, 2017).  The Court therefore does not consider these prior exclusions in determining whether Mr. Wunderlich's testimony is admissible.

### CONCLUSION

For the reasons stated above, Rearden's motion is denied.

**IT IS SO ORDERED.**

Dated:  October 13, 2023

_____
JON S. TIGAR
United States District Judge

---

[1] Rearden appears to recognize the questionable relevance of its own argument, stating, "Plaintiffs do not contend that the contested portions of Wunderlich's opinions should be excluded solely because of his poor *Daubert* history."  ECF No. 431-1 at 13.  But they press the argument nonetheless.