KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
STEPHANIE G. HERRERA (SBN 313887)
stephanie.herrera@mto.com
SHANNON AMINIRAD (SBN 324780)
shannon.aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
ROWLEY J. RICE (SBN 313737)
rowley.rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC and REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WALT DISNEY PICTURES, a California corporation,<br><br>Defendant. | Case No. 4:17-cv-04006-JST-SK<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF CINDY IEVERS AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>Filed Concurrently: Declaration of John L. Schwab<br><br>Judge:   Hon. Jon S. Tigar<br>Ctrm.:    6 (2nd Floor) |

Case No. 4:17-cv-04006-JST-SK

OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER EXCLUDING IEVERS TESTIMONY AND GRANTING IN PART SUMMARY JUDGMENT

**OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

**I.   INTRODUCTION**

Rearden's motion for reconsideration ("Motion") of the Court's Order excluding the testimony of Cindy Ievers, ECF 553, ("Order"), should be denied for two independent reasons.[1]

*First,* the Motion fails to establish a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before" it entered the Order.  Civil L.R. 7-9(b)(3).  The Motion cites more than a dozen cases, none of which Plaintiffs cited in their opposition to Defendant's motion to exclude.  The Motion does not even cite any case included in Rearden's opposition—by definition the legal authority that the Court purportedly manifestly failed to consider—much less explain how any of the authorities Plaintiffs "presented to the Court" were "dispositive" of any of the legal grounds on which the Court correctly excluded Ms. Ievers's opinions.  The only "'material fact'" the Motion points to is an out-of-context quotation from the Order, Mot. 7, and that quotation is not "material."  The Motion therefore fails to meet the standard for reconsideration.

*Second,* far from being "dispositive," Rearden's arguments are based on an incorrect statement of the standard for actual damages in copyright cases.  Although Rearden wastes much ink arguing that actual damages may be calculated as lost profits rather than a hypothetical license fee, that is not why the Court excluded Ms. Ievers's opinions as legally infirm.  Rather, the Court held that Ms. Ievers's entire analysis was predicated on her views of what Rearden could *charge* for MOVA services *a as a whole* and not on what a willing buyer would pay a willing seller for the claimed infringing act (i.e. for the copying of MOVA software).  Those two analytical failures each independently require exclusion of Ms. Ievers's opinions under controlling law.  None of Rearden's dozen new cases even suggests otherwise, much less "compels a different outcome."  *In*

---

[1] Because Ms. Ievers's opinion testimony was properly excluded, the Court also should deny Rearden's motion to reconsider summary judgment on actual damages, ECF 555.  Rearden does not raise any basis for reconsidering that ruling other than its request that the Court reconsider the exclusion of Ms. Ievers.

*re Plantronics, Inc. Sec. Litig.*, No. 19-CV-07481-JST, 2022 WL 17974627, at *4 (N.D. Cal. Nov. 7, 2022) (Tigar, J.).

The Court correctly excluded Ms. Ievers opinions and, therefore, correctly granted summary judgment on actual damages. The Motion should be denied.

## II.   ARGUMENT

### A.   The Motion Fails To Identify Dispositive Legal Arguments Or Material Facts That Were Presented to the Court.

"Plaintiffs' burden on this motion is to demonstrate a manifest failure by this Court to consider 'dispositive legal arguments *which were presented to the Court* before'" it issued its Order excluding Ms. Ievers. *Campbell v. City of Milpitas*, No. 13-CV-03817-BLF, 2015 WL 3396809, at *3 (N.D. Cal. May 22, 2015) (quoting Civil L.R. 7-9(b)(3)). To meet that burden, Plaintiffs must at a bare minimum "identify any cases that *they cited* to the Court in briefing" that they now contend are dispositive of the issues. *Id.*

Rearden does not point to *any* case it previously identified, much less any case that it contends is dispositive. Rearden's opposition to Defendant's motion to exclude Ms. Ievers's opinions cited 16 cases. The Motion does not rely on *any* of those 16 cases. Rearden instead cites a dozen different cases that it did *not* cite before and claims those cases are controlling. The cases are not even remotely on point, *infra* § II.B, but they also were not previously presented to this Court and, therefore, do not provide a basis for reconsideration under Local Rule 7-9(b)(3).[2]

Rearden similarly fails to point to any *material* fact that the Court did not consider. Rearden argues that the Court made a material error of fact in writing that in addition to the "'$3.49 million' [that Ms. Ievers] estimated in lost profits…" because Ms. Ievers opined that the $3.49 million was the total amount Rearden would have charged, with 20% of that as the "profit." Mot. 7–8. Rearden claims that "the Court's opinion treated the $3.49 million as Rearden's lost profits claim" and then used that number to "conclud[e] that her model was speculative." *Id.* at 8.

---

[2] Plaintiffs do not argue that any of their new cases constitute a material change in law, L.R. 7-9(b)(1)-(2), not could they since the cases were all decided well prior to the filing of Rearden's opposition to the motion to exclude Ms. Ievers's opinions.

Rearden has simply mischaracterized the Order. The Order correctly explains that Ms. Ievers "first estimates the costs that Rearden would have incurred to provide the MOVA services to Disney," and "then adds a 20% markup." Order 3–4. More important, the Court concluded that Ms. Ievers had failed to opine on the fair market value of the alleged infringing act, not that her model was speculative. Order 5. As Rearden conceded in its opposition to Defendant's motion, Ms. Ievers opined only as to "the amount that Rearden would have charged Disney for its services for the MOVA enterprise." *Id*. The Court correctly excluded that opinion because it "would 't[ell] the jury little of what' profits Rearden lost based on DD3's 'specific use of [Rearden's] copyrights.'" *Id*. (quoting *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1091 (9th Cir. 2014).

Because Rearden has pointed to no dispositive law and no material facts that it previously presented to the Court, the Motion fails out of the gate and must be denied.

### B. Rearden's Argument Is Contrary To Law And In No Way "Dispositive."

The Motion fails to point to any "dispositive" legal argument that requires a different outcome here. It almost wholly ignores the controlling Ninth Circuit precedent on these issues, in favor of arguments about policy considerations and citations to patent cases and unpublished district court opinions. None of Rearden's arguments even remotely approach a "dispositive" legal argument; all of them are instead contrary to settled law.

#### 1. Ms. Ievers Did Not Consider What A Willing Buyer Would Pay A Willing Seller

It is black letter law that actual damages are measured by "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985). As the Ninth Circuit has explained repeatedly, in determining loss of market value we do not ask what the owner would like to have charged if unconstrained by reality, but what a willing owner actually would have charged after negotiation with the buyer. That is, fair market value is based on "'an objective, not a subjective, analysis.'" *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (quoting *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002)).

Ms. Ievers did not consider what a willing buyer would have agreed to pay. As she testified, "I was asked to – to calculate how much Rearden would have *charged* and how much profit Rearden would have made, and I did that." Declaration of John L. Schwab (Schwab Decl.) Ex. A (Ievers 6/20/23 Dep.) at 43:9-12 (emphasis added). She made no attempt to evaluate objectively what Defendant would have agreed to pay "after negotiation", *Oracle*, 765 F.3d at 1088, because in her view, Defendant "stole" the MOVA technology and "if you steal something, the value is effectively list price." Schwab Decl. Ex. A at 124:24–125:15; see also *id.* at 158:1-22 ("[W]e had no negotiation with Disney. We had no agreement with Disney.") Therefore, she considered only "what we would have *charged* for the work done for that time." *Id.* (emphasis added); *see also id.* at 69:14-21 (in response to question about whether she was opining "that Disney would have paid" a certain amount, noting "[a]ctually, my opinion is that . . . that's how much Rearden *would have charged*.") (emphasis added). The Ninth Circuit has rejected exactly that reasoning, because the "emphasis on post-infringement damages rather than the pre-infringement fair market value" is "legally defective." *Jarvis*, 486 F.3d at 534 n.9 (district court properly disregarded plaintiff's expert testimony that focused on what defendant "should have paid [plaintiffs] *after* its infringement").

Rearden tries to excuse Ms. Ievers's failure to offer an opinion consistent with controlling law on three different grounds. Each one is meritless.

First, Rearden argues that actual damages need not be measured by the fair market value of the infringement. It spends much time trying to distinguish *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004) from the facts here, Mot. 2, but Rearden misses the point. *Polar Bear* merely reiterates the well-established rule that "[t]he Ninth Circuit test for market value is 'what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.'" *United States v. King Features Ent., Inc.*, 843 F.2d 394, 400 (9th Cir. 1988) (quoting *Frank Music Corp.,* 772 F.2d at 512); *see also Mackie,* 296 F.3d at 917 (same); *Jarvis*, 486 F.3d at 533–34 (same); *Oracle*, 765 F.3d at 1087 (same); *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006) (same). Ms. Ievers *admitted* she did not adhere to this

standard, *see, e.g.,* Schwab Decl. Ex. A at 124:24–125:15, 158:1-22, and her opinions were properly excluded for that reason.

Rearden cites two unpublished decisions, neither of which is on point, much less "dispositive" of the issue. Rearden claims that *Evenflow Plumbing Co. v. Pacific Bell Directory* supports its position, but that case actually held that the plaintiff could not establish actual damages because it had not introduced evidence of its lost profits. No. C-3:04CV00795 EDL, 2005 WL 1353822, at *2 (N.D. Cal. June 7, 2005). Rearden's reliance on *WMTI Productions, Inc. v. Healey* is similarly misplaced. No. CV 20-02726-CJC (MAAx), 2023 WL 5506712, at *4 (C.D. Cal. July 13, 2023). That case denied summary judgment because the Court disagreed with defendants' argument that the "claimed actual damages … do not even *purport* to be 'as a result of the infringement.'" *Id.* (quoting 17 U.S.C. § 504(b)). The case did not address the issue raised by Defendant's motion, namely, whether actual damages must represent the amount a willing buyer would pay a willing seller. That is the controlling standard, as the Ninth Circuit has said many times.

Second, Rearden spends many pages arguing that Ms. Ievers's opinions should be permitted because it would "accord[] with the policies underlying copyright damages." Mot. 3-5. Rearden thus tacitly admits that it has no *law* on its side. To the extent any policy considerations are relevant, the Ninth Circuit has presumably weighed those considerations in repeatedly holding that actual damages must be based on an objective transaction between a willing buyer and willing seller. Rearden's discussion of hundred-year-old patent cases and dicta from out-of-circuit cases, *id.*. at 3, does not change the fact that the law on copyright actual damages is well-settled in the Ninth Circuit. And Rearden falls far short of establishing a "dispositive" legal argument that requires a different outcome here.

Third, Rearden argues that the willing buyer/willing seller requirement is met by "Ms. Ievers's use of the Rearden and DD3 standard rate cards that both firms actually used in the market to charge willing studio buyers for MOVA services." Mot. 5–6. That is wrong. As Defendant explained in its original motion, Ms. Ievers's opinions are based on a 2016 DD3 rate

card that was created by Greg LaSalle.  ECF 424 at 5–7.  There is *no evidence* that the rate card was ever actually used to charge any studio for work on any film.  *Id.*  And Mr. LaSalle testified that the rate card was intended "for customers that did not engage Digital Domain to do the visual effects … Meaning they just hired MOVA almost as a subcontractor that did not involve any other Digital Domain work."  Schwab Decl. Ex. B (LaSalle 6/16/20 Dep.) at 34:9-14.  Ms. Ievers did not review Mr. LaSalle's testimony and admitted she had no idea if the rate card had ever been used to charge a customer.  *Id.* Ex. A at 56:6-11, 56:20-22, 58:11-14.

More importantly, the problems with Ms. Ievers's opinions go beyond her mere use of that rate card.  As Defendant has explained in detail, Ms. Ievers made numerous assumptions about the services Rearden would have charged for and the amounts it would have charged without ever considering if a reasonable buyer would have agreed to those terms.  ECF 424 at 5–7.  Indeed, she did not even *consider* the actual costs DD3 incurred to provide MOVA services when coming up with her own list of services Rearden would have charged for.  That is how Ms. Ievers was able to opine that Rearden's "cost" to provide MOVA services on *Beauty and the Beast* would have been nearly $3 million dollars when DD3's actual costs for those services were less than $300,000.  *Id.* at 11.  To take just one example, roughly 20% of Ms. Ievers's total damages are based on her assumption of what Rearden would have charged Defendant to leave the MOVA rig on-site in the United Kingdom and unused for *80 days*.  *Id.* at 6.  Her estimated damages for that number alone is orders of magnitude higher than the only instance she could recall in which Rearden had charged for the rig to sit unused on the set.  *Id.*  In that instance, Ms. Ievers conceded, the client negotiated for that far lower fee, *id.*, while here she simply assumed that there could be no negotiation.[3]  That assumption permeates all of her opinions and it is flatly contrary to controlling Ninth Circuit law.  The Court correctly excluded her opinion for that reason.

---

[3] Even under Ms. Ievers's estimates, Defendant could have paid for the rig to be transported back and forth three additional times, which would have cost only $141,300.  It would make no economic sense for Defendant to have paid the $600,000 Ms. Ievers estimates to simply leave the rig unused in the United Kingdom.

## 2. Ms. Ievers Did Not Even Attempt To Estimate Damages Attributable To The Alleged Infringement

The Court also correctly excluded Ms. Ievers's opinions because she did not even attempt to measure the market value of the alleged infringement. In its opposition, Plaintiffs conceded that point but argued that it was not possible for Ms. Ievers to measure the market value. The Motion makes the same argument, Mot. 6, but points to no legal authority that the Court overlooked in the Order. In fact, "'whether the infringer might in fact have negotiated with the owner or purchased at the owner's price is irrelevant' to whether hypothetical-license damages are available." *Oracle Corp.*, 765 F.3d at 1088 (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 171-72 (2d Cir.2001).) In other words, the mere fact that Rearden has not licensed MOVA software in the past does not absolve Ms. Ievers of her burden of establishing a hypothetical value for the "specific use of [Rearden's] copyrights"—here, the amount Defendants would have needed to pay for authorization to copy MOVA source code into RAM. *Id*. at 1091.

Rearden again mischaracterizes the Order in arguing that the Court excluded Ms. Ievers's opinions because "she concluded *in her report* that the enterprise value was $10 million and that sum is part of her damages analysis" but "this was not in her report." Mot. 6. In fact, Ms. Ievers's rebuttal report did argue that "Rearden is not in the business of licensing its technologies to others to use, and it has never done so" and therefore she could only opine on either the value of MOVA services as a whole or "[a]lternatively, Disney could have purchased the MOVA Contour technology, but the price would have been Mova's enterprise value." (6/14/23 Decl. of Ievers) The Order correctly described that portion of her rebuttal report and, more importantly, did so in explaining the *undisputed* fact that Ms. Ievers did not even attempt to measure the value for the "specific use of [Rearden's] copyrights." *Oracle*, 765 F.3d at 1091; *see* Order 5. Because she did not do so, her opinions tells the jury nothing about the proper measure of actual damages in this case and were correctly excluded.

## III. CONCLUSION

Plaintiffs' Motion for reconsideration should be denied.

| | | |
|---|---|---|
| DATED: November 17, 2023 | MUNGER, TOLLES & OLSON LLP | |
| | By: | */s/ John L. Schwab* <br> JOHN L. SCHWAB |
| | *Attorneys for Defendants* | |

-8-     Case No. 4:17-cv-04006-JST-SK

OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER EXCLUDING IEVERS TESTIMONY AND GRANTING IN PART SUMMARY JUDGMENT