Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
Garth Wojtanowicz, CBA No. 246510
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com
garthw@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
riophbsslaw.com
gaynek@hbsslaw.com

*Attorneys for Plaintiffs*

KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
STEPHANIE G. HERRERA (SBN 313887)
stephanie.herrera@mto.com
SHANNON AMINIRAD (SBN 324780)
shannon.aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
ROWLEY J. RICE (SBN 313737)
rowley.rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC and REARDEN MOVA LLC, California limited liability companies, <br><br> Plaintiffs, <br><br> vs. <br><br> WALT DISNEY PICTURES, a California corporation, <br><br> Defendant. | Case No.     4:17-cv-04006-JST <br><br> **REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS** <br><br> Judge:  Hon. Jon S. Tigar <br> FPTC:  November 30, 2023 <br> Time:   9:00 a.m. <br> Ctrm.:  6 (2nd Floor) |

1      Pursuant to the Court's Order on the Joint Stipulation for Revising Pretrial Filings (Dkt. 568),

2  Case Management Order (Dkt. 313) and Standing Order for Civil Jury Trials, Plaintiffs Rearden LLC

3  and Rearden MOVA LLC ("Plaintiffs") and Defendant Walt Disney Pictures ("Defendant")

4  (collectively "Parties") hereby provide their proposed jury instructions for this matter.

5      Agreed-upon instructions are designated "UNDISPUTED" in the title, and contain the

6  authority on which they are based.  Any deviations from the Ninth Circuit's Manual of Model Civil

7  Jury Instructions are identified in red-line.

8      Disputed instructions are designated "DISPUTED" in the title, and are addressed in two

9  sections:

10      • Section 1 contains the proposed disputed instructions from (A) Plaintiffs and

11          (B) Defendant, in each case identifying the authority on which the instruction is based

12          and red-lines of any deviation from the Ninth Circuit's Manual of Model Civil Jury

13          Instructions.

14      • Section 2 contains the Parties' "concise argument and authority in support of and

15          against use of the instruction" in the form of (A) Plaintiffs' Position and

16          (B) Defendant's Position.  *See* Standing Order for Civil Jury Trials Before District

17          Judge Jon S. Tigar, at 5.

18      The Parties reserve the right to amend, modify, withdraw, and/or supplement the following

19  instructions before or during trial of this matter.  The Parties further reserve the right to amend,

20  modify, withdraw and/or supplement proposed jury instructions depending upon the Court's

21  resolution of motions that are still pending (including, as of this submission, Defendant's pending

22  *Daubert* motion, motion to strike, and motions *in limine*), rulings that have been recently issued

23  (including the Court's order on Defendant's motion *in limine* No. 1, Dkt. 584), and other rulings the

24  Court may issue between now and the conclusion of trial.

25  //

26  //

27  //

28

1   DATED:  November 17, 2023          MUNGER, TOLLES & OLSON LLP

2

3                                      By:   /s/ Kelly M. Klaus
                                             KELLY M. KLAUS
4                                            *Attorneys for Defendant*

5

6
    DATED:  November 17, 2023          HAGENS BERMAN SOBOL SHAPIRO LLP
7
                                       By:   /s/ Mark S. Carlson
8                                            MARK S. CARLSON[1]
                                             *Attorneys for Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____
     [1] Signed electronically by Kelly M. Klaus with the concurrence of Mark S. Carlson, pursuant to
28   L.R. 5-1(i)(3).

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

I.      PRELIMINARY INSTRUCTIONS ................................................................. 6

3

    <u>UNDISPUTED</u>: 1.3 Duty of Jury ................................................................. 7

4

    <u>DISPUTED</u>: 1.5 Claims and Defenses ......................................................... 8

5

    <u>UNDISPUTED</u>: 1.6 Burden of Proof—Preponderance of the Evidence .............................. 13

    <u>UNDISPUTED</u>: 1.9 What is Evidence ........................................................... 14

6

    <u>UNDISPUTED</u>: 1.10 What is Not Evidence ...................................................... 15

7

    <u>UNDISPUTED</u>: 1.11 Evidence for Limited Purpose .............................................. 16

8

    <u>UNDISPUTED</u>: 1.12 Direct and Circumstantial Evidence ......................................... 17

    <u>UNDISPUTED</u>: 1.13 Ruling on Objections ...................................................... 18

9

    <u>UNDISPUTED</u>: 1.14 Credibility of Witnesses ................................................... 19

10

    <u>DISPUTED</u>: 17.1 Preliminary Instruction—Copyright ............................................ 20

11

    <u>UNDISPUTED</u>: 1.15 Conduct of the Jury ....................................................... 33

    <u>UNDISPUTED</u>: 1.16 Publicity During Trial .................................................... 35

12

    <u>UNDISPUTED</u>: 1.17 No Transcript Available to Jury ............................................ 36

13

    <u>UNDISPUTED</u>: 1.18 Taking Notes ............................................................. 37

14

    <u>UNDISPUTED</u>: 1.19 Questions to Witnesses by Jurors During Trial ............................... 38

    <u>UNDISPUTED</u>: 1.20 Bench Conferences and Recesses ............................................ 39

15

    <u>UNDISPUTED</u>: 1.21 Outline of Trial ......................................................... 40

16

II.     CAUTIONARY AND EXPLANATORY INSTRUCTIONS  (DURING TRIAL)............... 41

17

    <u>UNDISPUTED</u>: 2.0 CAUTIONARY INSTRUCTIONS ................................................... 42

18

    <u>UNDISPUTED</u>: 2.11 USE OF INTERROGATORIES .................................................. 43

    <u>UNDISPUTED</u>: 2.12 USE OF REQUESTS FOR ADMISSION ........................................... 44

19

    <u>UNDISPUTED</u>: 2.13 EXPERT OPINION .......................................................... 45

20

III.    FINAL INSTRUCTIONS ................................................................... 46

21

    <u>UNDISPUTED</u>: 1.4 Duty of Jury .............................................................. 47

22

    <u>DISPUTED</u>: 1.5 Claims and Defenses ......................................................... 48

    <u>UNDISPUTED</u>: 1.6 Burden of Proof—Preponderance of the Evidence .............................. 52

23

    <u>UNDISPUTED</u>: 1.9 What is Evidence ........................................................... 53

24

    <u>UNDISPUTED</u>: 1.10 What is Not Evidence ...................................................... 54

    <u>UNDISPUTED</u>: 1.11 Evidence for Limited Purpose .............................................. 55

25

    <u>UNDISPUTED</u>: 1.12 Direct and Circumstantial Evidence ......................................... 56

26

    <u>UNDISPUTED</u>: 1.13 Ruling on Objections ...................................................... 57

27

    <u>UNDISPUTED</u>: 1.14 Credibility of Witnesses ................................................... 58

    <u>UNDISPUTED</u>: 1.20 Bench Conferences and Recesses ............................................ 59

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

UNDERLINE UNDISPUTED: 2.2 Stipulations of Fact ....................................................................... 60

UNDISPUTED: 2.4 Deposition and Prior Testimony in Lieu of Live Testimony ................. 61

UNDISPUTED: 2.11 Use of Interrogatories ................................................................. 62

UNDISPUTED: 2.12 Use of Requests for Admission ..................................................... 63

UNDISPUTED: 2.13 Expert Opinion ......................................................................... 64

UNDISPUTED: 2.14 Charts and Summaries Not Received in Evidence ............................ 65

UNDISPUTED: 2.15 Charts and Summaries Received in Evidence ................................... 66

UNDISPUTED: 2.16 Evidence in Electronic Format ...................................................... 67

DISPUTED: SPECIAL INSTRUCTION 1 – STIPULATED FACTS ................................ 69

DISPUTED: 17.1 Preliminary Instruction—Copyright ................................................... 73

UNDISPUTED: 17.2 Copyright—Defined (17 U.S.C. § 106) ........................................ 87

UNDISPUTED: 17.3 Copyright—Subject Matter—Generally (17 U.S.C. § 102) ................ 88

DISPUTED: 17.5 Copyright Infringement—Elements—Ownership and Copying ................ 90

UNDISPUTED: 17.6 Copyright Infringement—Ownership of Valid
Copyright—Definition ......................................................................................... 94

DISPUTED: 17.12 Copyright Interests—Assignee ....................................................... 95

DISPUTED: SPECIAL INSTRUCTION 2 .................................................................. 98

UNDISPUTED: 17.7 Copyright Infringement—Copyright Registration Certificate ........... 104

DISPUTED: 17.20 Secondary Liability—Vicarious Infringement—Elements and Burden of
Proof ............................................................................................................... 105

DISPUTED: 17.32 Copyright—Damages (17 U.S.C. § 504) ........................................ 113

DISPUTED: SPECIAL INSTRUCTION 3 – DAMAGES ............................................. 116

DISPUTED: 17.33 Copyright—Damages—Actual Damages ........................................ 120

DISPUTED: 17.34 Copyright—Damages—Defendant's Profits ..................................... 123

UNDISPUTED: 3.1 Duty to Deliberate .................................................................... 126

UNDISPUTED: 3.2 Consideration of Evidence—Conduct of the Jury ............................ 127

UNDISPUTED: 3.3 Communication with Court ......................................................... 129

UNDISPUTED: 3.5 Return of Verdict ...................................................................... 130

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.
# PRELIMINARY INSTRUCTIONS

**UNDISPUTED:** **1.3 Duty of Jury** ~~(Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies)~~

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1

**DISPUTED: 1.5 Claims and Defenses**

2

**1. DISPUTED PROPOSED INSTRUCTIONS**

3

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

4

    To help you follow the evidence, I will give you a brief summary of the positions of the

5

parties:

6

    The plaintiffs in this case are Rearden LLC and Rearden MOVA LLC.  I will refer to them

7

collectively as "plaintiff asserts" or "Rearden."

8

    The defendant in this case is Walt Disney Pictures, which I may also refer to as "defendant"

9

or "Disney."  Walt Disney Pictures has stipulated and agreed that [*plaintiff's claims*]. any acts or

10

omissions of any employees of Disney Enterprises, Inc., Disney Studio Production Services Co.,

11

LLC f/k/a Walt Disney Pictures Production, LLC or Chip Pictures, Inc. relating to matters in issue in

12

this case are equally attributable to Walt Disney Pictures for purposes of this case.

13

    The plaintiff has, Rearden, is suing the defendant, Disney, for copyright infringement.  As

14

the plaintiff, Rearden bears the burden of proving these its claim of copyright infringement by a

15

preponderance of the evidence.

16

    Rearden claims. that it owns a copyright in the MOVA Contour software and that non-party

17

Digital Domain 3.0, Inc. ("DD3") directly infringed Rearden's copyright by making unauthorized

18

copies of the MOVA Contour software into the random access memory of computers that DD3

19

operated while working on the 2017 Disney live-action movie *Beauty and the Beast*.  Rearden claims

20

that Disney is vicariously liable for DD3's alleged infringement.

21

    The defendant denies those claims [and also contends that [*defendant's counterclaims and/or*

22

*affirmative defenses*]]. [The defendant has the burden of proof on these [*counterclaims and/or*

23

*affirmative defenses*].]]

24

    [The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

25

    In response, Disney claims that DD3 did not infringe any copyright owned by Rearden when

26

DD3 copied the MOVA Contour software while working on the movie, and that Disney is not in any

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1    event vicariously liable for any infringement of the copyright in the MOVA Contour software by

2    DD3.

3

4    **AUTHORITY:** Ninth Circuit Model Jury Instruction 1.5. Changes to the Model Instruction have

5    been made to identify the parties and to state the positions of each party.

6

7         **B. DEFENDANT'S PROPOSED INSTRUCTION:**

8         To help you follow the evidence, I will give you a brief summary of the positions of the

9    parties:

10        The plaintiffs in this case are Rearden LLC and Rearden MOVA LLC.  I will refer to them

11   collectively as "plaintiff asserts" or "Rearden."

12        The defendant in this case is Walt Disney Pictures, which I may also refer to as "defendant"

13   or "Disney."  Walt Disney Pictures has stipulated and agreed that [*plaintiff's claims*]. any acts or

14   omissions of any employees of Disney Enterprises, Inc., Disney Studio Production Services Co.,

15   LLC f/k/a Walt Disney Pictures Production, LLC or Chip Pictures Inc. relating to matters in issue in

16   this case are equally attributable to Walt Disney Pictures for purposes of this case.

17        The plaintiff has, Rearden, is suing the defendant, Disney, for copyright infringement.  As

18   the plaintiff, Rearden bears the burden of proving these its claim of copyright infringement by a

19   preponderance of the evidence.

20        Rearden claims. that it owns a copyright in the MOVA Contour software and that non-party

21   Digital Domain 3.0, Inc. ("DD3") directly infringed Rearden's copyright by making unauthorized

22   copies of code from the MOVA Contour software into the random access memory of computers that

23   DD3 operated while working on the 2017 Disney live-action movie *Beauty and the Beast*.  Rearden

24   claims that Disney is vicariously liable for DD3's alleged infringement.

25        The defendant denies those claims [and also contends that [*defendant's counterclaims and/or*

26   *affirmative defenses*]]. [The defendant has the burden of proof on these [*counterclaims and/or*

27   *affirmative defenses*].]]

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1  [The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

2  In response, Disney claims that DD3 did not infringe any copyright owned by Rearden when

3  DD3 copied code from MOVA Contour software while working on the movie, and that Disney is not

4  in any event vicariously liable for any infringement of the copyright in the MOVA Contour software

5  by DD3.

6

7  **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

8  2023).

9

10  **2. PARTIES' POSITION STATEMENTS**

11      **A. PLAINTIFFS' POSITION**

12      The parties' dispute over this instruction is limited to a dispute over phrasing in the fifth and

13  sixth paragraphs. Specifically, the differences are as follows, with the disputed language in italics:

14      •   Rearden's proposal (fifth paragraph): ". . . ("DD3") directly infringed Rearden's

15  copyright by making unauthorized *copies of the MOVA Contour software . . . .*"

16      •   Disney's proposal (fifth paragraph): ". . . ("DD3") directly infringed Rearden's

17  copyright by making unauthorized *copies of code from the MOVA Contour software. . . .*"

18      •   Rearden's proposal (sixth paragraph): ". . . when DD3 *copied the MOVA Contour*

19  *software . . . .*"

20      •   Disney's proposal (sixth paragraph): ". . . when DD3 *copied code from MOVA*

21  *Contour software . . . .*"

22      The Court should adopt Rearden's version because there is no question that DD3's use of the

23  MOVA contour software resulted in the copying of the entire Contour program into random access

24  memory – this is a point that even Disney's expert agrees with.

25          Disney's proposed language that DD3 copied "code from" the Contour software

26  misstates the evidence that will be presented to the jury. In fact, the evidence is clear that DD3 was

27  not just copying "code from" the Contour program (which wording suggests something less than the

28

1   whole); it was copying the entire program, as Disney's expert Dr. Lane admitted in his deposition

2   testimony:

3       Q. Okay. So the [] copy of the MOVA Contour software that was loaded into non-volatile

4   memory, that would have been copied into random access memory, correct?

5       A. By the operating system, yeah.

6       Q. And [] that happened when Digital Domain used the MOVA Contour software; correct?

7       A. In order to activate the program and implement the functionality, it would be copied into

8   RAM, yes.

9       Lane Dep. Tr. at 13:17-14:1.  Plaintiffs' expert Alberto Menache agrees with Dr. Lane's

10  description. See Menache Rep. at 17 ("The Mova software is launched by clicking an icon, typing a

11  command in the shell, or launching a third-party application that will, in turn, launch a Mova

12  software tool into RAM. When the user launches the Mova software, the operating system finds the

13  location of the executable file on the NVM and copies it into RAM. Once the software is in RAM, it

14  can be operated by the user or the third-party application while it remains there.").

15      Rearden's proposed instruction accurately describes the undisputed anticipated testimony of

16  both parties' experts on this point: when DD3 launched the Contour software in connection with its

17  work on Beauty and the Beast, the entire program was copied to the computer's RAM, which

18  enabled DD3 to run and utilize the program. Disney's instruction falsely suggests that something less

19  than the entire program (only "code from" the program) was copied. Disney's implication contradicts

20  its own expert on the topic and is unsupported by any evidence developed in the case. Disney refused

21  Rearden's offered compromise of "all code from," and its sole justification for "code from" MOVA

22  is that the language is necessary to distinguish the software from the hardware.  This makes no sense,

23  because the proposed language is "copies of the MOVA Contour software."  There is no risk that the

24  jury will be confused about whether the copying was as to software versus the cameras, lights, or

25  rigging of the physical system.  As such, the Court should reject Disney's attempt to inject doubt and

26  confuse the jury when there is no disputed evidence supporting its formulation of the instruction.

27

28

1

**B. DEFENDANT'S POSITION**

2       The parties only dispute how to refer to DD3's copying.  Neither party disputes the fact of

3   copying or how it was done.  *See, e.g.*, Special Instruction 1 – Stipulated Facts at ¶ 4.  The dispute is

4   over whether to say, as Defendant proposes, DD3 copied "code from" the MOVA Contour software,

5   or whether to say DD3 copied "the MOVA Contour software" without referring to "the code from"

6   that software, as Plaintiffs propose.  The Court should adopt Defendant's proposal because the

7   copyrighted work at issue in this case is the code; that is what was deposited with the Copyright

8   Office and what has copyright protection.  Copyright protection does not extend beyond the code

9   itself to the functionality of the software, and Rearden has no copyright-protected interest in the

10  outputs of the software. Yet vaguely informing the jury that the "software" was copied could lead the

11  jury to conclude that copyright protection extends further than it actually does.  Precision is essential

12  to ensure that the jury understands exactly what the infringing act is alleged to be so that they can

13  accurately evaluate whether Defendant had the legal right and practical ability to control the alleged

14  infringement, and the extent to which Defendant profited (if at all) from the alleged infringement.

15      Plaintiffs disagreed with including a reference to the code on the parties' most recent meet

16  and confer conference because they claimed to be concerned that Defendant will argue that less than

17  all of the code was copied and Plaintiffs will therefore have to address substantiality of copying and

18  other issues.  This does not make sense.  The parties have stipulated to copying and deleted that issue

19  from the proposed jury instructions.  *See, e.g.*, 17.1 (neither party included "Proof of Copying" in

20  model instruction); 17.5 (both parties' proposals include stipulation on copying and delete

21  requirement for Plaintiffs to show copying of original expression from copyrighted work).  Plaintiffs

22  also argued in the prior jury instructions filing that "DD3 was not simply copying the 'code' from the

23  MOVA Contour software; it was copying the entire software."  Dkt. 552 at 12.  This underscores

24  Defendant's concern about juror confusion.  Rearden has claimed that the "entire software" includes

25  Maya Scripts—but evidence of Maya Scripts has been excluded.  Dkt. 483.

26

27

28

1

**<u>UNDISPUTED</u>: 1.6 Burden of Proof—Preponderance of the Evidence**

2   When a party has the burden of proving any claim [or affirmative defense] by a

3   preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or

4   affirmative defense] is more probably true than not true.

5   You should base your decision on all of the evidence, regardless of which party presented it.

6

7   **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

8   2023).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**UNDISPUTED: 1.9 What is Evidence**

2

The evidence you are to consider in deciding what the facts are consists of:

3

1. the sworn testimony of any witness;

4

2. the exhibits that are admitted into evidence;

5

3. any facts to which the lawyers have agreed; and

6

4. any facts that I [may instruct] [have instructed] you to accept as proved.

7

8

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

9

2023).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNDISPUTED: 1.10 What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1

**UNDISPUTED: 1.11 Evidence for Limited Purpose**

2     Some evidence may be admitted only for a limited purpose.

3     When I instruct you that an item of evidence has been admitted only for a limited purpose,

4  you must consider it only for that limited purpose and not for any other purpose.

5  [The testimony [you are about to hear] [you have just heard] may be considered only for

6  the limited purpose of [*describe purpose*] and not for any other purpose.]

7

8  **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

9  2023).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**<u>UNDISPUTED</u>: 1.12 Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023); Comment to 1.12.

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

**UNDISPUTED: 1.13 Ruling on Objections**

2       There are rules of evidence that control what can be received into evidence. When a lawyer

3 asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not

4 permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question

5 may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered,

6 and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore

7 the question and must not guess what the answer might have been.

8       Sometimes I may order that evidence be stricken from the record and that you disregard or

9 ignore that evidence. That means when you are deciding the case, you must not consider the stricken

10 evidence for any purpose.

11

12 **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

13 2023).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**<u>UNDISPUTED</u>: 1.14 Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

-19-

**DISPUTED**: 17.1 Preliminary Instruction—Copyright

**1. DISPUTED PROPOSED INSTRUCTIONS**

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

The plaintiff, [*name of plaintiff*],Rearden, claims ownership of a copyright and seeks damages against the defendant, [*name of defendant*],Disney, for vicarious copyright infringement. The defendantDisney denies infringing the any copyright owned by Rearden [and] [contends that the copyright is invalid] [asserts an affirmative defense, e.g., that it made a fair use of the work].. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**[COPYRIGHT INTERESTS]**

The copyright owner may [transfer] [sell] [convey] to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. To be valid, tThe [transfer] [sale] [conveyance] must be in writing and signed by the transferor. The person to whom a right is transferred is called an assignee.] *or*

[The copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work. To be valid, the [transfer] [sale] [conveyance] must be in writing and signed by the transferor. The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has the right to exclude others from [*describe the rights granted in the license*].]

**[HOW COPYRIGHT IS OBTAINED]**

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.]

**PLAINTIFF'S BURDEN OF PROOF**

In this case, the plaintiff, [*name of plaintiff*],Rearden, contends that the defendant, [*name of defendant*], has infringedDisney, is liable for the alleged vicarious infringement of the plaintiff's copyright. The plaintiffRearden has the burden of proving by a preponderance of the evidence that the plaintiffRearden is the owner of the copyright in the MOVA Contour software and, if so, that the defendant copied original expressionDisney is vicariously liable for DD3's unauthorized copying of from the copyrighted work.MOVA Contour software while working on *Beauty and the Beast.* Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringedRearden is the owner of the copyright in the MOVA Contour software, and that Disney is liable for vicarious infringement.

[The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.]

**PROOF OF COPYING**

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1   ~~To prove that the defendant copied the plaintiff's work, the plaintiff may show that the~~

2   ~~defendant had access to the plaintiff's copyrighted work and that there are substantial similarities~~

3   ~~between the defendant's work and the plaintiff's copyrighted work.~~

4   **LIABILITY FOR INFRINGEMENT**

5   ~~One who [reproduces] [publicly distributes] [publicly performs] [publicly displays]~~

6   ~~[prepares derivative works from] a copyrighted work without authority from the copyright owner~~

7   ~~during the term of the copyright infringes the copyright.~~ Anyone who copies original expression from

8   a copyrighted work during the term of the copyright without the owner's permission infringes the

9   copyright.  The parties have stipulated, and you are instructed, that DD3 copied original expression

10  from the MOVA Contour software by copying the MOVA Contour software into the random access

11  memory of computers that DD3 operated while working on *Beauty and the Beast*. The parties dispute

12  whether Rearden owned the copyright in the MOVA Contour software at the time DD3 copied this

13  code and thus, whether DD3 infringed copyright while working on *Beauty and the Beast*.

14  [Copyright may also be infringed by ~~[~~vicariously infringing~~] [ and contributorily~~

15  ~~infringing].~~].

16  ~~[~~**VICARIOUS INFRINGEMENT**~~]~~

17  A person is liable for copyright infringement by another if the person has profited directly

18  from the infringing activity and had the right and ability to supervise or control the infringing

19  activity, whether or not the person knew of the infringement~~]~~.

20  ~~[CONTRIBUTORY INFRINGEMENT]~~

21

22  ~~[A person is liable for copyright infringement by another if the person knows or should have~~

23  ~~known of the infringing activity and [induces ] [or ] [materially contributes to] the activity.].~~

24  ~~[DEFENSES TO INFRINGEMENT]~~

25  ~~[The defendant contends that there is no copyright infringement. There is no copyright~~

26  ~~infringement when [the defendant independently created the challenged work] [the defendant made~~

27  ~~fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment,~~

28

-22-

1   news reporting, teaching, scholarship, or research] [the plaintiff abandoned ownership of the

2   copyrighted work] [the plaintiff misused the copyright by requiring its exclusive use or preventing

3   the development of competing products] [the plaintiff granted the defendant an express license to

4   [use] [copy] [*other*] the plaintiff's copyrighted work] [the plaintiff granted the defendant an implied

5   license to use the plaintiff's copyrighted work] [the defendant, as an owner of a copy of the

6   plaintiff's copyrighted work, resold that copy after the plaintiff made the first sale].]

7

8   **AUTHORITY:**  Ninth Circuit Model Jury Instruction 17.1 (altered to select appropriate text from

9   bracketed options based on the claims and defenses in this case, identify the parties, describe the

10  claims and issues, and otherwise conform the instruction to the facts and issues).

11

12

13         **B. DEFENDANT'S PROPOSED INSTRUCTION:**

14         The plaintiff, [*name of plaintiff*],Rearden, claims ownership of a copyright and seeks

15  damages against the defendant, [*name of defendant*],Disney, for vicarious copyright infringement.

16  The defendantDisney denies infringing any copyright owned by Rearden [and] [contends that the

17  copyright is invalid] [asserts an affirmative defense, e.g., that it made a fair use of the work].. To

18  help you understand the evidence in this case, I will explain some of the legal terms you will hear

19  during this trial.

20                    **DEFINITION OF COPYRIGHT**

21         The owner of a copyright has the right to exclude any other person from reproducing,

22  distributing, performing, displaying, or preparing derivative works from the work covered by

23  copyright for a specific period of time.

24         A copyrighted work can be a literary work, musical work, dramatic work, pantomime,

25  choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual

26  work, sound recording, architectural work, or computer program.

27

28

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

## [COPYRIGHT INTERESTS]

[The copyright owner may [transfer] [sell] [convey] to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. To be valid, tThe [transfer] [sale] [conveyance] must be in writing and signed by the transferor. The person to whom a right is transferred is called an assignee.].

*or*

[The copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work. To be valid, the [transfer] [sale] [conveyance] must be in writing and signed by the transferor. The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has the right to exclude others from [*describe the rights granted in the license*].]

## [HOW COPYRIGHT IS OBTAINED]

[Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.]

## PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, [~~name of plaintiff~~],Rearden, contends that the defendant, [~~name of defendant~~], ~~has infringed~~Disney, is liable for the alleged vicarious infringement of the plaintiff's copyright. ~~The plaintiff~~Rearden has the burden of proving by a preponderance of the evidence that ~~the plaintiff~~Rearden is the owner of the copyright in the MOVA Contour software and, if so, that ~~the defendant copied original expression~~Disney is vicariously liable for DD3's unauthorized copying of code from the ~~copyrighted work.~~MOVA Contour software while working on *Beauty and the Beast.* Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that ~~the copyrighted work was infringed~~Rearden is the owner of the copyright in the MOVA Contour software, and that Disney is liable for vicarious infringement.

~~[The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.]~~

~~**PROOF OF COPYING**~~

~~To prove that the defendant copied the plaintiff's work, the plaintiff may show that the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendant's work and the plaintiff's copyrighted work.~~

**LIABILITY FOR INFRINGEMENT**

~~One who [reproduces] [publicly distributes] [publicly performs] [publicly displays] [prepares derivative works from] a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.~~Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. The parties have stipulated, and you are instructed, that DD3 copied original expression from the MOVA Contour software by copying code from the MOVA Contour software into the random access memory of computers that DD3 operated while working on *Beauty and the Beast.* DD3's conduct constitutes infringement only if Rearden owned the copyright in the MOVA Contour software at the time DD3 copied the code.

[Copyright may also be infringed by [vicariously infringing] [contributorily infringing].]

**[VICARIOUS INFRINGEMENT]**

[A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the legal right and practical ability to supervise or control the infringing activity, whether or not the person knew of the infringement.].

**[CONTRIBUTORY INFRINGEMENT]**

[A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and [induces ] [or ] [materially contributes to] the activity.]

**[DEFENSES TO INFRINGEMENT]**

[The defendant contends that there is no copyright infringement. There is no copyright infringement when [the defendant independently created the challenged work] [the defendant made fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment, news reporting, teaching, scholarship, or research] [the plaintiff abandoned ownership of the copyrighted work] [the plaintiff misused the copyright by requiring its exclusive use or preventing the development of competing products] [the plaintiff granted the defendant an express license to [use] [copy] [*other*] the plaintiff's copyrighted work] [the plaintiff granted the defendant an implied license to use the plaintiff's copyrighted work] [the defendant, as an owner of a copy of the plaintiff's copyrighted work, resold that copy after the plaintiff made the first sale].]

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023); Ninth Circuit Model Civil Jury Instructions, Comment to 17.20; *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); Order on Motion for Summary Judgment (Dkt. 555).

1    **2. PARTIES' POSITION STATEMENTS**

2       **A. PLAINTIFFS' POSITION**

3       The dispute over this instruction includes the "copied code from the MOVA Contour

4    software" vs. "copied the MOVA Contour software" language discussed in connection with Disputed

5    Preliminary Instruction 1.5. In the paragraph headed "Plaintiff's Burden of Proof" Rearden's

6    proposal reads ". . . DD3's unauthorized copying of the MOVA Contour software . . . ." while

7    Disney's proposal reads ". . . DD3's unauthorized copying of code from the MOVA Contour

8    software . . . ." The paragraph headed "Liability for Infringement" contains a similar difference. For

9    the reasons stated in response to Disputed Instruction 1.5, Rearden requests that the Court adopt its

10   proposed "copied the MOVA Contour software" language as the more accurate statement.

11      Rearden's version of this instruction also includes the optional section "How Copyright is

12   Obtained," which Disney's version omits. Rearden contends that it should be included because it is

13   drawn verbatim from the Model Instruction, and because Disney is contesting Rearden's ownership

14   of the copyright in the MOVA Contour software. Although the parties have stipulated to certain facts

15   relating to the origins of the software and its copyright, the jury will benefit from an explanation of

16   how copyrights and copyright certificates are obtained. This portion of the instruction provides

17   important context for Undisputed Instructions 17.12 (Copyright Interests – Assignee), 17.6

18   (Copyright Infringement – Ownership of Valid Copyright – Definition), and 17.7 (Copyright

19   Infringement - Copyright Registration Certificate (17 U.S.C. § 410(c)). The proposed text is an

20   accurate statement of the law, creates no risk of jury confusion, and provides a brief introduction to

21   the concept of copyright ownership and certification that will be covered in more detail in the jury's

22   final instructions; as such, it should be included in this preliminary instruction.

23

24      **B. DEFENDANT'S POSITION**

25      Defendant proposes the addition of "legal" before "right" and "practical" before "ability" in

26   the section on "Vicarious Infringement," consistent with Ninth Circuit case law and this Court's

27   Order on Defendant's motion for summary judgment, all of which contain this exact language. *See*

28

1   *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) ("A vicarious infringer 'exercises control

2   over a direct infringer when he has both a *legal right* to stop or limit the directly infringing conduct,

3   as well as the *practical ability* to do so.'") (emphasis added) (quoting *Perfect 10, Inc. v.*

4   *Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); Dkt. 555 at 9 (Court's summary judgment

5   Order quoting the same language from *Williams* and holding that "there is a genuine issue of material

6   fact as to whether Disney had the *practical* ability to stop or limit the infringing conduct …")

7   (emphasis added).  The Court should adopt Defendant's proposal because it is the correct statement

8   of the legal standard and will help the jury understand their charge.  Where, as here, the model

9   instruction "does not accurately track" the controlling law, the Court should conform the model to

10  the governing legal standard.  *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 869

11  (9th Cir. 2020) ("[B]ecause th[e] instruction [given by the district court and derived from the Ninth

12  Circuit Model] does not accurately track our functionality caselaw, its use was error and we must

13  reverse.") (citation omitted).  The Comment to Model Instruction 17.20 specifically contemplates

14  that in "certain cases, it may be appropriate to instruct the jury on the meaning of 'right and ability to

15  supervise or control.'"  Ninth Circuit Manual of Model Civil Jury Instructions at 445.  It would be

16  appropriate to do so here, as without some further explication, a lay jury unfamiliar with the

17  application of the legal standard is likely to be confused.

18      Defendant's proposal is a modest, two-word adjustment to the model instruction to achieve

19  the exact purpose contemplated by the Ninth Circuit's comment and to ensure the instructions are

20  consistent with the case law that the Court and all of the parties have applied to this case.  Using the

21  same words the Ninth Circuit did—"legal" and "practical"—clarifies what for lay jurors are not self-

22  evident concepts.  Modifying "right" with "legal" makes it clear to jurors that the defendant must

23  have legal authority to take action, not a moral or amorphous right to do so.  Likewise, modifying

24  "ability" with "practical" makes it clear that the defendant must have the realistic, and not simply the

25  theoretical, ability to supervise or control the infringement.  The latter clarification is critical in this

26  case.  The Court's summary judgment ruling concluded that a jury could, not that it must, find that

27  the contract with DD3 gave Defendant the ability to stop DD3's use of MOVA.  The ruling finds it is

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

a jury question whether Defendant had the *practical* ability to stop that use, in light of facts showing the difficulty of detecting the alleged infringement and policing hundreds of vendors and technologies that Defendant used to make a major motion picture.

Not only did the Court and Defendant cite and apply this standard in the summary judgment Order and motion respectively, but Plaintiffs also did the same. *See, e.g.*, Dkt. 555 at 9-12 (Court's summary judgment order); Dkt. 451 at 9-17 (Plaintiffs' summary judgment opposition); Dkt. 421 at 11-17 (Defendant's motion for summary judgment). Plaintiffs quoted the exact same language from *Williams* that the Court applied in its summary judgment Order and that Defendant proposes to add to the model instruction here. *See* Dkt. 451 at 9.

At the parties' most recent meet and confer conference, however, Plaintiffs reversed course and claimed that the very standard they quoted in their summary judgment briefing did not actually apply here. In particular, Plaintiffs claimed that the question of whether a defendant has the "practical ability" to control the infringement applies only in the online context, where technical constraints supposedly make it uniquely difficult to detect infringement. There is no authority for Plaintiffs' new position. No case that Defendant has seen states that only certain technical Internet cases are subject to the "practical ability" standard. To the contrary, *Williams*—the Ninth Circuit case on vicarious infringement that the Court cited in its summary judgment ruling—discusses the "practical ability" to control the infringement, but it is not a case involving online infringement or highly technical details; it was a standard copyright infringement case based on the music composition copyright in the song *Got to Give It Up*. The same is true of the *scores* of other cases that have stated the applicable standard as "legal right" and "practical ability" and that do not involve infringement in the online context. *See, e.g.*, *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1155 (9th Cir. 2012) (public performance of infringing musical works at restaurant and lounge); *Liguori v. Hansen*, 752 F. App'x 389, 392 (9th Cir. 2018) (infringing logo on souvenir book); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 389 (3d Cir. 2016) (copyrighted photos infringingly reproduced, publicly displayed, and distributed on magazines, merchandise, motion pictures, and other locations); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F.

-29-

Supp. 3d 959, 968-69 (N.D. Cal. 2019) (reproduction of infringing sculptural works for use in restaurant); *Oregon Catholic Press v. Ambrosetti*, 218 F. Supp. 3d 1158, 1165 (D. Or. 2016) (reproduction and distribution of musical works in church hymnals); *Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1053-55 (C.D. Cal. 2001) (sale of infringing software at computer fairs); *Rams v. Def Jam Recordings, Inc.*, 202 F.Supp.3d 376, 385 (S.D.N.Y. 2016) (copyrighted image used as infringing album cover art); *Payne v. Manilow*, 2019 WL 4149357, at *2 (C.D. Cal. July 11, 2019) (infringing public displays at concerts and award shows of copyrighted motion picture); *Kilina Am., Inc. v. Bonded Apparel, Inc.*, 2019 WL 8065854, at *2 (Nov. 19, 2019) (alleged infringement of fabric design); *Broad. Music, Inc. v. Five Star Enters., LLC*, 2018 WL 4492481, at *3 (D. Nev. Sept. 19, 2018) (infringing public performances of copyrighted music at restaurant).

The requirement that the defendant must have the "practical ability" to control the infringement is not limited to the online context—it is a fundamental element of vicarious liability that applies in every case.  *See, e.g.*, *Paramount Pictures Corp. v. Int'l Media Films Inc.*, 2013 WL 3215189, at *14 (C.D. Cal. June 12, 2013) (holding in case involving infringing distribution of motion picture that "[t]he test for right or ability to supervise infringing requires both 'a legal right to stop or limit the directly infringing conduct ... [and] the practical ability to do so.'") (internal alterations in original) (citation omitted); *Kevin Barry Fine Art Assocs.*, 391 F. Supp. 3d at 968-69 ("As to vicarious liability, one is liable '[1] by profiting from direct infringement while [2] declining to exercise a right to stop or limit it.' [citations] The second prong, which the Ninth Circuit refers to as the 'control' element, requires that the defendant 'ha[d] both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'") (citations omitted); *Kilina Am., Inc. v. SA & PW, Inc.*, 2019 WL 8685066, at *2 (C.D. Cal. Aug. 27, 2019) ("Any pressure that [alleged vicarious infringer] could feasibly put on [direct infringer] falls far short of the "legal right" and "practical ability" to control necessary to impose vicarious liability.").

It is critical for the jury to understand that a copyright defendant's liability for someone else's conduct cannot be imposed just because in some remote or theoretical but completely impractical

sense the defendant may have the ability to control the infringement.  *See, e.g.*, *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1215 (S.D. Fla. 2021) ("[T]he plaintiff must allege that the defendant has a 'practical ability to police the infringing activities of [third parties] as opposed to suggesting measures that are imprecise, overbroad or not workable.'") (citation omitted); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1174 (9th Cir. 2007) (similar).  The concept of vicarious liability is not that expansive.  As case after case has affirmed, the standard requires that the defendant have the *practical* ability to actually do something about the infringement.  The jury should be so instructed.

In the parties' most recent meet and confer, Plaintiffs also claimed that adding the word "legal" before "right" would confuse the jury and lead them to believe that they are being asked to draw a legal conclusion.  That does not make sense.  As discussed, "legal right" will help the jury understand that they must do more than evaluate whether this is morally "right" or just.

Because Defendant's proposal accurately reflects current Ninth Circuit law and will assist the jury with understanding the standard, the Court should adopt Defendant's proposal.

Further, including the full optional model section "How Copyright Is Obtained," as Rearden proposes, is confusing, misleading, and could cause the jury to err because the model language assumes ownership when that issue is disputed in this case.  Instructing the jury that "[t]he **owner** of the copyright may apply to register the copyright …" and that the Register of Copyright "issues a certificate of registration to the copyright **owner**" is incorrect and highly prejudicial, because it is for the jury to decide whether Rearden was the owner when it registered the copyright in 2016 and received the certificate.  This is optional text in the model instruction, so there is no reason to include it when inapplicable and erroneous in this case.  The jury will be separately instructed on copyright registration in 17.7, so there is no prejudice to Plaintiffs in removing this section from this preliminary instruction.  Plaintiffs asserted during meet and confer that they included this instruction because it is important for the jury to understand that a work can be registered after the copyright attaches to it.  Defendant's proposed instruction accomplishes this without the confusing and

1    misleading language Plaintiffs propose keeping, because Defendant's proposal just keeps the first

2    sentence of this optional section, which addresses Plaintiffs' stated issue.

3            Lastly, the parties dispute how to refer to DD3's copying.  Neither party disputes the fact of

4    copying or how it was done.  *See, e.g.*, Special Instruction 1 – Stipulated Facts at ¶ 4.  The dispute is

5    over whether to say, as Defendant proposes, DD3 copied "code from" the MOVA Contour software,

6    or whether to say DD3 copied "the MOVA Contour software" without referring to "the code from"

7    that software, as Plaintiffs propose.  The Court should adopt Defendant's proposal because the

8    copyrighted work at issue in this case is the code; that is what was deposited with the Copyright

9    Office and what has copyright protection.  Copyright protection does not extend beyond the code

10   itself to the functionality of the software, and Rearden has no copyright-protected interest in the

11   outputs of the software. Yet vaguely informing the jury that the "software" was copied could lead the

12   jury to conclude that copyright protection extends further than it actually does.  Precision is essential

13   to ensure that the jury understands exactly what the infringing act is alleged to be so that they can

14   accurately evaluate whether Defendant had the legal right and practical ability to control the alleged

15   infringement, and the extent to which Defendant profited (if at all) from the alleged infringement.

16           Plaintiffs disagreed with including a reference to the code on the parties' most recent meet

17   and confer conference because they claimed to be concerned that Defendant will argue that less than

18   all of the code was copied and Plaintiffs will therefore have to address substantiality of copying and

19   other issues.  This does not make sense.  The parties have stipulated to copying and deleted that issue

20   from the proposed jury instructions.  *See, e.g.*, 17.1 (neither party included "Proof of Copying" in

21   model instruction); 17.5 (both parties' proposals include stipulation on copying and delete

22   requirement for Plaintiffs to show copying of original expression from copyrighted work).  Plaintiffs

23   also argued in the prior jury instructions filing that "DD3 was not simply copying the 'code' from the

24   MOVA Contour software; it was copying the entire software."  Dkt. 552 at 12.  This underscores

25   Defendant's concern about juror confusion.  Rearden has claimed that the "entire software" includes

26   Maya Scripts—but evidence of Maya Scripts has been excluded.  Dkt. 483.

27

28

1    **UNDISPUTED: 1.15 Conduct of the Jury**

2    I will now say a few words about your conduct as jurors.

3    First, keep an open mind throughout the trial, and do not decide what the verdict should be

4    until you and your fellow jurors have completed your deliberations at the end of the case.

5    Second, because you must decide this case based only on the evidence received in the case

6    and on my instructions as to the law that applies, you must not be exposed to any other information

7    about the case or to the issues it involves during the course of your jury duty. Thus, until the end of

8    the case or unless I tell you otherwise:

9    Do not communicate with anyone in any way and do not let anyone else communicate

10   with you in any way about the merits of the case or anything to do with it. This

11   includes discussing the case in person, in writing, by phone, tablet, or computer, or

12   any other electronic means, via email, text messaging, or any internet chat room, blog,

13   website or application, including but not limited to Facebook, YouTube, Twitter,

14   Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This

15   applies to communicating with your fellow jurors until I give you the case for

16   deliberation, and it applies to communicating with everyone else including your

17   family members, your employer, the media or press, and the people involved in the

18   trial, although you may notify your family and your employer that you have been

19   seated as a juror in the case, and how long you expect the trial to last. But, if you are

20   asked or approached in any way about your jury service or anything about this case,

21   you must respond that you have been ordered not to discuss the matter and report the

22   contact to the court.

23   Because you will receive all the evidence and legal instruction you properly may

24   consider to return a verdict: do not read, watch or listen to any news or media

25   accounts or commentary about the case or anything to do with it, although I have no

26   information that there will be news reports about this case; do not do any research,

27   such as consulting dictionaries, searching the Internet, or using other reference

28

-33-

materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**UNDISPUTED: 1.16 Publicity During Trial**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

**UNDISPUTED: 1.17 No Transcript Available to Jury**

2    I urge you to pay close attention to the trial testimony as it is given. During deliberations you

3 will not have a transcript of the trial testimony.

4

5 **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

6 2023).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**UNDISPUTED: 1.18 Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the ~~[courtroom] [~~jury room~~] [envelope in the jury room].~~. No one will read your notes. When the trial is concluded, I will order that your notes be collected and destroyed.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**UNDISPUTED**: 1.19 Questions to Witnesses by Jurors During Trial

*Option 1*

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. *[Specific reasons for not allowing jurors to ask questions may be explained.]* If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

*Option 2*

When attorneys have finished their examination of a witness, you may ask questions of the witness. *[Describe procedure to be used.]* If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

## <u>UNDISPUTED:</u> 1.20 Bench Conferences and Recesses

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, which is called a sidebar, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1

**<u>UNDISPUTED</u>: 1.21 Outline of Trial**

2

      Trials proceed in the following way: First, each side may make an opening statement. An

3

opening statement is not evidence. It is simply an outline to help you understand what that party

4

expects the evidence will show. A party is not required to make an opening statement.

5

      The plaintiff will then present evidence, and counsel for the defendant may cross-examine.

6

Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

7

      After the evidence has been presented, I will instruct you on the law that applies to the case

8

and the attorneys will make closing arguments.

9

      After that, you will go to the jury room to deliberate on your verdict.

10

11

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

12

2023).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.
## CAUTIONARY AND EXPLANATORY INSTRUCTIONS
## (DURING TRIAL)

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

## <u>UNDISPUTED: 2.0 CAUTIONARY INSTRUCTIONS</u>

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1

**UNDISPUTED: 2.11 USE OF INTERROGATORIES**

2      Evidence [will now be] [was] presented to you in the form of answers of one of the parties to

3  written interrogatories submitted by the other side. These answers were given in writing and under oath

4  before the trial in response to questions that were submitted under established court procedures. You

5  should consider the answers, insofar as possible, in the same way as if they were made from the witness

6  stand.

7

8  **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

9  2023).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **UNDISPUTED: 2.12 USE OF REQUESTS FOR ADMISSION**

2

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain

3 facts. These admissions were given in writing before the trial, in response to requests that were submitted

4 under established court procedures. You must treat these facts as having been proved.

5

6 **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

7 2023).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **UNDISPUTED: 2.13 EXPERT OPINION**

You [have heard] [are about to hear] testimony from [*name*] who [testified] [will testify] about [his] [her] opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, education or experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III.
# FINAL INSTRUCTIONS

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1    **UNDISPUTED:** **1.4 Duty of Jury** ~~(Court Reads and Provides Written Instructions at End of~~
2    ~~Case)~~

3         Members of the Jury: Now that you have heard all of the evidence ~~[and the arguments of the~~
4    ~~attorneys],~~, it is my duty to instruct you on the law that applies to this case.

5         ~~[~~Each of you has received a copy of these instructions that you may take with you to the jury
6    room to consult during your deliberations.~~].~~

7                                          *or*

8         ~~[A copy of these instructions will be sent to the jury room for you to consult during your~~
9    ~~deliberations.]~~

10        It is your duty to find the facts from all the evidence in the case. To those facts you will apply
11   the law as I give it to you. You must follow the law as I give it to you whether you agree with it or
12   not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or
13   sympathy. That means that you must decide the case solely on the evidence before you. You will
14   recall that you took an oath to do so.

15        Please do not read into these instructions or anything that I may say or do or have said or
16   done that I have an opinion regarding the evidence or what your verdict should be.

17

18   **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May
19   2023).

**<u>DISPUTED</u>: 1.5 Claims and Defenses**

**1. DISPUTED PROPOSED INSTRUCTIONS**

   **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

   To help you follow the evidence, I will give you a brief summary of the positions of the parties:

   The plaintiffs in this case are Rearden LLC and Rearden MOVA LLC.  I will refer to them collectively as "plaintiff asserts" or "Rearden."

   The defendant in this case is Walt Disney Pictures, which I may also refer to as "defendant" or "Disney."  Walt Disney Pictures has stipulated and agreed that [*plaintiff's claims*] any acts or omissions of any employees of Disney Enterprises, Inc., Disney Studio Production Services Co., LLC f/k/a Walt Disney Pictures Production, LLC or Chip Pictures, Inc. relating to matters in issue in this case are equally attributable to Walt Disney Pictures for purposes of this case.

   The plaintiff has, Rearden, is suing the defendant, Disney, for copyright infringement.  As the plaintiff, Rearden bears the burden of proving these its claim of copyright infringement by a preponderance of the evidence.

   Rearden claims that it owns a copyright in the MOVA Contour software and that non-party Digital Domain 3.0, Inc. ("DD3") directly infringed Rearden's copyright by making unauthorized copies of the MOVA Contour software into the random access memory of computers that DD3 operated while working on the 2017 Disney live-action movie *Beauty and the Beast*.  Rearden claims that Disney is vicariously liable for DD3's alleged infringement.

   The defendant denies those claims [and also contends that [*defendant's counterclaims and/or affirmative defenses*]]. [The defendant has the burden of proof on these [*counterclaims and/or affirmative defenses*].]

   [The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

   In response, Disney claims that DD3 did not infringe any copyright owned by Rearden when DD3 copied the MOVA Contour software while working on the movie, and that Disney is not in any

---
-48-

1    event vicariously liable for any infringement of the copyright in the MOVA Contour software by

2    DD3.

3

4    **AUTHORITY:** Ninth Circuit Model Jury Instruction 1.5. Changes to the Model Instruction have

5    been made to identify the parties and to state the positions of each party.

6

7         **B. DEFENDANT'S PROPOSED INSTRUCTION:**

8         To help you follow As I did at the evidence beginning of the trial, I will give you a brief

9    summary of the positions of the parties:

10        The plaintiffs in this case are Rearden LLC and Rearden MOVA LLC.  I will refer to them

11   collectively as "plaintiff asserts" or "Rearden."

12        The defendant in this case is Walt Disney Pictures, which I may also refer to as "defendant"

13   or "Disney."  Walt Disney Pictures has stipulated and agreed that [*plaintiff's claims*]. any acts or

14   omissions of any employees of Disney Enterprises, Inc., Disney Studio Production Services Co.,

15   LLC f/k/a Walt Disney Pictures Production, LLC or Chip Pictures, Inc. relating to matters in issue in

16   this case are equally attributable to Walt Disney Pictures for purposes of this case.

17        The plaintiff has , Rearden, is suing the defendant, Disney, for copyright infringement.  As

18   the plaintiff, Rearden bears the burden of proving these its claim of copyright infringement by a

19   preponderance of the evidence.

20        Rearden claims. that it owns a copyright in the MOVA Contour software and that non-party

21   Digital Domain 3.0, Inc. ("DD3") directly infringed Rearden's copyright by making unauthorized

22   copies of code from the MOVA Contour software into the random access memory of computers that

23   DD3 operated while working on the 2017 Disney live-action movie *Beauty and the Beast*.  Rearden

24   claims that Disney is vicariously liable for DD3's alleged infringement.

25        The defendant denies those claims [and also contends that [*defendant's counterclaims and/or*

26   *affirmative defenses*]]. [The defendant has the burden of proof on these [*counterclaims and/or*

27   *affirmative defenses*.]]

28
REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1    ~~[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]~~

2    In response, Disney claims that DD3 did not infringe any copyright owned by Rearden when

3    DD3 copied code from MOVA Contour software while working on the movie, and that Disney is not

4    in any event vicariously liable for any infringement of the copyright in the MOVA Contour software

5    by DD3.

6

7    **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

8    2023).

9

10   **2. PARTIES' POSITION STATEMENTS**

11       **A. PLAINTIFFS' POSITION**

12       Rearden's proposed Instruction 1.5 for the jury's Final Instructions is the same as its proposal

13   for the Preliminary Instructions, and the only dispute is whether, as with the preliminary instruction,

14   it should refer to DD3 making "copies of the MOVA Contour software," or "copies of code from the

15   MOVA Contour software." Rearden will not repeat its arguments here, but refers back to its position

16   statement regarding Disputed Instruction 1.5 in the Preliminary Instructions.

17

18       **B. DEFENDANT'S POSITION**

19       The parties only dispute how to refer to DD3's copying.  Neither party disputes the fact of

20   copying or how it was done.  See, e.g., Special Instruction 1 – Stipulated Facts at ¶ 4.  The dispute is

21   over whether to say, as Defendant proposes, DD3 copied "code from" the MOVA Contour software,

22   or whether to say DD3 copied "the MOVA Contour software" without referring to "the code from"

23   that software, as Plaintiffs propose.  The Court should adopt Defendant's proposal because the

24   copyrighted work at issue in this case is the code; that is what was deposited with the Copyright

25   Office and what has copyright protection.  Copyright protection does not extend beyond the code

26   itself to the functionality of the software, and Rearden has no copyright-protected interest in the

27   outputs of the software. Yet vaguely informing the jury that the "software" was copied could lead the

28

-50-

1    jury to conclude that copyright protection extends further than it actually does.  Precision is essential

2    to ensure that the jury understands exactly what the infringing act is alleged to be so that they can

3    accurately evaluate whether Defendant had the legal right and practical ability to control the alleged

4    infringement, and the extent to which Defendant profited (if at all) from the alleged infringement.

5          Plaintiffs disagreed with including a reference to the code on the parties' most recent meet

6    and confer conference because they claimed to be concerned that Defendant will argue that less than

7    all of the code was copied and Plaintiffs will therefore have to address substantiality of copying and

8    other issues.  This does not make sense.  The parties have stipulated to copying and deleted that issue

9    from the proposed jury instructions.  See, e.g., 17.1 (neither party included "Proof of Copying" in

10   model instruction); 17.5 (both parties' proposals include stipulation on copying and delete

11   requirement for Plaintiffs to show copying of original expression from copyrighted work).  Plaintiffs

12   also argued in the prior jury instructions filing that "DD3 was not simply copying the 'code' from the

13   MOVA Contour software; it was copying the entire software."  Dkt. 552 at 12.  This underscores

14   Defendant's concern about juror confusion.  Rearden has claimed that the "entire software" includes

15   Maya Scripts—but evidence of Maya Scripts has been excluded.  Dkt. 483.

**UNDISPUTED: 1.6 Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**UNDISPUTED: 1.9 What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**UNDISPUTED: 1.10 What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

**UNDISPUTED: 1.11 Evidence for Limited Purpose**

2       Some evidence may be admitted only for a limited purpose.

3       ~~When~~If I ~~instruct~~have instructed you that an item of evidence ~~has been~~was admitted only for

4   a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

5       ~~[The testimony [you are about to hear] [you have just heard] may be considered only for~~

6   ~~the limited purpose of [*describe purpose*] and not for any other purpose.]~~

7

8   **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

9   2023).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>UNDISPUTED</u>: 1.12 Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023); Comment to 1.12.

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

**<u>UNDISPUTED</u>: 1.13 Ruling on Objections**

2

There are rules of evidence that control what can be received into evidence. When a lawyer

3

asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not

4

permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question

5

may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered,

6

and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore

7

the question and must not guess what the answer might have been.

8

Sometimes I may ~~order~~have ordered that evidence be stricken from the record and that you

9

were to disregard or ignore that evidence. That means when you are deciding the case, you must not

10

consider the stricken evidence for any purpose.

11

12

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

13

2023).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

**UNDISPUTED: 1.14 Credibility of Witnesses**

2       In deciding the facts in this case, you may have to decide which testimony to believe and

3 which testimony not to believe. You may believe everything a witness says, or part of it, or none of

4 it. In considering the testimony of any witness, you may take into account:

5       (1) the opportunity and ability of the witness to see or hear or know the things testified to;

6       (2) the witness's memory;

7       (3) the witness's manner while testifying;

8       (4) the witness's interest in the outcome of the case, if any;

9       (5) the witness's bias or prejudice, if any;

10       (6) whether other evidence contradicted the witness's testimony;

11       (7) the reasonableness of the witness's testimony in light of all the evidence; and

12       (8) any other factors that bear on believability.

13       Sometimes a witness may say something that is not consistent with something else he or she

14 said. Sometimes different witnesses will give different versions of what happened. People often

15 forget things or make mistakes in what they remember. Also, two people may see the same event but

16 remember it differently. You may consider these differences, but do not decide that testimony is

17 untrue just because it differs from other testimony.

18       However, if you decide that a witness has deliberately testified untruthfully about something

19 important, you may choose not to believe anything that witness said. On the other hand, if you think

20 the witness testified untruthfully about some things but told the truth about others, you may accept

21 the part you think is true and ignore the rest.

22       The weight of the evidence as to a fact does not necessarily depend on the number of

23 witnesses who testify. What is important is how believable the witnesses were, and how much

24 weight you think their testimony deserves.

25

26 **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

27 2023).

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

<u>**UNDISPUTED**</u>: **1.20 Bench Conferences and Recesses**

2

From time to time during the trial, it [may become] [became] necessary for me to talk with

3

the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury

4

[is] [was] present in the courtroom, which is called a sidebar, or by calling a recess. Please

5

understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these

6

conferences is not to keep relevant information from you, but to decide how certain evidence is to be

7

treated under the rules of evidence and to avoid confusion and error.

8

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of

9

these conferences to a minimum. I [may] [did] not always grant an attorney's request for a

10

conference. Do not consider my granting or denying a request for a conference as any indication of

11

my opinion of the case or of what your verdict should be.

12

13

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

14

2023).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**UNDISPUTED: 2.2 Stipulations of Fact**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1    **UNDISPUTED**: **2.4 Deposition and Prior Testimony in Lieu of Live Testimony**

2        A deposition is the sworn testimony of a witness taken before trial. The witness is placed

3    under oath to tell the truth and lawyers for each party may ask questions. The questions and answers

4    are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be

5    used at the trial.].

6        The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should

7    consider deposition testimony, You heard the deposition testimony of numerous witnesses. [You

8    also heard testimony given in the *SHST* litigation from witnesses who were placed under oath to tell

9    the truth, where the questions and answers were recorded.] Insofar as possible, you should consider

10   the deposition [and other prior sworn testimony] that was presented to you in court in lieu of live

11   testimony, in the same way as if the witness had been present to testify.

12       [DoMost of the prior testimony you heard was presented by video, but some was presented

13   by counsel reading from a written transcript. For testimony that was read to you, do not place any

14   significance on the behavior or tone of voice of any person reading the questions or answers.].

15

16   **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

17   2023).

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**UNDISPUTED: 2.11 Use of Interrogatories**

Evidence ~~[will now be]~~ [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**<u>UNDISPUTED</u>: 2.12 Use of Requests for Admission**

Evidence ~~[will now be]~~ [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**<u>UNDISPUTED</u>: 2.13 Expert Opinion**

You ~~[have heard] [are about to hear]~~ testimony from [~~*name*~~Alberto Menache, Phillip Fier, Angela Tinwell, Darren Hendler, Kristie Kershaw, Stephen Lane, Robin Russell, and Robert Wunderlich] who ~~[testified] [will testify]~~ about ~~[his] [her]~~their opinions and the reasons for those opinions. This opinion testimony ~~is~~was allowed~~,~~ because of the ~~specialized knowledge, skill,~~ education or experience ~~, training, or education~~ of ~~this witness.~~those witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

1

**<u>UNDISPUTED</u>: 2.14 Charts and Summaries Not Received in Evidence**

2

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you

3

in order to help explain the contents of books, records, documents, or other evidence in the case.

4

Charts and summaries are only as good as the underlying evidence that supports them. You should,

5

therefore, give them only such weight as you think the underlying evidence deserves.

6

7

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

8

2023).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**<u>UNDISPUTED</u>: 2.15 Charts and Summaries Received in Evidence**

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**<u>UNDISPUTED</u>: 2.16 Evidence in Electronic Format**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) courtroom deputy. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], courtroom deputy, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] courtroom deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

1

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

2

2023) (bracketed text left if applicable option).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

## DISPUTED: SPECIAL INSTRUCTION 1 – STIPULATED FACTS

**1. DISPUTED PROPOSED INSTRUCTIONS**

### A. PLAINTIFFS' PROPOSED INSTRUCTION:

The parties have stipulated, and you are instructed, that:

1. Plaintiff Rearden, LLC developed the MOVA Contour software, which is part of a facial performance capture system called Contour Reality Capture. Prior to August 17, 2012, MOVA Contour was owned by Rearden's wholly owned subsidiaries.

2. On August 17, 2012, ownership of all of the MOVA Contour assets, including the MOVA Contour software, and the copyright in that software transferred to a company called OL2, Inc.  Plaintiffs Rearden LLC and Rearden Mova LLC have never had an ownership interest in OL2, Inc.

3. On February 11, 2013, OL2, Inc. transferred all of the MOVA Contour assets to a company called MO2, LLC. As the result of that transfer, the copyright in the MOVA Contour software became the property of MO2, LLC.

4. Digital Domain 3.0, Inc. ("DD3") is a visual-effects company and is not a party to this case. DD3 made copies of the MOVA Contour software into the random access memory of computers DD3 operated while working on Defendant's 2017 live-action movie *Beauty and the Beast.*

~~1.~~5. Defendant's live-action movie *Beauty and the Beast* was released to theaters on March 17, 2017.

**AUTHORITY:** Stipulation by the parties, with the exception of disputed language referring to "copies of the MOVA Contour software."

-69-

**B. DEFENDANT'S PROPOSED INSTRUCTION:**

The parties have stipulated, and you are instructed, that:

1.  Plaintiff Rearden, LLC developed the MOVA Contour software, which is part of a facial performance capture system called Contour Reality Capture.  Prior to August 17, 2012, MOVA Contour was owned by Rearden's wholly owned subsidiaries.

2.  On August 17, 2012, ownership of all of the MOVA Contour assets, including the MOVA Contour software and the copyright in that software, transferred to a company called OL2, Inc.  Plaintiffs Rearden LLC and Rearden Mova LLC have never had an ownership interest in OL2, Inc.

3.  On February 11, 2013, OL2, Inc. transferred all of the MOVA Contour assets to a company called MO2, LLC. As the result of that transfer, the copyright in the MOVA Contour software became the property of MO2, LLC.

4.  Digital Domain 3.0, Inc. ("DD3") is a visual-effects company and is not a party to this case. DD3 made copies of code from the MOVA Contour software into the random access memory of computers DD3 operated while working on Defendant's 2017 live-action movie *Beauty and the Beast.*

~~1.~~5. Defendant's live-action movie *Beauty and the Beast* was released to theaters on March 17, 2017.

**2. PARTIES' POSITION STATEMENTS**

**A. PLAINTIFFS' POSITION**

The only dispute regarding this instruction is whether, as with other instructions, it should refer to DD3 making "copies of the MOVA Contour software," or "copies of code from the MOVA Contour software." *See* ¶ 4. Rearden will not repeat its arguments here, but refers back to its position statement regarding Disputed Instruction 1.5 in the Preliminary Instructions.

1

**B. DEFENDANT'S POSITION**

2

The parties agree to all of the stipulated facts set forth above, except with respect to No. 4,

3

where they disagree as to whether the words "code from" should be included in the sentence "DD3

4

made copies of [code from] the MOVA Contour software into the random access memory of

5

computers DD3 operated while working on Defendant's 2017 live-action movie *Beauty and the*

6

*Beast*."

7

The parties therefore only dispute how to refer to DD3's copying.  Neither party disputes the

8

fact of copying or how it was done.  *See, e.g.*, Special Instruction 1 – Stipulated Facts at ¶ 4.  The

9

dispute is over whether to say, as Defendant proposes, DD3 copied "code from" the MOVA Contour

10

software, or whether to say DD3 copied "the MOVA Contour software" without referring to "the

11

code from" that software, as Plaintiffs propose.  The Court should adopt Defendant's proposal

12

because the copyrighted work at issue in this case is the code; that is what was deposited with the

13

Copyright Office and what has copyright protection.  Copyright protection does not extend beyond

14

the code itself to the functionality of the software, and Rearden has no copyright-protected interest in

15

the outputs of the software. Yet vaguely informing the jury that the "software" was copied could lead

16

the jury to conclude that copyright protection extends further than it actually does.  Precision is

17

essential to ensure that the jury understands exactly what the infringing act is alleged to be so that

18

they can accurately evaluate whether Defendant had the legal right and practical ability to control the

19

alleged infringement, and the extent to which Defendant profited (if at all) from the alleged

20

infringement.

21

Plaintiffs disagreed with including a reference to the code on the parties' most recent meet

22

and confer conference because they claimed to be concerned that Defendant will argue that less than

23

all of the code was copied and Plaintiffs will therefore have to address substantiality of copying and

24

other issues.  This does not make sense.  The parties have stipulated to copying and deleted that issue

25

from the proposed jury instructions.  *See, e.g.*, 17.1 (neither party included "Proof of Copying" in

26

model instruction); 17.5 (both parties' proposals include stipulation on copying and delete

27

requirement for Plaintiffs to show copying of original expression from copyrighted work).  Plaintiffs

28

-71-

1    also argued in the prior jury instructions filing that "DD3 was not simply copying the 'code' from the

2    MOVA Contour software; it was copying the entire software."  Dkt. 552 at 12.  This underscores

3    Defendant's concern about juror confusion.  Rearden has claimed that the "entire software" includes

4    Maya Scripts—but evidence of Maya Scripts has been excluded.  Dkt. 483.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED: 17.1 Preliminary Instruction—Copyright**

**1. DISPUTED PROPOSED INSTRUCTIONS**

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

The plaintiff, [~~*name of plaintiff*~~],Rearden, claims ownership of a copyright and seeks damages against the defendant, [~~*name of defendant*~~],Disney, for vicarious copyright infringement. ~~The defendant~~Disney denies infringing ~~the~~ any copyright owned by Rearden ~~[and] [contends that the copyright is invalid] [asserts an affirmative defense, e.g., that it made a fair use of the work]~~. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**[COPYRIGHT INTERESTS]**

The copyright owner may [transfer] ~~[sell] [convey]~~ to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. ~~To be valid, t~~The [transfer] ~~[sale] [conveyance]~~ must be in writing and signed by the transferor. The person to whom a right is transferred is called an assignee~~].~~~~*or*~~

-73-

[The copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work. To be valid, the [transfer] [sale] [conveyance] must be in writing and signed by the transferor. The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has the right to exclude others from [*describe the rights granted in the license*].]

### [HOW COPYRIGHT IS OBTAINED]

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.]

### PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, [*name of plaintiff*],Rearden, contends that the defendant, [*name of defendant*], has infringedDisney, is liable for the alleged vicarious infringement of the plaintiff's copyright. The plaintiffRearden has the burden of proving by a preponderance of the evidence that the plaintiffRearden is the owner of the copyright in the MOVA Contour software and, if so, that the defendant copied original expressionDisney is vicariously liable for DD3's unauthorized copying of from the copyrighted work.MOVA Contour software while working on *Beauty and the Beast.* Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringedRearden is the owner of the copyright in the MOVA Contour software, and that Disney is liable for vicarious infringement.

[The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.]

### PROOF OF COPYING

1   ~~To prove that the defendant copied the plaintiff's work, the plaintiff may show that the~~

2   ~~defendant had access to the plaintiff's copyrighted work and that there are substantial similarities~~

3   ~~between the defendant's work and the plaintiff's copyrighted work.~~

4   **LIABILITY FOR INFRINGEMENT**

5   ~~One who [reproduces] [publicly distributes] [publicly performs] [publicly displays]~~

6   ~~[prepares derivative works from] a copyrighted work without authority from the copyright owner~~

7   ~~during the term of the copyright infringes the copyright.~~ Anyone who copies original expression from

8   a copyrighted work during the term of the copyright without the owner's permission infringes the

9   copyright.  The parties have stipulated, and you are instructed, that DD3 copied original expression

10  from the MOVA Contour software by copying the MOVA Contour software into the random access

11  memory of computers that DD3 operated while working on *Beauty and the Beast*. The parties dispute

12  whether Rearden owned the copyright in the MOVA Contour software at the time DD3 copied this

13  code and thus, whether DD3 infringed copyright while working on *Beauty and the Beast*.

14  [Copyright may also be infringed by ~~[~~vicariously infringing~~] [ and contributorily~~

15  ~~infringing].~~].

16  ~~**[VICARIOUS INFRINGEMENT]**~~

17  A person is liable for copyright infringement by another if the person has profited directly

18  from the infringing activity and had the right and ability to supervise or control the infringing

19  activity, whether or not the person knew of the infringement~~]~~.

20  ~~**[CONTRIBUTORY INFRINGEMENT]**~~

21

22  ~~[A person is liable for copyright infringement by another if the person knows or should have~~

23  ~~known of the infringing activity and [induces ] [or ] [materially contributes to] the activity.].~~

24  ~~**[DEFENSES TO INFRINGEMENT]**~~

25  ~~[The defendant contends that there is no copyright infringement. There is no copyright~~

26  ~~infringement when [the defendant independently created the challenged work] [the defendant made~~

27  ~~fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment,~~

28

-75-

1    ~~news reporting, teaching, scholarship, or research] [the plaintiff abandoned ownership of the~~

2    ~~copyrighted work] [the plaintiff misused the copyright by requiring its exclusive use or preventing~~

3    ~~the development of competing products] [the plaintiff granted the defendant an express license to~~

4    ~~[use] [copy] [*other*] the plaintiff's copyrighted work] [the plaintiff granted the defendant an implied~~

5    ~~license to use the plaintiff's copyrighted work] [the defendant, as an owner of a copy of the~~

6    ~~plaintiff's copyrighted work, resold that copy after the plaintiff made the first sale].]~~

7

8    **AUTHORITY:**  Ninth Circuit Model Jury Instruction 17.1 (altered to select appropriate text from

9    bracketed options based on the claims and defenses in this case, identify the parties, describe the

10   claims and issues, and otherwise conform the instruction to the facts and issues).

11

12

13        **B. DEFENDANT'S PROPOSED INSTRUCTION:**

14        The plaintiff, [*~~name of plaintiff~~*],Rearden, claims ownership of a copyright ~~and~~ in the

15   MOVA Contour software. Rearden seeks damages against the defendant, [*~~name of~~

16   *~~defendant~~*],Disney, for vicarious copyright infringement.  based on non-party DD3's copying of

17   code from the MOVA Contour software while working on *Beauty and the Beast.*

18        The defendant, Disney, denies infringing any~~the~~ copyright owned by Rearden. ~~[and]~~

19   ~~[contends that the copyright is invalid] [asserts an affirmative defense, e.g., that it made a fair use~~

20   ~~of the work].  To help you understand the evidence in this case,~~

21        I will ~~explain some of the legal terms you will hear during this trial.~~now instruct you on the

22   law regarding copyright infringement.

23                        ~~**DEFINITION OF COPYRIGHT**~~

24

25        ~~The owner of  copyright has the right to exclude any other person from reproducing,~~

26   ~~distributing, performing, displaying, or preparing derivative works from the work covered by for~~

27   ~~a specific period of time.~~

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**[COPYRIGHT INTERESTS]**

[The copyright owner may [transfer] [sell] [convey] to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. To be valid, the [transfer] [sale] [conveyance] must be in writing and signed by the transferor. The person to whom a right is transferred is called an assignee.]

*or*

[The copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work. To be valid, the [transfer] [sale] [conveyance] must be in and signed by the transferor. The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has the right to exclude others from [*describe the rights granted in the license*].]

**[HOW COPYRIGHT IS OBTAINED]**

[Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter

-77-

and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.]

### PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, [*name of plaintiff*], contends that the defendant, [*name of defendant*], has infringed the plaintiff's copyright. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendant copied original expression from the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

[The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.]

### PROOF OF COPYING

To prove that the defendant copied the plaintiff's work, the plaintiff may show that the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendant's work and the plaintiff's copyrighted work.

### LIABILITY FOR INFRINGEMENT

One who [reproduces] [publicly distributes] [publicly performs] [publicly displays] [prepares derivative works from] a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.

[Copyright may also be infringed by [vicariously infringing] [contributorily infringing].]

### [VICARIOUS INFRINGEMENT]

1    [A person is liable for copyright infringement by another if the person has profited

2    directly from the infringing activity and had the right and ability to supervise or control the

3    infringing activity, whether or not the person knew of the infringement.]

4    **[CONTRIBUTORY INFRINGEMENT]**

5

6    [A person is liable for copyright infringement by another if the person knows or

7    should have known of the infringing activity and [induces] [or] [materially contributes to] the

8    activity.]

9    **[DEFENSES TO INFRINGEMENT]**

10

11   [The defendant contends that there is no copyright infringement.  There is no copyright

12   infringement when [the defendant independently created the challenged work] [the defendant

13   made fair use of the copyrighted work by reproducing copies for purposes such as criticism,

14   comment, news reporting, teaching, scholarship, or research] [the plaintiff abandoned

15   ownership of the copyrighted work] [the plaintiff misused the copyright by requiring its

16   exclusive use or preventing the development of competing products] [the plaintiff granted the

17   defendant an express license to [use] [copy] [*other*] the plaintiff's copyrighted work] [the

18   plaintiff granted the defendant an implied license to use the plaintiff's copyrighted work] [the

19   defendant, as an owner of a copy of the plaintiff's copyrighted work, resold that copy after the

20   plaintiff made the first sale].]

21

22   **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

23   2023).

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

## 2. PARTIES' POSITION STATEMENTS

### A. PLAINTIFFS' POSITION

Rearden's proposed Instruction 17.1 for the jury's Final Instructions is the same as its proposal for the Preliminary Instructions (thus, to the extent the disputes over the Preliminary Instruction remain relevant, Rearden refers back to its Preliminary Instruction 17.1 position statement rather than repeating its arguments here). Disney's proposal, by contrast, is a severely truncated version that would contain just two sentences describing the parties' claims and defenses.

Rearden contends that Instruction 17.1 should be given as part of the Preliminary Instructions to the jury before trial, and again before the jury begins its deliberations. The parties largely agreed (with two relatively minor exceptions discussed supra) on Instruction 17.1 for use as a preliminary instruction – it is drawn directly form the Model Instructions, with minimal changes necessary to customize the instruction to the facts of the case. So there is no question that it contains an accurate statement of the law and that it is useful to the jury.

Plaintiffs believe that repeating the instruction before deliberations begin will assist the jury in understanding the more specific instructions that follow for several reasons. First, Instruction 17.1 provides a simple and easy-to-understand overview of the copyright claims at issue in a single instruction – it will provide a useful review of copyright concepts after the jury has heard the evidence and arguments of the parties that will better enable the jury to understand the specific instructions on individual elements within the context of what it has heard. Instruction 17.1 provides a useful and easy to understand framework for understanding the claims and issues in the case that render the later instructions easier to access for people confronting these concepts for the first time. Second, there is little reason to expect that the jury will remember the preliminary instructions with any level of precision after two weeks have elapsed. The jury will have received its preliminary instructions before it has heard any evidence or argument in the case, and for many if not all of them, this will be their first exposure to issues relating to copyright law and copyright infringement. It is highly unlikely that they will have fully absorbed the preliminary instruction version of 17.1 without any context or experience to guide them. Third, the jury will not receive written copies of their

preliminary instructions – thus, the useful overview provided by Instruction 17.1 will not be available to the jury during its deliberations unless it is included in the final instructions. Fourth and finally, many other instructions will be included in both the preliminary and final instructions: the parties agree that Instructions 1.3 (and 1.4, its essentially identical counterpart), 1.5 (which describes the parties' claims and defenses), 1.6, 1.9, 1.10, 1.11, 1.12, 1.13, 1.14, and 1.20 should all be given as preliminary and final instructions. And the reason for this is clear: it is unreasonable to expect the jury to retain all of the information in the preliminary instructions after two weeks and hours of evidence and argument. Important concepts bear repeating, and it helps the jury to have written instructions it may refer to in its deliberations. Giving Instruction 17.1 as part of the final instructions is not a waste of time, as Disney claims. Rather, it is a useful and brief overview that will help ensure the jury can fully understand and follow the Court's instructions.

### B. DEFENDANT'S POSITION

Plaintiffs' proposal to repeat this entire *preliminary* instruction once again to the jury at the end of trial is unnecessarily repetitive for the jurors.  This is not a long trial, and there are specific instructions for the relevant issues the jury needs to decide.  Defendant's proposal instead offers a streamline prefatory statement to orient the jurors to those specific instructions.

If the Court is inclined to include a full preliminary instruction again, Defendant proposes that the instruction be given as Defendant proposed in the preliminary set of instructions and provides the support for in instruction in the alternative:

Defendant proposes the addition of "legal" before "right" and "practical" before "ability" in the section on "Vicarious Infringement," consistent with Ninth Circuit case law and this Court's Order on Defendant's motion for summary judgment, all of which contain this exact language.  *See Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) ("A vicarious infringer 'exercises control over a direct infringer when he has both a *legal right* to stop or limit the directly infringing conduct, as well as the *practical ability* to do so.'") (emphasis added) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); Dkt. 555 at 9 (Court's summary judgment

-81-

Order quoting the same language from *Williams* and holding that "there is a genuine issue of material fact as to whether Disney had the *practical* ability to stop or limit the infringing conduct …") (emphasis added).  The Court should adopt Defendant's proposal because it is the correct statement of the legal standard and will help the jury understand their charge.  Where, as here, the model instruction "does not accurately track" the controlling law, the Court should conform the model to the governing legal standard.  *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 869 (9th Cir. 2020) ("[B]ecause th[e] instruction [given by the district court and derived from the Ninth Circuit Model] does not accurately track our functionality caselaw, its use was error and we must reverse.") (citation omitted).  The Comment to Model Instruction 17.20 specifically contemplates that in "certain cases, it may be appropriate to instruct the jury on the meaning of 'right and ability to supervise or control.'"  Ninth Circuit Manual of Model Civil Jury Instructions at 445.  It would be appropriate to do so here, as without some further explication, a lay jury unfamiliar with the application of the legal standard is likely to be confused.

Defendant's proposal is a modest, two-word adjustment to the model instruction to achieve the exact purpose contemplated by the Ninth Circuit's comment and to ensure the instructions are consistent with the case law that the Court and all of the parties have applied to this case.  Using the same words the Ninth Circuit did—"legal" and "practical"—clarifies what for lay jurors are not self-evident concepts.  Modifying "right" with "legal" makes it clear to jurors that the defendant must have legal authority to take action, not a moral or amorphous right to do so.  Likewise, modifying "ability" with "practical" makes it clear that the defendant must have the realistic, and not simply the theoretical, ability to supervise or control the infringement.  The latter clarification is critical in this case.  The Court's summary judgment ruling concluded that a jury could, not that it must, find that the contract with DD3 gave Defendant the ability to stop DD3's use of MOVA.  The ruling finds it is a jury question whether Defendant had the *practical* ability to stop that use, in light of facts showing the difficulty of detecting the alleged infringement and policing hundreds of vendors and technologies that Defendant used to make a major motion picture.

1    Not only did the Court and Defendant cite and apply this standard in the summary judgment

2 Order and motion respectively, but Plaintiffs also did the same. *See, e.g.*, Dkt. 555 at 9-12 (Court's

3 summary judgment order); Dkt. 451 at 9-17 (Plaintiffs' summary judgment opposition); Dkt. 421 at

4 11-17 (Defendant's motion for summary judgment).  Plaintiffs quoted the exact same language from

5 *Williams* that the Court applied in its summary judgment Order and that Defendant proposes to add

6 to the model instruction here.  *See* Dkt. 451 at 9.

7    At the parties' most recent meet and confer conference, however, Plaintiffs reversed course

8 and claimed that the very standard they quoted in their summary judgment briefing did not actually

9 apply here.  In particular, Plaintiffs claimed that the question of whether a defendant has the

10 "practical ability" to control the infringement applies only in the online context, where technical

11 constraints supposedly make it uniquely difficult to detect infringement.  There is no authority for

12 Plaintiffs' new position.  No case that Defendant has seen states that only certain technical Internet

13 cases are subject to the "practical ability" standard.  To the contrary, *Williams*—the Ninth Circuit

14 case on vicarious infringement that the Court cited in its summary judgment ruling—discusses the

15 "practical ability" to control the infringement, but it is not a case involving online infringement or

16 highly technical details; it was a standard copyright infringement case based on the music

17 composition copyright in the song *Got to Give It Up*.  The same is true of the *scores* of other cases

18 that have stated the applicable standard as "legal right" and "practical ability" and that do not involve

19 infringement in the online context.  *See, e.g.*, *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668

20 F.3d 1148, 1155 (9th Cir. 2012) (public performance of infringing musical works at restaurant and

21 lounge); *Liguori v. Hansen*, 752 F. App'x 389, 392 (9th Cir. 2018) (infringing logo on souvenir

22 book); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 389 (3d Cir. 2016) (copyrighted photos

23 infringingly reproduced, publicly displayed, and distributed on magazines, merchandise, motion

24 pictures, and other locations); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F.

25 Supp. 3d 959, 968-69 (N.D. Cal. 2019) (reproduction of infringing sculptural works for use in

26 restaurant); *Oregon Catholic Press v. Ambrosetti*, 218 F. Supp. 3d 1158, 1165 (D. Or. 2016)

27 (reproduction and distribution of musical works in church hymnals); *Adobe Sys. Inc. v. Canus*

28

-83-

1   *Prods., Inc.*, 173 F. Supp. 2d 1044, 1053-55 (C.D. Cal. 2001) (sale of infringing software at

2   computer fairs); *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016)

3   (copyrighted image used as infringing album cover art); *Payne v. Manilow*, 2019 WL 4149357, at *2

4   (C.D. Cal. July 11, 2019) (infringing public displays at concerts and award shows of copyrighted

5   motion picture); *Kilina Am., Inc. v. Bonded Apparel, Inc.*, 2019 WL 8065854, at *2 (Nov. 19, 2019)

6   (alleged infringement of fabric design); *Broad. Music, Inc. v. Five Star Enters., LLC*, 2018 WL

7   4492481, at *3 (D. Nev. Sept. 19, 2018) (infringing public performances of copyrighted music at

8   restaurant).

9           The requirement that the defendant must have the "practical ability" to control the

10  infringement is not limited to the online context—it is a fundamental element of vicarious liability

11  that applies in every case.  *See, e.g.*, *Paramount Pictures Corp. v. Int'l Media Films Inc.*, 2013 WL

12  3215189, at *14 (C.D. Cal. June 12, 2013) (holding in case involving infringing distribution of

13  motion picture that "[t]he test for right or ability to supervise infringing requires both 'a legal right to

14  stop or limit the directly infringing conduct ... [and] the practical ability to do so.'") (internal

15  alterations in original) (citation omitted); *Kevin Barry Fine Art Assocs.*, 391 F. Supp. 3d at 968-69

16  ("As to vicarious liability, one is liable '[1] by profiting from direct infringement while [2] declining

17  to exercise a right to stop or limit it.' [citations] The second prong, which the Ninth Circuit refers to

18  as the 'control' element, requires that the defendant 'ha[d] both a legal right to stop or limit the

19  directly infringing conduct, as well as the practical ability to do so.'") (citations omitted); *Kilina Am.,

20  Inc. v. SA & PW, Inc.*, 2019 WL 8685066, at *2 (C.D. Cal. Aug. 27, 2019) ("Any pressure that

21  [alleged vicarious infringer] could feasibly put on [direct infringer] falls far short of the "legal right"

22  and "practical ability" to control necessary to impose vicarious liability.").

23          It is critical for the jury to understand that a copyright defendant's liability for someone else's

24  conduct cannot be imposed just because in some remote or theoretical but completely impractical

25  sense the defendant may have the ability to control the infringement.  *See, e.g.*, *Millennium Funding,*

26  *Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1215 (S.D. Fla. 2021) ("[T]he plaintiff must allege

27  that the defendant has a 'practical ability to police the infringing activities of [third parties] as

28

-84-

opposed to suggesting measures that are imprecise, overbroad or not workable.'") (citation omitted); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1174 (9th Cir. 2007) (similar).  The concept of vicarious liability is not that expansive.  As case after case has affirmed, the standard requires that the defendant have the *practical* ability to actually do something about the infringement.  The jury should be so instructed.

In the parties' most recent meet and confer, Plaintiffs also claimed that adding the word "legal" before "right" would confuse the jury and lead them to believe that they are being asked to draw a legal conclusion.  That does not make sense.  As discussed, "legal right" will help the jury understand that they must do more than evaluate whether this is morally "right" or just.

Because Defendant's proposal accurately reflects current Ninth Circuit law and will assist the jury with understanding the standard, the Court should adopt Defendant's proposal.

Further, including the full optional model section "How Copyright Is Obtained," as Rearden proposes, is confusing, misleading, and could cause the jury to err because the model language assumes ownership when that issue is disputed in this case.  Instructing the jury that "[t]he **owner** of the copyright may apply to register the copyright …" and that the Register of Copyright "issues a certificate of registration to the copyright **owner**" is incorrect and highly prejudicial, because it is for the jury to decide whether Rearden was the owner when it registered the copyright in 2016 and received the certificate.  This is optional text in the model instruction, so there is no reason to include it when inapplicable and erroneous in this case.  The jury will be separately instructed on copyright registration in 17.7, so there is no prejudice to Plaintiffs in removing this section from this preliminary instruction.  Plaintiffs asserted during meet and confer that they included this instruction because it is important for the jury to understand that a work can be registered after the copyright attaches to it.  Defendant's proposed instruction accomplishes this without the confusing and misleading language Plaintiffs propose keeping, because Defendant's proposal just keeps the first sentence of this optional section, which addresses Plaintiffs' stated issue.

Lastly, the parties dispute how to refer to DD3's copying.  Neither party disputes the fact of copying or how it was done.  *See, e.g.*, Special Instruction 1 – Stipulated Facts at ¶ 4.  The dispute is

1    over whether to say, as Defendant proposes, DD3 copied "code from" the MOVA Contour software,

2    or whether to say DD3 copied "the MOVA Contour software" without referring to "the code from"

3    that software, as Plaintiffs propose.  The Court should adopt Defendant's proposal because the

4    copyrighted work at issue in this case is the code; that is what was deposited with the Copyright

5    Office and what has copyright protection.  Copyright protection does not extend beyond the code

6    itself to the functionality of the software, and Rearden has no copyright-protected interest in the

7    outputs of the software. Yet vaguely informing the jury that the "software" was copied could lead the

8    jury to conclude that copyright protection extends further than it actually does.  Precision is essential

9    to ensure that the jury understands exactly what the infringing act is alleged to be so that they can

10   accurately evaluate whether Defendant had the legal right and practical ability to control the alleged

11   infringement, and the extent to which Defendant profited (if at all) from the alleged infringement.

12       Plaintiffs disagreed with including a reference to the code on the parties' most recent meet

13   and confer conference because they claimed to be concerned that Defendant will argue that less than

14   all of the code was copied and Plaintiffs will therefore have to address substantiality of copying and

15   other issues.  This does not make sense.  The parties have stipulated to copying and deleted that issue

16   from the proposed jury instructions. *See, e.g.*, 17.1 (neither party included "Proof of Copying" in

17   model instruction); 17.5 (both parties' proposals include stipulation on copying and delete

18   requirement for Plaintiffs to show copying of original expression from copyrighted work).  Plaintiffs

19   also argued in the prior jury instructions filing that "DD3 was not simply copying the 'code' from the

20   MOVA Contour software; it was copying the entire software."  Dkt. 552 at 12.  This underscores

21   Defendant's concern about juror confusion.  Rearden has claimed that the "entire software" includes

22   Maya Scripts—but evidence of Maya Scripts has been excluded.  Dkt. 483.

**<u>UNDISPUTED:</u> 17.2 Copyright—Defined (17 U.S.C. § 106)**

Copyright is the exclusive right to copy. This right to copy includes the exclusive right~~[s]~~ to ~~[, or authorize others to]:~~

~~[1.]~~ ~~[~~reproduce the copyrighted work in ~~[copies] [phonorecords];]~~.

~~[2.]~~ ~~[[recast, transform, or adapt the work, that is] prepare derivative works based upon the copyrighted work;]~~

~~[3.]~~ ~~[distribute [copies] [phonorecords] of the copyrighted work to the public by [sale or other transfer of ownership] [or by] [rental or lease or lending];]~~

~~[4.]~~ ~~[perform publicly a copyrighted [literary work] [musical work] [dramatic work] [choreographic work] [pantomime work] [motion picture] [or] [*specify other audiovisual work*];]~~

~~[5.]~~ ~~[display publicly a copyrighted [literary work] [musical work] [dramatic work] [choreographic work] [pantomime work] [pictorial work] [graphic work] [sculptural work] [individual image of a motion picture] [or] [*specify other audiovisual work*]; and]~~

~~[6.]~~ ~~[perform a sound recording by means of digital audio transmission].~~

It is the owner of a copyright who may exercise ~~[this] [these]~~ exclusive right~~[s]~~.  The term "owner" includes ~~[the author of the work] [~~an <u>valid</u> assignee~~] [an exclusive licensee]~~. In general, copyright law protects against ~~[reproduction] [adaptation] [public distribution] [public performance] [public display]~~ of identical or substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce the~~[se]~~ right~~[s]~~ to exclude others in an action for copyright infringement.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**UNDISPUTED:** 17.3 Copyright—Subject Matter—Generally (17 U.S.C. § 102)

The work[s] [*identify the works at issue*] involved in this trial is called the MOVA Contour software.  Software is a are known as:

[1.]    [literary works [in which words, numbers, or other verbal or numerical symbols
        are expressed];]

[2.]    [musical works, including any accompanying words;] [3.]        [dramatic works,
        including any accompanying music;] [4.]    [pantomimes;]

[5.]    [choreographic  works;]

[6.]    [pictorial works] [graphic works] [sculptural works] [;] [, such as two  and three
        dimensional works of fine, graphic or applied art, photographs, prints, and art
        reproductions, maps, globes, charts, diagrams, models, and technical drawings,
        including architectural plans;]

[7.]    [motion pictures] [and other audiovisual works] [in which a series of related
        images convey an impression of motion when shown in succession];]

[8.]    [sound recordings] [;] [, which are works that result from fixation of a series of
        musical, spoken, or other sounds;]

[9.]    [architectural works] [;] [, which are building designs as embodied in buildings,
        architectural plans, drawings, or other modes of expression;]

[10.]    [computer programs] [that is, setsset of statements or instructions to be used directly
or indirectly in a computer to bring about a certain result].].

You are instructed that a copyright may be obtained in [*identify the work[s] at issue*].the MOVA Contour software.

This work[[This] [These] work[s] can be protected by copyright law. Only that part of the work[s] consisting of original works of authorship [fixed] [produced] in any tangible [medium] [form] of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, is protected by the Copyright Act.].

1      ~~[Copyright protection for an original work of authorship does not extend to any [idea] [,~~

2  ~~procedure] [, process] [, system] [, method of operation] [, concept] [, principle] [, or discovery],,~~

3  ~~regardless of the form in which it is described, explained, illustrated, or embodied.].~~

4      Copyright protection for the MOVA Contour software extends only to the software and not

5  any other part of the MOVA Contour facial motion capture system.

6

7  **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

8  2023).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**<u>DISPUTED</u>: 17.5 Copyright Infringement—Elements—Ownership and Copying**

**(17 U.S.C. § 501(a)–(b))**

**1. DISPUTED PROPOSED INSTRUCTIONS**

   **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. The parties have stipulated, and you are instructed, that DD3 copied original expression from the MOVA Contour software by copying the MOVA Contour software into the random access memory of computers that DD3 operated while working on *Beauty and the Beast.*

~~On the plaintiff's copyright infringement claim, the plaintiff~~Rearden has the burden of proving by a preponderance of the evidence that~~:~~

~~1. the plaintiff~~ Rearden was~~is~~ the owner of a valid copyright in the MOVA Contour software at the time DD3 ~~; and~~

~~2. the defendant~~ copied the MOVA Contour software while working on *Beauty and the Beast*~~original expression from the copyrighted work~~.

If you find that ~~the plaintiff~~Rearden has failed to meet this burden~~proved both of these elements~~, your verdict as to copyright infringement should be for Disney~~the plaintiff.~~ If~~, on the other hand,~~ you find that ~~the plaintiff~~Rearden met this burden~~has failed to prove either of these elements~~, then for your verdict to be for Rearden on copyright infringement, you must also find that Rearden has proven that Disney ~~either~~ vicariously ~~or contributorily~~ infringed, as described in Instruction 17.20 ~~and 17.21~~~~should be for the defendant~~.


**AUTHORITY:** Ninth Circuit Model Jury Instruction 17.5 (with alterations to customize the instruction to the facts and issues in the case and refer to the parties' stipulation).

**B. DEFENDANT'S PROPOSED INSTRUCTION:**

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. The parties have stipulated, and you are instructed, that DD3 copied original expression from the MOVA Contour software by copying code from the MOVA Contour software into the random access memory of computers that DD3 operated while working on *Beauty and the Beast.*

~~On the plaintiff's copyright infringement claim, the plaintiff~~Rearden has the burden of proving by a preponderance of the evidence that~~:~~

~~1. the plaintiff~~ Rearden was~~is~~ the owner of a valid copyright in the MOVA Contour software at the time DD3 ~~; and~~

~~2. the defendant~~ copied code from the MOVA Contour software while working on *Beauty and the Beast*~~original expression from the copyrighted work~~.

If you find that ~~the plaintiff~~Rearden has failed to meet this burden~~proved both of these elements~~, your verdict as to copyright infringement should be for Disney~~the plaintiff~~. If~~, on the other hand,~~ you find that ~~the plaintiff~~Rearden met this burden~~has failed to prove either of these elements~~, then for your verdict to be for Rearden on copyright infringement, you must also find that Rearden has proven that Disney vicariously infringed, as described in Instruction 17.20~~should be for the defendant~~.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).


**2. PARTIES' POSITION STATEMENTS**

**A. PLAINTIFFS' POSITION**

The only dispute regarding this instruction is whether, as with other instructions, the first paragraph of the instruction should refer to DD3 "copying the MOVA Contour software," or "copying code from the MOVA Contour software." Rearden will not repeat its arguments here, but

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

refers back to its position statement regarding Disputed Instruction 1.5 in the Preliminary

Instructions.

**B. DEFENDANT'S POSITION**

The parties only dispute how to refer to DD3's copying. Neither party disputes the fact of

copying or how it was done. *See, e.g.*, Special Instruction 1 – Stipulated Facts at ¶ 4. The dispute is

over whether to say, as Defendant proposes, DD3 copied "code from" the MOVA Contour software,

or whether to say DD3 copied "the MOVA Contour software" without referring to "the code from"

that software, as Plaintiffs propose. The Court should adopt Defendant's proposal because the

copyrighted work at issue in this case is the code; that is what was deposited with the Copyright

Office and what has copyright protection. Copyright protection does not extend beyond the code

itself to the functionality of the software, and Rearden has no copyright-protected interest in the

outputs of the software. Yet vaguely informing the jury that the "software" was copied could lead the

jury to conclude that copyright protection extends further than it actually does. Precision is essential

to ensure that the jury understands exactly what the infringing act is alleged to be so that they can

accurately evaluate whether Defendant had the legal right and practical ability to control the alleged

infringement, and the extent to which Defendant profited (if at all) from the alleged infringement.

Plaintiffs disagreed with including a reference to the code on the parties' most recent meet

and confer conference because they claimed to be concerned that Defendant will argue that less than

all of the code was copied and Plaintiffs will therefore have to address substantiality of copying and

other issues. This does not make sense. The parties have stipulated to copying and deleted that issue

from the proposed jury instructions. *See, e.g.*, 17.1 (neither party included "Proof of Copying" in

model instruction); 17.5 (both parties' proposals include stipulation on copying and delete

requirement for Plaintiffs to show copying of original expression from copyrighted work). Plaintiffs

also argued in the prior jury instructions filing that "DD3 was not simply copying the 'code' from the

MOVA Contour software; it was copying the entire software." Dkt. 552 at 12. This underscores

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's concern about juror confusion.  Rearden has claimed that the "entire software" includes Maya Scripts—but evidence of Maya Scripts has been excluded.  Dkt. 483.

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**UNDISPUTED:** **17.6 Copyright Infringement—Ownership of Valid Copyright—Definition**

**(17 U.S.C. §§ 201–205)**

~~The plaintiff~~Rearden is the owner of a valid copyright in [*identify work[s] allegedly infringed*]the MOVA Contour software if ~~the plaintiff~~Rearden proves by a preponderance of the evidence that~~:~~.

~~1. the plaintiff's work is original; and~~

~~2. the plaintiff [is the author or creator of the work] [~~ Rearden received a transfer of ~~the copyright] [received a transfer of the right to [*specify right transferred, e.g., make derivative works, publicly perform the work, etc.*]]~~.ownership of the copyright in the MOVA Contour software.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**DISPUTED: 17.12 Copyright Interests—Assignee**

**(17 U.S.C. § 201(d)(1))**

**1. DISPUTED PROPOSED INSTRUCTIONS**

   **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

   [In this case, the [p]Plaintiff Rearden LLC [defendant] does not claim to be was the [author] [creator] [initial owner] of the copyright at issue in the MOVA Contour software. On August 17, 2012, ownership of the copyright in the MOVA Contour software was transferred from Rearden to non-party OL2, Inc. On February 11, 2013, OL2, Inc. transferred the copyright in the MOVA Contour software to MO2, LLC. Instead, the [p]Plaintiffs and [D]defendant] disagree whether Plaintiffs own MO2 and the copyright in the MOVA Contour software. claims that it received the copyright by virtue of assignment from the work's [author] [creator] [initial owner] so that the [plaintiff] [defendant] is now the assignee of the copyright.]

   A copyright owner may [transfer][, sell][, or convey] to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is [transferred][, sold][, or conveyed] becomes the owner of the copyright in the work.

   To be valid, the [transfer][, sale][, or conveyance] must be in a writing signed by the transferor. The person to whom this right is transferred is called an assignee. [The assignee may enforce this right to exclude others in an action for copyright infringement.]

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).


   **B. DEFENDANT'S PROPOSED INSTRUCTION:**

   [In this case, the [p]Plaintiff Rearden LLC [defendant] does not claim to be was the [author] [creator] [initial owner] of the copyright at issue in the MOVA Contour software. On August 17, 2012, ownership of the copyright in the MOVA Contour software was transferred from Rearden to

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

non-party OL2, Inc. On February 11, 2013, OL2, Inc. transferred the copyright in the MOVA Contour software to MO2, LLC. ~~Instead, the [pP]laintiff[s]~~ and ~~[Dd]efendant~~ disagree whether Plaintiffs have proven they own MO2 and the copyright in the MOVA Contour software.~~claims that it received the copyright by virtue of assignment from the work's [author] [creator] [initial owner] so that the [plaintiff] [defendant] is now the assignee of the copyright.]~~

A copyright owner may ~~[transfer][,~~ sell~~][, or~~ convey~~]~~ to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is ~~[transferred][,~~ sold~~][, or~~ conveyed~~]~~ becomes the owner of the copyright in the work.

To be valid, the ~~[transfer][,~~ sale~~][, or~~ conveyance~~]~~ must be in a writing signed by the transferor. The person to whom this right is transferred is called an assignee. ~~[~~The assignee may enforce this right to exclude others in an action for copyright infringement~~.]~~.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

## 2. PARTIES' POSITION STATEMENTS

### A. PLAINTIFFS' POSITION

The parties initially submitted Instruction 17.12 as an agreed instruction. Rearden's proposed instruction retains the language to which the parties initially agreed. It tracks the model instruction, with modifications to conform the instruction to the facts of the case.

Disney now proposes to modify the instruction from the form initially agreed by the parties to insert a reference to Rearden's burden of proof. Rearden objects to this change because the Model Instruction does not include a reference to the burden of proof, and because importing the burden of proof concept is unduly repetitive and over-emphasizes Disney's defense. Rearden's burden of proof is adequately covered in other instructions:  Instructions 1.5 (Preliminary and Final), 1.6 (Preliminary and Final), 17.1 (Preliminary and Rearden's Proposed Final Instruction), 17.5 (Final), 17.6 (Final),

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1   and 17.20 (Final) all reference Rearden's burden of proof. Disney's proposed addition of yet another

2   reference to Rearden's burden of proof it unnecessary.

3          Instruction 17.12 is intended to instruct the jury regarding the law governing transfers of

4   copyright interests. Rearden's proposed instruction, to which the parties initially agreed, adequately

5   places the issue in context so the jury can understand how the determination of whether a valid

6   transfer occurred fits into the parties' dispute. Adding that Disney disputes whether Rearden "has

7   proven" it owns MO2 and the Copyright in the MOVA Contour software creates unnecessary

8   surplusage – the jury has already been instructed (and reminded several times) that Rearden bears the

9   burden of proof on the elements of its vicarious infringement claim.

10

11          **B. DEFENDANT'S POSITION**

12          The parties' only dispute is over the inclusion of the words "have proven they" in the

13   sentence "Plaintiffs and Defendant disagree whether Plaintiffs [have proven they] own MO2 and the

14   copyright in the MOVA Contour software."  Ownership is Plaintiffs' burden to prove, *see, e.g.*,

15   Undisputed Instruction 17.6, and it is a point of dispute in this case.  Defendant's proposed language

16   is a simple and neutral way to instruct the jury on this dispute, consistent with Plaintiffs' burden of

17   proof.

18

19

20

21

22

23

24

25

26

27

28

1   ### DISPUTED: SPECIAL INSTRUCTION 2

2   **1. DISPUTED PROPOSED INSTRUCTIONS**

3       **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

4       ### SPECIAL INSTRUCTION 2: AGENCY AND EMPLOYMENT DUTIES

5       Rearden contends that Greg LaSalle was employed by Rearden as the General Manager of its

6   MOVA Division when he formed MO2, LLC, and that as an employee of Rearden, LaSalle was also

7   its agent for purposes of forming MO2, LLC. Disney denies that LaSalle was an employee of

8   Rearden when he formed MO2, LLC, or that LaSalle was Rearden's agent for purposes of forming

9   MO2, LLC.

10      An employee is an agent of their employer for matters within the scope of their employment.

11  During the term of an employee's employment, the employer is entitled to a duty of undivided

12  loyalty from the employee. All employees owe the duty of undivided loyalty, regardless of the level

13  of their responsibility in the employer's business. The duty of undivided loyalty includes the duty not

14  to obtain a material benefit from a third party in connection with the employee's use of their position.

15      If you find that LaSalle was an employee of Rearden acting within the scope of his

16  employment when he formed MO2, LLC, then you should find that MO2, LLC belonged to Rearden.

17

18  **AUTHORITY:**

19      <u>Employee Owes Duty of Loyalty to Employer:</u> *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th

20  400, 414, 58 Cal. Rptr. 3d 527, 538 (2007) ("an employee, while employed, owes undivided loyalty

21  to his employer"); *Blackbird Tecnhologies, Inc. v. Joshi, No. 5:15-CV-04272-EJD, 2015 WL*

22  *5818067, at *4 (N.D. Cal. Oct. 6, 2015)* ("During the term of employment, an employer is entitled to

23  its employees' 'undivided loyalty'") (quoting *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 41

24  (1987)); *Zayo Grp. LLC v. Hisa*, No. SACV13752JSTJPRX, 2013 WL 12201401, at *7 (C.D. Cal.

25  Sept. 17, 2013) (same, and finding that this duty of loyalty extends to all employees regardless of the

26  level of their responsibilities, citing *Huong, supra*); *Hanger Prosthetics & Orthotics, Inc. v.*

27  *Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1142 (E.D. Cal. 2008) ("All employees owe a duty

28

of loyalty to their employers." (citing *Otsuka v. Polo Ralph Lauren Corp.*, 2007 WL 3342721 (N.D.Cal.2007)).

    <u>Duty of Loyalty Extends to All Employees</u>: *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414, 58 Cal. Rptr. 3d 527, 538 (2007); *Zayo Grp. LLC v. Hisa*, No. SACV13752JSTJPRX, 2013 WL 12201401, at \*7.

    <u>Duty of Loyalty Prohibits Material Benefit from Employee's Use of Position</u>: *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1121–22 (S.D. Cal. 2020) (quoting *Huong*, 150 Cal. App. 4th at 416, quoting in turn Restatement (Third) of Agency §§ 8.02, 8.04, 8.05(2)).

**B. DEFENDANT'S PROPOSED INSTRUCTION:**

**SPECIAL INSTRUCTION 2 – AGENCY**

    Rearden contends that Greg LaSalle was acting as Rearden's agent when he formed MO2, LLC.

    Agency is a relationship that results when one person, the principal, indicates that another person is to act for the principal as to the subject matter of the agency, and the other person, the agent, agrees to act on the principal's behalf and subject to the principal's control. The agent acts for the principal when acting in the agreed-upon course and scope of the agency.

**AUTHORITY:** *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1106 (2019); *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1178 (2016), *disapproved of on other grounds by Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905 (2022); *Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 277 (2018), *as modified on denial of reh'g* (May 14, 2018), *disapproved of on other grounds by Grande v. Eisenhower Med. Ctr.*, 13 Cal. 5th 313 (2022); Restatement (Third) of Agency, § 8.01 & comment (a).

## 2. PARTIES' POSITION STATEMENTS

### A. PLAINTIFFS' POSITION

Rearden objects to Disney's Proposed Special Instruction because it misstates Rearden's case, and is likely to confuse the jury. Rearden does not contend that it owns MO2 because LaSalle was Rearden's agent apart from his duties to Rearden as its employee. It contends that LaSalle was a Reardon and OnLive employee, whose scope and duties of employment as General Manager of the MOVA Division and one of the highest paid employees in the company was governed by written employment agreements. And as an employee, under California law LaSalle was subject to common law fiduciary duties of loyalty. The jury should be properly instructed on both the nature of the agency that is inherent in an employment relationship, and the duties an employee owes to his employer in California. Those duties are directly relevant to the jury's determination of whether, in forming MO2, LaSalle was acting on his own behalf and for his own sole benefit, or on behalf and for the benefit of his employer Rearden. Part of that determination by the jury should be whether it would be consistent with his legal duties for LaSalle, as an employee of Rearden, to form MO2 using Rearden assets and resources for his own benefit. And the duty of undivided loyalty referenced in Rearden's proposed instruction is clearly and unequivocally supported by the case law. The real question is not whether Rearden's statement of the law is correct, but whether the jury can properly assess LaSalle's actions as an employee without being informed about the duties he owed to Rearden. Plaintiffs submit that it is imperative that the jury be instructed on that point.

Disney's proposed instruction is confusing and provides the jury with essentially no guidance. First, as stated above, it is confusing because it misstates Rearden's claim: Rearden does not merely contend that LaSalle was an agent apart from his employment, but rather that he was an employee with all of the duties and obligations that entails. Moreover, Disney's instruction informs the jury that a concept called "agency" exists, but gives them no tools for assessing 1) how that relates to LaSalle's status as an employee of Rearden; 2) how to determine whether an agency relationship exists, and what the scope of any such agency is; and 3) how that determination relates to the facts of the case. Disney's instruction is essentially a *non sequitur*: it provides no useful

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

guidance for the jury, and can only serve to confuse them regarding what agency is and how it relates to the facts and issues in this case.  Disney's instruction also misleadingly implies that the jury may find that LaSalle was acting within the scope of his employment in forming OL2, but that he was not an agent under the terms of Disney's instruction.  Such a result is contrary to LaSalle's common law duties as an employee of Rearden.  Two differing instructions on agency can only lead to juror confusion and may lead to an inconsistent verdict and error.  The Court should adopt Rearden's proposed instruction.

### B. DEFENDANT'S POSITION

Defendant proposes this special instruction to instruct the jury on the relevant legal standard for agency in this case.  Defendant's understanding is that Rearden contends that one of the reasons it owns the MOVA assets is that Greg LaSalle was acting as Rearden's agent when he formed MO2, LLC.  If Rearden makes that argument to the jury, then the jury should be instructed on the law of agency and given a prefatory statement to help them understand why they are receiving the instruction.

Defendant's proposal is neutral.  It provides a concise statement of the context that tells the jury why this instruction is being given.  The statement of law is directly from applicable California precedent.  *Brown v. USA Taekwondo* provides: "'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' [Citation.]  'The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.'"  40 Cal. App. 5th 1077, 1105 (2019) (citation omitted).  Similarly, *Daniels* and *Castillo* explain that an agent is one who acts within the scope of the agency. *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1178 (2016) ("It is a settled rule of the law of agency that a principal is responsible to third persons for the ordinary contracts and obligations of his agent with third persons made in the course of the business of the agency and within the scope of the agent's powers as such …") (citation omitted), *disapproved of on other grounds by Sheen v. Wells*

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1   *Fargo Bank, N.A.*, 12 Cal. 5th 905 (2022); *Castillo v. Glenair, Inc.*, 23 Cal. App. 5th 262, 277

2   (2018), *as modified on denial of reh'g* (May 14, 2018) ("An agent ... is anyone who undertakes to

3   transact some business, or manage some affair, for another, by authority of and on account of the

4   latter, and to render an account of those transactions.") (citation omitted), *disapproved of on other*

5   *grounds by Grande v. Eisenhower Med. Ctr.*, 13 Cal. 5th 313 (2022).

6          Rearden's proposed instruction on agency should be rejected.  Although Rearden's proposal

7   accurately states that "[a]n employee is an agent of their employer for matters within the scope of

8   their employment" the remainder of the instruction is improper.  The first paragraph of Rearden's

9   proposed instruction lays out Rearden's theory of the case in unnecessary detail.  Further, Rearden's

10  statement that "Disney denies that LaSalle was an employee of Rearden when he formed MO2, LLC,

11  or that LaSalle was Rearden's agent for purposes of forming MO2, LLC" does not accurately reflect

12  Defendant's position, which is that even if Mr. LaSalle was employed by Rearden at the time, he was

13  not acting within the scope of his agency as a Rearden employee.

14         The second paragraph of Rearden's proposed instruction includes irrelevant instructions

15  relating to *breach of duty* rather than the *scope of agency*.  Unlike the cases Rearden cites to support

16  its special instruction, this case does not involve any claim by Rearden against Greg LaSalle for

17  breaching any alleged duties.  There is no reason to instruct the jury on the kinds of duties owed by

18  an employee or how those may be breached, because those issues are not relevant to any issue the

19  jury will have to decide.

20         The duty of loyalty applies only to "matters connected with the agency relationship."  *E.g.*,

21  *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410-11 (2007) (stating as a separate element from

22  breach "the existence of a relationship giving rise to a duty of loyalty," and explaining that an "agent

23  assumes 'a fiduciary duty to act loyally for the principal's benefit *in all matters connected with the*

24  *agency relationship*'") (quoting Restatement (Third) Agency, § 8.01); Restatement (Third) of

25  Agency, § 8.01, comment (a) (It is a "basic principle that *when taking action within the scope of an*

26  *agency relationship*, an agent's duty as a fiduciary is to act loyally for the principal's benefit.")

27  (emphasis added).  If Mr. LaSalle was acting *outside* the scope of his agency to form MO2 and

28

-102-

acquire the MOVA assets, then there is no reason to reach the question of loyalty—Rearden would not own the MOVA assets by virtue of Mr. LaSalle's agency.  Similarly if Mr. LaSalle was acting *within* the scope of his agency, there would also be no reason to reach the question of loyalty— Rearden would own the MOVA assets by virtue of Mr. LaSalle's agency.  The issue of whether Mr. LaSalle breached a duty of loyalty to Rearden is simply irrelevant to question of ownership, and would be highly confusing to the jury.  Rearden's instruction incorrectly suggests to the jury that they could find that Mr. LaSalle acquired MO2 and the MOVA assets for Rearden's benefit if Mr. LaSalle acted "disloyally."  Mr. LaSalle's loyalties are irrelevant to the ownership question.

Rearden's proposed agency instruction should also be rejected as untimely.  *In re Arizona*, 528 F.3d 652, 657 (9th Cir. 2008) (court has wide discretion to enforce its case management orders). Rearden did not propose any instruction on agency in the sets of instructions the parties exchanged on October 13, 2023, pursuant to the Court's Case Management Order, ECF No. 313; it provided an agency instruction on October 20, 2023 minutes before the filing deadline; and it completely revamped that instruction in revised exchanges intended to address intervening Court orders on different topics.

**UNDISPUTED:** **17.7 Copyright Infringement—Copyright Registration Certificate**

**(17 U.S.C. § 410(c))**

A copyright owner may obtain a certificate of registration from the Copyright Office.

[*When defendant does not present evidence regarding validity or ownership of copyright*]

~~The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office. You are instructed that the certificate is sufficient to establish that there is a valid copyright in [*identify the work in question*].~~

[*When defendant presents evidence regarding validity or ownership of copyright*]

The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office.  ~~[If you find that this certificate was made within five years after~~ This certificate was issued before first publication of the MOVA Contour software~~plaintiff's work~~, so~~you may consider~~ this certificate is~~as~~ evidence of the facts stated in the certificate.~~]~~  From this certificate you may, but need not, conclude that : ~~[state *specifics of the certificate relevant to the case, e.g., that plaintiff's work is the original and copyrightable work of the author and that* ~~the plaintiff owns the copyright in that work~~]~~, which I explain in Instructions 17.5, 17.6, 17.12, and Special Instruction 2~~[insert instruction numbers relevant to elements of plaintiff's burden]~~.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**DISPUTED**: 17.20 Secondary Liability—Vicarious Infringement—

**Elements and Burden of Proof**

**1. DISPUTED PROPOSED INSTRUCTIONS**

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

    If you find that [*name of direct infringer*]Rearden owned the copyright in the MOVA Contour software at the time DD3 copied the MOVA Contour software and therefore that DD3 infringed the plaintiff's copyright in [*name of allegedly infringed work*],the MOVA Contour software, you next must determine whether [*name of alleged vicarious infringer*]Disney is vicariously infringed that or contributorily liable for DD3's copyright. The plaintiff infringement.

    I will now instruct you on the elements and burden of proof on Rearden's claim that Disney is vicariously liable for DD3's copyright infringement. My instruction on contributory infringement is at instruction 17.21.

    For its claim of vicarious liability, Rearden has the burden of proving each of the following elements by a preponderance of the evidence:

    1. the defendant Disney directly benefitted financially from the infringing activity of [*name of direct infringer*];DD3;

    2. the defendantDisney had the right and ability to [supervise][ or control] the infringing activity of [*name of direct infringer*][;DD3; and]

    [3. the defendantDisney failed to exercise that right and ability.].

    If you find that the plaintiffRearden has proved each of these elements, your verdict should be for the plaintiffRearden if you also find that [*name of direct infringer*]DD3 infringed plaintiff's copyright. If, on the other hand, the plaintiffRearden has failed to prove any of these elements, your verdict should be for the defendant [*name of alleged vicarious infringer*]., Disney.

**AUTHORITY:** Ninth Circuit Model Jury Instruction 17.20 (unaltered except to identify the alleged direct and vicarious infringers, select appropriate bracketed text, and conform the instruction to the facts and issues in the case).

**B. DEFENDANT'S PROPOSED INSTRUCTION:**

If you find that ~~[name of direct infringer]~~Rearden owned the copyright in the MOVA Contour software at the time DD3 copied code from the MOVA Contour software and therefore that DD3 infringed the plaintiff's copyright in ~~[name of allegedly infringed work],~~the MOVA Contour software, you next must determine whether ~~[name of alleged vicarious infringer]~~Disney is vicariously ~~infringed that~~ liable for DD3's copyright~~. The plaintiff~~ infringement.

I will now instruct you on the elements and burden of proof on Rearden's claim that Disney is vicariously liable for DD3's copyright infringement.

For its claim of vicarious liability, Rearden has the burden of proving each of the following elements by a preponderance of the evidence:

1. ~~the defendant~~Disney directly benefitted financially from the infringing activity of ~~[name of direct infringer]~~;DD3;

2. ~~the defendant~~Disney had the legal right and practical ability to ~~[supervise]~~~~[~~ or control~~]~~ the infringing activity of ~~[name of direct infringer]~~~~[~~;DD3; and~~]~~

~~[~~3. ~~the defendant~~Disney failed to exercise that right and ability.~~]~~.

If you find that ~~the plaintiff~~Rearden has proved each of these elements, your verdict should be for ~~the plaintiff~~Rearden if you also find that ~~[name of direct infringer]~~DD3 infringed plaintiff's copyright. If, on the other hand, ~~the plaintiff~~Rearden has failed to prove any of these elements, your verdict should be for the defendant ~~[name of alleged vicarious infringer]~~., Disney.


**AUTHORITY:** Ninth Circuit Model Civil Jury Instructions, Comment to 17.20; *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); Order on Motion for Summary Judgment (Dkt. 555).

1    **2. PARTIES' POSITION STATEMENTS**

2         **A. PLAINTIFFS' POSITION**

3    Rearden disputes Disney's proposed departure from the Model Instruction and expansion of the

4    elements of a vicarious infringement. Model Instruction 17.20 states in relevant part that to prevail

5    on a claim for vicarious infringement, the plaintiff must prove that the defendant "had the right and

6    ability to supervise [or] control the infringing activity." Disney's proposed instruction alters that

7    language to impose a requirement that Rearden prove the "legal right" and "practical ability" to

8    control the infringing conduct. Disney's additional language is objectionable on several grounds.

9         First, Disney's proposed alteration to the Model Instruction invites the jury to invade the

10   province of the Court in deciding what constitutes a "legal right" to supervise or control the

11   infringing activity. Notably, neither this nor any other instruction informs the jury what constitutes

12   such a "legal right" or when such a right might apply. It is not even clear from the instruction

13   whether such a legal right arises from a statute, the common law, or contract (and if the right is

14   contractual, Disney does not provide any instructions regarding contract formation or interpretation).

15   Disney's instruction invites the jury to decide what the law is and decide on its own whether such a

16   "legal right" exists – a clear breach of the division of responsibilities between the Court and the jury.

17   "It is the duty of the court to instruct the jury as to the law and it is the duty of the jury to follow the

18   law as it is laid down by the court." *Sparf v. United States,* 156 U.S. 51, 74, (1895) (Harlan, J.)

19   (quoting *United States v. Battiste,* 24 F. Cas. 1042, 1043 (Story, Circuit Justice, C.C.D. Mass.

20   1835)).

21        Second, Disney's additional language, taken from the *comments* to the model instruction,

22   referring to the "practical" ability is misleading and based upon inapplicable case law here. The

23   comment to Model Instruction 17.20, in discussing the "ability to control" element of vicarious

24   infringement, states that "*In certain cases*, it may be appropriate to instruct the jury on the meaning

25   of "right and ability to supervise or control" the infringing activity.  That language necessarily means

26   that the model instruction may be modified under "appropriate" circumstances in *some* but not *all*

27   cases.  The comment then refers to two cases where modification may be appropriate: *Perfect 10,*

28

-107-

1   *Inc. v. Visa Int'l Serv. Ass'n*, 494 F3d 788, 805 (9th Cir. 2007), and *VHT, Inc. v. Zillow Grp., Inc.*,

2   918 F.3d 723, 745 (9th Cir. 2019). Neither of these cases supports the alteration of the Model

3   Instruction in this case.

4           In *Perfect 10*, the plaintiff alleged that "numerous websites based in several countries have

5   stolen its proprietary images, altered them, and illegally offered them for sale online." *Id.* at 793. The

6   issue was whether <u>credit card companies</u> had the "right and ability" to control this infringing content

7   on the ground that their "rules and regulations permit them to require member merchants to cease

8   illegal activity – presumably including copyright infringement – as a condition to their continuing

9   right to receive credit card payments . . . ." *Id.*, at 804. The court found it did not because the "ability

10  to exert financial pressure does not give Defendants the right or ability to control the actual

11  infringing activity . . . <u>*they cannot stop websites from reproducing, altering, or distributing*</u>

12  <u>*infringing images*</u>." *Id.* at 804-05.

13          *VHT* similarly involved allegations that Zillow vicariously infringed copyrighted material that

14  were uploaded to its platform from third party websites. *VHT*, 918 F.3d at 746. The court found it

15  had not because "there was insufficient evidence that Zillow had the technical ability to screen out or

16  identify infringing VHT photos among the many photos that users saved or uploaded daily . . . ." *Id.*

17  "Zillow's failure to change its operations to avoid assisting users to distribute infringing content is

18  not the same as declining to exercise a right and ability to make third parties stop their direct

19  infringement." *Id.* (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (internal

20  quotation marks and alterations omitted). *Perfect 10*, *VHT*, and the cases they rely upon (including

21  *Perfect 10 v. Amazon*) have a common thread: they involve allegations of vicarious infringement

22  based on the use of third-party internet content on websites, where the relationship between the

23  defendant and the infringer was indirect and unrelated to the infringing conduct. That is not the case

24  here, where Disney specifically retained DD3 to create the content for its own use and distribution,

25  and its representatives personally controlled and supervised the infringing activity. That relationship,

26  unlike those at issue in *Perfect 10* and *VHT*, is both direct and directly related to the infringing

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1    conduct. As such, the "practical ability" language has no application to the facts of this case, and

2    should not be adopted.

3         The parties also dispute whether, as with other instructions, the first paragraph of the

4    instruction should refer to the infringement as DD3 "copied the MOVA Contour software," or

5    "copied code from the MOVA Contour software." Rearden will not repeat its arguments here, but

6    refers back to its position statement regarding Disputed Instruction 1.5 in the Preliminary

7    Instructions.

8

9         **B. DEFENDANT'S POSITION**

10        Defendant proposes the addition of "legal" before "right" and "practical" before "ability" in

11   the second element, consistent with Ninth Circuit case law and this Court's Order on Defendant's

12   motion for summary judgment, all of which contain this exact language. *See Williams v. Gaye*, 895

13   F.3d 1106, 1132 (9th Cir. 2018) ("A vicarious infringer 'exercises control over a direct infringer

14   when he has both a *legal right* to stop or limit the directly infringing conduct, as well as the *practical*

15   *ability* to do so.'") (emphasis added) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146,

16   1173 (9th Cir. 2007); Dkt. 555 at 9 (Court's summary judgment Order quoting the same language

17   from *Williams* and holding that "there is a genuine issue of material fact as to whether Disney had

18   the *practical* ability to stop or limit the infringing conduct …") (emphasis added).  The Court should

19   adopt Defendant's proposal because it is the correct statement of the legal standard and will help the

20   jury understand their charge.  Where, as here, the model instruction "does not accurately track" the

21   controlling law, the Court should conform the model to the governing legal standard. *Blumenthal*

22   *Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 869 (9th Cir. 2020) ("[B]ecause th[e] instruction

23   [given by the district court and derived from the Ninth Circuit Model] does not accurately track our

24   functionality caselaw, its use was error and we must reverse.") (citation omitted).  The Comment to

25   Model Instruction 17.20 specifically contemplates that in "certain cases, it may be appropriate to

26   instruct the jury on the meaning of 'right and ability to supervise or control.'"  Ninth Circuit Manual

27   of Model Civil Jury Instructions at 445.  It would be appropriate to do so here, as without some

28

-109-

further explication, a lay jury unfamiliar with the application of the legal standard is likely to be confused.

Defendant's proposal is a modest, two-word adjustment to the model instruction to achieve the exact purpose contemplated by the Ninth Circuit's comment and to ensure the instructions are consistent with the case law that the Court and all of the parties have applied to this case.  Using the same words the Ninth Circuit did—"legal" and "practical"—clarifies what for lay jurors are not self-evident concepts.  Modifying "right" with "legal" makes it clear to jurors that the defendant must have legal authority to take action, not a moral or amorphous right to do so.  Likewise, modifying "ability" with "practical" makes it clear that the defendant must have the realistic, and not simply the theoretical, ability to supervise or control the infringement.  The latter clarification is critical in this case.  The Court's summary judgment ruling concluded that a jury could, not that it must, find that the contract with DD3 gave Defendant the ability to stop DD3's use of MOVA.  The ruling finds it is a jury question whether Defendant had the *practical* ability to stop that use, in light of facts showing the difficulty of detecting the alleged infringement and policing hundreds of vendors and technologies that Defendant used to make a major motion picture.

Not only did the Court and Defendant cite and apply this standard in the summary judgment Order and motion respectively, but Plaintiffs also did the same.  *See, e.g.*, Dkt. 555 at 9-12 (Court's summary judgment order); Dkt. 451 at 9-17 (Plaintiffs' summary judgment opposition); Dkt. 421 at 11-17 (Defendant's motion for summary judgment).  Plaintiffs quoted the exact same language from *Williams* that the Court applied in its summary judgment Order and that Defendant proposes to add to the model instruction here.  *See* Dkt. 451 at 9.

At the parties' most recent meet and confer conference, however, Plaintiffs reversed course and claimed that the very standard they quoted in their summary judgment briefing did not actually apply here.  In particular, Plaintiffs claimed that the question of whether a defendant has the "practical ability" to control the infringement applies only in the online context, where technical constraints supposedly make it uniquely difficult to detect infringement.  There is no authority for Plaintiffs' new position.  No case that Defendant has seen states that only certain technical Internet

cases are subject to the "practical ability" standard.  To the contrary, *Williams*—the Ninth Circuit case on vicarious infringement that the Court cited in its summary judgment ruling—discusses the "practical ability" to control the infringement, but it is not a case involving online infringement or highly technical details; it was a standard copyright infringement case based on the music composition copyright in the song *Got to Give It Up*.  The same is true of the *scores* of other cases that have stated the applicable standard as "legal right" and "practical ability" and that do not involve infringement in the online context.  *See, e.g.*, *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1155 (9th Cir. 2012) (public performance of infringing musical works at restaurant and lounge); *Liguori v. Hansen*, 752 F. App'x 389, 392 (9th Cir. 2018) (infringing logo on souvenir book); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 389 (3d Cir. 2016) (copyrighted photos infringingly reproduced, publicly displayed, and distributed on magazines, merchandise, motion pictures, and other locations); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 968-69 (N.D. Cal. 2019) (reproduction of infringing sculptural works for use in restaurant); *Oregon Catholic Press v. Ambrosetti*, 218 F. Supp. 3d 1158, 1165 (D. Or. 2016) (reproduction and distribution of musical works in church hymnals); *Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1053-55 (C.D. Cal. 2001) (sale of infringing software at computer fairs); *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (copyrighted image used as infringing album cover art); *Payne v. Manilow*, 2019 WL 4149357, at *2 (C.D. Cal. July 11, 2019) (infringing public displays at concerts and award shows of copyrighted motion picture); *Kilina Am., Inc. v. Bonded Apparel, Inc.*, 2019 WL 8065854, at *2 (Nov. 19, 2019) (alleged infringement of fabric design); *Broad. Music, Inc. v. Five Star Enters., LLC*, 2018 WL 4492481, at *3 (D. Nev. Sept. 19, 2018) (infringing public performances of copyrighted music at restaurant).

The requirement that the defendant must have the "practical ability" to control the infringement is not limited to the online context—it is a fundamental element of vicarious liability that applies in every case.  *See, e.g.*, *Paramount Pictures Corp. v. Int'l Media Films Inc.*, 2013 WL 3215189, at *14 (C.D. Cal. June 12, 2013) (holding in case involving infringing distribution of

-111-

1    motion picture that "[t]he test for right or ability to supervise infringing requires both 'a legal right to

2    stop or limit the directly infringing conduct ... [and] the practical ability to do so.'") (internal

3    alterations in original) (citation omitted); *Kevin Barry Fine Art Assocs.*, 391 F. Supp. 3d at 968-69

4    ("As to vicarious liability, one is liable '[1] by profiting from direct infringement while [2] declining

5    to exercise a right to stop or limit it.' [citations] The second prong, which the Ninth Circuit refers to

6    as the 'control' element, requires that the defendant 'ha[d] both a legal right to stop or limit the

7    directly infringing conduct, as well as the practical ability to do so.'") (citations omitted); *Kilina Am.,*

8    *Inc. v. SA & PW, Inc.*, 2019 WL 8685066, at *2 (C.D. Cal. Aug. 27, 2019) ("Any pressure that

9    [alleged vicarious infringer] could feasibly put on [direct infringer] falls far short of the "legal right"

10   and "practical ability" to control necessary to impose vicarious liability.").

11          It is critical for the jury to understand that a copyright defendant's liability for someone else's

12   conduct cannot be imposed just because in some remote or theoretical but completely impractical

13   sense the defendant may have the ability to control the infringement.  *See, e.g.*, *Millennium Funding,*

14   *Inc. v. 1701 Mgmt. LLC*, 576 F.Supp.3d 1192, 1215 (S.D. Fla. 2021) ("[T]he plaintiff must allege

15   that the defendant has a 'practical ability to police the infringing activities of [third parties] as

16   opposed to suggesting measures that are imprecise, overbroad or not workable.'") (citation omitted);

17   *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1174 (9th Cir. 2007) (similar).  The

18   concept of vicarious liability is not that expansive.  As case after case has affirmed, the standard

19   requires that the defendant have the *practical* ability to actually do something about the

20   infringement.  The jury should be so instructed.

21          In the parties' most recent meet and confer, Plaintiffs also claimed that adding the word

22   "legal" before "right" would confuse the jury and lead them to believe that they are being asked to

23   draw a legal conclusion.  That does not make sense.  As discussed, "legal right" will help the jury

24   understand that they must do more than evaluate whether this is morally "right" or just.

25          Because Defendant's proposal accurately reflects current Ninth Circuit law and will assist the

26   jury with understanding the standard, the Court should adopt Defendant's proposal.

27

28

**DISPUTED: 17.32 Copyright—Damages (17 U.S.C. § 504)**

**1. DISPUTED PROPOSED INSTRUCTIONS**

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

    If you find for ~~the plaintiff~~Rearden on ~~the plaintiff's~~its copyright infringement claim, you must determine ~~the plaintiff's~~Rearden's damages. ~~The plaintiff~~, if any. Rearden is entitled to recover ~~the~~ any actual damages suffered as a result of the infringement. In addition, ~~the plaintiff~~Rearden is also entitled to recover any profits of the defendant attributable to the infringement. ~~The plaintiff must prove damages by a preponderance of the evidence.~~ I will instruct you on the burdens that each party has on the elements of this issue.

**AUTHORITY:** 17 U.S.C. § 504(b); Ninth Circuit Model Civil Jury Instructions, Comment to 17.32 (altered to conform the instruction to the facts and issues in the case).

    **B. DEFENDANT'S PROPOSED INSTRUCTION:**

    If you find for ~~the plaintiff~~Rearden on ~~the plaintiff's~~its copyright infringement claim, you must determine ~~the plaintiff's~~Rearden's damages, if any. ~~The plaintiff is entitled to recover the actual damages suffered as a result of the infringement. In addition, the plaintiff.~~ Rearden is ~~also~~ entitled to recover any profits of the defendant attributable to the infringement. I will instruct you on the burdens that each party has on the elements of this issue. ~~The plaintiff that are not taken into account in computing actual damages. Rearden~~ must prove damages by a preponderance of the evidence.

**AUTHORITY:** 17 U.S.C. § 504(b); Ninth Circuit Model Civil Jury Instructions, Comment to 17.32.

1    **2. PARTIES' POSITION STATEMENTS**

2        **A. PLAINTIFFS' POSITION**

3        Whether Instruction 17.32 should be given depends on the Court's rulings on the Plaintiffs'

4    Motion for Reconsideration and Disney's Motion to Strike Jury Trial. Rearden has (or will) fully

5    state its arguments with respect to those issues in the briefing, and Rearden will not repeat that

6    analysis here, but instead will refer the Court to those substantive briefs. *See* Plaintiffs' Motion for

7    Reconsideration of Order Granting Defendants' Motion to Exclude Testimony of Cindy Ievers and

8    Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (ECF No.

9    585) and Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Jury Demand for a Jury

10   Trial on Disgorgement of Profits (ECF No. 589).

11       If the Court grants Rearden's motion for reconsideration, denies Disney's motion to strike the

12   jury trial on infringer profit damages, or does both of those things, this instruction should be given

13   (with appropriate alterations to conform the instruction to the damage theories being submitted to the

14   jury as necessary). If the Court both denies Plaintiffs' motion and grants Disney's such that no

15   damage issue will be decided by the jury, Rearden concedes that this instruction would be

16   unnecessary.

17       Disney has submitted its own version of this instruction in the alternative. The two

18   instructions are identical with the exception that Rearden's includes the portion of the instruction

19   relating to actual damages, which is the subject of Rearden's motion for reconsideration.

20

21       **B. DEFENDANT'S POSITION**

22   Defendant proposes this instruction only in the alternative, if the Court does not grant its Motion to

23   Strike Rearden's jury demand on its claim for disgorgement of profits (Dkt. 579).  *See, e.g.*, *U.S. v.*

24   *Laurienti*, 611 F.3d 530, 544 (9th Cir. 2010) ("[N]othing prevents a party from arguing in the

25   alternative" and indicating the party "could have proposed an instruction along the lines of the legal

26   theory they proposed … and, at the same time, argued that, if the court rejected [the party's] theory,

27   the court should accept the [other party's] proposed instruction.").  If the Court grants Defendant's

28

-114-

Motion to Strike, then no instructions on damages should be submitted to the jury.  Defendant offers the instruction in the alternative in the event the Court denies Defendant's Motion to Strike.

If the Court puts the issue of disgorgement of profits to the jury, Defendant's proposed instruction should be used.  Defendant's modifications to the model instruction reflect that actual damages are no longer in the case after the Court's summary judgment and *Daubert* order dismissed Plaintiffs' claim for actual damages.  Defendant's modification also correctly instructs the jury that a subsequent instruction (17.34) will provide the applicable burdens of proof.

## DISPUTED: SPECIAL INSTRUCTION 3 – DAMAGES

**1. DISPUTED PROPOSED INSTRUCTIONS**

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

NONE


    **B. DEFENDANT'S PROPOSED INSTRUCTION:**

The damages Rearden seeks are designed solely to prevent the defendant's unjust enrichment. In determining Rearden's damages, if any, you may not consider any punitive or deterrent purposes. You also may not consider the defendant's ability to pay.


**AUTHORITY:** 17 U.S.C. § 504(b), (c); Ninth Circuit Model Civil Jury Instructions, Comment to 17.32; *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2022 WL 20403763, at *3 (N.D. Cal. May 3, 2022).


**2. PARTIES' POSITION STATEMENTS**

    **A. PLAINTIFFS' POSITION**

        Plaintiffs dispute this instruction, offered by Disney in the alternative, as unnecessary and inaccurate. The sentence "[t]he damages Rearden seeks are designed solely to compensate Rearden and to prevent the defendant's unjust enrichment" is incomplete and therefore inaccurate. The 9th Circuit has long recognized that profit damages are not only intended to compensate and prevent unjust enrichment, but also to deter infringing conduct. *See Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) ("An award of infringer's profits is aimed in part at deterring infringements, *see, e.g., Russell,* 612 F.2d 1132, and in part at appropriately compensating the copyright holder."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (("'Profits are awarded [under the Lanham Act] under different rationales including unjust enrichment, deterrence, and compensation.'" (quoting *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 941

1   (7th Cir.1989), *cert. denied,* 493 U.S. 1075, (1990)); *Maier Brewing Co. v. Fleischmann Distilling*

2   *Corp.*, 390 F.2d 117, 123 (9th Cir. 1968) ("In those cases where there is infringement, but no direct

3   competition, this can be accomplished by the use of an accounting of profits based on unjust

4   enrichment rationale. Such an approach to the granting of accountings of profits would, by removing

5   the motive for infringements, have the effect of deterring future infringements."). As these cases

6   make clear, profit damages are not "designed solely" to compensate and prevent unjust enrichment –

7   they are also designed to deter future infringements.

8          Plaintiffs do not disagree that the jury need not consider the deterrent effect of its damage

9   award (because the deterrent effect results from the jury's fair application of the standards for

10  awarding profit damages and not from an intent to deter), but it is inappropriate to misinform the jury

11  about the intended purposes of allowing profit damages for copyright infringement. Moreover, the

12  instruction in the second sentence to "not consider any punitive or deterrent purposes" becomes

13  necessary (assuming for purposes of discussion that it is necessary) <u>only</u> because the first sentence

14  opens to the door to the potential for the jury to assess damages for punitive or deterrent purposes.

15  Plaintiffs will not argue that the jury should make its apportionment of profits based on retribution or

16  deterrence. The instruction is unnecessary and improper and should be refused.

17

18          **B. DEFENDANT'S POSITION**

19          Defendant proposes this instruction only in the alternative, if the Court does not grant its

20  Motion to Strike Rearden's jury demand on its claim for disgorgement of profits (Dkt. 579).  *See,*

21  *e.g.*, *U.S. v. Laurienti*, 611 F.3d 530, 544 (9th Cir. 2010) ("[N]othing prevents a party from arguing

22  in the alternative" and indicating the party "could have proposed an instruction along the lines of the

23  legal theory they proposed … and, at the same time, argued that, if the court rejected [the party's]

24  theory, the court should accept the [other party's] proposed instruction.").  If the Court grants

25  Defendant's Motion to Strike, then no instructions on damages should be submitted to the jury.

26  Defendant offers the instruction in the alternative in the event the Court denies Defendant's Motion

27  to Strike.

28

-117-

1     If the Court submits the disgorgement of profits issue to the jury, Defendant's proposed

2     special instruction is necessary to prevent legal error.  This guidance comes from the governing

3     statute, 17 U.S.C. § 504, the Comment to 17.32 in the Ninth Circuit's Manual for Model Civil Jury

4     Instructions, and case law.  As explained in the Comment and the case it cites, *Nintendo of America,*

5     *Inc. v. Dragon Pacific International*, 40 F.3d 1007, 1010-11 (9th Cir. 1994), damages under Section

6     504(b) and statutory damages under Section 504(c) are mutually exclusive remedies.  Statutory

7     damages under Section 504(c) can serve "punitive and deterrent purposes."  *Nintendo*, 40 F.3d at

8     1010-11.  Profits under Section 504(b), by contrast, "are designed … to prevent the defendant's

9     unjust enrichment."  *Id.*; *see also Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742, 754 (S.D.

10    Ohio 2021) ("Disgorgement does not sound in compensating the plaintiff, but rather in ensuring that

11    the defendant does not unjustly profit, and thus disgorgement is not tied to 'actual damages.'"); *Fair*

12    *Issac Corp. v. Fed. Ins. Co.*, 468 F. Supp. 3d 1110, 1116 (D. Minn. 2020) ("There is no sound basis

13    to conclude that … disgorgement is a legal remedy that serves to punish and deter"; "[p]rofits are

14    awarded as damages to prevent infringers from reaping a wrongful benefit, *not* to prevent the

15    infringement.").  The congressional history behind Section 504(b) makes clear that actual damages

16    "are awarded to compensate the copyright owner for losses from the infringement, and profits are

17    awarded to prevent the infringer from unfairly benefiting from a wrongful act."  H.R. Rep. No. 94-

18    1476, at 161 (1976); *see also* 5 Nimmer on Copyright § 14.03.  Plaintiffs may only seek damages

19    under Section 504(b); they are ineligible to seek statutory damages pursuant to Section 412 of the

20    Copyright Act, because Plaintiffs did not register the copyright before the alleged infringement

21    commenced.  It would be legal error for the jury to determine damages based on factors that are

22    relevant only to Section 504(c) damages.

23    Further, punitive damages are not an available remedy, and therefore Defendant's ability to

24    pay is irrelevant.  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2022

25    WL 20403763, at *3 (N.D. Cal. May 3, 2022) (granting motion *in limine* to preclude evidence of

26    party's net worth, total net revenues, and total gross profits for liability and "compensatory damages

27    phase of the trial").  Plaintiffs put Defendant's ability to pay at issue by having their damages expert,

28

-118-

1    Philip Fier, testify at deposition that the damages Plaintiffs seek in this case are not "a lot" of money

2    for a "giant corporation" like Defendant, which could lead the jury to consider this improper factor in

3    setting damages.  *See* Fier Dep. 143:24-144:23. Even if Plaintiffs do not elicit similar testimony at

4    trial, the jury will be well aware that Defendant is a very large corporation.  To avoid the risk that

5    that jury will rely on this impermissible factor, Defendant respectfully submits the Court should give

6    this special instruction.

7           Plaintiffs do not agree with the first two sentences of the proposed instruction.  Plaintiffs

8    assert that deterrence is a purpose of a disgorgement remedy.  But the cases Plaintiffs have cited to

9    Defendant  are inapposite.  First, Plaintiffs cited cases concerning *trademark* damages, which are

10   different from copyright and under an entirely different statutory regime.  Plaintiffs quote language

11   from *Nintendo* that specifically refers to "the Lanham Act," which governs trademark claims.  40

12   F.3d at 1011 ("Profits are awarded [under the Lanham Act] under different rationales including

13   unjust enrichment, deterrence, and compensation.") (alteration in original).  *Maier Brewing Co. v.*

14   *Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968), on which Plaintiffs also rely, only

15   addresses trademark damages under the Lanham Act.  Plaintiffs also rely on a case under the 1909

16   Copyright Act, which had a different damages framework and which does not apply here, *see Kamar*

17   *Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1329 (9th Cir. 1984) ("The Copyright Act of 1909 …

18   governs this case").

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

2

**DISPUTED: 17.33 Copyright—Damages—Actual Damages**

**(17 U.S.C. § 504(b))**

3   **1. DISPUTED PROPOSED INSTRUCTIONS**

4   **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

5   The copyright owner is entitled to recover ~~the~~ any actual damages suffered as a result of the

6   infringement. Actual damages mean the amount of money adequate to compensate the copyright

7   owner for the reduction of the fair market value of the copyrighted work caused by the infringement.

8   The reduction of the fair market value of the copyrighted work is the amount a willing buyer would

9   have been reasonably required to pay a willing seller at the time of the infringement for the actual

10  use made by the defendant of the plaintiff's work. ~~That amount could also be represented by the lost~~

11  ~~license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's~~

12  ~~work.~~

13

14  **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

15  2023) (altered for clarity and to conform to the facts of the case).

16

17  **B. DEFENDANT'S PROPOSED INSTRUCTION:**

18  The copyright owner is entitled to recover ~~the~~any actual damages suffered as a result of the

19  infringement. Actual damages mean the amount of money adequate to compensate the copyright

20  owner for the reduction of the fair market value of the copyrighted work caused by the infringement.

21  The reduction of the fair market value of the copyrighted work is the amount a willing buyer would

22  have been reasonably required to pay a willing seller at the time of the infringement for the actual

23  use made by the defendant of the plaintiff's work. That amount also could be represented by the lost

24  license fees the plaintiff would have received for the defendant's unauthorized use of the plaintiff's

25  work.

26

27

28

1    **AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

2    2023).

3

4    **2. PARTIES' POSITION STATEMENTS**

5        **A. PLAINTIFFS' POSITION**

6        Rearden submits this instruction because if the Court grants its Motion for Reconsideration

7    (ECF No. 585) this instruction will be necessary. Plaintiffs will not restate their arguments in favor

8    of reconsideration here, but respectfully refer the Court to its submissions on that issue.

9        If the Court grants Rearden's motion and this instruction is necessary, the parties' dispute

10   relates only the last sentence of this instruction, referring to the use of license fees as a possible

11   measure of actual damages. Rearden's proposal deletes that language because it does not fit the facts

12   of the case and may confuse the jury. Rearden has never licensed its technology, and therefore no

13   evidence will be presented suggesting that lost license fees may be used as a measure of damages.

14   Thus, in this context, the last sentence is surplusage and may confuse the jury as to why such

15   evidence was not presented.

16

17       **B. DEFENDANT'S POSITION**

18       Defendant does not believe that any actual damages instruction should be provided in this

19   case, pursuant to the Court's Order on summary judgment (Dkt. 555) and Order excluding the

20   testimony of Cindy Ievers (Dkt. 553), as well as Defendant's briefing related to the same, including

21   the concurrently filed opposition to Plaintiffs' motion for reconsideration.  Defendant proposes this

22   instruction only in the alternative, if the Court grants Plaintiffs' motion for reconsideration and holds

23   that actual damages are at issue in the case.  *See, e.g.*, *U.S. v. Laurienti*, 611 F.3d 530, 544 (9th Cir.

24   2010) ("[N]othing prevents a party from arguing in the alternative" and indicating the party "could

25   have proposed an instruction along the lines of the legal theory they proposed … and, at the same

26   time, argued that, if the court rejected [the party's] theory, the court should accept the [other party's]

27   proposed instruction.").

28

1         If the Court grants Plaintiffs' motion for reconsideration and provides an instruction on actual

2   damages, it should use Defendant's proposed instruction.  Plaintiffs' proposal deletes language in the

3   model instruction that reflects the correct statement of the law and should not be adopted by the

4   Court.  Plaintiffs' argument that the text is not at issue in this case because Rearden does not license

5   its technologies to third parties misses the point.  That is not the issue for this instruction, and is not

6   how a jury would understand it.  Instead, the text properly provides an example of what a willing

7   buyer would have paid a willing seller ("lost license fees").  As the comment to the model instruction

8   notes, this is based firmly in Ninth Circuit case law.  Ninth Circuit Model Civil Jury Instructions,

9   Comment to 17.33; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) ("[I]t

10  is not improper for a jury to consider *either* a hypothetical lost license fee *or* the value of the

11  infringing use to the infringer to determine actual damages, provided the amount is not based on

12  'undue speculation.'" (emphasis added) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329

13  F.3d 557, 566 (7th Cir. 2003); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) ("market value

14  approach is an objective, not a subjective, analysis")).

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**DISPUTED: 17.34 Copyright—Damages—Defendant's Profits**

**(17 U.S.C. § 504(b))**

**1. DISPUTED PROPOSED INSTRUCTIONS**

    **A. PLAINTIFFS' PROPOSED INSTRUCTION:**

~~In addition to actual damages, the~~ The copyright owner is entitled to any profits of the defendant attributable to the infringement. ~~You may not include in an award of profits any amount that you took into account in determining actual damages.~~

    You may make an award of the defendant's profits only if you find that the plaintiff showed a causal ~~[relationship] [nexus]~~ between the infringement and the ~~[profits generated indirectly from the infringement] [defendant's gross revenue]~~.

    The defendant's profit is determined by ~~[deducting]~~ [subtracting] all expenses from the defendant's gross revenue.

    The defendant's gross revenue is all of the defendant's receipts ~~from the [use] [sale]~~ generated as a result of ~~a [[product] [work]] [[containing or using the copyrighted work] [associated with~~ the infringement~~]]~~. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

    Expenses are all ~~[operating costs]~~ ~~[,~~ overhead costs~~] [, and]~~ production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

    Unless you find that a portion of the profit ~~from~~ generated as a result of the ~~[use] [sale] of a [product] [work] containing or using the copyrighted work~~ infringement is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the ~~[portion]~~ [percentage] of the profit, if any, attributable to factors other than ~~[copying] [infringing]~~ the copyrighted work.

**AUTHORITY:** Ninth Circuit Model Civil Jury Instructions, Comment to 17.34 (altered for clarity and to conform to the facts and issues in the case).

**B. DEFENDANT'S PROPOSED INSTRUCTION:**

In addition to actual damages, tThe copyright owner is entitled to any profits of the defendant attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal [relationship] [nexus] between the infringement and the [profits generated indirectly from the infringement] [defendant's gross revenue].

The defendant's profit is determined by [deducting] [subtracting] all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the [use] [sale]generated as a result of a [[product] [work]] [[containing or using the copyrighted work] [associated with the infringement]]. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all [operating costs] [, overhead costs] [, and] production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from generated as a result of the [use] [sale] of a [product] [work] containing or using the copyrighted workinfringement is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the [portion] [percentage] of the profit, if any, attributable to factors other than [copying] [infringing] the copyrighted work.

**AUTHORITY:** Ninth Circuit Model Civil Jury Instructions, Comment to 17.34; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).

1  **2. PARTIES' POSITION STATEMENTS**

2       **A. PLAINTIFFS' POSITION**

3       As with Instruction 17.32, this instruction is disputed insofar as Disney now claims that the

4  jury should not be instructed or permitted to award Rearden's infringer profit damages under the

5  Copyright Act. *See* Defendant's Motion to Strike Plaintiffs' Jury Demand for a Jury Trial on

6  Disgorgement of Profits (ECF No. 579). Rearden's arguments are thoroughly described in its

7  opposition that motion; rather than repeating those arguments here, Rearden respectfully refers the

8  Court to that submission. Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Jury

9  Demand for a Jury Trial on Disgorgement of Profits (ECF No. 589).

10

11       **B. DEFENDANT'S POSITION**

12       Defendant proposes this instruction only in the alternative, if the Court does not grant its

13  Motion to Strike Rearden's jury demand on its claim for disgorgement of profits (Dkt. 579). *See,*

14  *e.g.*, *U.S. v. Laurienti*, 611 F.3d 530, 544 (9th Cir. 2010) ("[N]othing prevents a party from arguing

15  in the alternative" and indicating the party "could have proposed an instruction along the lines of the

16  legal theory they proposed … and, at the same time, argued that, if the court rejected [the party's]

17  theory, the court should accept the [other party's] proposed instruction."). If the Court grants

18  Defendant's Motion to Strike, then no instructions on damages should be submitted to the jury.

19  Defendant offers the instruction in the alternative, in the event the Court denies Defendant's Motion

20  to Strike.

21       If the Court puts the issue of disgorgement of profits to the jury, then both parties are in

22  agreement on the proposed instruction.

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

1

**UNDISPUTED:** **3.1 Duty to Deliberate**

2

Before you begin your deliberations, elect one member of the jury as your presiding juror.

3

The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in

4

court.

5

You shall diligently strive to reach agreement with all of the other jurors if you can do so.

6

Your verdict must be unanimous.

7

Each of you must decide the case for yourself, but you should do so only after you have

8

considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

9

It is important that you attempt to reach a unanimous verdict but, of course, only if each of

10

you can do so after having made your own conscientious decision. Do not be unwilling to change

11

your opinion if the discussion persuades you that you should. But do not come to a decision simply

12

because other jurors think it is right or change an honest belief about the weight and effect of the

13

evidence simply to reach a verdict.

14

15

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May

16

2023).

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**__UNDISPUTED:__ 3.2 Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case];, do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

**UNDISPUTED:** **3.3 Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], courtroom deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006

**UNDISPUTED: 3.5 Return of Verdict**

A verdict form has been prepared for you. ~~[Explain verdict form as needed.]~~ After you have reached unanimous agreement on a verdict, your ~~[~~presiding juror~~] [foreperson]~~ should complete the verdict form according to your deliberations, sign and date it, and advise the ~~[clerk]~~ ~~[bailiff]~~ courtroom deputy that you are ready to return to the courtroom.

**AUTHORITY:** Ninth Circuit Manual of Model Civil Jury Instructions (2017 Ed., updated May 2023).

REVISED JOINT [PROPOSED] AND DISPUTED JURY INSTRUCTIONS
NO. 17-CV-04006