UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al., | Case No. <u>17-cv-04006-JST</u> |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE JURY DEMAND** |
| THE WALT DISNEY COMPANY, et al., | |
| Defendants. | Re: ECF Nos. 579, 585 |

Now before the Court is Plaintiffs Rearden LLC and MOVA LLC's (collectively, "Rearden") motion for reconsideration of the Court's October 20, 2023 Order granting Defendants' motion to exclude the testimony of Cindy Ievers. ECF No. 585. Also before the Court is Defendants The Walt Disney Company; Walt Disney Motion Pictures Group, Inc.; Walt Disney Pictures; Buena Vista Home Entertainment, Inc.; Marvel Studios LLC; Mandeville Films, Inc.; Infinity Productions LLC; and Assembled Productions II LLC's (collectively, "Disney") motion to strike Plaintiffs' demand for a jury trial. ECF No. 579. The Court will grant Rearden's motion for reconsideration and deny Disney's motion to strike as moot.

## I. BACKGROUND

On July 13, 2023, Defendants moved to exclude from trial the testimony of Cindy Ievers, Rearden LLC's Vice President of Finance and Rearden's expert witness as to actual damages. ECF No. 424. The Court granted Disney's motion on October 20, 2023, and ordered that Ievers's testimony be excluded. ECF No. 553 ("Ievers Order"). Relatedly, the Court also granted Disney's motion for summary judgment as to Rearden's claim for actual damages, on the grounds that absent Ievers's testimony, Rearden had failed to identify any evidence to support its actual damages claim. ECF No. 555. Following those Orders, Disney moved to strike Rearden's jury

1    demand on its remaining claim for disgorgement, ECF No. 579, and Rearden moved for leave to

2    file a motion for reconsideration of the Ievers Order, ECF No. 585.  The Court granted Rearden

3    leave to file its motion for reconsideration on November 13, 2023.  ECF No. 588.

4    **II.      LEGAL STANDARD**

5         "[A] motion for reconsideration is an 'extraordinary remedy, to be used sparingly in the

6    interests of finality and conservation of judicial resources.'"  *Circle Click Media LLC v. Regus*

7    *Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2015 WL 8477293, at *2 (N.D. Cal. Dec. 10, 2015)

8    (quoting *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).  Under Federal

9    Rule of Civil Procedure 59(e), "[r]econsideration is appropriate if the district court (1) is presented

10   with newly discovered evidence, (2) committed clear error or the initial decision was manifestly

11   unjust, or (3) if there is an intervening change in controlling law."  *Sch. Dist. No. 1J, Multnomah*

12   *Cty, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  "Rule 60(b) provides for

13   reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly

14   discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6)

15   extraordinary circumstances which would justify relief."  *Id*. (internal quotation marks omitted).

16   The party seeking reconsideration bears the burden of establishing appropriate grounds for that

17   relief.  *See U.S. v. Witt*, No. 1:15-cv-00418-LJO-SAB, 2015 WL 5117046, at *1 (E.D. Cal. July

18   31, 2015).

19   **III.     ANALYSIS**

20        Upon reconsideration, the Court concludes that the Ievers Order was in error.  In that order,

21   the Court held that "[w]hile Rearden is correct that actual damages 'can be awarded in the form of

22   lost profits' or 'hypothetical-license damages,' both forms of actual damages require an

23   assessment of fair market value."  Ievers Order at 4 (citing *Polar Bear Prods, Inc. v. Timex Corp.*,

24   384 F.3d 700, 708 (9th Cir. 2004)).  The Ievers Order then stated that an assessment of fair market

25   value thus required a determination of "what a willing buyer would have reasonably been required

26   to pay to a willing seller for plaintiffs' work."  *Id.* (quoting *Frank Music Corp. v. Metro-Goldwin-*

27   *Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985)).  Accordingly, the Court concluded that because

28   Ievers had failed to assume the existence of a hypothetical willing buyer and willing seller, her

United States District Court
Northern District of California

United States District Court
Northern District of California

1    opinion should be excluded as legally incorrect and irrelevant.  *See* Ievers Order at 3–4.

2        The Ievers Order was in error in holding that the same requirements for determining fair

3    market value in a hypothetical license model of actual damages – what a willing buyer would have

4    reasonably been required to pay to a willing seller for plaintiffs' work – applied to *any* recovery of

5    actual damages, using any permissible damages model, under Section 504(b) of the Copyright

6    Act.  Such a blanket requirement is not supported by the case law.

7        First, "[a]ctual damages are usually determined by the loss in the fair market value of the

8    copyright, measured by the profits lost due to the infringement or by the value of the use of the

9    copyrighted work to the infringer."  *Polar Bear,* 384 F.3d at 708 (quoting *McRoberts Software,*

10   *Inc. v. Media 100, Inc.*, 329 F. 3d 557, 566 (7th Cir. 2003)).  Section 504(b) only requires that the

11   "actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be

12   'attributable to the infringement.'"  *Polar Bear*, 384 F.3d at 708; *see also WMTI Prods., Inc. v.*

13   *Healey*, No. 07-cv-02726-CJC, 2023 WL 5506712, at \*4 (C.D. Cal. July 13, 2023) ("The statutory

14   language [of Section 504(b)] is broad enough to encompass any harm that a plaintiff suffers from

15   infringement, including harm to something other than the intrinsic value of the copyrighted work,

16   so long as the harm is ascertainable and indeed caused by the infringement.").  Thus, fair market

17   value is not the only appropriate measure of damages.

18       Nor is it correct that every measure of damages requires the assumption of a willing seller

19   and a willing buyer.  As Disney acknowledged in their original motion, "[a]ctual damages [under

20   Section 504(b)] may be measured as the profits plaintiff lost due to the infringement or a

21   hypothetical license fee that the plaintiff would have earned but for the infringement."  ECF No.

22   424 at 7; *see Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("Although 'actual

23   damages' can be awarded in the form of lost profits, hypothetical-license damages also constitute

24   an acceptable form of 'actual damages' recoverable under Section 504(b).").  Disney then cited

25   *Oracle* for the proposition that "[i]n calculating the loss in market value, the jury considers 'the

26   amount a willing buyer would have been reasonably required to pay a willing seller at the time of

27   the infringement for the actual use made by [the infringer] of the plaintiff's work.'"  *Id.* (quoting

28   *Oracle*, 765 F.3d at 1087).  But this overstates *Oracle*.  In that case, the plaintiff elected to pursue

United States District Court
Northern District of California

a hypothetical license model of damages, which then required consideration of what a willing buyer would have paid a willing seller. *Oracle*, 765 F.3d at 1087 (citing *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006)). *Oracle* does not stand for the proposition that *any* recovery of actual damages, such as lost profits, requires an analysis of what a willing buyer would reasonably pay a willing seller for the copyrighted work. Rather, "[t]he basic rule for computing injury to the market value of a copyrighted work arising from infringement is to inquire what revenue would have accrued to plaintiff but for the infringement." 5 Nimmer on Copyright § 14.02. This contrasts with "an alternative measure of damages, computed by what a willing buyer would pay a willing seller to license the exploitation at issue." *Id.*

Nor do the other cases cited by Disney in opposition to the motion for reconsideration support such a blanket rule. Instead, they stand for the proposition—which Rearden does not dispute—that where a plaintiff seeks to recover damages in the form of a hypothetical license, fair market value of the copyrighted work is determined by considering what a willing buyer would reasonably pay a willing seller for the copyrighted work. *See Frank Music*, 772 F.2d at 512-513 (seeking lost hypothetical license of copyrighted production); *Mackie v. Rieser*, 296 F.3d 909, 916-17 (9th Cir. 2002) (same); *United States v. King Features Ent., Inc.*, 843 F.2d 394, 400 (9th Cir. 1988) (same); *Jarvis v. K2, Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (same, endorsing the willing buyer–willing seller standard "in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work"); *Wall Data*, 447 F.3d at 786 (finding "it is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on undue speculation." (internal quotes omitted)).[1]

Finally, the Ievers Order excluded Ievers's testimony because of what it called her "fail[ure] to differentiate between the infringing and non-infringing aspects of MOVA's services,"

---

[1] None of these cases excluded expert testimony for a failure to assume the existence of a willing buyer. Indeed, in *Wall Data*, the jury considered testimony analogous to Ievers's proffered testimony here. See *Wall Data*, 447 F.3d at 786-87 ("Specifically, the jury heard testimony from Wall Data's vice president that the average price Wall Data charged the vendor that sold software to the Sheriff's Department was $189.").

1    meaning the inclusion in her estimates of compensation "for a number of non-infringing services

2    unrelated to the operation of the software program, such as costs associated with makeup, travel,

3    and test shoots." Ievers Order at 5. This aspect of the Court's order also was in error. Ievers

4    derived this group of services, and the prices for them, from evidence of the MOVA services that

5    DD3 performed on *Beauty and the Beast* and other films during production, and standard rate

6    cards that Rearden and DD3 used to charge studios for their MOVA services at or near the time of

7    the infringement. If these services would only have been offered as a package, it is appropriate for

8    Rearden to claim them as part of its calculation of actual damages. Whether these additional

9    services were in fact an integral part of the value of the MOVA technology is a question for the

10   jury.

## CONCLUSION

12        For the foregoing reasons, Rearden's motion for reconsideration is granted. Because

13   Ievers will be permitted to testify as to Rearden's claim for lost profits, Rearden may pursue its

14   legal claim for actual damages under Section 504(b) of the Copyright Act. Accordingly, Disney's

15   motion to strike Rearden's jury demand is denied as moot.

16        **IT IS SO ORDERED.**

17   Dated: November 29, 2023

                           JON S. TIGAR
               United States District Judge

United States District Court
Northern District of California