Steve W. Berman (*pro hac vice*)
Mark S. Carlson (*pro hac vice*)
Jerrod C. Patterson (*pro hac vice*)
Garth Wojtanowicz, CBA No. 246510
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com
jerrodp@hbsslaw.com
garthw@hbsslaw.com

Rio S. Pierce, CBA No. 298297
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riophbsslaw.com
gaynek@hbsslaw.com

*Attorneys for Plaintiffs*

KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
STEPHANIE G. HERRERA (SBN 313887)
stephanie.herrera@mto.com
SHANNON AMINIRAD (SBN 324780)
shannon.aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

JOHN W. SPIEGEL (SBN 78935)
john.spiegel@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
ROWLEY J. RICE (SBN 313737)
rowley.rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC, REARDEN MOVA LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WALT DISNEY PICTURES, a California corporation,<br><br>Defendant. | Case No.   4:17-cv-04006-JST<br><br>**JOINT STIPULATION AND [PROPOSED] ORDER PURSUANT TO ECF NOS. 602 & 605** |

Plaintiffs Rearden LLC and Rearden MOVA LLC ("Plaintiffs") and Defendant Walt Disney Pictures ("Defendant"), by and through their counsel of record, hereby stipulate as follows:

1. WHEREAS, on November 27, 2023, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Exclude Portions of Alberto Menache's Testimony ("Menache Order"), ECF No. 601;

2. WHEREAS, on November 27, 2023, the Court issued an Order Denying Defendant's Motion in Limine No. 2 to Exclude Reference to Defendant's Litigation Counsel Jon Chow ("MIL No. 2 Order"), ECF No. 604;

3. WHEREAS, the Court temporarily restricted public access to both the Menache Order and the MIL No. 2 Order, and directed the parties to file for each order, within one week of its issuance, either (1) a stipulated proposed redacted version, or (2) a stipulation that the parties agree that no redaction is necessary, ECF Nos. 602, 605;

4. WHEREAS, Plaintiffs and Defendant have conferred and request that the Court enter the attached proposed redacted version of the Menache Order, which redacts only portions of the order that contains material the Court has already ordered sealed at ECF Nos. 456, 546;

5. WHEREAS, Plaintiffs and Defendant have conferred and agree that no redaction of the MIL No. 2 Order is necessary;

6. NOW THEREFORE, the Parties stipulate that there is good cause to (1) enter the proposed redacted version of the Menache Order; and (2) allow full access by the public to the unredacted MIL No. 2 Order at ECF No. 604.

7. Electronic signatures are sufficient to execute this stipulation.

DATED: December 4, 2023                    HAGENS BERMAN SOBOL SHAPIRO LLP

By: ___/s/ Mark S. Carlson_____
MARK S. CARLSON
*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| 1 | DATED: December 4, 2023 | MUNGER, TOLLES & OLSON LLP |
| 2 | | By:    */s/ Kelly M. Klaus* |
| 3 | |      KELLY M. KLAUS<br>Attorneys *for Defendant* |

### CIVIL LOCAL RULE 5-1 ATTESTATION

I, Kelly Klaus, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1($i$)(3), I hereby attest that Mark Carlson concurred in the filing of this document.

          */s/  Kelly M. Klaus*
          Kelly M. Klaus

### [PROPOSED] ORDER

PURSUANT TO STIPULATION, IT IS SO ORDERED.

_____, 2023

          The Honorable Jon S. Tigar
          United States District Judge

# ATTACHMENT

# [PROPOSED] REDACTED VERSION OF ECF NOS. 602 & 605

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-04006-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF ALBERTO MENACHE'S TESTIMONY**<br><br>Re: ECF No. 422 |

Before the Court is Defendants' motion to exclude portions of Alberto Menache's testimony. ECF No. 422. The Court will grant the motion in part and deny it in part.

## I.  BACKGROUND

The factual and procedural background of this case are summarized in greater detail in this Court's prior orders. ECF Nos. 60, 85, 297. In short, this case concerns claims for contributory copyright infringement, vicarious copyright infringement, and trademark infringement by Plaintiffs Rearden LLC and MOVA LLC (collectively, "Rearden") against Defendants The Walt Disney Company; Walt Disney Motion Pictures Group, Inc.; Walt Disney Pictures; Buena Vista Home Entertainment, Inc.; Marvel Studios LLC; Mandeville Films, Inc.; Infinity Productions LLC; and Assembled Productions II LLC (collectively, "Disney"). Rearden alleges that Digital Domain 3.0 ("DD3") directly infringed Rearden's copyright to Rearden's MOVA Contour Reality Capture ("MOVA")—a program for capturing the human face to create computer graphics ("CG") characters in motion pictures. Rearden further alleges that Disney "contracted with DD3 to provide facial performance capture services using the copyrighted . . . program" to create the character Beast in its film *Beauty and the Beast* (2017). ECF No. 315 ¶ 117.

Rearden intends to elicit testimony from its technical expert, Alberto Menache, at trial.

Disney seeks to exclude portions of Menache's expert report and testimony.

## II. LEGAL STANDARD

The proponent of expert testimony "has the burden of proving admissibility." *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Under Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Following *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), trial courts serve a "gatekeeping" role "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). The question "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1318 (9th Cir. 1995). Thus, courts should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

## III. DISCUSSION

Disney argues that the Court should preclude Menache from testifying to his work in

2

1 connection with the sequels to the film *Avatar* (2009) and exclude Menache's opinions as to what

2 draws audiences to movies and the manner in which studios market their movies.[1]

3     **A.**    **Work on the *Avatar* Sequels**

4 In his opening expert report, Menache discusses his work on the *Avatar* sequels to

5 substantiate his conclusion that the use of facial motion capture technology ▉▉▉▉▉▉▉▉

6 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ECF No. 420-11 at 24. Menache then writes, ▉▉

7 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

8 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

9 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

10 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.*

11 Disney contends that Menache should be precluded from testifying about his work on the

12 *Avatar* sequels because, *inter alia*, he is bound by a confidentiality agreement with Lightstorm

13 Entertainment LLC ("Lightstorm") that prohibits him from disclosing the substance of that work.

14 Rearden responds that Lightstorm is not a Disney affiliate and that Disney was required, pursuant

15 to a protective order issued by this Court in this case, to "object to Mr. Menache" within 14 days

16 of when Rearden notified Disney of Rearden's intent to distribute highly confidential information

17 to him. ECF No. 445 at 17; *see* ECF No. 114. Rearden also argues that Menache received

18 permission to disclose information pertaining to this work. Disney replies that it is irrelevant

19 whether Lightstorm is a Disney affiliate, that the protective order is irrelevant to Menache's

20 confidentiality agreement, and that there is no evidence that Lightstorm released Menache from

21 his obligations under the confidentiality agreement.

22 Before turning to the merits of these arguments, the Court must address Disney's counsel's

---

[1] Disney also seeks to exclude Menache's opinions about MOVA Contour source code embedded in Maya files ("Maya Scripts"). The Court previously granted Disney's motion to preclude Rearden's reliance on its Maya Scripts theory of copyright infringement on the ground that the evidence underlying this theory was not timely produced. ECF No. 482. Because Rearden is precluded from relying on this theory, Menache's testimony would not "logically advance[] a material aspect of the [Rearden's] case." *Daubert II*, 43 F.3d at 1318. Thus, to the extent that the Court's order granting Disney's prior motion did not moot this portion of the instant motion, the motion is granted as to Menache's Maya Scripts testimony to the extent he offers that testimony as evidence of copyright infringement.

1 conduct at Menache's deposition. After establishing that Menache had performed work on the
2 *Avatar* sequels for Lightstorm, Disney's lawyer asked Menache the following question and
3 received the following answer:

> Q. Okay. And you understand that [Lightstorm]'s part of the Disney group of companies?
>
> A. I understand the movie's distributed by Disney. I don't know if Lightstorm is part of Disney or not.

7 ECF No. 420-15 at 61. Disney's lawyer then asked Menache if he had signed a confidentiality
8 agreement when he worked on the *Avatar* movies. *Id.* at 61. He responded that he did not
9 remember whether he did so, but acknowledged that he had an obligation not to disclose anything
10 about his work on *Avatar* without the permission of the entity he had been working for, and he did
11 not intend to breach that obligation. *Id.* at 63. When Disney's lawyer then asked Menache what
12 work he did on the *Avatar* movies, Rearden's lawyer instructed Menache not to answer because
13 Disney's counsel had "just established that [Menache] has a duty of confidentiality"—which
14 obligation Disney's lawyer said was owed *to Disney*. *Id.* at 64-65.

15 On October 13, 2023, the Court issued an order directing Defendants to "either file on the
16 docket sufficient evidence to show that Lightstorm Entertainment is 'part of the Disney group of
17 companies' . . . or disclaim that assertion." ECF No. 530. The Court also ordered Disney to
18 "identify the period of time while the film *Avatar* was in production that Lightstorm Entertainment
19 was 'part of the Disney group of companies' and, if it was, [to] provide sufficient evidence to
20 establish that fact." *Id.* In response, Disney filed a declaration from a Senior Vice President of
21 Production Finance at Walt Disney Studios. ECF No. 543-2. The declaration goes on at length
22 about the confidentiality agreement signed by Menache in connection with his work on *Avatar*,[2]
23 but ultimately acknowledges that "Lightstorm Entertainment is not itself part of the Disney family
24 of companies." *Id.* at 3. In other words, counsel's statement at Menache's deposition that
25 Lightstorm was part of the Disney group of companies, which appears to have been made for the

---

[2] The Court's order did not invite Disney to go beyond the Court's question and provide additional evidence in support of its motion. *See* Civ. L.R. 7-3(d) (providing that once the final brief is filed, "no additional memoranda, papers or letters may be filed without prior Court approval"). The Court has not considered the additional evidence that was filed as part of the declaration.

4

purpose of intimidating the witness and not for any legitimate truth-seeking purpose, was false. This conduct reflects poorly on the lawyer who made the statement, as well as on Disney's legal team, which submitted the deposition testimony in support of this motion. The Court expects better of the lawyers who appear before it.

That having been said, and turning to the merits, it is not disputed that Menache is obliged to keep his work on *Avatar* confidential, as he himself acknowledges in his expert report:

> In 2017, I joined Lightstorm Entertainment as an independent
> developer to work on the Avatar sequels. I worked on several
> projects there. Since the films are still in production, I am not free
> to disclose further details.

ECF No. 420-11 at 4. Menache also confirmed in his deposition that he has "an obligation not to disclose without the permission of . . . who [he] was working for anything about the work that [he] did on 'Avatar,'" ECF No. 420-15 at 63, and that his work "was actually [for] [20th Century] Fox" "when [he] started," *id.* at 62. And Disney produced to Rearden a copy ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that it represented governed Menache's work on the films. *See* ECF No. 459-2 at 2, 6. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 6. Thus, Menache is bound by contract not to discuss his work on *Avatar*.

Rearden responds that Disney and Lightstorm had an opportunity to object to Menache's receiving confidential information under the governing protective order, but did not do so. ECF No. 448-26 at 17. It argues that Disney's failure to object at that time waived its ability to object now to Menache's testimony. *Id.* This argument is irrelevant to the current motion, however: the sections of the protective order on which Rearden relies govern the disclosure of protected material *to an expert*. The protective order does not address an expert's disclosure of information *to a jury* that the expert is prohibited from disclosing. *See* ECF No. 114 at 16–18, 27–28. The protective order is not the basis of Disney's objection.

Rearden also implies that Menache has Lightstorm's permission to testify regarding his work on *Avatar*. But a close reading of its brief shows otherwise:

> Prior to accepting his engagement to serve as an expert in this case,
> Mr. Menache forthrightly informed one of the producers at
> Lightstorm and asked whether he objected to his involvement in this
> case, and the producer told him that Disney had already called him

5

|   |   |
|---|---|
| 1 | about Menache. He said he would call Menache back in a few days, presumably so that he could confer with Disney. A few days later, the Lightstorm producer called Menache back, and told him there was no objection. |
| 2 | |

3  ECF No. 448-26 at 17 (citations omitted). That Lightstorm did not object to Menache's

4  "involvement in the case" does not mean it was releasing him from his confidentiality agreement.

5  (Indeed, it is more likely that it withheld any objection precisely because he had signed such an

6  agreement.) And Menache's declaration, like Rearden's brief, indicates only that Lightstorm does

7  not object to Menache serving as an expert in this case. *See* ECF No. 445-5 ¶ 2. It does not

8  indicate that Lightstorm endorses Menache's public disclosure of confidential information in

9  connection with this litigation. *Id.*

10  The Court concludes that Menache is prohibited from discussing his work on *Avatar* and

11  accordingly grants that part of Disney's motion.

### B. Audience Draw and Motion Picture Marketing

Disney next argues that Menache is not qualified to render opinions as to the particular features of a film that draw audiences to see it, or the manner in which studios market films. Rearden responds that Menache's opinions are supported by his education and experience.

Menache holds an advanced degree in mathematics and computer science and has worked as a "visual effects, animation, and gaming developer, supervisor, and advisor" for over 35 years. *See* ECF No. 420-11 at 3–4. He has developed motion capture and visual effects tools used in various films and video games, developed animation pipelines, and overseen product development efforts. *See id.* He has worked with many large companies including Sony Pictures, Lightstorm, Meta, and Electronic Arts. *See id.* at 27.

In his rebuttal report, Menache writes that "[t]he latest draw for movie audiences comes from compelling CG characters with hyperrealistic facial motion" and that films featuring such characters "have collected a very large box-office draw in large part because of the artistic appeal of those characters and their ability to convey that anything is visually possible." ECF No. 420-13 at 45–46. He also writes that "VFX blockbuster films have always used their newest technological achievements as a marketing tool to draw viewers into the theater." *Id.* at 37–38. He further states that "the facial performance of the Beast is a key aspect [of the film] that excites

6

moviegoers." *Id.* at 6–7.

"Although [Menache] ha[s] no particularized expertise on the subject[s] of" audience draw and movie marketing, he "ha[s] considerable experience working" on tools and technology used in motion picture projects, including the *Avatar* sequels, *Spiderman* (2002), *The Polar Express* (2004), *Superman Returns* (2006), and *Shrek* (2001). *United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993)). It follows that Menache, through this experience, gained an understanding of the relationship of his work to the overall appeal and marketing of a motion picture such that his opinions are "within the reasonable confines of his subject area." *In re Roundup Products Liab. Litig.*, 390 F. Supp. 3d 1102, 1111 (N.D. Cal. 2018) (quoting *D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*, No. cv-00331-GPC-KSC, 2017 WL 4922814, at *14 (S.D. Cal. Oct. 30, 2017)). While it is true, as Disney points out, that Menache is not a psychologist or a marketing expert, Disney's objections as to Menache's "lack of particularized expertise goes to the weight accorded [his] testimony, not to the admissibility of [his] opinion as an expert." *Id.*; *see Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 938 (N.D. Cal. 2015) ("To testify as an expert, an individual 'need not be officially credentialed in the specific matter under dispute.'") (quoting *Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 656 (9th Cir. 2005)). Menache's opinions are therefore more appropriately challenged through cross-examination. Accordingly, the Court will not exclude Menache's testimony on this basis.

## CONCLUSION

For the foregoing reasons, Disney's motion is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: November 27, 2023

JON S. TIGAR
United States District Judge

7