# FULL-TIME EXEMPT OFFER LETTER

August 20, 2012

Ken Pearce
622 29th Street
San Francisco, CA  94131

## Offer of Employment by Rearden, LLC

Dear Ken:

I am very pleased to confirm our offer to you of employment with Rearden, LLC, a California limited liability company (the "*Company*"), on the following terms and conditions:

1. <u>Position</u>.  We are offering you employment as a **Director of Visual Development** for the Company, **beginning on August 20, 2012**.  This is a full-time, exempt position, which means you are not eligible for overtime.  Your employment with the Company is "at will."  This means that you are free to resign from your employment at any time, for any reason or no reason at all, with or without cause and with or without notice.  Similarly, the Company may terminate your employment at any time for any legal reason, with or without cause and with or without notice. By accepting this offer of employment, you agree that your employment is at will, and acknowledge that no one, other than the Chief Executive Officer has the authority to promise you anything to the contrary, and then only in writing.  Further, your participation in any future stock option or benefit program is not an assurance of continuing employment.

2. <u>Compensation and Benefits</u>.  You will be paid a salary of **$13,648.84 per month**, payable in semi-monthly (twice per month) installments, less all applicable federal and state withholding tax and other authorized deductions.  You will also be entitled to receive the fringe benefits that are offered to other employees of the Company who hold positions of similar responsibility as yours.

Our benefits, payroll, and other human resource management services are provided through TriNet Employer Group, Inc. ("TriNet").  Under the Company's agreement with TriNet, TriNet is your employer of record for payroll, benefits, taxes, etc., and all questions regarding these or any other human resources related issues should be directed to TriNet's Human Resources Manager.  The Company Employee Handbook is available on the TriNet website at www.trinet.com.

Your managers at the Company are responsible for directing your work, reviewing your performance, setting your schedule, and otherwise providing supervision for you and your work at the Company; TriNet has no role in that process.

3. <u>Proprietary Information and Inventions Agreement</u>.  As an employee of the Company, you will have access to certain confidential information of the Company and you may, during the course of your employment, develop certain information or inventions, which will be the property of the Company.  To protect the interests of the Company, and as a condition of your employment with the Company, you are required to sign the attached Proprietary Information and Inventions Agreement.  Please review the Proprietary Information and Inventions Agreement carefully as it affects (among other things) your rights with respect to certain

SF/21674113.2

United States District Court
Northern District of California
**PLAINTIFFS' EXHIBIT**
**31**
Case No. 4:17-cv-4006-JST
Date Entered _____
By _____
    Deputy Clerk

CONFIDENTIAL

CONFIDENTIAL

REARDEN 000276

REARDEN_MOVA016561

Pearce, Ken
August 20, 2012
Page 2

inventions or other intellectual property rights developed by you during your employment with the Company. You should not bring with you to the Company any confidential or proprietary material of any former employer or violate any other obligations you may have to any former employer.

4. <u>Conditions</u>. Your employment is subject to proof, within three (3) business days of starting your new job with the Company, of your legal right to work in the United States, and your completing the Immigration and Naturalization Service Employment Eligibility Verification Form I-9. If you have questions about this requirement, which applies to U.S. citizens and non-U.S. citizens alike, you may contact TriNet. Your employment is also subject to successful verification of your professional and character references, and a background check.

5. <u>Entire Agreement</u>. Your signature at the end of this letter confirms that no promises or statements that are contrary to our at-will relationship have been made to you during any of your pre-employment discussions with the Company and that this letter, the Proprietary Information and Inventions Agreement, and the Mutual Agreement to Arbitrate Claims (enclosed) contains our complete agreement regarding the terms and conditions of your employment. Our agreement cannot be changed except in writing signed by both of us.

If you decide to accept our offer, and I hope you will, please sign the enclosed copy of this letter in the space indicated and return it to me. If you have anything else that you wish to discuss, please do not hesitate to call me.

REARDEN, LLC, a California limited liability company

By: _____
Its: Chief Executive Officer

I have read and understood this offer letter and agree to the terms set forth above.

_____   Dated: 8-20-2012
Signature of Employee

Enclosures:   Proprietary Information and Inventions Agreement
              Mutual Agreement to Arbitrate Claims
              Performance Review Policy

SF/21674113.2

CONFIDENTIAL                                                       REARDEN 000277
CONFIDENTIAL                                                       REARDEN_MOVA016562

# REARDEN, LLC
## PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

The following Agreement confirms certain terms of my employment with Rearden, LLC, a California limited liability company (hereafter referred to as the "Company"), which is a material part of the consideration for my employment by the Company and the compensation received by me from the Company from time to time. The headings contained in this Agreement are for convenience only, have no legal significance, and are not intended to change or limit this Agreement in any matter whatsoever.

A.  Definitions

   1.  The "Company"

   As used in this Agreement, the "Company" refers to Rearden, LLC, a California limited liability company, and each of its subsidiaries or affiliated companies. I recognize and agree that my obligations under this Agreement and all terms of this Agreement apply to me regardless of whether I am employed by or work for Rearden, LLC; or any other subsidiary or affiliated company of Rearden, LLC Furthermore, I understand and agree that the terms of this Agreement will continue to apply to me even if I transfer at some time from one subsidiary or affiliate of the Company to another.

   2.  The Company's Business

   As used in this Agreement, the phrase "the Company's Business" refers to the intended business activities of the Company, and which include but are not limited to the following: (1) creation and production of scripts, stories, artwork, special effects, performance motion capture, photography, video editing, audio editing, 3D printing and 3D animation; (2) technology development and production; (3) creation and production of feature and short motion pictures, television programming, video games and web sites; (4) development and commercial exploitation of video and audio compression technology; (5) development of online services, networking and online audio/video technology; (6) development of consumer electronic devices; (7) development of motion, facial and surface capture technology and related human and non-human 2D and 3D rendering and animation technologies; (8) development of video teleconferencing technology; and (9) development of server-hosted computing systems and thin clients.

   3.  "Proprietary Information"

   I understand that the Company possesses and will possess Proprietary Information that is important to the Company's Business. For purposes of this Agreement, "Proprietary Information" is information that was or will be developed, created, or discovered by or on behalf of the Company, or which became or will become known by, or was or is conveyed to the Company, which has commercial value in the Company's Business.

   "Proprietary Information" includes, but is not limited to, information about trade secrets, confidential knowledge, data or any other proprietary information of the Company. By way of illustration but not limitation, "Proprietary Information" includes (a) inventions, discoveries, improvements, mask works, trade secrets, ideas, processes, formulas, copyrightable subject matter, source and object codes, data, programs, other works of authorship, know-how, developments,

designs and techniques (hereinafter collectively referred to as "Inventions"); (b) intellectual property, such as all intellectual, artistic, literary, dramatic or musical rights, works or other materials of any kind or nature (whether or not entitled to protection under applicable copyright laws, or reduced to or embodied in any medium or tangible form), including but not limited to all copyrights, patents, trademarks, service marks, trade secrets, contract rights, titles, characters, plots, themes, dialogue, stories, scripts, treatments, outlines, submissions, ideas, concepts, packages, compositions, artwork and logos, and all audio, visual or audio-visual works of every kind and in every stage of development, production and completion, and all rights to distribute, advertise, promote, exhibit or otherwise exploit any of the foregoing by any means, media or processes now known or hereafter devised; and (c) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and information regarding the skills and compensation of other employees of the Company.

I understand that my employment creates a relationship of confidence and trust between the Company and me with respect to Proprietary Information.

4. "Company Documents and Materials"

I understand that the Company possesses or will possess "Company Documents and Materials" that are important to its business. For purposes of this Agreement, "Company Documents and Materials" are documents or other media or tangible items that contain or embody Proprietary Information or any other information concerning the business, operations or plans of the Company, whether such documents, media or items have been prepared by me or by others.

"Company Documents and Materials" include, but are not limited to, blueprints, drawings, photographs, charts, graphs, notebooks, customer lists, computer disks, tapes or printouts, sound recordings and other printed, typewritten or handwritten documents, sample products, prototypes and models.

B. Assignment of Rights

All Proprietary Information and all patents, patent rights, copyrights, trade secret rights, trademark rights and other rights (including, without limitation, intellectual property rights) anywhere in the world in connection therewith is and shall be the sole property of the Company. I hereby assign to the Company any and all rights, title and interest I may have or acquire in such Proprietary Information.

At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust and will not use or disclose any Proprietary Information or anything relating to it without the prior written consent of an officer of the Company, except as may be necessary in the ordinary course of performing my duties to the Company.

C. Maintenance and Return of Company Documents and Materials

I agree to make and maintain adequate and current written records, in a form specified by the Company, of all inventions, trade secrets and works of authorship assigned or to be assigned to the Company pursuant to this Agreement. All Company Documents and Materials are and shall be the sole property of the Company.

CONFIDENTIAL                                                                                         REARDEN 000279

CONFIDENTIAL                                                                                         REARDEN_MOVA016564

I agree that during my employment by the Company, I will not remove any Company Documents and Materials from the business premises of the Company or deliver any Company Documents and Materials to any person or entity outside the Company, except as I am required to do in connection with performing the duties of my employment. I further agree that, immediately upon the termination of my employment by me or by the Company for any reason, or during my employment if so requested by the Company, I will return all Company Documents and Materials, apparatus, equipment and other physical property, or any reproduction of such property, excepting only (i) my personal copies of records relating to my compensation; (ii) my personal copies of any materials previously distributed generally to stockholders of the Company; and (iii) my copy of this Agreement.

D.  Disclosure of Inventions to the Company

I will promptly disclose in writing to my immediate supervisor or to such other person designated by the Company all "Inventions," which includes, without limitation, all improvements, inventions, works of authorship, trade secrets, technology, designs, formulas, ideas, processes, techniques, know-how and data, whether or not patentable, made or discovered or conceived or reduced to practice or developed by me, either alone or jointly with others, during the term of my employment.

I will also disclose to the Chief Executive Officer (CEO) of the Company all Inventions made, discovered, conceived, reduced to practice, or developed by me within six (6) months after the termination of my employment with the Company that resulted, in whole or in part, from my prior employment by the Company. Such disclosures shall be received by the Company in confidence (to the extent such Inventions are not assigned to the Company pursuant to Section (E) below) and do not extend the assignment made in Section (E) below.

E.  Right to New Ideas

1.  Assignment of Inventions to the Company

I agree that all Inventions which I make, discover, conceive, reduce to practice or develop (in whole or in part, either alone or jointly with others) during my employment shall be the sole property of the Company to the maximum extent permitted by Section 2870 of the *California Labor Code* or any like statute of any other state. Section 2870 of the *California Labor Code* provides as follows:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
>
> > (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or.
> >
> > (2) Result from any work performed by the employee for the employer.

3

CONFIDENTIAL                                                                                                REARDEN 000280

CONFIDENTIAL                                                                                                REARDEN_MOVA016565

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

The assignment set forth in this Paragraph E. 1 shall not extend to Inventions, the assignment of which is prohibited by *California Labor Code* Section 2870.

2. Prior Inventions

The Company shall be the sole owner of all patents, patent rights, copyrights, trade secret rights, trademark rights and all other intellectual property or other rights in connection with Inventions. In the event it is determined for any reason that I am not an employee of the Company, I further acknowledge and agree that such Inventions, including, without limitation, any computer programs, programming documentation, and other works of authorship, are "works made for hire" for purpose of the Company's rights under copyright laws. I hereby assign to the Company any and all rights, title and interest I may have or acquire in such Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or machine a prior Invention owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, sublicensable, worldwide license to make, have made, modify, use, market, sell and distribute such prior Invention as part of or in connection with such product, process or machine.

3. Cooperation

I agree to perform, during and after my employment, all acts deemed necessary or desirable by the Company to permit and assist it, at the Company's reasonable expense, in further evidencing and perfecting the assignments made to the Company under this Agreement and in obtaining, maintaining, defending and enforcing patents, patent rights, copyrights, trademark rights, trade secret rights or any other rights in connection with such Inventions and improvements thereto in any and all countries. Such acts may include, but are not limited to, execution of documents and assistance or cooperation in legal proceedings. I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents, as my agents and attorney-in-fact to act for and on my behalf and instead of me, to execute and file any documents, applications or related findings and to do all other lawfully permitted acts to further the purposes set forth above in this Paragraph E. 3, including, without limitation, the perfection of assignment and the prosecution and issuance of patents, patent applications, copyright applications and registrations, trademark applications and registrations or other rights in connection with such Inventions and improvements thereto with the same legal force and effect as if executed by me.

4. Assignment and Waiver of "Moral Rights"

Any assignment of copyright hereunder (and any ownership of a copyright as a work made for hire) includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights" (collectively "Moral Rights"). To the extent such Moral Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws in the various countries where Moral Rights exist, I hereby waive such Moral Rights and consent to any action of the Company that would violate such Moral Rights in the absence of such consent.

CONFIDENTIAL                                                                                                                                  REARDEN 000281

CONFIDENTIAL                                                                                                                                  REARDEN_MOVA016566

I agree that the Company shall solely and exclusively own throughout the universe in perpetuity all rights of every kind and nature now known or hereafter created in connection with the results, product and proceeds of my services hereunder (including, but not limited to, my services as an artist) and all Moral Rights. I acknowledge that the results, product and proceeds of my services hereunder, including, without limitation, all material composed, submitted, added, created or interpolated by me hereunder, which I acknowledge may have been or may be rendered in collaboration with others, are being specially ordered by the Company and may be used as part of or in connection with a motion picture or other production and shall be considered a "work made for hire" for the Company and, therefore, the Company shall be the author and copyright owner thereof for all purposes throughout the universe without limitation of any kind, including the right, in the Company's sole discretion, to make any such changes therein and may exploit the same throughout the universe in perpetuity. I hereby further acknowledge that the results, product and proceeds of my services have been paid for by the Company and are the sole property of the Company for all purposes whatsoever. Notwithstanding the preceding sentence, I hereby assign and/or grant all rights, including all exclusive exploitation rights, of every kind and nature (including any and all copyrights and neighboring rights in and to my services to the Company), to the extent such assignment is allowed by law. The foregoing rights include all forms of motion picture, television (whether live, filmed, taped, or otherwise recorded, and including series rights), cable, pay and subscription television, home video (including cassettes, discs and other video devices), live stage, sequel, remake, advertising and promotion rights, publication rights, digital television, video and computer games, videocassette and video or laser disc, any computer assisted media (including, but not limited to, CD-ROM, DVD-ROM and similar disc systems), interactive media and multi-media, internet-based websites or media, and any other devices or methods now known or hereafter devised, merchandising, soundtrack, music publishing and all exploitation rights whatsoever derived from and/or relating to the results and proceeds of my services and the right to exploit, distribute and exhibit any motion picture or other production produced hereunder in all media now known or hereafter devised and all of the foregoing is inclusive of a full irrevocable assignment to the Company thereof.

I grant to the Company the right to use my name, voice and/or likeness in connection with: (a) promotion and publicity of my services and all technology developed and utilized in connection therewith; (b) merchandising based on or in connection with my services and all technology developed and utilized in connection therewith and any promotion and/or publicity thereof All rights in and to my services are owned by the Company solely and exclusively, for the duration of the rights in each country and area and space, in all languages, and throughout the universe. The Company and I are aware and hereby acknowledge that new rights in and to my services may come into being and/or be recognized in the future, under the law and/or in equity (hereafter the "New Exploitation Rights"), and I intend to and do hereby grant and convey to the Company any and all such New Exploitation Rights in and to my services granted by me hereunder. The Company and I are also aware and do hereby acknowledge that new (or changed) (1) technology, (2) uses, (3) media, (4) formats, (5) modes of transmission and (6) methods of distribution, dissemination, exhibition or performance (hereafter the "New Exploitation Methods") are being and will inevitably continue to be developed in the future, which would offer new opportunities for exploiting my services. I intend to and do hereby grant and convey to the Company any and all rights in and to such New Exploitation Methods with respect to my services. I hereby agree to execute any document the Company deems in its interest to confirm the existence of the preceding and to effectuate its purpose to convey such rights to the Company, including without limitation the New Exploitation Rights and any and all rights in and to the new Exploitation Methods. I further hereby agree that I will not seek to (1) challenge, through the courts, administrative governmental bodies, private organizations, or in

CONFIDENTIAL                                                                                                                                    REARDEN 000282

CONFIDENTIAL                                                                                                                                    REARDEN_MOVA016567

any other manner the rights of the Company to exploit my services by any means whatsoever or (2) thwart, hinder or subvert the intent of the grants and conveyances to the Company herein and/or the collection by the Company of any proceeds relating to the rights conveyed hereunder.

    5.    List of Inventions

I have attached hereto as Exhibit A a complete list of all inventions or improvements to which I claim ownership and that I desire to remove from the operation of this Agreement, and I acknowledge and agree that such list is complete. If no such list is attached to this Agreement, I represent that I have no such inventions or improvements at the time of signing this Agreement.

F.    Non-Solicitation of Company Employees

During the term of my employment and for one (1) year thereafter, I will not encourage or solicit any employee of the Company to leave the Company for any reason or to accept employment with any other company. As part of this restriction, I will not interview or provide any input to any third party regarding any such person during the period in question. However, this obligation shall not affect any responsibility I may have as an employee of the Company with respect to the bona fide hiring and firing of Company personnel.

G.    Company Authorization for Publication

Prior to my submitting or disclosing for possible publication or dissemination outside the Company any material prepared by me that incorporates information that concerns the Company's business or anticipated research, I agree to deliver a copy of such material to an officer of the Company for his or her review. Within twenty (20) days following such submission, the Company agrees to notify me in writing whether the Company believes such material contains any Proprietary Information or Inventions, and I agree to make such deletions and revisions as are reasonably requested by the Company to protect its Proprietary Information and Inventions. I further agree to obtain the written consent of the Company prior to any review of such material by persons outside the Company.

H.    Duty of Loyalty

I agree that, during my employment with the Company, I will not provide consulting services to or become an employee of, any other firm or person engaged in a business in any way competitive with the Company, without first informing the Company of the existence of such proposed relationship and obtaining the prior written consent of my manager and the Human Resources Manager responsible for the organization in which I work.

I.    Former Employer Information

I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to my employment by the Company, and I will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employers or others. I have not entered into and I agree I will not enter into any agreement, either written or oral, in conflict herewith

CONFIDENTIAL   REARDEN 000283
CONFIDENTIAL   REARDEN_MOVA016568

or in conflict with my employment with the Company. I further agree to conform to the rules and regulations of the Company.

J.  At-Will Employment

I agree and understand that my employment with the Company is "at-will," meaning that it is not for any specified period of time and can be terminated by me or by the Company at any time, with or without advance notice, and for any or no particular reason or cause. I agree and understand that it also means that job duties, title and responsibility and reporting level, compensation and benefits, as well as the Company's personnel policies and procedures, may be changed at any time at-will by the Company. I understand and agree that nothing about the fact or the content of this Agreement is intended to, nor should be construed to, alter the at-will nature of my employment with the Company.

I understand and agree that this Agreement is the complete agreement between the Company and me regarding the nature of my employment with the Company. I also understand and agree that the at-will nature of employment with the Company can only be changed by the Company CEO in an express writing signed and dated by the CEO and by me.

K.  Severability

I agree that if one or more provisions of this Agreement are held to be unenforceable under applicable law, such provisions shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

L.  Authorization to Notify New Employer

I hereby authorize the Company to notify my new employer about my rights and obligations under this Agreement following the termination of my employment with the Company.

M.  Entire Agreement

This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us, including but not limited to any and all statements made by any officer, employee or representative of the Company regarding the Company's financial condition or future prospects. I understand and acknowledge that, except as set forth in this Agreement and in the offer letter from the Company to me, (i) no other representation or inducement has been made to me, (ii) I have relied on my own judgment and investigation in accepting my employment with the Company, and (iii) I have not relied on any representation or inducement made by any officer, employee or representative of the Company. No modification of or amendment to this Agreement nor any waiver of any rights under this Agreement will be effective unless in a writing signed by the CEO of the Company and me. I understand and agree that any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

N.  Legal and Equitable Remedies

Because my services are personal and unique and because I may have access to and become acquainted with the Proprietary Information of the Company, the Company shall have the right to

CONFIDENTIAL                                                                                                                       REARDEN 000284
CONFIDENTIAL                                                                                                                       REARDEN_MOVA016569

enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond, without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

O.   Notices

Any notices required or permitted hereunder may be given, and shall be deemed given, upon personal delivery; or deposit in the United States mail, certified or registered; or delivery to an internationally recognized express delivery or courier service, with confirmation thereof for delivery to the party, in each case, to the party at the address set forth below, or to such other address or addresses as a party may hereafter designate in writing by proper notice.

Company:   355 Bryant Street, Suite 110
San Francisco, CA 94107

Employee:   _____
_____

P.   General Provisions

1. Governing Law. Although I may work for the Company outside of California or the United States, I understand and agree that this Agreement shall be interpreted and enforced in accordance with the laws of the state of California, without reference to its conflict of laws rules.

2. Changes/Contractor. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. As used in this Agreement, the period of my employment includes any time during which I may be retained by the Company as a consultant, agent, representative or independent contractor.

3. Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

4. Survival. The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.

5. Employment. I agree and understand that nothing in this Agreement shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at anytime, with or without cause.

6. Waiver. No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

CONFIDENTIAL                                                                                           REARDEN 000285
CONFIDENTIAL                                                                                           REARDEN_MOVA016570

Q.  Effective Date

This Agreement shall be effective as of the first day of my employment with the Company and shall be binding upon me, my heirs, executor, assigns and administrators and shall inure to the benefit of the Company, its subsidiaries, successors and assigns.

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS WHICH IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY.

_____
Employee Signature
KEN PEARCE
Employee Name (Please Print)
Date: 8-20-2012

REARDEN, LLC, a California limited liability company

By: _____

Its: Chief Executive Officer

9

SF/21674099.2

CONFIDENTIAL                                                                REARDEN 000286
CONFIDENTIAL                                                                REARDEN_MOVA016571

## EXHIBIT A

1.  The following is a complete list of all Inventions or improvements relevant to the subject matter of my employment by the Company and/or that relate to the Company's Business, as defined in Section A(2) in the above Agreement, that have been made or discovered or conceived or first reduced to practice by me or jointly with others prior to my employment by the Company that I desire to remove from the operation of the Company's Proprietary Information and Inventions Agreement:

\_\_\_\_\_ No inventions or improvements.

\_\_\_\_\_ See below: Any and all inventions regarding:

✓ Additional sheets attached.

2.  I propose to bring to my employment the following materials and documents of a former employer:

\_\_\_\_\_ No materials or documents

\_\_\_\_\_ See below:

Date: *Aug 20 2012*

*Ken Pearce*
Employee Signature

*KEN PEARCE*
Employee Name (Please Print)

10

SF/21674099.2

CONFIDENTIAL                                                                                                          REARDEN 000287
CONFIDENTIAL                                                                                                    REARDEN_MOVA016572

*Attachment for Exhibit A: Inventions*

*Ken Pearce*

- A technique in computer animation whereby parented continuous rotations and counter-rotations result in aggregate reciprocal and swinging motions. These aggregate motion modules can be chained together to create more elaborate motion systems and moving geometry for animated characters.

- Exploiting 3D stereoscopic projection of computer animation to create physically impossible theater productions within actual theaters.

- The use of flat panel monitors, preferably large and wall-mounted, to display dynamic art, events and visual narratives that unfold very slowly over a long time. These objects, regarded as paintings or photographs, would change their images in barely noticeable ways and when viewed daily would reveal long term, slow-motion dramas. Content could be linear or interactive. The displays could either be somewhat generic and driven by external computers or have their own processors. Content could be changed via plug-in storage devices, or incremental content could be received via broadcast.

- Interrelated visual browsers for navigating historical, geographic, and cultural information.

*Ken Pearce    7-17-06*

*Ken Pearce    8-20-2013*

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

I recognize that differences may arise between Rearden, LLC, a California limited liability company (the "Company"), and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure.

Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act either is inapplicable or held not to require arbitration of a particular claim or claims, California law pertaining to agreements to arbitrate shall apply.

I understand that any reference in the Agreement to the Company will also be a reference to its subsidiaries or related entities, and all successors and assignees of any of them.

### Claims Covered by the Agreement

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The only claims that are arbitrable are those that in the absence of this agreement, would be justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, medical condition, or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded elsewhere in this Agreement.

### Claims Not Covered by the Agreement

Claims by me for workers' compensation or unemployment compensation benefits are not covered by this Agreement.

Either party can apply to a court of competent jurisdiction for provisional remedies in connection with arbitrable controversies as contemplated by California Code of Civil Procedure Section 1281.8.

### Administrative Exhaustion

As a condition of arbitration, a statutory claim of discrimination, harassment, or retaliation must be filed first with the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission within the time limits set forth by state and federal law and must be exhausted through the applicable agency, prior to being submitted to arbitration, or such claims are waived.

1

SF/21674101.2

CONFIDENTIAL                                                                                                       REARDEN 000289

CONFIDENTIAL                                                                                                       REARDEN_MOVA016574

## Required Notice of All Claims and Statute of Limitations

The Company and I agree that the aggrieved party must give written notice of any claim to the other party and to the American Arbitration Association ("AAA") within the limitations period for whatever claims are being asserted.

Written notice to the Company, or its officers, directors, employees or agents, shall be sent to its Chief Executive Officer at the Company's main office. I will be given written notice at the last address recorded in my personnel file.

The written notice shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. The notice shall be sent to the other party by certified or registered mail, return receipt requested.

Failure to make a written demand within the applicable statutory period constitutes a waiver to raise that claim in any forum.

## Applicable Law And Discovery

The arbitrator shall apply applicable California and/or Federal substantive law and the California evidence code to the proceeding. The parties shall be entitled to conduct reasonable discovery, including conducting deposition, requesting documents and requesting responses to interrogatories. The arbitrator shall have the authority to determine what constitutes reasonable discovery. The arbitrator shall hear motions for summary disposition as provided in the California Code of Civil Procedure.

## Arbitration Procedures

The arbitration will be held under the auspices of the AAA. The Company and I agree that, except as provided in this Agreement, the arbitration shall be in accordance with the AAA's then-current employment rules for employment disputes. The arbitrator shall be either a retired judge, or an attorney licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"). The arbitration shall take place in San Francisco, California.

Either party may obtain a court reporter to provide a stenographic record of proceedings. Either party, upon request at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

## Arbitration Fees and Costs

The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator and the arbitration; provided, however, that if I am the party initiating the claim, I am responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which I am (or was last) employed by the Company. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party, under the standards for fee shifting provided by law.

CONFIDENTIAL                                                                REARDEN 000290

CONFIDENTIAL                                                                REARDEN_MOVA016575

### Written Award

The arbitrator shall prepare in writing and provide to the parties a decision and award that includes factual findings and the reasons upon which the decision is based. The arbitrator shall be permitted to award only those remedies in law and equity that are requested by the parties and allowed by law. Judgment upon the award rendered by the arbitrator may be entered in any court having proper jurisdiction.

### Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes, except for any arbitration agreement in connection with any pension or benefit plan. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

### Severability

If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.

### Not an Employment Agreement

This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this Agreement in any way alter the "at-will" status of my employment.

### Voluntary Agreement

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

CONFIDENTIAL                                                                                                         REARDEN 000291
CONFIDENTIAL                                                                                                    REARDEN_MOVA016576

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Dated: 8-20-2012

_____
Signature of Employee

KEN PEARCE
Print Name of Employee

Dated: _____

REARDEN, LLC, a California limited liability company

_____
Signature of Company Representative

4

SF/21674101.2

CONFIDENTIAL                                                                                                 REARDEN 000292
CONFIDENTIAL                                                                                                 REARDEN_MOVA016577