United States District Court
Northern District of California

**PLAINTIFFS' EXHIBIT**
**37**

Case No. 4:17-cv-4006-JST
Date Entered _____
By _____
Deputy Clerk

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the *"Agreement"*) is made as August 17, 2012 (the *"Effective Date"*), by and between INSOLVENCY SERVICES GROUP, INC., a California corporation (*"Seller"*), as assignee for the benefit of creditors of ONLIVE, INC., a Delaware corporation (*"Assignor"*), with Assignor's principal offices located at 181 Lytton Avenue, Palo Alto, CA 94301 and 127 Lytton Avenue, Palo Alto, CA 9430 (the *"Lytton Premises"*), and OL2, Inc., a Delaware corporation (*"Buyer"*).

### RECITALS

A.   By and in accordance with (i) a duly adopted resolution of the board of directors of Assignor; and (ii) the consent by affirmative vote of a majority of the outstanding shares entitled to vote, a General Assignment was executed by and between Assignor and Seller, as assignee for the benefit of creditors (*"Assignee"*) of Assignor (the *"General Assignment"*), a copy of which is attached hereto as Exhibit A.

B.   As a consequence of the General Assignment, Assignor (i) transferred ownership of all its right, title and interest in and to all of Assignor's tangible and intangible assets (the *"Assigned Assets"*) to Seller, and (ii) designated Seller to act, pursuant to California law and the General Assignment, as the assignee for the benefit of the creditors of Assignor.  Prior to the General Assignment, Assignor was [a developer and seller of web based games, game systems and related products and media] (with all related business activities, the *"Business"*).

C.   Seller and Buyer have identified those Assigned Assets that Buyer desires to purchase from Seller.

D.   Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, the Purchased Assets (as defined below), on the terms and conditions set forth in this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals and the mutual covenants hereinafter set forth, Buyer and Seller hereby agree as follows:

### ARTICLE 1

### PURCHASE AND SALE OF THE PURCHASED ASSETS

*Section 1.1.   Agreement to Purchase and Sell the Purchased Assets.*  Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties and covenants set forth in this Agreement, Seller agrees to sell, assign, transfer and convey to Buyer at the Closing (as defined in Section 2.1 below), without representation or warranty except as expressly set forth herein, and Buyer agrees to purchase, accept, receive and acquire from Seller at the Closing, all of Seller's right, title and interest in and to all of the Purchased Assets,

3249337.02.02.doc
3606589

including the Assumed Liabilities attendant thereto (as defined below). All right, title and interest of Seller in and to the Purchased Assets will be sold, assigned, transferred and conveyed by Seller to Buyer on the Closing Date (or, with respect to the Post Closing Date Purchased Assets, after the Closing Date as provided herein), in each case free and clear of the liens, encumbrances and security interests (*"Encumbrances"*) of Buyer and any liens with respect to Intellectual Property, in each case arising prior to the Closing Date, but subject to all other Encumbrances. Buyer shall assume sole responsibility on the Closing Date for payment and/or performance of the Assumed Liabilities, including those as set forth on <u>Schedule A</u> attached hereto.

Section 1.2.   *Purchased Assets; Post Closing Date Purchased Assets.*

(a)   As used in this Agreement, the term *"Purchased Assets"* means, collectively, only the Seller's right, title and interest (as assigned by Assignor) in all of the Assigned Assets, including assets listed in <u>Schedule A</u> attached hereto; *provided, however,* that the Purchased Assets shall not include those assets as set forth in <u>Schedule B</u> attached hereto (collectively, the *"Excluded Assets"*).

(b)   In order to accommodate further due diligence by Buyer with respect to certain of the Assigned Assets and related liabilities, certain specified Excluded Assets designated as the rights and interests under the real property leases for the Lytton Premises (collectively, the *"Lytton Premises Lease"*) and the Equipment that is the subject of and described in the UCC Search Report attached hereto at <u>Schedule 1.2(b)</u> (the *"Excluded Equipment"*) may be assumed and accepted by Buyer, and will be deemed sold, assigned and transferred by Seller to Buyer, upon receipt by Seller after the Closing of written notice of such election from Buyer by not later than the respective dates therefor as set forth in Section 1.4(c) and 1.4(h) hereto, and without further consideration other than assumption, as applicable, of related liabilities under the Lytton Premises Lease and under the contracts relating to the Excluded Equipment (such assets, the *"Post Closing Date Purchased Assets"*). The date of such sale, assignment and transfer shall be the date of timely receipt of such notice with respect to each such Excluded Asset, and references herein to the "Closing" and "Closing Date" shall, with respect to the Post Closing Date Purchased Assets, refer to such later date or dates, as applicable. Buyer is under no obligation to assume and accept any such Excluded Assets. In connection with Buyer's option to acquire rights and interests in, to and under the Lytton Premises Lease and with respect to the Excluded Equipment, Buyer is providing Seller with the indemnities set forth in Sections 1.4(c) and 1.4(h), respectively.

Section 1.3.   *Assumed Liabilities Defined.*   As used in this Agreement, the term *"Assumed Liabilities"* means, subject to Section 1.4(f) and 1.4(h), only those liabilities specifically defined and set forth on <u>Schedule A</u>.

Section 1.4.   *Asset Transfer; Passage of Title; Risk of Loss; Delivery; Retention of Documents and Tax Returns; Intellectual Property; Allocation of Purchase Price.*

CONFIDENTIAL                                                                 REARDEN_MOVA018468

(a)     *Title Passage; Risk of Loss.* Except as otherwise provided in this Section 1.4, upon the Closing, (i) title and all risk of loss respecting the Purchased Assets passes to Buyer, (ii) Buyer acknowledges as of Closing that neither Seller nor Assignor will be insuring the Purchased Assets nor the Lytton Premises with respect to the Purchased Assets or the Buyer's interest therein, and (iii) Seller shall deliver to Buyer all of the Purchased Assets as provided in Subsection 1.4(b), and shall further, upon Buyer's request, execute assignments, conveyances and/or bills of sale reasonably requested to convey to Buyer title to all the Purchased Assets, subject to Encumbrances in accordance with Section 1.1 of this Agreement, as well as such other instruments of conveyance as counsel for Buyer may reasonably deem necessary to effect or evidence the transfers contemplated hereby, without cost or expense to Seller. Buyer and Seller shall promptly execute and deliver to each other any and all such further assignments, endorsements and other documents as Buyer or Seller may reasonably request for the purpose of effectuating the terms and conditions of this Section 1.4. The Buyer and the Seller shall each provide the other with such assistance as reasonably may be requested by the other, at the requesting party's sole cost and expense, in connection with the preparation of any tax return, audit or examination of any such return by any taxing authority or any judicial or administrative proceeding relating to liability for taxes and shall each retain and provide the other with any records or other information which may be relevant to such a return, audit, examination or proceeding. For the avoidance of doubt, title to any of the Post Closing Date Purchased Assets shall not pass until such dates such asset is timely assumed as provided herein. However, Seller is under no obligation to provide any insurance from and after the Closing Date with respect thereto, and all risk of loss, and all liability with respect thereto, shall be with Buyer.

(b)     *Delivery of Purchased Assets.* On the Closing Date (as defined in Section 2.1), Seller shall deliver the Purchased Assets to Buyer by making available to Buyer for Buyer's possession the Purchased Assets at the Lytton Premises. Delivery of possession of the Purchased Assets shall occur by Seller allowing Buyer access to the Lytton Premises from the date of the Closing as provided in Subsection (c).

(c)     *Lytton Premises.*

(i)     For a period of up to 90 days from Closing, subject to timely payment of Rent as described below, Buyer shall have access to the Lytton Premises through Seller's ability to hold possession of the same pursuant to the provisions of California Civil Code § 1954.1. If Buyer in its discretion so elects, Buyer may deliver to Seller, by not later than 90 days after the Closing Date, written notice that it is assuming all obligations under the Lytton Premises Lease (and all necessary consents to such assumption). Unless and until Buyer delivers such written notice to Seller, Buyer is not assuming the Lytton Premises Lease or (except as otherwise set forth herein) any liabilities with respect to the Lytton Premises. By not later than the Closing, Buyer shall pay to Seller an amount equal to the unpaid rent and other charges provided in the Lytton Premises Lease (collectively, "*Rent*") due for the Lytton Premises through the month of September (the "*September Rent Payment*"). By not later than September 30,

CONFIDENTIAL

REARDEN_MOVA018469

2012, to the extent Buyer still desires to have continued access to the Lytton Premises through October 30, 2012 pursuant to Seller's rights, Buyer shall pay Seller an amount equal to the full amount of Rent due for such period under the Lytton Premises Lease. By not later than October 30, 2012, to the extent Buyer still desires to have access to the Lytton Premises pursuant to Seller's rights, Buyer shall pay Seller an amount equal to the full amount of the Rent due for such period under the Lytton Premises Lease through November 30, 2012 (even if Buyer is not permitted access through the full month of November). Buyer acknowledges that such Rent payments are not legally permitted to be pro-rated. For so long as Seller is providing access to the Lytton Premises as provided in this Section 1.4(c)(i), Buyer will arrange to have Seller's name added as an additional insured to all insurance policies relating to Buyer's occupancy including, without limitation, insurance providing comprehensive general liability coverage and insurance required by the Lytton Premises Lease. Seller shall promptly pay to the person entitled thereto under the Lytton Premises Lease all Rent (including all related occupancy costs, including but not limited to utilities, insurance, and any and all taxes associated with occupancy under the Lytton Premises Lease), received from Buyer under this Section 1.4(c)(i).

(ii)    In the event that Buyer assumes the Lytton Premises Leases or enters into a new leases with respect to the Lytton Premises, Buyer agrees that it shall provide whatever security deposit, letter of credit or other support as negotiated between Buyer and the landlord of the Lytton Premises, and will cooperate with Seller to obtain the return and cancellation of the original of the standby letter of credit and any cash security with respect to Assignor's reimbursement obligations thereunder (the "*Lytton Premises Letter of Credit*") posted as a security deposit with respect to the Lytton Premises Lease or if applicable, will reimburse Seller for the full amount of any cash deposit held with respect to such Lytton Letter of Credit. Buyer acknowledges that except as set forth above, Seller has no right of occupancy of the Lytton Premises, is not asserting a right of occupancy to the Lytton Premises and that Seller is not an assignee of, or subtenant under, any lease respecting the Lytton Premises. Buyer hereby indemnifies and holds Seller free and harmless from any and all losses, damages, claims, costs, duties and obligations to the extent arising in connection with (a) the Lytton Premises and (b) claims of the owner/landlord thereof, arising in each case after the Closing Date and solely in connection with Buyer's access to the Lytton Premises as contemplated herein, and including reasonable attorney's fees and costs which Seller may incur in connection therewith. Seller expressly disclaims any warranties or representations with respect to fixtures at the Lytton Premises, whether the same are real property, personal property or trade fixtures (collectively, "*Fixtures*") and whether the landlord or owner of the Lytton Premises has or may have any interest therein or ownership thereof. Buyer expressly assumes all risks of title, ownership, damage upon removal, repair or otherwise associated with such Fixtures.



(c)   *Assignment of Consents and Approvals.*  The Seller shall assign, transfer and convey to Buyer on the Closing Date, without any expense to Seller, all approvals, consents, waivers and permits, if any, used by the Assignor as assigned to Seller pursuant to the General Assignment.

(d)   *Retention of Documents and Tax Returns.*

(i)   At Closing, unless legally prohibited from doing so and subject to subsection (ii) below, originals of the business records and tax returns of Assignor shall be transferred to Buyer and (x) made generally available to Seller for a period of ninety (90) days from the Closing at the Lytton Premises or other mutually convenient location, and (y) subsequently made available to Seller during regular business hours with reasonable notice to Buyer, in each case for duplication at Seller's sole cost and expense.

(ii)   Subject to the terms of the Custodian of Records Agreement entered into on the date hereof, Buyer shall retain or arrange to retain for a period of one year from the Closing the original books and records of the Assignor, the operating files, e-mails and all corporate records of the Assignor (collectively, the *"Records"*), but subject to subsection (i) above shall make such Records available to Seller for copying, at Seller's sole cost and expense, during regular business hours and upon reasonable prior notice.

(e)   *Intellectual Property.*  At the Closing, Seller shall assign Seller's entire right, title and interest in Seller's patents, copyrights, trademarks, trade secrets, domain names and other intellectual property included in the Purchased Assets, including but not limited to the Intellectual Property as defined and described on Schedule A or otherwise described in any of the Intellectual Property Assignments as defined in Section 7.2(c) (collectively, the *"Intellectual Property"*), together with all files and the contents therein in Seller's possession or control if any, relating to any and all applications or proceedings with respect to Intellectual Property that is the subject of an application, certificate, filing, registration or other document issued by, filed with, or recorded by any governmental or quasi-governmental agency or non-governmental registrar (whether provisional, supplemental, or otherwise), anywhere in the world, including the United States Copyright Office and United States Patent and Trademark Office, including any office actions or notices and copies of all prior art references material to the Intellectual Property of which Seller is aware and inventions described in the Intellectual Property, and together with the right to sue for any past infringement, for the sole use and benefit of Buyer, its assigns and successors in interest, to the full extent of the term for which the Intellectual Property is granted, as fully and entirely as the same would have been held by Seller had this assignment and sale not been made.  All out of pocket costs, expenses and fees associated with the transfer of the Intellectual Property shall be borne solely by Buyer.

(f)   *Assumed Contracts.*  The Purchased Assets may include specified contract of Assignor (*"Contracts"*) to be assumed by Buyer, subject to obtaining necessary third

REARDEN_MOVA018471

party consents (the *"Assumed Contracts"*).  Buyer shall have 30 days after the Closing to designate a Contract as an Assumed Contract to Seller.  Except for the Assumed Contracts, Buyer shall have no liability or other duties or obligations with respect to any of the Contracts or to any other contracting party, including, without limitation, any obligation to return any deposits or other monies paid by any customer of Assignor; *provided*, that Buyer shall be solely responsible and hereby indemnifies Seller for all payments and liabilities arising under any Contract until the earlier to occur of 30 days after the Closing and the date on which Buyer designates to Seller in writing that it will not assume a specific Contract.  Seller shall have no liability or other duties or obligations respecting any of the Assumed Contracts and Seller shall not be obligated to Buyer with respect to prepayments or deposits with respect to Assumed Contracts made prior to the date of the General Assignment.  Thirty days after the Closing, or such earlier date as Buyer designates to Seller that it will not assume a specific Contract, Seller may cancel or terminate all contracts which are not Assumed Contracts except the Lytton Premises Lease, which is subject to Section 1.4(c) and the Equipment Leases (as defined below), which is subject to Section 1.4(h).  Any written notice to Seller from Buyer of its acceptance of any Assumed Contract shall constitute Buyer's assumption of the related Assumed Liability thereunder.

(g)     *Allocation of Purchase Price*.  The Purchase Price shall be allocated among the Purchased Assets by the mutual agreement of Seller and Buyer within 30 days after the Closing Date.  Seller and Buyer each hereby agree to be bound by such allocation, to account for and report the purchase and sale of the Purchased Assets for federal and state tax purposes in accordance with such allocation, and not to take any position (whether in tax returns, tax audits, or other tax proceedings) which is inconsistent with such allocation without the prior written consent of the other party.  Promptly after such agreement on an allocation, Buyer will pay all necessary sales taxes with respect to that portion of Purchased Assets for which taxes are then due as a result of their purchase hereunder.

(h)     *Equipment Leases*.  All leases of or outstanding purchase money obligations (collectively, *"Equipment Leases"*) with respect to any of the Excluded Equipment shall be a part of the Excluded Assets until such time as written notice of acceptance thereof by Buyer, specifying the specific Equipment or lease thereof is received by Seller, not later than 45 days after the Closing Date.  Seller and Buyer agree that unless earlier assumed by Buyer, until the earlier to occur of (i) written notice to Seller that Buyer does not desire to assume and accept such Equipment Lease and (ii) 45 days after the Closing Date, Buyer shall pay over to Seller, for payment to the person entitled thereto under such Equipment Lease, all scheduled lease payments and other obligations under such Equipment Leases, and Seller agrees to make such payments; *provided*, that Buyer shall have no obligation to make any such payments to Seller, which it may elect to pay or not to pay in its sole discretion during such period, and Seller shall have no liability to Buyer for the termination of any such Equipment Lease for which payment is not timely received or for any other exercise of remedies by the lessor thereunder (other than as a consequence of breach of Seller's obligation to pay over to the lessor thereunder amounts received from Buyer as provided above).  Any written notice



REARDEN_MOVA018472

to Seller from Buyer of its acceptance of any Excluded Equipment as a Post Closing Date Purchased Asset shall constitute Buyer's assumption of the related Equipment Lease as an Assumed Liability.  Buyer hereby indemnifies and holds Seller free and harmless from any claims arising from and after the Closing Date related to or on account of Equipment Leases; provided that Buyer shall have no liability to Seller for any contractual damages under any Equipment Lease after Buyer has given Seller written notice of Buyer's election not to accept and assume such Equipment Lease.  As used herein, the terms "lessor" and "Equipment Lease" shall include, without limitation, the holder of a purchase money security interest in equipment and a security agreement, respectively, as defined in the California Commercial Code.

(i)     *Unassignable Assets, Unassumable Liabilities.*  If and to the extent that, as a matter of law in any jurisdiction, ownership, title, or any rights or interest in or to any of the Purchased Assets cannot be assigned to Buyer pursuant to this Agreement: (i) Seller (and by its execution of the General Assignment, Assignor), irrevocably agrees to assign and transfer, and hereby assigns and transfers to Buyer all rights (including, without limitation, all economic and commercialization rights) that can be assigned pursuant hereunder to the fullest extent permissible; and (ii) with respect to any Purchased Assets that are Intellectual Property, to the fullest extent possible based upon applicable law and contractual rights and obligations, Seller (and by its execution of the General Assignment, Assignor), irrevocably grants Buyer an unlimited, exclusive. irrevocable, worldwide, perpetual, royalty-free license to use, exploit and commercialize in any manner now known or in the future discovered and for whatever purpose, any rights to Purchased Intellectual Property that cannot be fully assigned as contemplated by Section 1.1.  To the extent of the foregoing, Buyer hereby forever indemnifies and holds Seller free and harmless from any and all claims, demands, liabilities, obligations and damages, including attorney's fees and costs, related to the license and use of such property.

(j)     *Customer Deposits.*  At Closing, Buyer shall assume and discharge all claims, liabilities and obligations associated with orders of customers (i) that are open and unfilled as of the Closing and (ii) in which the customer has prepaid all or some of the purchase price.  Buyer indemnifies and holds Seller and the assignment free and harmless, including attorney's fees, respecting such liabilities and obligations.

Section 1.5.    *Condition Of The Assets.*  Seller makes no representation or warranty, and assumes no responsibility with respect to, the condition, nature or use of the Purchased Assets.

(a)     IT IS UNDERSTOOD AND AGREED THAT, EXCEPT AS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PURCHASED ASSETS, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(b)     BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY STATED HEREIN, UPON CLOSING, SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL

CONFIDENTIAL

ACCEPT THE PURCHASED ASSETS *"AS IS, WHERE IS, WITH ALL FAULTS."* EXCEPT AS EXPRESSLY STATED HEREIN, BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PURCHASED ASSETS OR RELATING THERETO MADE OR FURNISHED BY SELLER, OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT, EXCEPT AS EXPRESSLY STATED HEREIN, THE PURCHASED ASSETS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c)   BUYER ACKNOWLEDGES TO SELLER THAT EXCEPT AS EXPRESSLY PROVIDED HEREIN WITH RESPECT TO EXCLUDED ASSETS THAT MAY BE DESIGNATED BY BUYER AS POST CLOSING DATE PURCHASED ASSETS (AND, WITH RESPECT TO ANY SUCH POST CLOSING DATE PURCHASED ASSET, BY THE DATE OF ITS ACCEPTANCE BY BUYER) BUYER HAD THE OPPORTUNITY TO CONDUCT PRIOR TO CLOSING SUCH INSPECTIONS AND INVESTIGATIONS OF THE PURCHASED ASSETS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PURCHASED ASSETS AND BUYERS ACQUISITION THEREOF. BUYER FURTHER WARRANTS AND REPRESENTS TO SELLER THAT BUYER WILL RELY SOLELY ON ITS OWN REVIEW AND OTHER INSPECTIONS AND INVESTIGATIONS IN THIS TRANSACTION AND NOT UPON THE INFORMATION PROVIDED BY OR ON BEHALF OF SELLER, OR ITS AGENTS, EMPLOYEES OR REPRESENTATIVES WITH RESPECT THERETO. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS RELATING TO THE PHYSICAL CONDITION OF THE PURCHASED ASSETS, INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS.

*Section 1.6.   Additional Covenants; Disclaimers and Acknowledgments.*   With regard to the Purchased Assets, including all of the Assumed Liabilities attendant thereto:

(a)   Buyer assumes the full risk of loss regarding both the claims and rights of the holders of Encumbrances and Buyer acknowledges that holders of Encumbrances may have foreclosure and other enforcement rights with respect to the assets subject to the claims of the holders of Encumbrances.

(b)   Buyer agrees to assert no claims against the Seller in connection with the General Assignment, or any of the transactions related thereto, including any assignment for the benefit of creditors of the Assignor, based upon any assumption by Buyer of the Assumed Liabilities or any claims resulting therefrom, including, but not limited to any claims resulting from any Buyer assumed obligation or claims against Buyer in connection with those matters set forth in Sections 1.6(a) above by any parties associated therewith.



CONFIDENTIAL

## ARTICLE 2

### PURCHASE PRICE; PAYMENTS

*Section 2.1.    Purchase Price and Payment Terms.*

(a)    *Closing Date Purchase Price.*  Buyer shall pay to Seller at Closing, or shall assume as a liability of Buyer, the following consideration:

(i)    An amount equal to (A) Three Million Five Hundred Thousand Dollars ($3,500,000) *less* (B) up to Five Hundred Sixty Thousand Dollars ($560,000) owing on the Closing Date by Assignor to Buyer on account of secured advances made by Buyer to Assignor (the "*Credit Amount*") *less* (C) the unpaid portion of rent owing with respect to the Lytton Premises leases from August 1 through the Closing Date *plus* (D) $681,117.50, which equals approximately 50% of the U.S. Dollar equivalent of the amount of the Credit Card Merchant Account Deposits (such amount, the "*Cash Purchase Price*").  The Buyer will pay the Cash Purchase Price to the Seller by wire transfer on the Closing Date, in accordance with the instructions provided by the Seller, in immediately available funds;

(ii)    Satisfaction and discharge of the Credit Amount, and

(iii)    Assumption of the Assumed Liabilities.

In addition, on the Closing Date Buyer shall pay to Seller the September Rent Payment (for the months of August and September), in an amount equal to $289,498, pursuant to Section 1.4(c)(i).

(b)    *Purchase Price Adjustment for Credit Card Merchant Account Deposits.* Assignor and its subsidiary currently have deposits held with Silicon Valley Bank and WorldPay Limited, respectively, with respect to credit card merchant account services and chargebacks relating thereto (the "*Credit Card Merchant Account Deposits*").  In order to maintain the continuity of such credit card merchant account services, Buyer and Seller agree all Credit Card Merchant Account Deposits shall be included as Purchased Assets and the Purchase Price will be increased by 50% of the amount of such Credit Card Merchant Account Deposits as of the Closing Date, as provided in Section 9(a). With respect to the remaining 50%, Buyer and Seller agree that the Purchase Price shall be adjusted and Buyer shall pay to Seller, 120 days after the Closing Date, an amount equal to 40% of the net amount of all Credit Card Merchant Account Deposits on the Closing Date net after debiting all chargebacks processed after the Closing Date for transactions occurring, and for unpaid fees accruing, on or prior to the Closing Date. Approximately six months after the Closing Date, Buyer and Seller shall confer regarding estimates for the frequency and amounts of any further such chargebacks and the need for and amount of any further Purchase Price adjustment as a result thereof.



(c)   *Liability for Sales and/or Use Tax.*  Buyer shall hold Seller harmless from any liability with respect to sales, use or other tax arising solely in connection with Buyer's purchase of the Purchased Assets, as well as any interest, penalties and attorney's fees with respect to such taxes.  For the avoidance of doubt, if, prior to the Closing, there have been any taxes based on the value of property assessed against any of the Purchased Assets, the Seller shall administer as claims the General Assignment those taxes attributable to periods or partial periods ending on or prior to the Closing Date, and Buyer will pay those taxes attributable to periods or partial periods after the Closing Date, with a daily allocation for any period that begins before Closing Date and ends on or after the Closing Date.  Each of Buyer and Seller agrees to cooperate with the other party in paying or reimbursing tax obligations in accordance with this Section 2.1(c).  Nothing in this Agreement makes a party liable for the income or franchise taxes of the other party.

(d)   *Closing.*  The consummation of the purchase and sale of the Purchased Assets contemplated hereby (the *"Closing"*) will take place on August 17, 2012 (the *"Closing Date"*), or at such other time or date, as may be agreed to by the parties hereto.

## ARTICLE 3

### OBLIGATIONS AND LIABILITIES

*Section 3.1.   Liabilities and Obligations Not Assumed.*   Unless otherwise provided herein, Buyer shall not be obligated to assume or become obligated in any way to pay any other liabilities, debts or obligations of Seller or of Assignor of whatever kind or nature, whether known or unknown, absolute or contingent, liquidated or unliquidated (but excluding any indemnity obligation otherwise set forth herein, *"Liabilities"*), which are not expressly included herein as Assumed Liabilities.  All such other liabilities, debts and obligations of Seller and of Assignor are hereinafter referred to as the *"Excluded Liabilities."*   Without limiting the preceding sentence, the following is a non-exclusive list of Excluded Liabilities that the Buyer does not assume:

(a)   all product liability, indemnity, warranty, infringement, misappropriation or similar claims by any Person in connection with any tangible or intangible products or services used, sold or licensed by the Assignor prior to the Closing Date;

(b)   (i) all Liabilities arising out of contracts or other assets that are Excluded Assets (except with respect to Seller as provided herein with respect to Excluded Assets that may become Post Closing Date Purchased Assets) or otherwise not expressly assumed by the Buyer, (ii) all professional, financial advisory, broker, finder or other fees of any kind incurred by Assignor, and (iii) all Liabilities of Assignor incidental to or arising in connection with this Agreement, including Assignor's disclosures to or negotiations with creditors or stockholders, solicitations of proxies or written consents from any Persons, or other legal obligations of Assignor;

REARDEN_MOVA018476

(c)     all Liabilities arising under claims by employees or former employees of the Assignor relating in any way to compensation, benefits, termination or continuation of their employment, or lack or delay of any notice relating to their employment ;

(e)     all Liabilities for taxes owed by Assignor for any period or partial period ending through the Closing Date; and

(f)     any other Liabilities of Assignor not expressly assumed by Buyer arising out of or relating to Assignor's operations of the Business or ownership of the Purchased Assets or otherwise prior to the completion of the Closing.

Section 3.2.   *No Obligations to Third Parties.*   Except as to Assumed Liabilities, the execution and delivery of this Agreement shall not be deemed to confer any rights upon any person or entity (including Assignor) other than the parties hereto, or make any person or entity a third party beneficiary of this Agreement, or to obligate either party to any person or entity other than the parties to this Agreement.

Section 3.3.   *No Financing Contingency.*   Buyer has adequate cash on hand to consummate the transactions contemplated by this Agreement without requiring financing.

Section 3.4   *Employee Benefit Plans.*   Without limiting the foregoing, Buyer does not assume any Liabilities arising in connection with any of the Employee Benefit Plans or any termination, continuation, amendment or other acts or omissions in connection with those Employee Benefit Plans. "Employee Benefit Plan" mean any "employee pension benefit plan" (as defined in Section 3(2) of the Employee Retirement Income Security Act of 1974), any "employee welfare benefit plan" or other employee benefit plan (as defined in Sections 3(1) or 3(3) of that act), and any other written or oral plan, agreement or arrangement involving direct or indirect compensation or benefits to any employees, including, without limitation, insurance coverage, severance benefits, change of control, retention, performance, holiday pay, vacation pay, fringe benefit, disability benefits, pension, retirement plans, profit sharing, deferred compensation, bonuses, stock options, stock purchase, phantom stock, stock appreciation or other forms of incentive compensation or post-retirement compensation, that any of Assignor or its affiliates maintains or has maintained or to which any of them contributes or has contributed, or under which any of them may have liability. Seller will cause to be paid the costs and expenses, up to an amount not to exceed $30,000, to close down Assignor's Employee Benefit Plans.

Section 3.5   *Taxes.*   Seller will be responsible for and will cause to be paid all costs to prepare all tax returns of Assignor to be filed with the appropriate taxing agency with respect to its activities for all periods prior to the Closing. Buyer has no obligation to pay or Liability for any taxes, interest or penalties which may be owed by Assignor.



CONFIDENTIAL

## ARTICLE 4

### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller that all the following statements are true, accurate and correct:

*Section 4.1.   Due Organization; Affiliation.*   Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Delaware.

*Section 4.2.   Power and Authority; No Default Upon Transfer.*   Buyer has all necessary corporate power and authority to enter into this Agreement and all other documents that Buyer is required to execute and deliver hereunder, and holds or will timely hold all permits, licenses, orders and approvals of all federal, state and local governmental or regulatory bodies necessary and required therefor.   The signing, delivery and performance by Buyer of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Buyer.

*Section 4.3.   Authorization for this Agreement.*   No authorization, approval, consent of, or filing with any governmental body, department, bureau, agency, public board, authority or other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

*Section 4.4.   Litigation.*   There is no litigation, suit, action, arbitration, inquiry, investigation or proceeding pending or, to the knowledge of Buyer, threatened, before any court, agency or other governmental body against Buyer (or any corporation or entity affiliated with Buyer) that seeks to enjoin or prohibit or otherwise prevent the transactions contemplated hereby.

## ARTICLE 5

### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that all of the following statements are true, accurate and correct:

*Section 5.1.   Corporate Organization.*   Seller is a corporation duly organized, validly existing, and in good standing under the laws of the State of California.

*Section 5.2.   Power and Authority; No Default Upon Transfer.*   As Assignee, Seller has all requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder and under the General Assignment.   The signing, delivery and performance by Seller of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Seller.   Seller has received copies of the resolutions of the Assignor's Board and the General Assignment was duly authorized by at least 51% of Assignor's shareholders holding voting shares.   Based thereon and

REARDEN_MOVA018478

in reliance upon the foregoing, this Agreement, when signed and delivered by Seller, is a duly and validly executed and delivered and the valid and binding obligation of Seller, as Assignee, and enforceable against Seller, as Assignee, in accordance with its terms as governed by applicable law, regulations and rules subject, however, to laws relating to bankruptcy, insolvency and relief of debtors and rules and laws governing specific performance, injunctions, relief and other equitable remedies.

Section 5.3.   *Authorization for this Agreement*.   To the best of Seller's knowledge information and belief, no authorization, approval, consent of, or filing with any governmental body, department, bureau, agency, public board, authority or other third party is required for the consummation by Seller of the transactions contemplated by this Agreement.

Section 5.4.   *Litigation*.   There is no litigation, suit, action, arbitration, inquiry, investigation or proceeding pending or, to the knowledge of Seller, threatened, before any court, agency or other governmental body against Seller, or to Seller's actual knowledge, against Assignor, that seeks to enjoin or prohibit or otherwise prevent the transactions contemplated hereby or by the General Assignment.

Section 5.5.   *Assignment*.   The right, title and interest of Seller with regard to the Purchased Assets are rights held by Seller as Assignee pursuant to the General Assignment made by Assignor.   Pursuant to the General Assignment, Assignor intended to transfer all of Assignor's right, title and interest in and to the Assigned Assets to Seller, but subject to any legal or contractual prohibitions on or creditor remedies relating to transfer, assignment or sale, and Seller, solely in its capacity as Assignee, represents that it sells, assigns, and transfers all of Seller's right, title and interest in and to the Purchased Assets to Buyer and Seller has not granted any rights to any third party in, to or under the Purchased Assets.

## ARTICLE 6

### CONDITIONS TO CLOSING

Section 6.1.   *Conditions to Buyer's Obligations*.   The obligations of Buyer hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Buyer may expressly waive the same in writing:

(a)   *Accuracy of Representations and Warranties on Closing Date*.   The representations and warranties made herein by Seller shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(b)   *Compliance*.   As of the Closing Date, Seller shall have complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement imposed on Seller and required to be performed or complied with by Seller at, or prior to, the Closing Date.

REARDEN_MOVA018479

(c)     *Delivery of Purchased Assets.*  Seller shall have delivered the Purchased Assets to Buyer as set forth in Section 1.4 above.

(d)     *Delivery of Closing Documents.*  Seller shall have delivered, and Buyer shall have received, the documents described in Section 7.2 hereof.

*Section 6.2.    Conditions to Seller's Obligations.*  The obligations of Seller hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Seller may expressly waive the same in writing:

(a)     *Accuracy of Representations and Warranties on Closing Date.*  The representations and warranties made herein by Buyer shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date.

(b)     *Compliance.*  Buyer shall have complied in all material respects with, and shall have fully performed, the terms, conditions, covenants and obligations of this Agreement imposed thereon to be performed or complied with by Buyer at, or prior to, the Closing Date.

(c)     *Payment; Assumption of Assumed Liabilities.*   Buyer shall have transmitted by wire transfer and (i) Seller shall have received payment of the Cash Purchase Price at Closing, and (ii) Buyer shall have assumed the Assumed Liabilities.

(d)     *Delivery of Closing Documents.*  Buyer shall have delivered, and Seller shall have received, the documents described in Section 7.1 hereof.

(e)     *Employee Termination and Payment.*  Assignor shall have represented to Seller that all or substantially all employees of Assignor shall have been terminated on or before the Closing and all wages, payroll taxes and priority wage (labor) claims as defined in California Code of Civil Procedure § 1204 of such terminated employees shall have been paid in full.

## ARTICLE 7

### CLOSING OBLIGATIONS

*Section 7.1.    Buyer's Closing Obligations.*  At or prior to the Closing, Buyer shall deliver to Seller the following:

(a)     A Bill of Sale, Assignment and Assumption Agreement, in the form attached hereto as Exhibit B, signed by an authorized officer of Buyer on behalf of Buyer; and

REARDEN_MOVA018480

(b)     The Custodian of Records Agreement in the form attached hereto as Exhibit D and signed by an authorized officer of Buyer on behalf of Buyer;

Section 7.2.     *Seller's Closing Obligations.*  At the Closing, Seller shall deliver or make available to Buyer as the case may be the following:

(a)     The Bill of Sale, Assignment and Assumption Agreement in the form attached hereto as Exhibit B, signed by an authorized officer of Seller on behalf of Seller;

(b)     The Patent Assignment(s), Trademark Assignment(s), Trade Name Assignment(s), Domain Name Assignment(s) and Copyright Assignment(s), in the forms attached hereto as Exhibit C-1, C-2, C-3, C-4 and C-5, respectively (the "*Intellectual Property Assignments*"), and signed by an authorized officer of the parties thereto on behalf of such parties, as applicable;

(c)     A true and correct copy of a fully executed General Assignment, together with a certificate of an executive officer of Assignor to the effect that (with written evidence to such effect appended thereto) the General Assignment and the assignment for the benefit of creditors thereunder to Seller have been validly approved and authorized by the board of directors and not less than a majority of the shareholders of Assignor; and

(d)     All other agreements, instruments, certificates or documents reasonably requested by Buyer in connection with the transactions contemplated hereby.

## ARTICLE 8

### SURVIVAL OF WARRANTIES AND INDEMNIFICATION

Section 8.1.     *Survival of Warranties.*  All representations and warranties made by Seller, or Buyer hereunder, or in any certificate, Schedule or Exhibit delivered pursuant hereto, shall survive the Closing for a period of twelve (12) months from the Closing.

Section 8.2.     *Indemnified Losses.*  For the purpose of this Section 8.2 and when used elsewhere in this Agreement, *"Loss"* and *"Losses"* shall mean and include any and all of a party's liability, loss, damage, claim, expense, cost, fine, fee, penalty, obligation or injury, including, without limitation, Losses resulting from any and all actions, suits, proceedings, demands, assessments, judgments, awards, or arbitration against a party with regard to the Purchased Assets, together with reasonable costs and expenses, including the reasonable attorneys' fees and other legal costs and expenses relating thereto.

Section 8.3.     *No Indemnification by Seller; Exception.*  Seller is selling to Buyer the Purchased Assets defined in this Agreement subject to Sections 1.4, 1.5 and 1.6 hereof and does not agree to defend, indemnity or hold harmless Buyer, any parent, subsidiary or affiliate of Buyer or any director, officer, employee, stockholder, agent or attorney of, from and against and in respect of any Loss which arises out of or results from the transaction described herein; *provided, however,* and subject to the other provisions of this Agreement and the limitations set



REARDEN_MOVA018481

forth in this Article 8, Seller shall indemnity Buyer for any Losses which arise out of or results from a material breach by Seller of any covenant, or the material inaccuracy or untruth of any representation or warranty of Seller made herein.

Section 8.4.    *Indemnification by Buyer*.    Subject to the provisions and limitations set forth in this Section 8.4, Buyer agrees to indemnify Seller for any Losses which arise out of or results from:

(a)    a material breach by Buyer of any covenant, or the material inaccuracy or untruth of any representation or warranty of Buyer made herein;

(b)    the sale or use of the Purchased Assets or products derived therefrom after Closing; and

(c)    the failure to satisfy any of the Assumed Liabilities after the Closing.

Section 8.5.    *Period for Making Claims*.    A claim for indemnification under this Article 8 may be brought, if at all, at any time following the Closing prior to the one-year anniversary of the Closing Date.

## ARTICLE 9

### MISCELLANEOUS

Section 9.1.    *Notices*.    Any notice required or permitted to be given under this Agreement shall be in writing and shall be personally or sent by certified or registered United States mail, postage prepaid, or sent by nationally recognized overnight express courier and addressed as follows: (or at such other addresses as shall be specified by notice given in accordance with this Section 9.1)    *JBW*

(a)    If to Seller:

Insolvency Services Group Inc.
9107 Wilshire Blvd., Suite 800
Beverly Hills, CA  90210
Tel.:  310-385-0006
Fax:  310-385-0030
Email:  jweinberg@usisg.com
Attention:  Joel B. Weinberg, President

With copy to:

Buchalter Nemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, California  90017
Tel:  (213) 891-5008
Fax:  (213) 630-5611
Email:  sspector@buchalter.com
Attention:  Steven M. Spector, Esq.

   (b)     If to Buyer:

OL2, Inc.
c/o David Young, Esq.
Gunderson Dettmer Stough
Villeneuve Franklin & Hachigian, LLP
1200 Seaport Blvd.
Redwood City, CA 94063
Fax:  877-881-6005
email:  dyoung@gunder.com

with a copy to:

David W. Thill, Esq.
Chapman and Cutler LLP
595 Market Street, 26th floor
San Francisco, CA  94105
Fax:  (415)541-0506
Email:  dthill@chapman.com

    *Section 9.2.    Customers, Service Providers and Employees.*  Seller shall cooperate with Buyer in communicating with customers, service providers and employees to ensure an orderly transition of the Business related to the Purchased Assets, as applicable.

    *Section 9.3.    Expenses; No Broker.*  Buyer shall prepare all documents and pay any fees, costs or expenses related to the transfer of the Intellectual Property or the intellectual property rights to Buyer.  Each of the parties hereto shall bear its own expenses (including without limitation attorneys' fees) in connection with the negotiation and consummation of the transaction contemplated hereby.  Seller and Buyer represent and warrant to one another that no broker, finder, agent or intermediary brought about the transactions contemplated by this Agreement and that no person, party or entity engaged by them is entitled to any brokerage commission, finder's fee or other compensation in connection with such transactions.  Each party indemnifies and holds the other harmless the other regarding any and all claims which might be or could be asserted against the other party for any fee or commission or compensation from any such parties.

*Section 9.4.    Amendment; Waiver.*  Any term or provision of this Agreement may be amended only by a writing signed by Seller and Buyer. The observance of any term or provision of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound by such waiver. No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

*Section 9.5.    No Third Party Beneficiaries.*  Except as otherwise provided herein, nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement.

*Section 9.6.    Dispute Resolution.*  EACH PARTY HERETO WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO TRIAL OR ADJUDICATION BY JURY. IF AND TO THE EXTENT THAT THE FOREGOING WAIVER OF THE RIGHT TO A JURY TRIAL IS UNENFORCEABLE FOR ANY REASON IN SUCH FORUM, EACH OF THE PARTIES HERETO HEREBY CONSENT TO THE ADJUDICATION OF ALL CLAIMS PURSUANT TO JUDICIAL REFERENCE AS PROVIDED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638, AND THE JUDICIAL REFEREE SHALL BE EMPOWERED TO HEAR AND DETERMINE ALL ISSUES IN SUCH REFERENCE, WHETHER FACT OR LAW. EACH OF THE PARTIES HERETO REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER AND CONSENT AND EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS AND CONSENTS TO JUDICIAL REFERENCE FOLLOWING CONSULTATION WITH LEGAL COUNSEL ON SUCH MATTERS. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT OR TO JUDICIAL REFERENCE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 AS PROVIDED HEREIN.

*Section 9.7.    Benefit and Burden.*  This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns. If this Agreement is set aside or determined to be void or invalid by a court of competent jurisdiction through no fault or cause of Seller, Buyer agrees that Seller shall have no responsibility or liability of any kind or nature whatsoever, including without limitation direct, indirect or consequential damages. Except as expressly provided herein, the rights and obligations of a party hereunder may not be assigned, transferred or encumbered without the prior written consent of the other party; *provided, however,* that Buyer may (i) assign any or all of its rights and interest hereunder to one or more of its affiliates and (ii) designate one or more of its affiliate to perform its obligations hereunder; *provided further, however,* that in any or all of which cases Buyer assigns rights or duties, Buyer nonetheless shall remain wholly liable and responsible for the performance of all of its duties and obligations hereunder.

*Section 9.8.    Governing Law.*  Unless any Exhibit or Schedule to this Agreement specifies a different choice of law, the internal laws of the State of California (without reference to its principles of conflicts of law) govern the construction, interpretation and other matters

REARDEN_MOVA018484

arising out of or in connection with this Agreement and its exhibits and schedules (whether arising in contract, tort, equity or otherwise).

Section 9.9.   *Severability*.   If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

Section 9.10.   *Attorneys' Fees*.   Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees (including without limitation costs, expenses and fees on any appeal). The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

Section 9.11.   *Seller's Limited Liability*.   Except as otherwise expressly set forth herein, any and all liability of Seller to Buyer is agreed by Buyer to be expressly limited to the estate of Assignor for which Seller is acting as Assignee.

Section 9.12.   *Entire Agreement*.   This Agreement, the Exhibits and Schedules hereto (which are incorporated herein by reference) and any agreements to be executed and delivered in connection herewith together constitute the entire agreement and understanding between the parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement. This Agreement supersedes any prior offer, agreement or understanding between the parties with respect to the transactions contemplated hereby.

Section 9.13.   *Independent Counsel*.   The parties acknowledge and agree that each has been advised to and has had an opportunity to seek independent counsel in connection with matters relating to this Agreement, and that no party is relying on any counsel to the other party regarding any provision of the transaction contemplated hereby or any other matters relating to this Agreement.

Section 9.14.   *Construction of Agreement*.

(a)   Where this Agreement states that a party "will" or "shall" perform in some manner or otherwise act or omit to act, it means that the party is legally obligated to do so in accordance with this Agreement.

(b)   This Agreement is the product of a negotiation and shall not be construed against any party because of its involvement in its preparation.

(c)   Any reference in this Agreement to the singular includes the plural where appropriate. Any reference in this Agreement to the masculine, feminine or neuter gender includes the other genders where appropriate. The captions, titles and headings, and table of

REARDEN_MOVA018485

contents, included in this Agreement are for convenience only, and do not affect this Agreement's construction or interpretation.

(d)     This Agreement does not, and is not intended to, confer any rights or remedies in favor of any Person other than the parties signing this Agreement, except as may be specifically set forth in other provisions of this Agreement.

(e)     Each reference to "governmental agency" in this Agreement includes any foreign, federal, state or local government, any regulatory, administrative, or other agency, board, or authority of any kind having any powers that may be enforced by law, and any court or arbitral body or panel whose decisions or orders may be enforced by law.  Each reference to "law" in this Agreement includes any foreign, federal, state or local statute, ordinance, regulation, rule, code, treaty, common law or other form of law.  The words "including," "includes," or "include" are to be read as listing non-exclusive examples of the matters referred to, whether or not words such as "without limitation" or "but not limited to" are used in each instance.  Any reference in this Agreement to wire transfers or other payments requires payment in dollars of the United States of America unless some other currency is expressly stated in that reference.

Section 9.14.  No Joint Venture.  Nothing in this Agreement creates a joint venture or partnership between or among the parties.  This Agreement does not authorize any party (a) to bind or commit, or to act as an agent, employee or legal representative of, another party, except as may be specifically set forth in other provisions of this Agreement, or (b) to have the power to control the activities and operations of another party.  The parties are independent contractors with respect to each other under this Agreement.  Each party agrees not to hold itself out as having any authority or relationship contrary to this Section 9.14.

Section 9.15    Execution in Counterparts.  For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  This Agreement is effective upon delivery of one executed counterpart from each party to the other parties.  The signatures of all parties need not appear on the same counterpart.  The delivery of signed counterparts by facsimile or email transmission that includes a copy of the sending party's signature(s) is as effective as signing and delivering the counterpart in person.

[SIGNATURES APPEAR ON NEXT PAGE.]

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the Effective Date.

SELLER:                                      BUYER:

INSOLVENCY SERVICES GROUP, INC.,             OL2, INC.
    in its sole and limited capacity as
    Assignee for the Benefit of Creditors
    of OnLive, Inc.


By:_____             By:_____
    Joel B. Weinberg, President                  Gary M. Lauder, President

CONFIDENTIAL

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the Effective Date.

SELLER:

INSOLVENCY SERVICES GROUP, INC.,
   in its sole and limited capacity as
   Assignee for the Benefit of Creditors
   of OnLive, Inc.

By: _____
   Joel B. Weinberg, President

BUYER:

OL2, INC.

By: _____
   Gary M. Lauder, President

REARDEN_MOVA018488

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the Effective Date.

SELLER:                                    BUYER:

INSOLVENCY SERVICES GROUP, INC.,           OL2, INC.
   in its sole and limited capacity as
   Assignee for the Benefit of Creditors
   of OnLive, Inc.

By: _____             By: _____
    Joel B. Weinberg, President               Gary M. Lauder, President

REARDEN_MOVA018489

# EXHIBIT A

CONFIDENTIAL
REARDEN_MOVA018490

**EXHIBIT A**

**GENERAL ASSIGNMENT**

CONFIDENTIAL

# GENERAL ASSIGNMENT

THIS ASSIGNMENT, made this 17ᵗʰ day of August, 2012, by and between **OnLive, Inc.,** a Delaware corporation (the "Assignor") and **Insolvency Services Group, Inc.,** a California corporation (the "Assignee"), with reference to the following:

## Recitals

A.      Assignor has its principal place of business at 181 Lytton Avenue, Palo Alto, CA 94301 and its federal tax identification number is 27-0073509;

B.      Assignor is indebted to diverse creditors and is desirous of providing for payment of those creditors by making a general assignment of all of Assignor's assets for that purpose; and

C.      Assignee has its principal place of business in Los Angeles County, California.

D.      This General Assignment has been approved by Assignor's Board of Directors and by the requisite vote of stockholders.

## Agreement

NOW, THEREFORE, Assignor, for valuable consideration, receipt of which is hereby acknowledged, does hereby make the following general assignment for the benefit of Assignor's creditors (the "Assignment") to Assignee under the following terms and conditions, all of which terms and conditions are agreed to by Assignor and Assignee:

1.      <u>Assignment of Assets.</u>  Assignor does hereby grant, assign, bargain, sell and transfer to Assignee, its successors and assigns, in trust, for the benefit of all the Assignor's creditors generally, all of the property and assets of Assignor of every kind and nature wheresoever situated, whether in possession, reversion, remainder or expectancy, both real and personal, and any interest or equity therein not exempt from the enforcement of a money judgment, including, without limitation, all inventory, merchandise, goods, furniture, fixtures, machinery, equipment, raw materials, work in process, accounts, general intangibles, intellectual property, deposits, books, records, fixtures, cash on hand, bank accounts, tax refunds, all choses in action, insurance policies and refunds and all other property of every kind and nature owned by Assignor, or in which Assignor has an interest, including all of the assets pertaining to that certain business involving on-demand gaming platforms, (the "Assignment Estate").

1.1      <u>Lease Exclusion.</u>  Leases and leasehold interests in real property are not included in this Assignment.  If, however, the Assignee determines that such excluded lease or leasehold interest may be assigned and also that the same has realizable value for Assignor's creditors, then Assignor agrees that upon demand of Assignee, it will assign and transfer such

BN 12188457v1

1

CONFIDENTIAL

REARDEN_MOVA018492

lease or leasehold interest to Assignee, or its nominee, for administration under the terms of this Assignment.

      1.2    <u>Employee Benefit Plan Exclusion</u>.  Employee benefit plans (which includes any related employee trust fund), including without limitation, any ERISA- qualified plan or other similar employee plan, are not included in this Assignment.  Assignee shall not be or deemed to be an administrator under any such employee benefit plan nor shall the Assignee have any role in, or responsibility for, the termination of any such employee benefit plan of Assignor and/or its employees.

    2.    <u>Real Property Grant Deed</u>.  This Assignment constitutes a grant deed to all real property owned by Assignor (except for real property leases and leasehold interests which are expressly excepted from this Assignment as provided in Section 1.1 above), whether or not the Assignor's real property is specifically described in this Assignment.  Certain of Assignor's real property (excluding leases and leasehold interests) is more specifically described in Exhibit "A," which is attached hereto an incorporated by reference.  (Exhibit "A" attached hereto Yes ___ No _X_).

    3.    <u>Delivery Of Documents, Endorsements And Mail Delivery</u>.  Assignor agrees to deliver to Assignee all books of account and records, to execute and deliver all additional necessary documents immediately upon request by Assignee, and to endorse all indicia of ownership where required by Assignee, in order to complete the transfer of all assets to Assignee as intended by this Assignment, including, but not limited to, all of Assignor's real and personal property and/or Assignor's interest therein, including, mortgages, deeds of trust, motor vehicles, trademarks, copyrights and patent rights.  Neither Assignor, nor its agents, shall execute any documents on behalf of the Assignor without prior written approval of Assignee.  Assignee is hereby authorized to execute all endorsements and demands requiring Assignor's signature, in the name of Assignor, including endorsements on checks, bank accounts, deposit accounts, and stock certificates, payable to, or standing in the name of Assignor.  Assignor further authorizes Assignee to apply for any deposits, refunds (including specifically, among others, claims for refund of taxes paid or unearned insurance premiums) or claims wherever necessary, in the name of Assignor.  Assignee is authorized to direct all Assignor's mail to be delivered to Assignee; and Assignee is expressly authorized and directed to open said mail as agent of Assignor, and to do any thing or act which Assignee in its sole and arbitrary discretion deems necessary or advisable to effectuate the purposes of this Assignment.

    4.    <u>Alcoholic Beverage Licenses</u>.  In the event Assignor is engaged in the sale of alcoholic beverages, this Assignment does not include transfer of any alcoholic beverages; but, Assignor hereby appoints Assignee as his agent for the sole purpose of filing an application for a permit for the sale of the alcoholic beverages in the Assignor's place of business and/or sale of alcoholic beverage license(s) (Assignee being vested with absolute discretion in regard thereto, and assuming no liability by reason thereof); and Assignor hereby assigns to Assignee all of the proceeds of such sale for the benefit of Assignor's creditors, generally in accordance with the terms of this Assignment.

CONFIDENTIAL

REARDEN_MOVA018493

5.  <u>Nature Of Assignment</u>.  This instrument transfers legal title and possession of all of Assignor's assets.  This Assignment constitutes a transfer of only those assets that can be transferred legally and does not constitute a transfer of property that it is illegal to transfer.  Assignee, in its own discretion, may determine whether to continue all or a part of the business operations of Assignor or to liquidate Assignor's assets.

6.  <u>Disposition Of Assets</u>.  Assignee, in its discretion, may sell and dispose of Assignor's assets upon such terms and conditions as it may see fit, at public or private sale, or otherwise.  Assignee shall not be personally liable in any manner in connection with the performance of its duties and obligations hereunder.  Assignee's obligations hereunder shall be in a representative capacity only as an Assignee for the general benefit of Assignor's creditors.  Assignee shall administer this estate to the best of its ability and it is expressly understood that Assignee, and its agents, servants or employees, shall be liable only for reasonable care and diligence in the administration of the Assignment Estate.  Assignee shall not be liable for any act or thing done by Assignee, its agents, servants, or employees in good faith in connection herewith.  Assignee is not liable or responsible for any obligations of any nature whatsoever incurred at any time by Assignor, whether before or after the date of this Assignment.

7.  <u>Compensation Of Assignee</u>.  From the proceeds of sales, collections, operations or other sources, Assignee shall pay itself and reimburse all of its charges and expenses, together with its own reasonable remuneration and fee.  The Assignee's remuneration and fee shall be equal to $50,000.00 (Fifty Thousand dollars), plus three percent (3%) of the gross proceeds in excess of $1,000,000.00 received by the Assignment Estate.  For the purpose of determining the Assignee's remuneration and fees, "gross proceeds" are defined as all proceeds realized from sales of assets, collections, recovery on litigated claims, operations, or any other sources, pertaining to the assets and property of Assignor covered by this Assignment, whether or not such proceeds are received or handled by Assignee.  Assignee may also pay from the proceeds resulting from the sale, disposition or other liquidation of Assignor's assets, reasonable remuneration to its agents and its attorneys and may pay a reasonable fee to Assignor's attorneys for services related to the Assignment.  Assignee may also pay from the proceeds resulting from the sale, disposition or other liquidation of Assignor's assets, the costs and expenses incurred by any creditor who may have levied an attachment or other lien on any assets of the Assignor.  All of the aforementioned amounts are to be determined at Assignee's sole discretion and judgment.

8.  <u>Powers And Duties Of Assignee</u>.  Assignee may compromise claims, complete or reject Assignor's executory contracts, discharge, at its option, any liens on the assets covered by this Assignment and any indebtedness that, under law, is entitled to priority of payment.  Assignee shall have the power to open bank accounts in the name of Assignee or its nominees and deposit assigned assets or proceeds thereof in such bank accounts and draw checks thereon, borrow money, hypothecate and pledge the assets, and to do all matters and things that Assignor could have done prior to this Assignment.  Assignee shall have the power to employ attorneys, accountants and any other additional personnel to whatever extent may be necessary to administer the Assignment Estate and to assist in the preparation and filing of any and all state, county, local or Federal tax returns as required.  Any act or thing done by Assignee hereunder shall bind the Assignment Estate and Assignee only in its capacity as Assignee for the benefit of creditors.  Assignee shall have the right to sue as the successor of Assignor or Assignee is hereby

CONFIDENTIAL                                                        REARDEN_MOVA018494

given the right and power to institute and prosecute legal proceedings in the name of Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions. Assignee is hereby authorized and has the right to defend all actions instituted against the Assignor and to appear on behalf of the Assignor in all proceedings (legal or otherwise) in which Assignor is a party. Assignor does hereby appoint Assignee as Assignor's attorney-in-fact, with full power to act for and in the place of Assignor in such actions or proceedings or in any other matters, including the right to verify, on behalf of Assignor, and with respect to all documents of any nature whatsoever, including all pleadings which are part of any legal proceedings. Assignor does hereby grant to Assignee the right to act for, and in the place of, Assignor in any type of proceeding under title 11 of the United States Code, Sections 101 et seq. (the "Bankruptcy Code"), including the right to defend any petitions or actions filed against Assignor under the Bankruptcy Code.

9.    <u>Assignor's Duties As To Non Assignable Tax Or Other Refund Claims</u>.    Assignor agrees, to the extent that any tax or other refund claim is not assignable, to make any and all claims for refund of taxes or any other money due, from any governmental agency, for tax refunds, or otherwise, and to forthwith upon receipt of any such refunds, pay them over to Assignee, and hereby empowers Assignee, as attorney-in-fact of Assignor, to make all claims for refunds which may be made by an attorney-in-fact.

10.    <u>Distribution To Creditors</u>. Assignee shall apply the net proceeds arising from or related to the liquidation of the Assignment Estate, in the following priority as to amounts only and not time of distributions as follows:

A.  First, to deduct all sums which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under law is entitled to priority of payment and to reimburse Assignee as to all costs advanced by the Assignee or any third party for the preservation of the Assignment Estate's assets, including the maintenance and insurance of said assets and, the expenses of any operation.

B.  Second, all reasonable costs and expenses incidental to the administration of the Assignment Estate, including the payment of the remuneration and fee to the Assignee as set forth above and the payment of attorneys for the Assignee, accountants to the Assignee, attorneys to the Assignor for services related to the making and administration of the general assignment and any other professionals the Assignee deems necessary to properly administer the Assignment Estate.

C.  Third, all Federal taxes of any nature whatsoever owing as of the date of this Assignment, or such claim of any Federal governmental agency as defined under 31 U.S.C. §3713, including but not limited to, Federal withholding taxes, Federal unemployment taxes and any other Federal income, excise, property and employment taxes.



CONFIDENTIAL                                                        REARDEN_MOVA018495

D. Fourth, all monies due employees of the Assignor entitled to priority as defined under California Code of Civil Procedure §1204 and §1204.5 up to the statutory maximum.

E. Fifth, all state, county and municipality taxes of any nature whatsoever owing as of the date of this Assignment, including but not limited to employment, property and income taxes.

F. Sixth, with the exception of those classes set forth above, all distributions to other creditors shall be, within each class, pro rata in accordance with the terms of each creditor's indebtedness, until all such debts are paid in full. The Assignee may, but is not required to, make interim distributions whenever the Assignee has accumulated sufficient funds to enable it to make a reasonable distribution.

G. Seventh, any monies unclaimed by creditors 90 days after the final distribution to unsecured creditors, if any, or the termination of the administration of the Assignment Estate by the Assignee, shall be re-distributed, pro rata, to all known unsecured creditors, being those creditors who cashed their respective dividend checks from the Assignment Estate, provided any such distribution exceeds One Thousand Dollars ($1,000.00).

H. Eighth, if any undistributed dividends to creditors, or any reserve of other funds, shall remain unclaimed for a period of one year after issuance of dividend checks by Assignee, or the termination of the administration of the Assignment Estate by the Assignee, then the same shall become the property of the Assignee and shall be used to supplement the Assignee's fees for services administering this Assignment.

11.    <u>Right To Withhold Payment Of Contested Claims</u>. In the event that the Assignee contests the validity of a Claim,[1] falling within any of the classifications set forth in paragraph 10 above,  the Assignee may withhold the pro rata distribution (whether interim or final) to which the holder of such contested Claim would otherwise be entitled to receive until the allowance of the contested claim is determined by a Court of competent jurisdiction or by agreement with the Assignee.

12.    <u>Definition Of Transaction</u>.  It is agreed and understood that this transaction is a general assignment for the benefit of all of Assignor's creditors; and that this is a "general assignment for the benefit of creditors," as set forth in, and defined in the California *Code of Civil Procedure, Section 493.010* , and all other laws of the State of California pertaining thereto. This general assignment for the benefit of creditors (1) does constitute an assignment to the Assignee of all assets of Assignor which are transferable and not exempt from enforcement of a

---

[1]    The term "Claim" for the purposes of this agreement shall mean a right to payment as defined in Section 101(5) of Title 11 of the United States Code and the federal case law construing that statute.

CONFIDENTIAL                                                                REARDEN_MOVA018496

money judgment; (2) is an assignment for the benefit of all of the creditors of the Assignor, and (3) does not create a preference of one creditor or class of creditors over any other creditor or class of creditors.

     13.   <u>Entire Agreement</u>.  This Assignment supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof.

     14.   <u>Headings</u>.  The headings used in this Assignment have been inserted for convenience of reference only and do not define or limit the provisions hereof.

     15.   <u>Invalid Provisions.</u>  If any provision of this Assignment is held to be illegal, invalid or unenforceable under any present or future law, and if the rights or obligations of any party hereto under this Assignment will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Assignment will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof and (c) the remaining provisions of this Assignment will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

     16.   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the Laws of the State of California applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

     17.   <u>Counterparts</u>.  This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

ACCEPTED BY ASSIGNEE on ___August 17, 2012___ at 12:15 p.m.

                    "Assignor"

                    OnLive, Inc.,
                    a Delaware corporation

                    By: _____

                    Stephen G. Perlman

CONFIDENTIAL                    REARDEN_MOVA018497

"Assignee"

INSOLVENCY SERVICES GROUP, INC.,
a California corporation

By: _____
        Joel B. Weinberg, President

CONFIDENTIAL                                                    REARDEN_MOVA018498

# SCHEDULE A

CONFIDENTIAL

REARDEN_MOVA018499

SCHEDULE A

PURCHASED ASSETS AND ASSUMED LIABILITIES AND CONTRACTS

I.      Purchased Assets shall include the following:

A.      The "*Assignment Date Purchased Assets*" include, without limitation, all of Seller's right, title and interest in and to the following:

(a)      all machinery, equipment, furniture, fixtures, tools, tooling, packaging, hardware and all other tangible assets, including without limitation all motor vehicles, and other certificate of title goods, wherever located (the "*Equipment*");

(b)      all of the following (collectively, "*Intellectual Property*"):

(i)      all patents and patent applications and all patent rights with respect thereto throughout the world, including without limitation all license royalties, foreign filing rights, and rights to extend such patents and patent rights, and all rights in all patentable inventions, and to file applications for patent under federal patent law or under the laws or regulations of any foreign country;

(ii)      all copyrights (whether or not registered with the United States Copyright Office), and all applications for copyright registration (including without limitation, applications for copyright registrations of derivative works and compilations), all license royalties, foreign filing rights, and extension rights;

(iii)      all trademarks and rights and interests which are capable of being protected as trademarks (including without limitation trademarks, service marks, designs, logos, indicia, tradenames, corporate names, company names, business names, fictitious business names, trade styles, and other source or business identifiers, and the goodwill related thereto and represented thereby, and applications pertaining thereto, and all rights to register trademark claims under any state or federal trademark law or regulation of any foreign country, and to apply for, renew, and extend trademark registrations and trademark rights;

(iv)      all computer programs, software, source codes, object codes, data bases, processes and trade secrets and all other intellectual property in which Assignor now has or hereafter creates or acquires any interest;

(v)      all mask works, mask work registrations and mask work applications, and all other rights relating to semiconductor design and topography;

(vi)      all industrial designs, industrial models, utility models, certificates of invention and other indices of invention ownership, and any related registrations and applications;

                                          REARDEN_MOVA018500

(vii)    all databases and data collections and all rights in the same;

(viii)    all rights of paternity, integrity, disclosure, and withdrawal, and any other rights that may be known or referred to as "moral rights," in any of the foregoing;

(ix)    all tangible embodiments of any of the foregoing, in any form and in any media, in the possession of Assignor (or other persons engaged or retained by the Assignor);

(x)    all applications for any of the foregoing and all licenses with respect to any of the foregoing, and all versions, releases, upgrades, derivatives, enhancements and improvements of any of the foregoing; and

(xi)    all statutory, contractual and other claims, demands, and causes of action for royalties, fees, or other income from, or infringement, misappropriation or violation of, any of the foregoing, and all of the proceeds from the foregoing that are accrued and unpaid as of, and/or accruing after, the Closing, and all other proceeds with respect to any of the foregoing;

(c)    all general intangibles (in addition to the Intellectual Property), including without limitation, all customer lists, telephone numbers, processes, trade secrets, good will, names, business identifiers, internet domains and URLs, domain names and software;

(d)    all inventory, goods held for sale or lease or to be furnished under contracts for service, or goods so leased or furnished, raw materials, component parts, work in process and other materials used or consumed in Assignor's business, wherever located, and all products thereof, whether in the possession of Assignor, any warehousemen, any bailee or any other person, or in process of delivery, and whether located at Assignor's places of business or elsewhere ("*Inventories*");

(e)    all accounts receivable, general intangibles, deposits, all refunds, prepaid items, refunds, unbilled costs and fees, rights of set-off, promissory notes and other obligations of any kind payable to Assignor, and other receivables of any kind, and all rights arising under any contracts and agreement giving rise to any of the foregoing, arising from or in any way related to the sale or other disposition of any of the Inventories;

(f)    all of the following wherever located and whether in paper, electronic or other form to the extent they relate to any or all of the Purchased Assets: customer, supplier and accounting records, catalogues and sales literature, marketing material (including design, graphics, and artwork), forms, technical, production and customer manuals, correspondence, production records, human resources records, financial statements and information, and any other files, records, or information possessed by Assignor;

A-3

REARDEN_MOVA018501

(g)    all rights and obligations (but no liabilities other than the Assumed Liabilities) under all written or oral agreements of any kind and other documents, commitments, arrangements, undertakings, or authorizations;

(h)    all rights and obligations (but no liabilities other than Assumed Liabilities) under all governmental licenses, permits or approvals;

(i)    all equity interests and other investment property, including without limitation any security, whether certificated or uncertificated, security entitlement, securities account, including without limitation all membership interests and other equity interests in any and all subsidiaries;

(j)    all commercial tort and other business related claims and causes of action; and

(k)    all other tangible and intangible personal property wherever located (other than the Excluded Assets) to the extent used by Assignor in any way in connection with its Business or any or all of the Purchased Assets, including all goodwill associated with any of the foregoing.

B.    In addition, Purchased Assets shall include the following "*Post Closing Date Purchased Assets*" from and after written acceptance thereof, so long as written notice of acceptance thereof is timely delivered as provided below:

(a)    *Lytton Premises Lease.*  All of Assignor's right, title and interest under the Lytton Premises Lease, so long as written notice of acceptance thereof from Buyer is received by Seller within 90 days after the Closing Date.

(b)    *Excluded Equipment.*  All of Assignor's right, title and interest with respect to any Excluded Equipment, so long as written notice of acceptance thereof by Buyer, specifying the specific Equipment Lease thereof is received by Seller within 45 days after the Closing Date.

II.    Assumed Liabilities shall include the following:

(a)    The customer deposits as described in Section 1.4(j)

(b)    Those Contracts and related Liabilities integral to the operation of the Business as more particularly designated by Buyer within 30 days after the Closing Date as provided in Section 1.4(f).

A-4

# SCHEDULE B

CONFIDENTIAL

REARDEN_MOVA018503

## SCHEDULE B

### EXCLUDED ASSETS

**Excluded Assets shall include the following:**

1.  *Excluded Assets*.  Notwithstanding the foregoing, but subject to Section 1.2(b) of the Agreement, the following assets are excluded from the Assignment Date Purchased Assets and are to be retained by Seller as of the Closing (collectively, the "*Excluded Assets*"):

    (a)  *Corporate Documents*.  Originals of Assignor's corporate seals, certificate of incorporation, bylaws, minute books, stock books, tax returns, and similar corporate records having to do with the corporate organization of Assignor, and copies of all financial statements and financial records;

    (b)  *Employee Plans and Deposits*.  Any right or interest of Assignor in, and all assets of, any Employee Benefit Plan, and any and all deposits, refunds and prepayments with respect to any liability of Assignor for workers' compensation claims or workers' compensation insurance, and all other insurance or utility deposits, refunds and prepayments (other than the Credit Card Merchant Account Deposits).

    (c)  *Preferences*.  All statutory preference, fraudulent transfer and other avoidance claims, including any claims arising as a matter of law as a result of the Assignor's General Assignment;.

    (d)  *Cash*.  All cash and cash equivalents, including all funds in deposit accounts.

    (e)  *Letter of Credit and Deposit*.  The Lytton Letter of Credit, including any cash security with respect to Assignor's reimbursement obligations thereunder.

    (f)  *Lytton Premises Leases*.  Subject to Sections 1.2(b) and 1.4(c), any interest of Assignor under the Lytton Premises Lease.

    (g)  *Excluded Equipment*.  Subject to Sections 1.2 (b) and 1.4(h), any Excluded Equipment.

    (h)  *Restricted Licenses*.  Any contract right or license with respect to Intellectual Property if such grant causes a default thereunder that either entitles the counterparty under such contract or license to exercise the right, enforceable under applicable law, to terminate Seller's (or Assignor's) rights under or with respect to any such contract or license and such third party has exercised such right of termination, or results in the automatic termination, enforceable under applicable law, of Seller's (or Assignor's) rights under or with respect to such contract or license.

    (i)  Where applicable, proceeds of any of the foregoing.

CONFIDENTIAL

# SCHEDULE 1.2(B)

CONFIDENTIAL

SCHEDULE 1.2(B)

UCC SEARCH REPORT

[see attached]

CONFIDENTIAL

**CORPORATION SERVICE COMPANY**
www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| | | | |
|---|---|---|---|
| Matter# | N/A-DT | Order# | 310097-1 |
| Project Id : | | Order Date | 08/10/2012 |
| Additional Reference : | NOT PROVIDED | | |

| | |
|---|---|
| Subject: | ONLIVE, INC. |
| Jurisdiction: | DE - SECRETARY OF STATE |
| Request For: | UCC Debtor Search |
| Result: | Records found |
| Thru Date: | July 25, 2012 |
| No. of findings: | 39 |
| Original UCC Filings: | 31 |
| Amendments: | 0 |
| Continuations: | 0 |
| Assignments: | 7 |
| Releases: | 0 |
| Corrections: | 0 |
| Terminations: | 1 |

Ordered by JOSEPH LANDWEBER at CHAPMAN AND CUTLER

Thank you for using CSC. For real-time 24 hour access to the status of any order placed with CSC, access our website at www.cscglobal.com.

If you have any questions concerning this order or CSCGlobal, please feel free to contact us.

Krista Swenson
knigherb@cscinfo.com

**Corporation Service Company(R) Terms and Conditions**
You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above manner is a violation of the Fair Credit Reporting Act.

REARDEN_MOVA018507

**CORPORATION SERVICE COMPANY**
www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| | |
|---|---|
| Matter#   N/A-DT | Order#   310097-1 |
| Project Id : | Order Date   08/10/2012 |
| Additional Reference :  NOT PROVIDED | |

| | |
|---|---|
| Subject: | **ONLIVE, INC.** |
| Jurisdiction: | **DE - SECRETARY OF STATE** |
| Request for: | **UCC Debtor Search** |
| Result: | **Records found** |

| | |
|---|---|
| File Type: | Original |
| File Number: | 82216149 |
| File Date : | 06/27/2008 |
| Current Secured Party of Record: | RELATIONAL, LLC |

| | |
|---|---|
| File Type: | Original |
| File Number: | 92567904 |
| File Date : | 08/11/2009 |
| Current Secured Party of Record: | NFS LEASING INC. ET AL |

| | |
|---|---|
| File Type: | Assignment |
| File Number: | 94046659 |
| File Date : | 12/07/2009 |
| Original File Number: | 92567904 |

| | |
|---|---|
| File Type: | Assignment |
| File Number: | 94098817 |
| File Date : | 12/09/2009 |
| Original File Number: | 92567904 |

| | |
|---|---|
| File Type: | Assignment |
| File Number: | 01420615 |
| File Date : | 04/12/2010 |
| Original File Number: | 92567904 |

| | |
|---|---|
| File Type: | Assignment |
| File Number: | 01425671 |
| File Date : | 04/13/2010 |
| Original File Number: | 92567904 |

REARDEN_MOVA018508

**CORPORATION SERVICE COMPANY**
www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| File Type: | Termination |
| File Number: | 20228157 |
| File Date : | 01/19/2012 |
| Original File Number: | 92567904 |

| File Type: | Original |
| File Number: | 92579743 |
| File Date : | 08/11/2009 |
| Current Secured Party of Record: | DATA SALES CO., INC. |

| File Type: | Original |
| File Number: | 93701650 |
| File Date : | 11/18/2009 |
| Current Secured Party of Record: | DATA SALES CO., INC. |

| File Type: | Original |
| File Number: | 93767305 |
| File Date : | 11/24/2009 |
| Current Secured Party of Record: | NAUSET LIGHT LEASE FINANCE, LLC ET AL |

| File Type: | Assignment |
| File Number: | 01534746 |
| File Date : | 05/03/2010 |
| Original File Number: | 93767305 |

| File Type: | Original |
| File Number: | 93819239 |
| File Date : | 12/01/2009 |
| Current Secured Party of Record: | NAUSET LIGHT LEASE FINANCE, LLC ET AL |

| File Type: | Assignment |
| File Number: | 01539596 |
| File Date : | 05/03/2010 |
| Original File Number: | 93819239 |

| File Type: | Original |
| File Number: | 93860209 |
| File Date : | 12/03/2009 |
| Current Secured Party of Record: | NAUSET LIGHT LEASE FINANCE, LLC ET AL |

CONFIDENTIAL

**CORPORATION SERVICE COMPANY**

www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| | |
|---|---|
| **File Type:** | Assignment |
| **File Number:** | 01539810 |
| **File Date :** | 05/03/2010 |
| **Original File Number:** | 93860209 |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 94083363 |
| **File Date :** | 12/21/2009 |
| **Current Secured Party of Record:** | DATA SALES CO., INC. |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 00962179 |
| **File Date :** | 03/19/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 00986301 |
| **File Date :** | 03/23/2010 |
| **Current Secured Party of Record:** | DATA SALES CO., INC. |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 01065147 |
| **File Date :** | 03/29/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 01134141 |
| **File Date :** | 04/02/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 01218787 |
| **File Date :** | 04/08/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 01542988 |
| **File Date :** | 05/03/2010 |
| **Current Secured Party of Record:** | DATA SALES CO., INC. |

CONFIDENTIAL

**CORPORATION SERVICE COMPANY**

www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 01709520 |
| **File Date :** | 05/17/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 01709983 |
| **File Date :** | 05/17/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 02137523 |
| **File Date :** | 06/18/2010 |
| **Current Secured Party of Record:** | TAMCO FINANCIAL SERVICES, LLC |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 02167223 |
| **File Date :** | 06/22/2010 |
| **Current Secured Party of Record:** | DATA SALES CO., INC. |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 02742371 |
| **File Date :** | 08/06/2010 |
| **Current Secured Party of Record:** | DATA SALES CO., INC. |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 03094152 |
| **File Date :** | 09/03/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 04390922 |
| **File Date :** | 12/13/2010 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 10003106 |
| **File Date :** | 01/03/2011 |
| **Current Secured Party of Record:** | NFS LEASING, INC. ET AL |

**CORPORATION SERVICE COMPANY**

www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| | |
|---|---|
| File Type: | Original |
| File Number: | 10172414 |
| File Date : | 01/17/2011 |
| Current Secured Party of Record: | NFS LEASING, INC. ET AL |

| | |
|---|---|
| File Type: | Original |
| File Number: | 10421340 |
| File Date : | 02/04/2011 |
| Current Secured Party of Record: | NFS LEASING, INC. |

| | |
|---|---|
| File Type: | Original |
| File Number: | 11275141 |
| File Date : | 04/06/2011 |
| Current Secured Party of Record: | NFS LEASING, INC. |

| | |
|---|---|
| File Type: | Original |
| File Number: | 11394546 |
| File Date : | 04/13/2011 |
| Current Secured Party of Record: | NFS LEASING, INC. ET AL |

| | |
|---|---|
| File Type: | Original |
| File Number: | 12958059 |
| File Date : | 08/01/2011 |
| Current Secured Party of Record: | DATA SALES CO., INC. |

| | |
|---|---|
| File Type: | Original |
| File Number: | 13342816 |
| File Date : | 08/29/2011 |
| Current Secured Party of Record: | PEOPLE'S UNITED BANK ET AL |

| | |
|---|---|
| File Type: | Original |
| File Number: | 14114149 |
| File Date : | 10/25/2011 |
| Current Secured Party of Record: | PEOPLE'S UNITED BANK ET AL |

| | |
|---|---|
| File Type: | Original |
| File Number: | 14384601 |
| File Date : | 11/15/2011 |
| Current Secured Party of Record: | PEOPLE'S UNITED BANK ET AL |

**CORPORATION SERVICE COMPANY**
www.cscglobal.com

CSC- Sacramento
Suite 100
2730 Gateway Oaks Drive
Sacramento, CA 95833
800-222-2122
916-563-2121 (Fax)

| | |
|---|---|
| **File Type:** | Original |
| **File Number:** | 20287286 |
| **File Date :** | 01/24/2012 |
| **Current Secured Party of Record:** | DATA SALES CO., INC. |

Ordered by JOSEPH LANDWEBER at CHAPMAN AND CUTLER

Thank you for using CSC. For real-time 24 hour access to the status of any order placed with CSC, access our website at www.cscglobal.com.

If you have any questions concerning this order or CSCGlobal, please feel free to contact us.

Krista Swenson
knigherb@cscinfo.com

**Corporation Service Company(R) Terms and Conditions**
You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above manner is a violation of the Fair Credit Reporting Act.

REARDEN_MOVA018513



*PAGE     1*

*The First State*

CERTIFICATE

SEARCHED AUGUST 13, 2012, AT  8:34 A.M.
FOR DEBTOR "ONLIVE, INC."

1 OF   31   FINANCING STATEMENT              82216149
         EXPIRATION DATE: JUNE 27, 2013
DEBTOR: ONLIVE, INC.
         181 LYTTON AVENUE                   ADDED 06-27-08
         PALO ALTO              CA  94301
SECURED: RELATIONAL, LLC
         3701 ALGONQUIN ROAD                 ADDED 06-27-08
         ROLLING MEADOWS        IL  60008
         F I L I N G   H I S T O R Y
82216149  FILED 06-27-08   AT  4:06 P.M.  FINANCING STATEMENT

2 OF   31   FINANCING STATEMENT              92567904
         EXPIRATION DATE: AUGUST 11, 2014
DEBTOR: ONLIVE, INC.
         181 LYTTON AVENUE                   ADDED 08-11-09
         PALO ALTO              CA  94301
SECURED: DELL FINANCIAL SERVICES L.L.C.
         12234 N. IH-35 BLDG B               ADDED 08-11-09
         AUSTIN                 TX  78753
SECURED: NFS LEASING, INC.
         900 CUMMINGS CENTER,                ADDED 12-07-09
         STE 309-V
         BEVERLY                MA  01915
SECURED: NFS LEASING INC.
         900 CUMMINGS CENTER, STE 309-V      ADDED 12-09-09
         BEVERLY                MA  01915
SECURED: NFS LEASING INC.
         900 CUMMINGS CENTER, STE 309-V      ADDED 04-12-10
         BEVERLY                MA  01915
SECURED: NFS LEASING INC.
         900 CUMMINGS CENTER, STE 309-V      ADDED 04-13-10
         BEVERLY                MA  01915
         F I L I N G   H I S T O R Y
92567904  FILED 08-11-09   AT 10:43 A.M.  FINANCING STATEMENT
94046659  FILED 12-07-09   AT 11:20 A.M.  ASSIGNMENT

*20123108406UCXL*

*120927961*

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 9774492

DATE: 08-13-12

CONFIDENTIAL                                    REARDEN_MOVA018514

# Delaware

### The First State

```
94098817   FILED 12-09-09    AT 11:40 A.M.   ASSIGNMENT
01420615   FILED 04-12-10    AT 11:00 A.M.   ASSIGNMENT
01425671   FILED 04-13-10    AT 10:26 A.M.   ASSIGNMENT
20228157   FILED 01-19-12    AT 10:35 A.M.   TERMINATION

    3 OF    31    LEASE                          92579743
            EXPIRATION DATE: AUGUST 11, 2014
  DEBTOR: ONLIVE, INC.
          181 LYTTON AVENUE                  ADDED 08-11-09
          PALO ALTO                CA  94301
SECURED: DATA SALES CO., INC.
          3450 W. BURNSVILLE PKWY.            ADDED 08-11-09
          BURNSVILLE               MN  55337
          F I L I N G   H I S T O R Y
92579743   FILED 08-11-09    AT  5:03 P.M.   LEASE

    4 OF    31    LEASE                          93701650
            EXPIRATION DATE: NOVEMBER 18, 2014
  DEBTOR: ONLIVE, INC.
          181 LYTTON AVENUE                  ADDED 11-18-09
          PALO ALTO                CA  94301
SECURED: DATA SALES CO., INC.
          3450 W. BURNSVILLE PKWY.            ADDED 11-18-09
          BURNSVILLE               MN  55337
          F I L I N G   H I S T O R Y
93701650   FILED 11-18-09    AT 12:51 P.M.   LEASE

    5 OF    31    LEASE                          93767305
            EXPIRATION DATE: NOVEMBER 24, 2014
  DEBTOR: ONLIVE, INC.
          181 LYTTON AVE                     ADDED 11-24-09
          PALO ALTO                CA  94301
SECURED: DANVERSBANK
          ONE CONANT ST                      ADDED 11-24-09
          DANVERS                  MA  01923
SECURED: NFS LEASING, INC.
          900 CUMMINGS CENTER                ADDED 11-24-09
          SUITE 309-V
          BEVERLY                  MA  01915   REMOVED 05-03-10
SECURED: NAUSET LIGHT LEASE FINANCE, LLC
```

Jeffrey W. Bullock, Secretary of State

20123108406UCXL

120927961

AUTHENTICATION: 9774492

DATE: 08-13-12

REARDEN_MOVA018515

# Delaware

PAGE   3

### The First State

```
        222 BERKELEY ST.                        ADDED 05-03-10
        BOSTON                    MA   02116
            F I L I N G    H I S T O R Y
93767305  FILED 11-24-09   AT 10:40 A.M.  LEASE
01534746  FILED 05-03-10   AT 12:28 P.M.  ASSIGNMENT

   6 OF   31   LEASE                         93819239
        EXPIRATION DATE: DECEMBER 1, 2014
DEBTOR: ONLIVE, INC.
        181 LYTTON AVE                       ADDED 12-01-09
        PALO ALTO             CA   94301
SECURED: DANVERSBANK
        ONE CONANT ST                        ADDED 12-01-09
        DANVERS               MA   01923
SECURED: NFS LEASING, INC.
        900 CUMMINGS CENTER                  ADDED 12-01-09
        SUITE 309-V
        BEVERLY               MA   01915   REMOVED 05-03-10
SECURED: NAUSET LIGHT LEASE FINANCE, LLC
        222 BERKELEY ST.                     ADDED 05-03-10
        BOSTON                MA   02116
            F I L I N G    H I S T O R Y
93819239  FILED 12-01-09   AT 10:40 A.M.  LEASE
01539596  FILED 05-03-10   AT  2:42 P.M.  ASSIGNMENT

   7 OF   31   LEASE                         93860209
        EXPIRATION DATE: DECEMBER 3, 2014
DEBTOR: ONLIVE, INC.
        181 LYTTON AVE                       ADDED 12-03-09
        PALO ALTO             CA   94301
SECURED: DANVERSBANK
        ONE CONANT ST                        ADDED 12-03-09
        DANVERS               MA   01923
SECURED: NFS LEASING, INC.
        900 CUMMINGS CENTER                  ADDED 12-03-09
        SUITE 309-V
        BEVERLY               MA   01915   REMOVED 05-03-10
SECURED: NAUSET LIGHT LEASE FINANCE, LLC
        222 BERKELEY ST.                     ADDED 05-03-10
        BOSTON                MA   02116
```

Jeffrey W. Bullock, Secretary of State

20123108406UCXL

120927961

AUTHENTICATION: 9774492

DATE: 08-13-12

CONFIDENTIAL                                    REARDEN_MOVA018516