**double negative** visual effects

77 shaftesbury avenue, london, united kingdom, w1d 5du
t: +44 (0)20 7534 4400  f: +44 (0)20 7534 4452  e: info@dneg.com

## fax cover sheet

To: Robin Fontaine
Fax: 001 ~~650 543 5595~~ 415 947 5598
Phone: 001 415 3703171
Re: JCOM

From: Fay McConkey
Date: 17/12/09
Pages: 13 (inclusive)
cc:

---

Hi Robin

Please find on the following sheets a signed agreement, a copy of our PO for the 10% deposit & a signed bid sheet.

We will send the deposit via wire transfer tomorrow.

Fay.

registered address: 77 shaftesbury avenue, london, w1d 5du  registered number: 3325701  vat registered number: 710 8532 58

United States District Court
Northern District of California
**DEFENDANT'S EXHIBIT 1242**
Case No. 4:17-cv-04006-JST
Date Entered _____
By _____
Deputy Clerk

EXHIBIT
D-1270
Huseby.com

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA106413

**double negative** visual effects
77 shaftesbury avenue, london w1d 5du
t: +44 (0)20 7534 4400  f: +44 (0)20 7534 4452  e: info@dneg.com

PO NUMBER: **18986**

DATE: 2/12/2009

## PURCHASE ORDER

**JCOM    John Carter of Mars**

ORDERED BY: Fay McConkey
DEPARTMENT: PRODUCTION

**SUPPLIER DETAILS:**

| | |
|---|---|
| CONTACT: | Robin Fontaine |
| COMPANY: | Mova |
| ADDRESS: | Contour Reality Capture |
| PHONE: | +1.415.370.3171 |
| FAX: | |
| ACCOUNT NO: | |
| PAYMENT: | Wire Transfer |

**SHIP TO:**

| | |
|---|---|
| NAME: | Fay McConkey |
| ADDRESS: | Double Negative<br>77 Shaftesbury Avenue<br>London<br>W1D 5DU |

**BILL TO:**

| | |
|---|---|
| NAME: | Accounts Department |
| ADDRESS: | Double Negative<br>77 Shaftesbury Avenue<br>London<br>W1D 5DU |

### PLEASE SUPPLY THE FOLLOWING GOODS OR SERVICES

DESCRIPTION

Mova Motion Capture Services - 10% Production cost DEPOSIT

**NO INVOICE WILL BE ACCEPTED UNLESS ABOVE ORDER NUMBER IS QUOTED**

APPROVED BY:   Fay McConkey

(SIGN HERE)
for and on behalf of **Double Negative**

| | |
|---|---:|
| PRICE: $ | 4,113.00 |
| VAT: $ | 0.00 |
| TOTAL: $ | 4,113.00 |

Registered Number: 3325701    Registered Address: 77 Shaftesbury Avenue  W1D 5DU  VAT Registered Number: 710 8532 58

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                REARDEN_MOVA106414



## CONTOUR
### REALITY CAPTURE

December 2, 2009

# Bid Sheet - Appendix B to Mova Motion Capture Services Agreement executed on _____.
## Client | Double Negative Visual Effects

**Project**  JCOM
**Project Parameters**
    Key contact                Faye McConkey
    # of performers            11
    Capture session date(s)    TBD, Jan. 11 - Jan 15, 2009 - 3 to 5 Days
    Location                   UK

**Deliverables**
    Single Frame Face Shapes   330       (average of 30 per character)

    Motion Shots
      Total # of seconds     0
      Total # of shots       0
      Average Shot Length    2 seconds

    Format                     Mesh with approximately 1500 - 2500 data points, Mova's topology, as Maya files. Color camera .bmp's for each shot and/or shape.

| Travel Estimate | | | | |
|---|---|---|---|---|
| The travel expenses below are estimates only and will be billed at cost, receipts provided. | | | | |
|  | Unit | Rate | Quantity | Total |
| Crew Airfare | Person | $ 2,000 | 3.0 | $ 6,000 |
| Hotel, per diem, ground transport | Day | $ 900 | 9.0 | $ 8,100 |
| Subtotal |  |  |  | $ 14,100 |
| Production Estimate | | | | |
|  | Unit | Rate | Quantity | Total |
| Project planning & mgt | Day | $ 1,342 | 2.0 | $ 2,684 |
| Transport Equipment | Flat | $ 2,500 | 1.0 | $ 2,500 |
| Travel Days | Day | $ 2,500 | 2.0 | $ 5,000 |
| Set-up Day | Day | $ 2,500 | 2.0 | $ 5,000 |
| Capture Session* | Day | $ 8,000 | 3.0 | $ 24,000 |
| Makeup Artist | Day | $ 650 | 3.0 | $ 1,950 |
| Subtotal |  |  |  | $ 41,134 |
| Data Processing Estimate | | | | |
|  | Unit | Rate | Quantity | Total |
| **Mesh Development** | Actor | $ 1,800 | 11.0 | $ 19,800 |
| **Data Processing - Shapes** | Shape | $ 130 | 330.0 | $ 42,900 |
| **Data Processing - Motion** |  |  |  |  |

Robin Fontaine
Producer
e: robin.fontaine@mova.com
c: +1.415.370.3171

1/2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    REARDEN_MOVA106415



REALITY CAPTURE

December 2, 2009

| | | | | | | |
|---|---|---|---|---|---|---|
| Mesh Fitting | Shot | $ | 50 | 0.0 | $ | - |
| Stabilization | Second | $ | 20 | 0.0 | $ | - |
| Vertex Tracking | Second | $ | 110 | 0.0 | $ | - |
| Hi Resolution Tracking | Second | $ | 20 | 0.0 | $ | - |
| **Color Lit Camera Sequences** | Shot/Shape | $ | 12 | 330.0 | $ | 3,960 |
| **Subtotal** | | | | | $ | 66,660 |
| **GRAND TOTAL** | | | | | $ | 121,894 |

*Overtime charges for this capture session will be billed at $1500/hr for the first two hours over 8 hours, and $2000/hr for every hour thereafter, billed in 6 minute increments.

This quote is based on estimates provided by Client.
ACTUALS WILL VARY BASED ON ACTUAL SERVICES PROVIDED.

Deposit required to secure capture date(s): 10% Production Costs ($4,113) due upon signing.

MOVA will invoice for Production and Travel Costs upon completion of Capture Session, for 1/2 of the estimated Data Processing costs upon delivery of first set of data, and will invoice for the remainder upon final delivery of data.

Accepted and Agreed:

Client: Double Negative Ltd

x _[signature]_
Name: FAY MCCONVEY
Title: VFX PRODUCER
Date: 17/12/09

MOVA LLC

x _____
Name: Stephen G. Perlman
Title: President
Date:

This Bid Sheet is subject to the terms and conditions set forth in the Mova Motion Capture Services Agreement between MOVA LLC and Client executed on _____.

Robin Fontaine
Producer
e: robin.fontaine@mova.com
c: +1.415.370.3171

2/2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                              REARDEN_MOVA106416



## Wire Transfer Instructions

All payments must be made in U.S. Dollars via wire transfer.

Bank: The First Republic Bank
2275 El Camino Real, Palo Alto, CA 94306
Tel # (650) 470-8809
Fax # (650) 470-8832

Checking Account No: 954 000 12338
Routing No # 321 081 669
Name on the Account: Mova, LLC

Robin Fontaine
Producer
e: robin.fontaine@mova.com
c: +1.415.370.3171

1/1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                        REARDEN_MOVA106417

**MOVA, LLC**
**181 Lytton Avenue**
**Palo Alto, CA 94301**

**MOTION CAPTURE SERVICES AGREEMENT**

    The Client identified below will engage MOVA, LLC ("MOVA") to provide limited, specified services for a defined period, as indicated below ("Services"). The general terms of the engagement are provided in the attached Appendix "A", entitled "MOVA Standard Terms and Conditions", and the Bid Sheet, which is Appendix B hereto, both of which are incorporated by reference (collectively, "Contract"). Other than as expressly set forth herein, no other terms apply to this engagement.

| | |
|---|---|
| Contract Date: | December 15, 2009 |
| Name of Client ("Client"): | Double Negative Visual Effects |
| Client Key Contact: | Fay McConkey |
| Client Contact Information: | Double Negative Visual Effects |
| | 77 Shaftesbury Avenue |
| | London,   United Kingdom   W1D 5DU |
| | City          State           Zip Code |
| | Telephone: +44 20 7534 4400 |
| | Facsimile: +44 20 7534 4452 |
| | Email: fay@dneg.com |
| | Cell Phone (if applicable): +44 7711 784436 |
| Client Employer Identification No.: | |
| MOVA Key Contact: | Robin Fontaine |
| MOVA Contact Information: | Telephone: 415-947-5557 |
| | Facsimile: 415-947-5598 |
| | Email: robin.fontaine@mova.com |
| | Cell Phone (if applicable): 415-370-3171 |
| MOVA Employer Identification No.: | 90-0182058 |
| Title of Production (hereinafter known as the "Production") | John Carter on Mars |

-1-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                         REARDEN_MOVA106418

| | |
|---|---|
| Deliverables: | Per Attached Bid Sheet, Appendix B |
| Deposit: | 10% of Production Costs due upon signing Agreement |
| Other Terms: | All payments specified on Bid Sheet must be made via wire transfer. |

Client agrees to hire MOVA, and MOVA agrees to provide the Services to Client, solely as Client's independent contractor on the terms provided in this Contract (including all of the terms in the attached Appendix "A" and "Appendix B") effective as of the Contract Date.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**MOVA, LLC**

Name: Steve Perlman

By: _____
           Signature

Its: President _____
           (Title)

**Client**

Name: FAY MCCONICEY

By: _____
           Signature

Its: VFX PRODUCER .
           (Title, if applicable)

D

-2-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA106419

APPENDIX "A"

MOVA STANDARD TERMS AND CONDITIONS

This Agreement is made as of the Contract Date by and between Client and MOVA in connection with the Services.

1. ENGAGEMENT/SERVICES. For good and valuable consideration set forth in the bid sheet, which is attached hereto as Appendix "B" and incorporated by reference ("**Bid Sheet**"), MOVA hereby agrees to furnish the Services on a non-exclusive basis in accordance with the terms hereof:

    1.1 *Bid Sheet*. MOVA hereby agrees to perform the Services and/or deliver the deliverable items (the "**Deliverable Items**") as are mutually agreed by the parties from time to time. Such Services, Deliverable Items, the dates/deadlines for their performance and delivery, and the compensation to be paid by Client therefor (along with any other relevant terms or conditions) are set forth in the Bid Sheet. Generally, the Services provided by MOVA are as follows: conducting motion capture sessions and/or the processing of motion capture data in accordance with the terms hereof.

    1.2 *Acceptance of Services and Deliverable Items*. After completion of any Services or delivery of any Deliverable Item, Client will have ten (10) days to examine and test the Deliverable Item to determine whether it conforms to the description of Deliverables set forth in the mutually agreed upon Bid Sheet. Client will notify MOVA of its acceptance or rejection of the Deliverable Item and, in the case of any rejection, will provide MOVA with a reasonably detailed list of deficiencies in the Deliverable Item and specify changes that will bring the Deliverable Item in conformance with the description in the Bid Sheet. If Client fails to notify MOVA of its acceptance or rejection within such 10-day period, the Deliverable Item shall be deemed accepted. In the case of a rejection, MOVA will use reasonable efforts to correct the deficiencies and will resubmit the Deliverable Item, as corrected, within fifteen (15) business days following the date of Client's provision of the detailed list of deficiencies. This procedure will continue in good faith until (i) the Deliverable Item conforms to the Specification; (ii) MOVA and Client mutually agree that MOVA will not complete the Deliverable Item and mutually agree on an adjustment to the terms of the Bid Sheet; or (iii) Client unilaterally notifies MOVA that Deliverable Item in accordance with the terms of the Bid Sheet. Notwithstanding anything to the contrary contained herein, MOVA will not be held responsible for delays in its scheduled deliverables or the completion of the Services that are due to delays caused by Client.

    1.3 *Change Orders*. Once the Services have commenced, Client may provide MOVA with written notice of any desired change to the Deliverables (a "**Change Order**"). Client and MOVA will seek to revise the Deliverable description to arrive at mutually agreeable Services and Deliverables in connection therewith. If Client and MOVA agree to a revised Deliverable description, MOVA and Client will negotiate revised compensation terms for Services and Deliverables and the Bid Sheet will be revised accordingly to reflect such terms. The Bid Sheet may be revised one or more times. Each time the Bid Sheet is revised to reflect a change in the Services, Client and MOVA will each sign a new Bid Sheet entitled "Amended Bid Sheet as of [date]". MOVA will not be obligated to provide any Services with respect to any requested change to the Deliverables until Client and MOVA have agreed on the revised Deliverables in a written amendment to the Bid Sheet.

    1.4 *Payments*. Client agrees to pay MOVA the sums set forth in the Bid Sheet relating to such Services and/or Deliverable Items in accordance with the payment schedule in the Bid Sheet. Client agrees to pay MOVA an additional charge equal to the lesser of 1% per month or the maximum rate allowed by law on all past due payments. Payment terms are Net 30 from the date of the Mova invoice unless otherwise specified in the Bid Sheet.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    REARDEN_MOVA106420

    1.5    *Withholding*. MOVA agrees that Client is not responsible for remittance of any taxes to any government based on the compensation paid to MOVA and/or its employees or subcontractors under this Agreement. Client agrees to take full responsibility and to hold MOVA harmless for all withholding and payroll taxes owed with respect to Client's employees and contractors, including actors, hired by Client for the Production.

2.    ASSIGNMENT.

    2.1    *Rights*. Upon acceptance and payment in full by Client and subject to Section 2.2 below, MOVA agrees to (i) sell, grant and assign to Client all of MOVA's right, title and interest in and to each Deliverable Item and the results and proceeds of the Services, and (ii) irrevocably transfer and assign to Client, and forever waive and agree never to assert, any and all moral rights that MOVA may have in each Deliverable Item and in the results and proceeds of the Services.

    2.2    *Technology Rights*. MOVA reserves all right, title and interest in any pre-existing MOVA technology and in any technology created or developed by MOVA in producing any Deliverable Items or rendering any Services covered under this Agreement which has any application in MOVA's business extending beyond the Deliverable Items (collectively, the "**MOVA Technology**"). Subject to Client's satisfaction of all of its obligations hereunder, MOVA grants Client a non-exclusive, license to utilize the components of MOVA Technology required for Client's commercial exploitation of the Deliverable Items.

3.    RELEASE FROM LIABILITY. Client hereby releases and discharges MOVA and MOVA's parent, affiliates, licensees, heirs, successors and assigns from all claims, liabilities, damages, losses, costs, expenses (including attorneys' fees), judgments and penalties for any loss or damage to any materials provided by Client which may occur or as a result of MOVA's rendition of the Services hereunder.

4.    REPRESENTATIONS AND WARRANTIES

    4.1    (a)    *MOVA's Representations*. MOVA makes the following representations and warranties to Client:

    (i)    Other than content and materials furnished by Client or Client's third-party contractors or content and material in the public domain, the Services and each of the Deliverable Items will be the original work of MOVA or properly licensed by MOVA for inclusion in the Deliverable Items and will not, to the best of MOVA's knowledge, infringe upon any copyright, trade secret, patent or other proprietary rights of others.

    (ii)    MOVA is the sole and exclusive owner of MOVA's contributions to the Deliverable Items, and to the results and proceeds of the Services, subject only to the rights herein assigned to Client.

    (iii)    Subject to Section 2.2 above, MOVA has not previously granted and will not grant any rights in MOVA's contributions to the Deliverable Items or the results and proceeds of the Services to any third party which are inconsistent with the rights assigned to Client herein.

    (iv)    MOVA has full power to enter into this Agreement, to carry out MOVA's obligations hereunder and to grant the rights herein granted to Client.

    (b)    *Client's Representations*. Client makes the following representations and warranties to MOVA:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    REARDEN_MOVA106421

       (i) The content and materials furnished by Client shall be solely the original work of Client or properly licensed by Client for inclusion in the Deliverable Items and will not, to the best of Client's knowledge, infringe upon any copyright, trade secret, patent or other proprietary rights of others.

       (ii) Client is the sole and exclusive owner of Client's contributions to Client's Deliverable Items.

       (iii) Client has the full power to enter into this Agreement, to carry out Client's obligations hereunder and to grant the rights herein granted to MOVA.

    4.2    *Indemnity*.

       (a) MOVA shall defend, indemnify and hold harmless Client, its officers, directors, employees, agents and representatives from and against any and all damages, costs, judgments, penalties and expenses of any kind (including reasonable legal fees and disbursements) which may be obtained against, imposed upon or suffered by any of them as a result of any breach by MOVA of any of MOVA's representations or warranties under this Agreement.

       (b) Client shall defend, indemnify and hold harmless MOVA, its officers, directors, employees, agents and representatives from and against any and all damages, costs, judgments, penalties and expenses of any kind (including reasonable legal fees and disbursements) which may be obtained against, imposed upon or suffered by any of them as a result of (i) any breach by Client of any of Client's representations and warranties under this Agreement, or (ii) any subsequent use of the Deliverable Items.

       (c) Each party (an "Indemnitor") shall defend and indemnify the other party and its employees, officers, directors and agents (the "Indemnitee") against all damages for bodily injury or death proximately caused by the Indemnitor in connection with the Services provided under this Agreement provided that (i) the Indemnitor receives prompt written notice of the claim from the Indemnitee under this Section, (ii) the Indemnitor has the right to control the defense of such claim and any related settlement negotiations, and (iii) the Indemnitee provides to the Indemnitor, at the Indemnitor's request and expense, with the assistance, information and authority necessary to perform the Indemnitor's obligations under this Section.

5.    TERMINATION.

    5.1    *Termination for Convenience*. Either party may terminate this Agreement for any reason or for no reason by giving seven (7) days prior written notice to the other party, without further liability of any kind to the other party, except that: (i) Client will pay MOVA outstanding amounts due pursuant to any Bid Sheet for the Services rendered and Deliverable Items provided prior to the time of such termination; and (ii) Client will reimburse MOVA for any expenses associated with preparation and set-up costs for scheduled Services, per the Bid Sheet, as well as deposits, committed contracts or other non-refundable payments made in connection with this Agreement. If MOVA terminates this Agreement prior to rendering the Services, then the Deposit shall be refunded to Client.

    5.2    *Termination for Breach*. In the event of a material breach by either party of a material provision hereof, which breach is not cured within seven (7) days after receipt of written notice of such breach by the other party, then the non-breaching party may immediately terminate this Agreement.

6.    RESCHEDULING.

    6.1    Client may reschedule the Services one time without incurring additional costs by providing at least seven (7) days prior written notice to MOVA. With each subsequent rescheduling of the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        REARDEN_MOVA106422

Services with at least seven (7) days prior written notice to MOVA, Client will forfeit the Deposit and will be required to renew the Deposit.

6.2     Each time Client reschedules the Services without providing at least seven (7) days written notice to MOVA, Client will reimburse MOVA for any expenses associated with the preparation and set-up costs for scheduled Services, per the Bid Sheet, as well as deposits or other non-refundable payments made in connection with this Agreement.

7.     LIMITATION ON LIABILITY. To the maximum extent permitted by applicable law, (i) neither party hereto will be liable for, or have any obligation to pay to the other, consequential damages and/or special damages in connection with any breach of this Agreement, all of which are expressly excluded and Client and MOVA each hereby waive any right to recover any such damages from the other, provided that the foregoing shall not be construed to limit the parties' respective indemnity obligations set forth under Section 4.2; and (ii) Client agrees that in no event shall MOVA be liable to Client for damages in connection with any breach of this Agreement hereunder in excess of the Service Fee set forth in the Bid Sheet and Client hereby waives its right to recover any damages in excess of such amount.

8.     PERMITTED PUBLICITY. MOVA may include the results of the Services provided hereunder in MOVA's portfolio, website, or in any other promotional materials or media to promote and publicize MOVA and/or solicit work from third parties. MOVA shall have the right to mention to third parties that it rendered the Services for promotional and publicity purposes and in order to solicit work from third parties.

9.     CREDIT. Client shall accord MOVA credit on all final versions of the Production as follows: Facial capture by Mova®. Client shall use commercially reasonable efforts to correct any failure to accord such credit on a prospective basis upon notice from MOVA specifying such failure.

10.     INDEPENDENT CONTRACTOR. The parties agree that the relationship between the parties is that of an independent contractor in the performance of the Services and nothing in this Agreement shall be construed to create a partnership, joint venture or employer-employee relationship. Neither party is the agent of the other party, and neither party is authorized to make any representation, contract, or commitment on behalf of the other party. Under no circumstances shall MOVA look to Client as an employer, or as a partner, agent or principal. Each party agrees to be responsible for its own acts and those of its subordinates, employees and subcontractors during the Term (including, but not limited to, any injuries or death resulting therefrom), subject to Section 4.2(c) above.

11.     INCOME TAX REPORTING. Each party will be solely responsible for all tax returns and payments required to be filed with or made to any federal, state or local tax authority with respect to the performance of the Services under this Agreement. Each party will abide by all Internal Revenue Service reporting requirements. Because each party is an independent contractor, there will be no withholding for social security, unemployment insurance or disability insurance contributions, or workers' compensation insurance obtained in connection with the Services. Each party agrees to accept exclusive liability for complying with all applicable state and federal laws governing self-employed persons, including obligations such as payment of taxes, social security, disability and other contributions in connection with this Agreement. Each party hereby agrees to indemnify and defend the other party against any and all such taxes or contributions, including penalties and interest.

12.     PROPRIETARY INFORMATION AND PRIVACY MATTERS; CONFLICTS. Client and MOVA agree to keep confidential and not to disclose or make any unauthorized use of the disclosing party's Proprietary Information (as defined below) without first obtaining the disclosing party's express written consent on a case-by-case basis. By way of illustration but not limitation, "Proprietary Information" includes: (a) trade secrets, inventions, ideas, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, techniques, story-lines,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA106423

production techniques, historical research, themes, titles, plots, characters, dialogue, materials and concepts (hereinafter collectively referred to as "Inventions"); (b) information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and Client s; (c) information regarding the skills and compensation of employees of MOVA; and (d) physical elements related to the Services, delivered or transmitted by Client to MOVA. Notwithstanding the other provisions of the Agreement, nothing received by the receiving party will be considered to be the disclosing party's Proprietary Information if: (i) it has been published or is otherwise readily available to the public other than by a breach of the Agreement; (ii) it has been rightfully received by the receiving party from a third party without confidential limitations; (iii) it has been independently developed for the receiving party by personnel or agents having no access to the disclosing party's Proprietary Information; or (iv) it was known to the receiving party prior to its first receipt of the information from the disclosing party. The receiving party's duty to not use and to maintain such Proprietary Information in confidence hereunder shall continue during the term hereof and for a period of five (5) years thereafter. The receiving party agrees to use Proprietary Information as authorized by the disclosing party and solely in connection with the performance of the Services and for no other purpose. In further consideration of this engagement: (i) the receiving party will keep all Proprietary Information furnished to the receiving party hereunder strictly confidential and the receiving party will not disclose the same to any third party or permit any third party to read or gain access to the Proprietary Information unless authorized in writing by the disclosing party (the words "third party" as used in this paragraph shall include, but not be limited to the media, friends, family and acquaintances of the receiving party, and the general public); (ii) the receiving party will make no copies of the Proprietary Information unless authorized in writing by the disclosing party; and (iii) the receiving party will promptly, upon the disclosing party's request, account in writing for all copies of the Proprietary Information made by or furnished to the receiving party. In the event that the disclosing party authorized the receiving party to furnish a copy of the Proprietary Information to any third party, the receiving party shall not do so until and unless the disclosing party advises the receiving party either (a) that such third party has signed a copy of the disclosing party's applicable confidentiality agreement or "limited use" letter drafted by the disclosing party; or (b) that the disclosing party has waived this requirement.

13. MISCELLANEOUS.

    13.1    Further Actions. Both parties agree to execute any additional documents and take such further action as they may consider reasonably necessary to carry out the purposes of the Agreement.

    13.2    Survival. The termination of the Agreement for any reason shall not terminate the obligations or liabilities of the parties under Sections 1.4, 2, 3, 4, 7, 8, 9, 10, 11, 12, and 13, which shall survive any such termination.

    13.3    Assignment. Neither party shall have the right to assign this Agreement, in whole or in part, to any third party.

    13.4    Collective Bargaining Agreement. Neither party is a member of any guild or union. It is understood that this Agreement and the parties' obligations hereunder shall not be subject to or rendered in accordance with the provisions of any collective bargaining agreement currently in effect.

    13.5    Notices. Payments and correspondence that any party hereto is required, or may desire, to serve upon any other party may be served by delivering same to the party personally or by depositing the same in the United States mail, first class postage pre-paid, or by sending the same by facsimile to the addresses set forth above, or to such other addresses as the parties may hereafter designate in writing. The date of such personal delivery or telecopying or the date three (3) days after the date of mailing shall be the date of the giving of such notice. A copy of such notices shall be sent to:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    REARDEN_MOVA106424

Mova, LLC
Attention: Eve Saltman, Legal Affairs
181 Lytton Avenue
Palo Alto, CA 94301
Fax: (650) 543-5595

    13.6    Dispute Resolution. Any controversy, claim or dispute arising out of or related to the Agreement or the interpretation, performance, or breach hereof, including but not limited to alleged violations of state or federal statutory or common law rights or duties, shall be resolved solely and exclusively by final and binding arbitration initiated and conducted according to the JAMS/Endispute Comprehensive Arbitration Rules and Procedures in effect as of the date hereof, including the Optional Appeal Procedure provided for in such rules. The arbitration shall be conducted in San Francisco County before a single neutral arbitrator and the members of any Appeal Panel shall be retired judges or justices of any California state or federal court.

    13.7    Miscellaneous. This Agreement shall be governed by, construed and enforced under the laws of the State of California. Nothing herein contained shall be construed to require the violation of any applicable law or collective bargaining agreement and whenever and wherever there is any conflict between any of the provisions of this Agreement and such law or collective bargaining agreement, the latter shall prevail, but in such event the provision of the Agreement affected shall be curtailed and limited only to the extent necessary to permit compliance with such law or collective bargaining agreement and if such law or collective bargaining agreement requires the payment of any additional compensation, it shall be at the minimum rate permitted thereby. This Agreement expresses the entire understanding between the parties, and supersedes any previous agreement, whether written or oral, between the parties. No waiver, alteration or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by duly authorized representatives of the parties hereto, and identified with the title, "Amendment to Agreement between Client and MOVA, LLC dated [Amendment Date]" Specifically, no oral or e-mail communication shall be considered a waiver, alteration, or modification of any of the provisions of this Agreement, regardless of its content. This Agreement may be executed in counterparts.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    REARDEN_MOVA106425