**MOVA, LLC**
**355 Bryant Street, Suite 110**
**San Francisco, CA 94107**

**MOTION CAPTURE SERVICES AGREEMENT**

Customer identified below will engage MOVA, LLC ("**MOVA**") to provide limited, specified services for a defined period, as indicated below ("**Services**"). The general terms of the engagement are provided in the attached Appendix "A", titled "MOVA Standard Terms and Conditions", which are incorporated by reference (collectively, "**Contract**"). Other than as expressly set forth herein, no other terms apply to this engagement.

| | |
|---|---|
| Contract Date: | April 17, 2007 |
| Name of Customer ("**Customer**"): | Incredible Productions LLC |
| Customer Key Contact ("**Customer Key Contact**"): | Paul Molles |
| Customer Contact Information: | Incredible Productions LLC |
| | 629 Eastern Ave., Suite B201 |
| | Toronto          ON          M4M1E4 |
| | City             State       Zip Code |
| | Canada |
| | Telephone: 416-645-8260 |
| | Facsimile: |
| | Email: paul.molles@mac.com |
| | Cell Phone (if applicable): |
| Customer Employer Identification No.: | |
| MOVA Key Contact: | Robin Fontaine |
| MOVA Contact Information: | Telephone: 415-947-5557 |
| | Facsimile: 415-947-5598 |
| | Email: robin.fontaine@mova.com |

-1-

United States District Court
Northern District of California
**DEFENDANT'S EXHIBIT 1244**
Case No. 4:17-cv-04006-JST
Date Entered _____
By _____
Deputy Clerk

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA036690

Cell Phone (if applicable): 415-370-3171

MOVA Employer Identification No.: 90-0182058

Title of Production (the "**Production**"): The Hulk

Credit: Facial Capture: Mova Contour ™ Reality Capture, subject to Section 8 below

Other Terms: n/a

   Customer agrees to hire MOVA, and MOVA agrees to provide the Services to Customer, solely as Customer's independent contractor upon the terms provided in this Contract (including all of the terms in the attached Appendix "A") effective as of the Contract Date.

   IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**MOVA, LLC**

Name: Steve Perlman

By: _____
    Signature

Its: President
   (Title)

**Customer**

Name: Tim Connors

By: _____
    Signature
   **Tim Connors**

Its: **EVP, Business Affairs & Operations**
   (Title, if applicable)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY   REARDEN_MOVA036691

APPENDIX "A"

MOVA STANDARD TERMS AND CONDITIONS

This Agreement is made as of the Contract Date by and between Customer and MOVA in connection with the Services.

1. ENGAGEMENT/SERVICES. For good and valuable consideration set forth in the bid sheet, which is attached hereto as Appendix "B" and incorporated by reference ("**Bid Sheet**"), MOVA hereby agrees to furnish the Services, as specified on the Bid Sheet, on a non-exclusive basis in accordance with the terms hereof:

    1.1 *Bid Sheet*. MOVA hereby agrees to perform the Services and/or deliver the deliverable items (the "**Deliverable Items**") as are mutually agreed by the parties from time to time, which Services, Deliverable Items, the dates/deadlines for their performance and delivery, and the compensation to be paid by Customer therefor (along with any other relevant terms or conditions) will be set forth in the Bid Sheet. The Services provided by MOVA will be as follows: conducting motion capture sessions and/or the processing of motion capture data in accordance with the terms hereof. Time is of the essence for delivery; however dates are based on the Deliverable Items on the Bid Sheet, and will be negotiated in conjunction with any change to Deliverable Items.

    1.2 *Acceptance of Services and Deliverable Items*. Customer shall retain all approvals and controls with respect to the Production. All work performed by MOVA will be of first class technical quality and suitable for use in the Production and will comply with the formats and creative direction required by Customer, and the quality of MOVA's work will be consistent with the segments of the Production produced by Customer. Without limiting the generality of the foregoing, Customer shall retain the right to determine whether or not MOVA has met Customer's technical and artistic standards. Customer will provide MOVA with a specification (the "**Specification**") which details the desired Services and/or Deliverable Items for a given production (the "**Production**"). MOVA and Customer will seek to refine the Specification to arrive at mutually agreeable Services and Deliverables. If Customer and MOVA come to a mutually agreeable Specification, MOVA and Customer will negotiate compensation terms for Services and Deliverables in the Specification and such terms will be set forth in the Bid Sheet. After completion of any Services or delivery of any Deliverable Item, Customer will have ten (10) business days to examine and test the Deliverable Item to determine whether it conforms to the Specification. Customer will notify MOVA of its acceptance or rejection of the Deliverable Item and, in the case of any rejection, will provide MOVA with a reasonably detailed list of deficiencies in the Deliverable Item and specify changes that will bring the Deliverable Item in conformance with the Specification. If Customer fails to notify MOVA of its acceptance or rejection within such 10-day period, the Deliverable Item shall be deemed accepted. In the case of a rejection, MOVA will use reasonable efforts to correct the deficiencies and will resubmit the Deliverable Item, as corrected, within fifteen (15) business days following the date of Customer's provision of the detailed list of deficiencies. This procedure will continue in good faith until (i) the Deliverable Item conforms to the Specification, as determined by Customer or Customer's designee; (ii) MOVA and Customer mutually agree that MOVA will not complete the Deliverable Item and mutually agree on an adjustment to the terms of the Bid Sheet; or (iii) Customer unilaterally notifies MOVA that MOVA will not complete the Deliverable Item, but will nonetheless compensate MOVA for the Deliverable Item in accordance with the terms of the Bid Sheet. Notwithstanding anything to the contrary contained herein, MOVA will not be held responsible for delays in its scheduled deliverables or the completion of the Services that are caused by delays by Customer. All approvals by Customer shall be in writing and exercised only

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    REARDEN_MOVA036692

by the Customer Key Contact (who is presently Paul Molles). MOVA shall hold and archive all results and proceeds of the Services solely in the name of Customer and deliver to Customer (upon payment of all sums accrued and payable to MOVA per the Bid Sheet) or destroy same upon Customer's written request.

1.3 *Change Orders*. Once the Services have commenced, Customer may provide MOVA with written notice of any desired change to the Specification (a "**Change Order**"). Customer and MOVA will seek to revise the Specification to arrive at mutually agreeable Services and Deliverables in connection therewith. If Customer and MOVA agree to a revised Specification, MOVA and Customer will negotiate revised compensation terms for Services and Deliverables in the Specification, and the Bid Sheet will be revised accordingly to reflect such terms. MOVA will not be obligated to provide any services with respect to any requested change to the Specification until Customer and MOVA have agreed on the revised Specification and Bid Sheet in writing. Any and all Change Orders and revisions to the Specification and/or Bid Sheet shall not be effective unless and until executed by both Customer Key Contact and Customer's Executive Vice President of Business Affairs and Operations (who is presently Tim Connors) as an amendment hereof.

1.4 *Payments*. Subject to MOVA's full performance of the services and its obligations hereunder and provided MOVA is not in breach or default of a material term or condition hereunder, Customer agrees to pay MOVA the sums set forth in the Bid Sheet relating to such Services and/or Deliverable Items in accordance with the payment schedule in the Bid Sheet. Payment terms are Net 30 unless otherwise specified in the Bid Sheet.

1.5 *Withholding*. MOVA agrees to take full responsibility and to hold Customer harmless for remittance of any taxes to any government based on the compensation paid to MOVA and/or its employees or subcontractors under this Agreement. Customer agrees to take full responsibility and to hold MOVA harmless for all withholding and payroll taxes owed with respect to Customer's employees and contractors, including actors, hired by Customer for the Production.

2. ASSIGNMENT.

2.1 *Rights*. Except for the MOVA Technology (defined in Section 2.2 below), MOVA agrees to (i) sell, grant and assign to Customer all of MOVA's right, title and interest in and to the results and proceeds of the Services (including, without limitation, any and all Deliverable Items) (collectively, the "**Work**"), and (ii) irrevocably transfer and assign to Customer, and forever waive and agree never to assert, any and all moral rights that MOVA may have in the Work. The Work in connection with the Production which MOVA acknowledges may have been or may be rendered in collaboration with others, shall be deemed a "work-made-for-hire" specially ordered or commissioned by Customer, and is the sole property of Customer for any and all purposes whatsoever. Notwithstanding the preceding sentence, MOVA hereby assigns and/or grants all rights, including all exclusive exploitation rights, of every kind and nature (including any and all copyrights and neighboring rights, to the extent such assignment is allowed by law) in and to the Work to Customer. All rights to the Work are owned by Customer solely and exclusively, for the duration of the rights in each country and area and space, in all languages, and throughout the universe. MOVA and Customer are aware and hereby acknowledge that new rights to the work may come into being and/or be recognized in the future, under the law and/or in equity (hereafter the "**New Exploitation Rights**"), and MOVA intends to and does hereby grant and convey to Customer any and all such New Exploitation Rights to the Work. MOVA and Customer are also aware and do hereby acknowledge that new (or changed) (1) technology, (2) uses, (3) media, (4) formats, (5) modes of transmission, and (6) methods of

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                      REARDEN_MOVA036693

distribution, dissemination, exhibition or performance (hereafter the "**New Exploitation Methods**") are being and will inevitably continue to be developed in the future, which would offer new opportunities for exploiting the Work. MOVA intends and does hereby grant and convey to Customer any and all rights to such New Exploitation Methods with respect to the Work. MOVA hereby agrees to execute any document Customer deems in its interest to confirm the existence of the preceding and to effectuate its purpose to convey such rights to Customer, including without limitation the New Exploitation Rights and any and all rights to the New Exploitation Methods. MOVA further hereby agrees that it will not seek (1) to challenge, through the courts, administrative governmental bodies, private organizations, or in any other manner the rights of Customer to exploit the Work by any means whatsoever, or (2) to thwart, hinder or subvert the intent of the grants and conveyances to Customer herein and/or the collection by Customer of any proceeds relating to the rights conveyed hereunder.

2.2   *Technology Rights*. MOVA reserves all right, title and interest in any pre-existing MOVA technology and in any technology created or developed by MOVA in producing any Deliverable Items or rendering any Services covered under this Agreement which has any application in MOVA's business extending beyond the Deliverable Items (collectively, the "**MOVA Technology**"). MOVA grants Customer a non-exclusive, license to utilize the MOVA Technology and the elements thereof required for Customer's commercial exploitation of the Deliverable Items throughout the universe in perpetuity, including, without limitation, to utilize the MOVA Technology for purposes of modifying or otherwise altering the Deliverable Items in connection with the Production.

3.   Intentionally deleted.

4.   REPRESENTATIONS AND WARRANTIES

4.1   (a)   *MOVA's Representations*. MOVA makes the following representations and warranties to Customer:

(i)   Other than content and materials furnished by Customer or Customer's third-party contractors or content and material in the public domain, the Services and each of the Deliverable Items will be the original work of MOVA or properly licensed by MOVA for inclusion in the Deliverable Items and will not, to the best of MOVA's knowledge, infringe upon any copyright, trade secret, patent or other proprietary rights of others.

(ii)   MOVA is the sole and exclusive owner of MOVA's contributions to the Deliverable Items, and to the results and proceeds of the Services, subject only to the rights herein assigned to Customer.

(iii)   Subject to Section 2.2 above, MOVA has not previously granted and will not grant any rights in MOVA's contributions to the Deliverable Items or the results and proceeds of the Services to any third party which are inconsistent with the rights assigned to Customer herein.

(iv)   MOVA has full right, power and authority to enter into this Agreement, to carry out MOVA's obligations hereunder and to grant the rights herein granted to Customer. There are no contracts, liens or encumbrances that interfere with MOVA's performance of its obligations hereunder.

(b)   *Customer's Representations*. Customer makes the following representations and warranties to MOVA:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REARDEN_MOVA036694

    (i)  The content and materials furnished by Customer shall be solely the original work of Customer or properly licensed by Customer for inclusion in the Deliverable Items and will not, to the best of Customer's knowledge, infringe upon any copyright, trade secret, patent or other proprietary rights of others.

    (ii)  Customer is the sole and exclusive owner of Customer's contributions to Customer's Deliverable Items.

    (iii)  Customer has the full power to enter into this Agreement, to carry out Customer's obligations hereunder and to grant the rights herein granted to MOVA.

  4.2  *Indemnity.*

    (a)  MOVA shall defend, indemnify and hold harmless Customer, its officers, directors, employees, agents and representatives from and against any and all damages, costs, judgments, penalties and expenses of any kind (including reasonable legal fees and disbursements) (collectively, "**Claims**") which may be obtained against, imposed upon or suffered by any of them as a result of any breach by MOVA of any of MOVA's representations or warranties under this Agreement, except those Claims for which Customer has an obligation to indemnify MOVA.

    (b)  Customer shall defend, indemnify and hold harmless MOVA, its officers, directors, employees, agents and representatives from and against any and all Claims which may be obtained against, imposed upon or suffered by any of them as a result of (i) any breach by Customer of any of Customer's representations and warranties under this Agreement, or (ii) any subsequent use of the Deliverable Items, except those Claims for which MOVA has an obligation to indemnify Customer.

5.  <u>TERMINATION.</u>

  5.1  *Termination for Convenience.* Customer may terminate this Agreement for any reason or for no reason by giving seven (7) days prior written notice to MOVA, without further liability of any kind to the other party, except that: (i) Customer will pay MOVA outstanding amounts due pursuant to any Bid Sheet for the Services rendered and Deliverable Items provided prior to the time of such termination; and (ii) Customer will reimburse MOVA for any expenses associated with deposits, committed contracts or other non-refundable payments made in connection with this Agreement; ; provided such amounts in no event shall exceed the total amount of the bid as set forth in the Bid Sheet attached hereto; and upon payment thereof, all Work, Deliverable Items and other materials shall be turned over to Customer.

  5.2  *Termination for Breach.* In the event of a material breach by either party of a material provision hereof, which breach is not cured within seven (7) days after receipt of written notice of such breach by the other party, then the non-breaching party may immediately terminate this Agreement. Notwithstanding the foregoing, this paragraph shall be subject to the provisions of Section 12.8 and Section 2, which shall survive any termination hereunder.

  5.3  *Work in Progress.* For any termination whatsoever, all materials will be turned over to Customer; provided, however, that Customer shall pay to MOVA all sums accrued and unpaid by Customer hereunder pursuant to the Bid Sheet.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY  REARDEN_MOVA036695

6. <u>LIMITATION ON LIABILITY</u>. Except for each party's indemnification obligations, to the maximum extent permitted by applicable law, neither party hereto will be liable for, or have any obligation to pay to the other, consequential damages and/or special damages in connection with any breach of this Agreement, all of which are expressly excluded and Customer and MOVA each hereby waive any right to recover any such damages from the other.

7. <u>PERMITTED PUBLICITY</u>. Provided that the Deliverable Items as created by MOVA appear in the Production as released and subject to any other agreement's confidentiality obligations, MOVA may include the results of the Services provided hereunder in MOVA's portfolio for private presentations (on MOVA's premises) in order to solicit work from third parties only, unless Customer grants permission in writing to MOVA to include the results of the Services for public presentations; provided, however, that MOVA shall be required to obtain any third party permissions required, including, without limitation, any persons appearing in the Work. Subject to Customer's prior written approval, MOVA shall have the right to mention to third parties that it rendered the Services for promotion and publicity purposes and in order to solicit work from third parties. Any approved mention by MOVA of Customer, the Production or these Services will be incidental, non-derogatory and factually accurate.

8. <u>CREDIT</u>. Provided that the Deliverable Items as created by MOVA appear in the Production as released, subject to MOVA's full performance of all services and obligations hereunder, and further subject to Customer's standard exclusions and exceptions and applicable guild or union requirements and performance of its obligations hereunder, Customer shall accord MOVA a company credit in the end titles of the Production as set forth above. Upon receipt of written notice from MOVA of a failure to comply with Customer's credit obligations hereunder, if any, Customer shall undertake reasonable efforts to correct such failure on a prospective basis with respect to any materials prepared after Customer has had an adequate period of time after receipt of such notice within which to implement such correction. All other matters with respect to credit shall be determined in Customer's sole and complete discretion. No casual or inadvertent failure by Customer, nor any failure by any third party, to comply with the foregoing credit provisions will constitute a breach of this Agreement.

9. <u>INDEPENDENT CONTRACTOR</u>. The parties agree that the relationship between the parties is that of an independent contractor in the performance of the Services and nothing in this Agreement shall be construed to create a partnership, joint venture or employer-employee relationship. Neither party is the agent of the other party and neither party is authorized to make any representation, contract, or commitment on behalf of the other party. Under no circumstances shall MOVA look to Customer as an employer, or as a partner, agent or principal. Each party agrees to be responsible for its own acts and those of its subordinates, employees and subcontractors during the Term (including, but not limited to, any injuries or death resulting therefrom) and indemnify and hold harmless the other party and its parent, affiliates, officers, directors, shareholders, agents, attorneys, employees and servants, and each of them, from and against any and all claims, costs and expenses relating thereto.

10. <u>INCOME TAX REPORTING</u>. Each party will be solely responsible for all tax returns and payments required to be filed with or made to any federal, state or local tax authority with respect to the performance of the Services under this Agreement. Each party will abide by all Internal Revenue Service reporting requirements. Because each party is an independent contractor, there will be no withholding for social security, unemployment insurance or disability insurance contributions, or workers' compensation insurance obtained in connection with the Services. Each party agrees to accept exclusive liability for complying with all applicable state and federal laws governing self-employed persons, including obligations such as payment of taxes, social security, disability and other contributions in connection with this Agreement. Each

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    REARDEN_MOVA036696

party hereby agrees to indemnify and defend the other party against any and all such taxes or contributions, including penalties and interest.

11. Intentionally omitted.

12. MISCELLANEOUS.

    12.1 Further Actions. Both parties agree to execute any additional documents and take such further action as they may consider reasonably necessary to carry out the purposes of the Agreement.

    12.2 Survival. The termination of the Agreement for any reason shall not terminate the obligations or liabilities of the parties under Sections 2, 4, 6, 7, 11 and 12, which shall survive any such termination.

    12.3 Assignment. MOVA shall have the right to assign this Agreement to any parent, subsidiary or affiliated corporation of MOVA; to any corporation with or into which MOVA merges or consolidates; to any of its affiliated companies; provided, however, that such assignment provides for MOVA's obligations to be assumed in writing to a comparably financially responsible entity and MOVA shall remain secondarily liable. Notwithstanding the foregoing, MOVA (or a similarly financially responsible successor entity which uses the same technology (including, without limitation, the MOVA Technology), expertise, equipment, personnel and facilities) shall perform MOVA's obligations hereunder. Customer shall have the right to assign this Agreement to any parent, subsidiary or affiliated corporation of Customer; to any corporation with or into which Customer merges or consolidates; to any person, firm or corporation which produces the Production for release and distribution by Customer or any of its affiliated companies; or to any licensee or successor of Customer. Customer may assign and/or license all or any part of its rights to the results and proceeds of MOVA's services, and/or to use MOVA's name, likeness, and biographical data (provided that the use of MOVA's name, likeness and biographical data are non-derogatory and factually accurate), and all of MOVA's representations and warranties hereunder, to any person, firm or corporation whatsoever, and this Agreement shall inure to the benefit of all such assignees and licensees.

    12.4 Collective Bargaining Agreement. Neither party is a member of any guild or union. It is understood that this Agreement and the parties' obligations hereunder shall not be subject to or rendered in accordance with the provisions of any collective bargaining agreement currently in effect.

    12.5 Notices. Payments and correspondence that any party hereto is required, or may desire, to serve upon any other party may be served by delivering same to the party personally or by depositing the same in the United States mail, first class postage pre-paid, or by sending the same by facsimile to the addresses set forth above, or to such other addresses as the parties may hereafter designate in writing. The date of such personal delivery or telecopying or the date three (3) days after the date of mailing shall be the date of the giving of such notice. A copy of such notices shall be sent to:

    MOVA Legal Counsel:    Bloom Hergott Diemer
                                    Rosenthal & LaViolette, LLP
                                    150 S. Rodeo Drive, Third Floor
                                    Beverly Hills, CA 90212
                                    Facsimile: (310) 860-6845
                                    Attn: Michael Schenkman, Esq.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          REARDEN_MOVA036697

12.6     Dispute Resolution. Any controversy, claim or dispute arising out of, in connection with, or related to the Agreement or the interpretation, performance, or breach hereof, or default hereunder, whether based on contract, tort or statute, including but not limited to any claim that this Agreement was induced by fraud or any alleged violations of state or federal statutory or common law rights or duties, shall be resolved by bringing arbitration in New York, NY, in accordance with Exhibit "DR" attached hereto and incorporated herein by this reference.

12.7     Miscellaneous. This Agreement shall be governed by, construed and enforced under the laws of the State of New York. Nothing herein contained shall be construed to require the violation of any applicable law or collective bargaining agreement and whenever and wherever there is any conflict between any of the provisions of this Agreement and such law or collective bargaining agreement, the latter shall prevail, but in such event the provision of the Agreement affected shall be curtailed and limited only to the extent necessary to permit compliance with such law or collective bargaining agreement and if such law or collective bargaining agreement requires the payment of any additional compensation, it shall be at the minimum rate permitted thereby. This Agreement expresses the entire understanding between the parties, and supersedes any previous agreement, whether written or oral, between the parties, except for confidentiality agreements entered into between the parties which shall continue in full force and effect. No waiver, alteration or modification of any of the provisions of this Agreement shall be binding unless in writing and signed by duly authorized representatives of the parties hereto, and identified with the title, "Amendment to Agreement between Customer and MOVA, LLC dated [Amendment Date]?" Specifically, no oral or e-mail communication shall be considered a waiver, alteration, or modification of any of the provisions of this Agreement, regardless of its content. This Agreement may be executed in counterparts.

12.8     Waiver of Injunctive Relief. The rights and remedies of MOVA in the event of a breach of this agreement by Customer shall be limited to MOVA's right to recover damages, if any, in an action at law and in no event shall MOVA be entitled to terminate or rescind this Agreement or any of the rights granted hereunder, or enjoin or restrain the distribution or other exploitation of the Production and the rights therein, or the use, publication or dissemination of any advertising issued in connection therewith, and MOVA irrevocably waives any right to equitable or injunctive relief.

12.9     No Obligation to Use. Customer is not obligated to use the services of MOVA or to produce, distribute, or exploit the Production or, if commenced, to continue the production, distribution, or exploitation of such Production in any territory. Regardless of whether or not Customer elects to produce, distribute and/or exploit the Production (or to commence same) Customer is not obligated to use the services in whole or in part of MOVA, and/or any material designed, produced or conceived by MOVA.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA036698

<u>EXHIBIT "DR"</u>

Other than any claim by Producer for equitable or injunctive relief which will be handled as otherwise provided for in the Agreement, any and all other disputes or controversies of any nature between the parties arising at any time out of this Agreement shall be determined by binding, confidential, non-public arbitration in accordance with the Comprehensive Commercial Arbitration Rules of JAMS (the "Rules") before a single neutral arbitrator (the "Arbitrator"), to be administered and conducted in New York City. The Arbitrator shall (i) be selected from the panel of neutrals from the New York City, New York office of JAMS; and (ii) have experience in disputes concerning the licensing or exploitation of intellectual property rights. The Arbitrator shall be selected in accordance with the Rules. JAMS' fees, including fees for the Arbitrator, shall be borne equally by the parties. There shall be a stenographic record of the proceedings at the arbitration hearing and the Arbitrator shall issue a Statement of Award setting forth the factual and legal basis for the Arbitrator's award, within twenty (20) days of completion of the hearing.

The parties hereby agree that a party may appeal any award pursuant to the rules of the JAMS Optional Arbitration Appeal Procedure, modified as follows: If a party wishes to appeal, it shall give written notice of appeal to the other side and to JAMS within ten (10) business days after the issuance of the Statement of Award. If there is no appeal, the Arbitrator's award shall be final and binding and may be enforced by any court of competent jurisdiction. If a party gives written notice of appeal within ten (10) business days after the issuance of the Statement of Award, the award of the Arbitrator shall be appealed to three (3) neutral arbitrators (the "Appellate Arbitrators"), each of whom shall have the same qualifications as the Arbitrator and be selected in accordance with the Rules. Within five (5) business days of service of the notice of appeal, the opposing party may give notice of a cross-appeal. The appellant shall file its appellate brief within thirty (30) days after service of its notice of appeal, regardless of whether the Appellate Arbitrators have been selected; the cross-appellant shall file its cross-appeal brief within the same time period. Opposition briefs shall be filed within thirty (30) days thereafter. Reply briefs may be filed within five (5) business days after service of the opposition briefs. The Appellate Arbitrators shall entertain oral argument by the parties, if a party so requests, as soon as practicable after briefing has been completed. If there is a cross-appeal, all costs and expenses of the appeal, including the fees of the Appellate Arbitrators shall be borne equally by the parties. If only one side appeals and it is the substantially prevailing party it shall be reimbursed for all advanced costs and expenses of the appeal, excluding legal fees. It shall be in the discretion of the Appellate Arbitrators to determine which is the substantially prevailing party. In all events, each party shall be responsible for its own attorneys' fees and no award of attorneys' fees may be awarded in arbitration or court.

All records relating to any arbitration proceedings shall be permanently sealed, except as necessary to obtain court confirmation and enforcement of the arbitration award. If a party refuses to perform any or all of its obligations under the final arbitration award (following appeal, if applicable) within thirty (30) days of such award being rendered, then and only then may the other party enforce the final award in any court of competent jurisdiction.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA036699



Exhibit B

# Project Estimate
## Client | Incredible Productions

**Project Assumptions**

**Project parameters**
| | |
|---|---|
| Key contact | Paul Molles |
| Capture session location | Burbank, Gentle Giant Studios |
| # of Capture Sessions | 1 |
| Session Date | 4/23/2007 |
| # of performers | 1 |
| Capture region | Face |
| Frame rate | 24 |

**Processing required for Face Poses**
| | |
|---|---|
| # of poses | 30 |
| Average poses per shot | 10 |
| # of shots | 3 |
| Average shot duration | 13 seconds |

**Processing required for Motion Shots**
| | |
|---|---|
| # of motion shots | 5 |
| Average shot duration | 5 |

**Output required**
| | |
|---|---|
| # of points in final model | 750 |
| OBJ model | Yes |
| C3D data | No |
| Maya scene file | Yes |

| | |
|---|---|
| Data Processing time | 5 weeks from capture session |
| Final Delivery Date | 5/25/2007 |

| Estimate Summary | | | | |
|---|---|---|---|---|
| Session One | | | | |
| Production | | | $ | 22,800 |
| Data Processing | | | $ | 16,357 |
| | | | | |
| Subtotal | | | $ | 39,157 |

This quote is based on estimates provided by Customer. ACTUALS WILL VARY BASED ON ACTUAL SERVICES PROVIDED.

This Bid is subject to the terms and conditions in the Motion Capture Services Agreement by and between Mova and Customer dated DATE.

Mova will invoice for Production costs upon completion of Capture Session.
Mova will invoice for 1/2 of the estimated Data Processing costs upon delivery of first set of data, and invoice remainder upon final delivery of data.

Robin Fontaine
*Producer*
e: robin.fontaine@mova.com
c: +1.415.370.3171

1/2

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA036700


# CONTOUR
## REALITY CAPTURE

| Session One Detail | | | | | |
|---|---|---|---|---|---|
| | Unit | Rate | | Quantity | Total |
| **Travel Costs** | | | | | |
| Hotel (7 crew) | Day | $ | 1,050 | 3.0 | $ 3,150 |
| Airfare | Crew | $ | 350 | 7.0 | $ 2,450 |
| Transport Equipment | Flat | $ | 3,000 | 1.0 | $ 3,000 |
| **Subtotal** | | | | | $ 8,600 |
| **Project planning & mgt** | Day | $ | 1,350 | 2.0 | $ 2,700 |
| **Set-up** | Day | $ | 2,500 | 1.0 | $ 2,500 |
| **Capture Session** | Day | $ | 8,500 | 1.0 | $ 8,500 |
| **Reference Video** | Day | $ | 500 | 1.0 | $ 500 |
| **Data Processing - Mesh Setup** | Day | $ | 1,350 | 1.5 | $ 2,025 |
| **Data Processing for tracked Face Poses** | | | | | |
| Mesh fitting | Per shot | $ | 47 | 3.0 | $ 141 |
| Vertex tracking | Per second | $ | 173 | 39.0 | $ 6,747 |
| Stabilization | Per shot | $ | 42 | 3.0 | $ 126 |
| Surface reconstruction | Per second | $ | 51 | 39.0 | $ 1,989 |
| Data preparation | Per shot | $ | 38 | 3.0 | $ 114 |
| **Subtotal** | | | | | $ 9,117 |
| **Data Processing for Motion Shots** | | | | | |
| Mesh fitting | Per shot | $ | 47 | 5.0 | $ 235 |
| Vertex Tracking | Per second | $ | 173 | 25.0 | $ 4,325 |
| Stabilization | Per shot | $ | 42 | 5.0 | $ 210 |
| Surface reconstruction | Per shot | $ | 51 | 5.0 | $ 255 |
| Data preparation | Per shot | $ | 38 | 5.0 | $ 190 |
| **Subtotal** | | | | | $ 5,215 |
| **TOTAL** | | | | | $ 39,157 |

Robin Fontaine
*Producer*
e: robin.fontaine@mova.com
c: +1.415.370.3171

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    REARDEN_MOVA036701