KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
BLANCA F. YOUNG (SBN 217533)
blanca.young@mto.com
STEPHANIE G. HERRERA (SBN 313887)
stephanie.herrera@mto.com
SHANNON AMINIRAD (SBN 324780)
shannon.aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REARDEN LLC and REARDEN MOVA LLC,<br><br>    Plaintiffs,<br><br>    vs.<br><br>WALT DISNEY PICTURES, a California corporation,<br><br>    Defendant. | Case No. 4:17-cv-04006-JST-SK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO 17 U.S.C. § 505; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      January 16, 2025<br>Time:     2:00 p.m.<br>Judge:    Hon. Jon S. Tigar<br>Ctrm.:    6 (2nd Floor)<br><br>[Filed concurrently: Declaration of Stephanie G. Herrera; (Proposed) Order] |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES ........................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND AND SUMMARY OF FEES REQUESTED ......................................... 3

III. ARGUMENT ....................................................................................................................... 5

    A. Defendant Prevailed On Every One Of Rearden's Copyright Claims ..................... 5

    B. The Balance Of The Ninth Circuit's Factors For A Section 505 Motion Support An Award Of Attorneys' Fees To Defendant ............................................ 7

    C. Defendant's Requested Fees Are Reasonable ......................................................... 10

        1. The Number Of Hours For Which Defendant Seeks Fees Is Reasonable ................................................................................................. 10

        2. Defendant's Requested Hourly Rates Are Reasonable ............................. 12

IV. CONCLUSION .................................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*AF Holdings LLC v. Navasca*,
    No. C-12-2396 EMC, 2013 WL 3815677 (N.D. Cal. July 22, 2013) .................................. 9, 10

*Atari Interactive, Inc. v. Redbubble, Inc.*,
    No. 18-CV-03451-JST, 2022 WL 7467297 (N.D. Cal. Sept. 12, 2022) .................................... 9

*Bell v. Oakland Cmty. Pools Project, Inc.*,
    No. 19-CV-01308-JST, 2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ............................. 8, 10

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ................................................................................................ 5, 12

*Carson v. Billings Police Dep't*,
    470 F.3d 889 (9th Cir. 2006) ..................................................................................................... 13

*Fantasy, Inc. v. Fogerty* ("*Fogerty II*"),
    94 F.3d 553 (9th Cir. 1996) ........................................................................................................ 7

*Fogerty v. Fantasy, Inc.* ("*Fogerty I*"),
    510 U.S. 517 (1994) .............................................................................................. 2, 5, 6, 8

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013) ................................................................................................... 10

*Good Job Games Bilism Yazilim ve Pazarlama A.S. v. SayGames LLC*,
    No. 19-CV-07916-EMC, 2023 WL 3260528 (N.D. Cal. May 4, 2023) .................................. 14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................................................. 12

*Kirtsaeng v. John Wiley & Sons, Inc*,
    579 U.S. 197 (2016) ............................................................................................................... 7, 9

*Lynwood Invs. CY Ltd. v. Konovalov*,
    No. 20-CV-03778-MMC, 2023 WL 2918754 (N.D. Cal. Apr. 11, 2023) .......................... 12, 14

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996) ......................................................................................................... 5

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ..................................................................................................... 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ..................................................................................................... 6

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB (SHx), 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............... 8, passim

*Phigenix, Inc. v. Genentech, Inc.*,
  No. 15-cv-01238-BLF, 2019 WL 2579260 (N.D. Cal. June 24, 2019) ............................ 12, 14

*Transjo, Inc. v. Ajac Transmission Parts Corp.*,
  768 F.2d 1001 (9th Cir. 1985) ...................................................................................... 10

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
  953 F.3d 638 (9th Cir. 2020) ................................................................................. 7, 8, 10

*Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*,
  234 F.3d 415 (9th Cir. 2000) ........................................................................................ 12

*Uckardesler v. Azteca Int'l Corp.*,
  No. CV 09-1467-JFW, 2010 WL 11520019 (C.D. Cal. July 6, 2010) ...................................... 8

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ......................................................................................... 8

**FEDERAL STATUTES**

17 U.S.C. § 505 ..................................................................................................... 1, 5

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**

PLEASE TAKE NOTICE that on January 16, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-captioned-Court, Defendant Walt Disney Pictures ("Defendant") will and hereby does move for an award of attorneys' fees against Plaintiffs Rearden LLC and Rearden MOVA LLC ("Rearden") pursuant to 17 U.S.C. § 505.

In accordance with L.R. 54-5, this Motion is made following the conference of counsel on October 25, 2024.  Declaration of Stephanie G. Herrera ("Herrera Decl.") ¶ 3.  This Motion is made on the grounds that: [1] Defendant is the "prevailing party" on every copyright claim Rearden asserted in this suit, including claims for direct, contributory, and vicarious copyright infringement; [2] the balance of factors articulated by the Supreme Court and the Ninth Circuit support an award of fees to Defendant, "in [the Court's] discretion"; and [3] the fees Defendant seeks through this Motion are "reasonable" in light of the scope of this litigation and the other factors relevant to the reasonableness determination.  *See* 17 U.S.C. § 505.

Specifically, Defendant requests $1,828,992.50, which is a subset of the fees incurred in defending against Rearden's vicarious copyright infringement claim at and after trial—a small but reasonable fraction of the fees Defendant incurred in defeating Rearden's myriad copyright claims through seven years of hard-fought litigation.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum; the concurrently filed Herrera Declaration and exhibits thereto; all pleadings on file in this matter; and such argument as the Court may consider in connection with briefing and argument on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The Court is familiar with the seven years of vigorous litigation in this case that repeatedly tested the bounds of vicarious liability for a movie studio using third-party visual effects vendor services.  Defendant ultimately prevailed on the merits of every iteration of Rearden's claims for direct, contributory, and vicarious copyright infringement.  Section 505 of the Copyright Act gives the Court discretion to award fees to Defendant as the prevailing party.

The balance of the factors that guide the Court's determination weigh overwhelmingly in Defendant's favor.  Defendant withstood Rearden's attempts to create unprecedented profits-based liability, which would have chilled the work of major motion picture studios and other creators who rely on contributions from third-party vendors to create new copyrighted works.  Defendant's vindication—and a reasonable award of fees—will deter Rearden and future plaintiffs from turning a blind eye to direct infringement to later gamble on windfall damages awards, and thus "lead to further creative pieces" and "serve[] the purpose of enriching the general public through access to creative works." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("*Fogerty I*").

Defendant is not seeking to recover all, or even most, of its fees incurred in defending and defeating all of Rearden's copyright claims. Instead, Defendant seeks a limited and commensurate portion of the fees Defendant incurred litigating only Rearden's vicarious infringement claim from summary judgment through and after trial.  Defendant is seeking fees only for this claim and only for this time period because Rearden overrepresented at summary judgment what it could deliver at trial, resulting in nearly a year of avoidable litigation on a claim for which the Court ultimately held Defendant could not be liable as a matter of law.  Because Rearden insisted its movie-profits damages would be $38 million or more, Defendant found itself with no choice but to try the case and to present its strongest possible defense with appropriately credentialed defense counsel.  A major motion picture studio does not risk eight-figure exposure as a copyright defendant at trial if there are rational alternatives.  Defendant seeks a portion of the resulting trial- and post-trial fees.

The total amount of fees sought is $1,828,992.50.  This amount represents the fees incurred by only three attorneys and one paralegal at Munger, Tolles & Olson LLP ("MTO"), for a limited set of trial and post-trial tasks between October 24, 2023 (the date after the Court's denial of summary judgment on Rearden's vicarious infringement claim) and September 30, 2024, when MTO commenced preparation of this Motion.  Given the potential exposure at trial, Defendant's defense team was appropriate and necessary, but Defendant has deliberately limited its fee request to a team that mirrors the size of the legal team that Rearden had in the courtroom at trial.  Defendant believes this time-, task-, and team-limited request is reasonable, particularly because it

represents a fraction of the fees Defendant incurred defeating Rearden's aggressive profits-damages claims.

## II.  BACKGROUND AND SUMMARY OF FEES REQUESTED

Rearden filed this lawsuit in 2017, following a bench trial in a declaratory judgment action initiated against Rearden by a company called Shenzhenshi Haitiecheng Science and Technology Company ("SHST"), and continued by Virtue Global Holdings ("VGH"), an affiliate of the visual-effects vendor Digital Domain 3.0, Inc. ("DD3"). *SHST v. Rearden, LLC*, No. 4:15-cv-00797 JST (SK) (N.D. Cal.). The SHST case, as it was known, was originally about ownership of equipment and intellectual property rights associated with MOVA Contour Reality Capture ("MOVA"), which DD3 used to provide facial-motion capture services to multiple motion picture studios (including Defendant) and other creators, including the videogame maker Crystal Dynamics.

During the course of the SHST litigation, Rearden filed multiple counterclaims against VGH, including claims for direct and secondary copyright infringement. The Court conducted a bench trial on the ownership issues in December 2016. At the conclusion of that trial, the Court announced it would likely rule for Rearden on the ownership claim. *SHST v. Rearden, LLC*, No. 4:15-cv-00797 JST (SK) (N.D. Cal.), ECF No. 394 at 1122.

While the Court was preparing its statement of decision in the SHST case, Rearden filed multiple lawsuits alleging copyright, patent, and trademark claims against three different motion picture studios (Defendant, Twentieth Century Fox, and Paramount Pictures) as well as Crystal Dynamics. Rearden alleged in its original complaints that all of these parties committed *direct* copyright infringement because DD3 had used MOVA in the process of doing facial-motion capture work in connection with seven different movies and one video game.

The Court issued its statement of decision in the SHST case on August 11, 2017. Rearden subsequently dismissed its copyright and other claims against VGH. *SHST v. Rearden, LLC*, No. 4:15-cv-00797 JST (SK) (N.D. Cal.), ECF No. 456. From the outset, Rearden made clear its intention to seek to seek to impose massive movie-profits-based liability on what it perceived as deep-pocketed defendants. For example, at an early case management conference, Rearden told the Court the exposure in these cases could approach or even exceed *one billion dollars*. *See* ECF

No. 97[1] at 26–27 (Joint Amended Case Management Statement stating that "[t]he studio defendants' profits … exceed $1.3 billion" and that defendants would bear the burden of apportioning profits).

Following seven years of aggressive litigation, Rearden has not prevailed on its attempts to capture movie profits in any of its post-SHST lawsuits. The Court dismissed Rearden's attempt to impose direct copyright infringement liability based on the novel theory that the output files that resulted from the use of Rearden's copyrighted work (the MOVA Contour software program) could themselves be considered the copyrighted work. ECF No. 60 at 6–8. Rearden responded to that ruling by alleging instead that Defendants were contributorily or vicariously liable for DD3's infringing acts (copying MOVA software into RAM). Rearden has not prevailed on any of those claims either.

In 2021 and 2022, the Court granted the studio defendants' motion for summary judgment on the "causal nexus" damages issue as to six movies, holding that Rearden could not seek profits damages for those movies. ECF Nos. 297, 304. Rearden then settled the claims related to those movies. *See* ECF No. 736 (dismissing with prejudice non-*Beauty and the Beast* claims against Defendant's affiliates after settlement); Case No. 4:17-CV-04191-JST, ECF No. 288 (dismissing with prejudice action against Twentieth Century Fox after settlement); Case No. 4:17-CV-04192-JST, ECF No. 136 (dismissing with prejudice action against Paramount). When Rearden could not settle with Crystal Dynamics, Rearden dismissed that case. Case No. 4:17-CV-04187-JST, ECF No. 329, 332 (voluntarily dismissing action against Crystal Dynamics after settlement not reached).

This is the only action Rearden litigated to resolution on the merits and—after seven years of aggressive and costly litigation—it lost every single claim.

Due in large part to Rearden's profits-based damages theory, Defendant was forced to defend this case through trial and now seeks to recover only a fraction of the attorneys' fees it incurred. Defendant has time-limited its request to the period beginning with the denial of

---

[1] Unless otherwise specified ECF citations are to the docket for Case No. 4:17-CV-04006-JST,

summary judgment on Rearden's vicarious infringement claim and is not seeking any fees incurred in the *preceding six years of litigation*. Defendant also has self-capped both the timekeepers and the tasks for which it is seeking to recover fees:

- Defendant seeks fees for only three attorneys at a range of hourly rates (Kelly M. Klaus, Blanca F. Young, and Stephanie G. Herrera) and one paralegal (James M. Berry)—this matches the size and composition of Rearden's in-courtroom team at trial (Mark S. Carlson, Jerrod C. Patterson, Garth Wojtanowicz, and paralegal Bill Stevens). Defendant is not seeking fees for multiple other attorneys and professional staff who contributed to its successful defense of the vicarious infringement claim, including its lead trial counsel John W. Spiegel, who commanded the highest hourly rate, and John L. Schwab, who examined key witnesses at trial including Defendant's damages expert.

- Defendant seeks fees associated with only the following tasks (to the extent billed after October 23, 2023): motions *in limine*; trial motions, submissions, and preparation; fact witness examinations; expert witness examinations; trial; and post-trial work.

- Defendant also is not seeking fees incurred in connection with this Motion, although it is entitled to do so.[2] *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("[T]ime spent in establishing the entitlement to and amount of the fee is compensable." (citation omitted)).

In total, Defendant seeks $1,828,992.50 in fees—an eminently reasonable portion of the fees Defendant incurred over seven years defending this entirely unmeritorious litigation.

### III. ARGUMENT

#### A. Defendant Prevailed On Every One Of Rearden's Copyright Claims

Under Section 505 of the Copyright Act, the Court has discretion to award "a reasonable attorney's fee" to the prevailing party. 17 U.S.C. § 505. In determining a fees award under the Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty I*, 510 U.S.

---

[2] Defendant reserves the right to seek fees incurred in responding to Rearden's appeal. *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (awarding fees incurred in defending judgment on appeal).

at 534.  This is because "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527.

Defendant is the prevailing party on all claims.  Defendant secured dismissal of Rearden's direct copyright infringement claim, ECF No. 60; dismissal of Rearden's patent infringement claims, ECF No. 85; summary judgment on Rearden's contributory copyright infringement and trademark infringement claims, ECF No. 555; and, following an 11-day jury trial, judgment as a matter of law on Rearden's vicarious copyright infringement claim, ECF No. 758.  Over seven years of litigation, Rearden's theories of copyright infringement were numerous and shifting, *e.g.*, ECF No. 480 (granting motion *in limine* to exclude Maya scripts infringement theory, asserted for the first time *months after* the close of fact discovery)—and none were meritorious.  Defendant could seek prevailing party claims on all these copyright claims under the Act.

Instead, Defendant is seeking only a portion of the fees incurred in defending Rearden's vicarious copyright infringement claim at and after trial.  Defendant moved for summary judgment on Rearden's vicarious infringement claim on the same ground on which it ultimately prevailed—that Defendant had not "exercise[d] the requisite control over the direct infringer" as a matter of law, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)—but the Court relied at that juncture on "Rearden's representations as to what evidence it *could* present at trial." ECF No. 758 at 12.  Because Rearden maintained that it could recover tens of millions in profits-based damages for its vicarious infringement claim, Defendant was left with no rational alternative but to try the case.  Rearden then failed to offer at trial evidence that had been integral to the Court's summary judgment order.  *E.g.*, ECF No. 555 at 10–11 (describing proffered evidence that Defendants could have limited or stopped DD3's use of MOVA during production process through Steve Gaub or Bill Condon).  Defendant therefore incurred significant, avoidable attorneys' fees defending the vicarious infringement claim through an 11-day jury trial and nearly a year of post-trial motion practice.

### B.  The Balance Of The Ninth Circuit's Factors For A Section 505 Motion Support An Award Of Attorneys' Fees To Defendant

"The touchstone of the decision to award attorneys' fees is whether the successful defense, and the circumstances surrounding it, further the Copyright Act's 'essential goals.'" *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) (quoting *Kirtsaeng v. John Wiley & Sons, Inc*, 579 U.S. 197, 209 (2016)).  In assessing whether to award fees, the Court may also consider "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective reasonableness of the losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Id.* (cleaned up and citation omitted).  These factors "are not exclusive and need not all be met." *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 558 (9th Cir. 1996) ("*Fogerty II*").  "[A] court may award fees even though the losing party offered reasonable arguments . . . [o]r a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Kirtsaeng*, 579 U.S. at 208–09.

The balance of these factors favor fee-shifting in the circumstances of this litigation.

***Goals of the Copyright Act.***  The "pivotal criterion" under section 505 is whether awarding fees would further the goals of the Copyright Act. *Fogerty II*, 94 F.3d at 558.  There can be no question that Defendant's persevering in litigating Rearden's copyright claims to resolution on the merits and the deterrent effect of a fee award here would further the Act's "primary objective" of "encourag[ing] the production of original literary, artistic, and musical expression for the good of the public." *Id.*. at 557.

Having failed in its efforts to bring direct and contributory copyright infringement claims, Rearden sought to impose vicarious copyright liability on Defendant based on an unprecedented and expansive theory: that Defendant should be held vicariously liable because one of dozens of software programs used by one of hundreds of vendors in the creation of *Defendant's copyrighted work* was later found to be owned by Rearden.  On Rearden's theory, to avoid vicarious liability under the Copyright Act, a movie studio—indeed, any company— would be required "to identify each piece of proprietary software and/or hardware its vendors use, even when those vendors

number in the hundreds, and then identify and follow up on any possible claim to ownership in any intellectual property that might be used in that software/hardware." ECF No. 758 at 11–12. As the Court recognized in granting judgment as a matter of law, such a standard would be virtually impossible to satisfy—"beyond hunting for a needle in a haystack," *id.* at 12 (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019))—and is *not* what the Act requires. Had Defendant not defeated Rearden's claims on the merits, Rearden's pursuit of this theory of liability would likely have chilled the creation of large-scale works, like movies and video games, which now necessarily require scores of third-party vendors. Defendant's efforts thus clarified the "boundaries of copyright law" in a way that will "lead to further creative pieces." *Fogerty I*, 510 U.S. at 527. The deterrent effect of a fee award under these circumstances therefore "serves the purpose of enriching the general public through access to creative works." *Id.*; *see Uckardesler v. Azteca Int'l Corp.*, No. CV 09-1467-JFW (MANx), 2010 WL 11520019, at *1 (C.D. Cal. July 6, 2010) (awarding fees where "Defendant … advanced the purpose of the Copyright Act in this case by furthering the legal and factual understanding of the scope of copyright protection for reality television formats").

**Degree of Success.** Disney prevailed on the merits of every claim Rearden asserted, including claims for direct, contributory, and vicarious copyright infringement. ECF No. 758. "This complete success weighs in favor of an award of attorneys' fees" under the Copyright Act. *Tresóna Multimedia*, 953 F.3d at 653.

**Motivation.** Rearden's conduct shows it "is in the business of litigation, not protecting [its] copyright[] or stimulating artistic creativity for the general public good." *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 13695114, at *3 (N.D. Cal. Oct. 14, 2020) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *9 (C.D. Cal. Mar. 24, 2015)). Rearden introduced no evidence at trial that it has used or exploited MOVA Contour—which Rearden characterized at trial as invaluable intellectual property—for creative purposes or otherwise since the Court ordered it returned from DD3 to Rearden. To the contrary, Rearden's CEO Steve Perlman confirmed that MOVA Contour was last used by Rearden on a movie in 2012. ECF No. 627 at 402:16–407:17. Rearden also notably

chose not to pursue a direct infringement claim against DD3 or its affiliates.  Instead, Rearden has spent seven years aggressively litigating secondary infringement suits against deeper pockets, prevailing on *zero* claims on the merits.  It has settled or, when unable to reach a desirable settlement, voluntarily dismissed most of these actions.  *See supra* Section II.  Courts have found an improper motive where, as here, a copyright plaintiff "does not appear to have been motivated to file suit in order to protect the copyrighted work at issue," but rather "to coerce settlements." *AF Holdings LLC v. Navasca*, No. C-12-2396 EMC, 2013 WL 3815677, at *2 (N.D. Cal. July 22, 2013); *Perfect 10*, 2015 WL 1746484, at *9–11 (finding improper motive where plaintiff filed 20 to 30 copyright infringement suits and settled or obtained default judgments in all of them).  This factor therefore favors fee-shifting.

**Objective Unreasonableness and Frivolousness.**  Disney acknowledges that the Court may not consider these factors satisfied in light of denying summary judgment on Rearden's claim for vicarious copyright infringement, *see Atari Interactive, Inc. v. Redbubble, Inc.*, No. 18-CV-03451-JST, 2022 WL 7467297, at *2 (N.D. Cal. Sept. 12, 2022)[3]—although Defendant notes that Rearden's other unsuccessful copyright claims, particularly its direct infringement claim, were of questionable merit.  This factor is not dispositive, however; fees may be awarded "even though the losing party offered reasonable arguments." *Kirtsaeng*, 579 U.S. at 208–09.  For example, a court may award fees to deter "overaggressive assertions of copyright claims … even if the losing position was reasonable in a particular case." *Id.* at 209.  As explained *supra*, and as the Court has observed presiding over half a dozen lawsuits by Rearden over seven years—this is such a case.  Rearden's overaggressive theory of liability and movie-profits-damages claim left Defendant with no choice but to incur substantial fees defending this case on the merits.

---

[3] *Redbubble* is readily distinguishable, including on the ground that the plaintiff in that case pursued $5 million in damages at trial based primarily on its trademark claims.  2022 WL 7467297 at *2.  The Court observed that the outcome of the section 505 motion might have been different had the plaintiff sought $5 million in damages based solely on its unsuccessful copyright claims. *Id.*  In this case, Rearden pursued $38 million in damages at trial based solely on a vicarious copyright claim for which the Court ultimately held Defendant could not be liable as a matter of law.

***Compensation and Deterrence.***  For the reasons above, awarding fees here would ensure Defendant is "properly compensated for defending against overreaching claims of copyright infringement and pressing a defense" that will result in the production of more creative works for the public's enjoyment.  *Tresóna Multimedia*, 953 F.3d at 654.  It may also deter Rearden or future litigants from bringing secondary infringement lawsuits that are designed not to promote creative expression but to pressure settlements.  *See AF Holdings*, 2013 WL 3815677, at *3 ("[G]iven AF's conduct, there is a strong argument in favor of awarding fees as a deterrent, both with respect to AF and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements.").  All Rearden has done with the MOVA Contour copyright since the Court confirmed its ownership is pursue unmeritorious secondary infringement suits against movie studios and other creators for supposed sky-high damages.  Discouraging such conduct is "entirely consistent with the purpose of the Copyright Act" and favors fee-shifting.  *See Perfect 10*, 2015 WL 1746484, at *12 (awarding fees to "discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement").

    **C.**    <u>**Defendant's Requested Fees Are Reasonable**</u>

If the Court determines that fee-shifting is appropriate, it must next determine the amount of fees to award.  Courts in the Ninth Circuit begin fee calculations with reference to the lodestar: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Bell*, 2020 WL 13695114, at *2 (quoting *Transjo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1027 (9th Cir. 1985)).  This analysis begins with the prevailing party's billing records*.*  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  Defendant's billing records support its requested fee award of $1,828,992.50.

    **1.**    **The Number Of Hours For Which Defendant Seeks Fees Is Reasonable**

The number of hours and total fees involved in this motion are considerable, but are small and reasonable in the grand scheme of this litigation.  "[A] fee award is not unreasonable simply because it involves a lot of money.  The operative question isn't the dollar amount, the question is whether the rates charged and the hours spent are reasonable in light of the totality of the

litigation." *Perfect 10*, 2015 WL 1746484, at *27 (awarding over $5 million in fees). Defendant is entitled to seek all fees incurred in the last seven years defeating Rearden's direct, contributory, and vicarious copyright infringement claims. However, as explained below, Defendant seeks only a portion of the fees it incurred defending the vicarious infringement claim at and after trial, as documented by MTO's contemporaneous billing records. The limited hours for which Defendant seeks fees is more than reasonable in light of the complexity of that claim, the significant damages exposure, the risk Defendant faced defending that claim at trial, and the long history of this action.

      ***Limited Time Period.*** Defendant is seeking to recover only fees incurred after October 24, 2023—the day after the Court's denial of summary judgment on Rearden's vicarious infringement claim. Defendant asserted the argument at summary judgment on which it ultimately prevailed, but the case proceeded past summary judgment based on Rearden's "representations as to what evidence it *could* present at trial." ECF No. 758 at 12. The case proceeded to trial because Rearden insisted its potential recovery was $38 million or more. By opting to pursue its exorbitant movie-profits damages demand through and after trial—knowing full well what evidence it could present and choosing what it did present—Rearden forced Defendant to incur substantial and avoidable fees and ran the risk of having to pay a significant fee award.

      ***Limited Timekeepers.*** Given Rearden's movie-profits-damages claim for a blockbuster motion picture, Defendant was forced to vigorously defend Rearden's vicarious infringement claim with an appropriately experienced and sized defense team through and after trial. Defendant believes the size of its defense team was necessary and appropriate in light of the scale of exposure; however, in this Motion, Defendant seeks to recover fees for only three attorneys at a range of hourly rates (Kelly M. Klaus, Blanca F. Young, and Stephanie G. Herrera) and one paralegal (James M. Berry)—the same composition as the team Rearden brought to the courtroom at trial. Herrera Decl. ¶ 7. Rearden therefore cannot argue that the number of timekeepers is unreasonable in light of the scope of the trial, nor complain that Defendant is seeking fees only for the timekeepers with the highest hourly rates. To the contrary, Defendant is not seeking to recover time billed by its lead trial counsel Mr. Spiegel (who had the highest hourly rate of Defendant's attorneys and delivered opening and closing arguments) or Mr. Schwab (who authored

1  Defendant's successful motion to strike the jury demand on indirect profits and conducted trial
2  examinations of two experts, including Defendant's damages expert)—not to mention two dozen
3  other attorneys and numerous professional staff who worked the trial and the case over seven
4  years.  *Id.* ¶¶ 7(a) & (b).

*__Limited Tasks.__*  Defendant is seeking to recover fees for a circumscribed set of core trial and post-trial tasks.  Herrera Decl. ¶¶ 2, 23.  MTO contemporaneously used task codes to segregate its recorded time to specific tasks.  *Id.* ¶ 8.  Defendant seeks to recover time billed to only the following tasks (to the extent billed after October 23, 2024): motions *in limine*; trial motions, submissions, and preparation; fact witness examinations; expert witness examinations; trial; and post-trial work.  Defendant has omitted time billed to other tasks, including the task code used for client updates and internal strategy meetings and correspondence.  *Id.*

*__Contemporaneous Billing Records.__*  The limited hours for which Defendant seeks fees are supported by counsel's contemporaneous, itemized billing records.  As the Herrera Declaration explains, counsel recorded time contemporaneously with task codes and detailed entries specifying the nature of the work performed.  Herrera Decl. ¶ 5.  These records meet the requirements for documenting counsel's time.  *See Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000) ("[C]ounsel . . . is not required to record in great detail how each minute of his time was expended." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983))).

### 2.  Defendant's Requested Hourly Rates Are Reasonable

Defendant's requested rates also are reasonable.  To determine whether attorneys' rates are "reasonable," the Court evaluates whether the requested rates align with the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-CV-03778-MMC, 2023 WL 2918754, at *7 (N.D. Cal. Apr. 11, 2023) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)).  The Court may also take into account "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained."  *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF, 2019 WL 2579260, at *11

(N.D. Cal. June 24, 2019).  Here, Defendant seeks hourly rates of $1,185.75 for partner Kelly M. Klaus, $1,062.50 for partner Blanca F. Young, $828.75 for partner Stephanie G. Herrera,[4] and $200 for paralegal James M. Berry.  Herrera Decl. ¶ 11.

As an initial matter, Defendant's counsels' rates are presumed reasonable because they are discounted from counsels' standard rates and are the rates Defendant actually paid.  Herrera Decl. ¶ 11; *see Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market."); *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982) ("Billing rates usually reflect, in at least a general way, counsel's reputation and status[.]"); *Perfect 10*, 2015 WL 1746484, at *18 ("[T]he actual rate that [the attorney] can command in the market is itself highly relevant proof of the prevailing community rate.").  The rates also are justified given each attorney's background and level of experience.  *See* Herrera Decl. ¶ 19 & Ex. 3; *see Perfect 10*, 2015 WL 1746484, at *20 (sufficient for party seeking fees to "lay out in detail the attorney's academic background, years in practice, work history, specialties, and cases of note").

Defendant's requested rates are further reasonable given the complexity of the case and risks of the case, the qualifications and experience of Defendant's attorneys, and the successful result they obtained.  This case concerned complex issues regarding the contours of secondary copyright liability and Defendant—a major motion picture studio—faced eight-figure exposure as a copyright defendant at a jury trial.  This necessitated experienced copyright trial counsel.  MTO and its copyright practice have been repeatedly recognized among the very best in the country. Herrera Decl. ¶ 13.  Mr. Klaus is consistently named among the leading intellectual property lawyers in California.  *Id.*  Mr. Klaus, Ms. Young, and Ms. Herrera frequently represent clients in high-stakes copyright disputes.  *Id.*  In 2019, all three obtained a $62.4 million jury verdict for movie studios in a mass copyright infringement case against a movie streaming service—one of

---

[4] Ms. Herrera was an associate in 2023; she became partner effective January 1, 2024.

1  the largest ever jury awards of statutory damages (on a per-work and total basis)—which was
2  honored as a *Daily Journal* Top Verdict. *Id.*
3        MTO's rates also are consistent with rates charged by experienced intellectual property
4  partners in the San Francisco area. According to a report prepared by the American Intellectual
5  Property Law Association, which is "routinely rel[ied] on" in fee requests, *Phigenix*, 2019 WL
6  2579260, at *11, in 2022, the average market rate for experienced intellectual property partners
7  was $993 in the San Francisco area. Herrera Decl. ¶ 20.
8        Finally, courts in the Northern District of California, including this Court, have previously
9  found similar rates reasonable in copyright cases. *See, e.g.*, *Good Job Games Bilism Yazilim ve*
10 *Pazarlama A.S. v. SayGames LLC*, No. 19-CV-07916-EMC, 2023 WL 3260528, at *8–9 (N.D.
11 Cal. May 4, 2023) (partner rate of $1,025 for 2023 was reasonable in copyright case); *Lynwood*
12 *Invs. CY*, 2023 WL 2918754, at *6 (partner rates of $1,029–$1,293 for 2021 and 2022 were
13 reasonable in copyright case); *Perfect 10*, 2015 WL 1746484, at *15 (partner rates of $825–$930
14 and associate rates of $250–$690 were reasonable; support staff rates of up to $345 were
15 reasonable).
16       For all of these reasons, Defendant's requested rates are reasonable.
17 **IV.     CONCLUSION**
18       For the above reasons, Defendant respectfully requests that the Court grant its motion and
19 award $1,828,992.50 in attorneys' fees against Rearden.

21 DATED:  October 30, 2024               MUNGER, TOLLES & OLSON LLP

                                         By:  */s/ Kelly M. Klaus*
                                              KELLY M. KLAUS

                                         *Attorneys for Defendant*