UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REARDEN LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>    Defendants. | Case No. 17-cv-04006-JST<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 17 U.S.C. § 505**<br><br>Re: ECF No. 774 |

Pending before the Court is Defendant Walt Disney Pictures's ("Disney") motion for attorneys' fees. ECF No. 774. The Court will deny the motion.

## I.  BACKGROUND

The factual and procedural background of this case is summarized in greater detail in the Court's prior orders. ECF Nos. 60, 85, 297, 555, 758. In short, Plaintiff Rearden LLC developed and owns MOVA Contour Reality Capture ("MOVA"), a program for capturing the human face to create computer graphics characters in motion pictures.[1] In 2017, Rearden filed a series of lawsuits, including this lawsuit against Disney, bringing copyright and trademark infringement claims against several motion picture studios that allegedly used MOVA in producing motion pictures and video games. *See Rearden LLC v. Walt Disney Company*, 293 F. Supp. 3d 963, 967–68 (N.D. Cal. 2018). In this case, Plaintiffs Rearden LLC and Rearden MOVA LLC (collectively,

---

[1] In 2015, Plaintiff Rearden LLC engaged in a dispute with Shenzhenshi Haitiecheng Science and Technology Company ("SHST") over the ownership of the physical equipment and intellectual property associated with the MOVA technology. *See Shenzhenshi, et al. v. Rearden, et al.*, No. 15–CV–00797 JST, ECF No. 1 (N.D. Cal. Feb. 20, 2015). The Court adjudicated that dispute and ultimately found that Rearden "own[ed] and at all relevant times ha[d] owned the MOVA Assets." *Shenzhenshi Haitiecheng Sci. and Tech. Co., LTD v. Rearden LLC*, No. 15-cv-00797-JST, 2017 WL 3446585 at *9 (N.D. Cal. Aug. 11, 2017).

"Rearden") brought claims against Disney for trademark infringement and vicarious and contributory copyright infringement.[2] ECF No. 315. Disney moved for summary judgment on all of Rearden's claims. ECF No. 421. The Court granted summary judgment in favor of Disney on Rearden's trademark infringement claim and contributory copyright infringement claim. ECF No. 555 at 8, 18. The Court, however, denied Disney's motion with respect to Rearden's vicarious copyright infringement claim, finding there was a genuine issue of material fact as to whether Disney had both the right and ability to control the infringing conduct and a direct financial interest in the infringing activity. *Id*. at 8–12.

The parties proceeded to trial on Rearden's sole claim of vicarious copyright infringement, which alleged Disney was vicariously liable for DD3's copyright infringement when DD3 used MOVA to animate the Beast character in *Beauty and the Beast* (*"BATB"*).[3] After a two-week trial, the jury returned a verdict finding that Rearden owned the copyright in the MOVA Contour software program during the time DD3 used that software in connection with the Beast character in *BATB*, and Disney was vicariously liable for DD3's infringement of the copyright in the MOVA software program. *See* ECF No. 691.

Prior to the jury's verdict, Disney filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). *See* ECF No. 682. In that motion, Disney sought judgment as a matter of law on the ground that Rearden had not presented legally sufficient evidence that a reasonable jury could find that: (1) Rearden owned the MOVA copyright at any point during DD3's alleged infringement in this case; (2) Disney had the practical ability to control DD3's alleged infringement; (3) Disney directly financially benefited from DD3's alleged infringement; (4) there was a causal nexus between DD3's alleged infringement and Disney's revenue from *BATB*; or (5) Rearden suffered any actual damages as a result of the infringement. *See id*. at 5.

---

[2] Rearden also named Disney Enterprises, Inc., Disney Studio Production Services Co., LLC f/k/a Walt Disney Pictures Production, LLC, Chip Pictures, Inc., Marvel Studios, LLC, MVL Productions LLC, Infinity Productions, LLC, and Assembled Productions II LLC as defendants. ECF No. 315 ¶¶ 8–15 125–86.

[3] Disney contracted with DD3, a visual effects company, to perform facial capture services for several of its motion pictures. ECF No. 325 ¶¶ 98–124. DD3 was associated with SHST and licensed the MOVA software program from SHST. *Rearden LLC v. Crystal Dynamics, Inc.*, No. 17-cv-04187-JST, 2019 WL 8275254, at *2 (N.D. Cal. July 12, 2019).

Disney renewed its motion pursuant to Rule 50(b) after the jury returned a verdict. *See* ECF No. 739. The Court found Disney could not be liable for vicarious copyright infringement as a matter of law, as "Rearden failed to introduce legally sufficient evidence at trial that Disney had the practical ability to identify, and therefore supervise or control, whether its vendors such as DD3 were infringing copyright through the use of proprietary software and/or hardware." ECF No. 758 at 12. The Court denied Disney's motion on the remaining four grounds. *Id*. at 6–17.

Disney now seeks fees incurred in defending against Rearden's vicarious copyright infringement claim at and after trial. *See* ECF No. 774. `

## II.   LEGAL STANDARD

Courts "may . . . award a reasonable attorney's fee to the prevailing party" on copyright claims.[4] 17 U.S.C. § 505. This broad statutory language "clearly connotes discretion, and eschews any precise rule or formula for awarding fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quotation marks and citation omitted). Courts have "wide latitude to award attorney's fees based on the totality of circumstances in a case," *id.* at 203, subject to two restrictions:

> First, a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment. Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

*Id.* at 202 (quotations, alteration marks, and citations omitted); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of [the Court's] discretion.").

In determining whether to award fees, courts may consider several factors, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) reasonableness of losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018) (citation

---

[4] This is in contrast to trademark and patent claims, for which fees may be awarded to the prevailing party only in "exceptional cases." 15 U.S.C. § 1117(a).

1  omitted). Courts must place "substantial weight on objective reasonableness," but this "can be
2  only an important factor in assessing fee applications—not the controlling one." *Kirtsaeng*, 579
3  U.S. at 207–08. "Although objective reasonableness carries significant weight, courts must view
4  all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."
5  *Id.* at 209. A court "retains discretion" to award fees "even when the losing party advanced a
6  reasonable claim or defense." *Id.* at 200.

7  Where a party pursues a "patently meritless copyright claim," takes an "unreasonable
8  litigating position, or engages in "overaggressive assertions of copyright claims," a fee award may
9  be appropriate. *Kirtsaeng*, 579 U.S. at 205, 209. On the other hand, awarding costs alone may be
10 sufficient to "adequately deter [a] [p]laintiff and others from bringing additional unmeritorious
11 claims." *Althouse v. Warner Bros. Ent.*, No. CV 13-696 RGK (SSx), 2014 WL 12599798, at *3
12 (C.D. Cal. June 17, 2014) (declining to award fees even after determining that the plaintiff's
13 litigation position was objectively unreasonable).

14 If the Court "decide[s] . . . an award of attorneys' fees is appropriate," it must then
15 "calculate[e] the amount of fees to be awarded." *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340
16 F.3d 829, 832–33 (9th Cir. 2003) (footnote omitted). In determining the amount of fees
17 awardable, the "most useful starting point . . . is the number of hours reasonably expended on the
18 litigation multiplied by a reasonable hourly rate." *Transgo, Inc. v. Ajac Transmission Parts Corp.*,
19 768 F.2d 1001, 1027 (9th Cir. 1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).
20 "Excluded from this fee calculation are hours that are not reasonably expended, i.e., hours that are
21 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434).
22 "Controlling precedent establishes 'that a party entitled to attorney's fees as a prevailing party on a
23 particular [copyright] claim, but not on other claims in the same lawsuit, can only recover
24 attorney's fees incurred in [pursuing or] defending against that one claim or any related claims.'"
25 *Traditional Cat Ass'n*, 340 F.3d at 833 (internal quotation marks and citations omitted).

26 **III.   DISCUSSION**

27 Disney seeks fees in the amount of $1,828,992.50, which Disney represents is "a limited
28 and commensurate portion of the fees Disney incurred in litigating only Rearden's vicarious

4

1  infringement claim from summary judgment through and after trial." Mot. at 6. Disney argues
2  "Rearden overrepresented at summary judgement what it could deliver at trial, resulting in nearly
3  a year of avoidable litigation on a claim for which the Court ultimately held Defendant could not
4  be liable as a matter of law." *Id*. Disney further argues that its request "represents the fees
5  incurred by only three attorneys and one paralegal at Munger, Tolles & Olson LLP ("MTO"), for a
6  limited set of trial and post-trial tasks between October 24, 2023 (the date after the Court's denial
7  of summary judgment on Rearden's vicarious infringement claim) and September 30, 2024, when
8  MTO commenced preparation of this Motion[,]" which "mirrors the size of the legal team that
9  Rearden had in the courtroom at trial." *Id*.

### A.     Prevailing Party

"The prevailing party in a copyright infringement action may recover reasonable attorney fees." *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2024 WL 3697030, at *2 (N.D. Cal. Aug. 6, 2024). Disney argues it "is the prevailing party on all claims[,]" as it "secured dismissal of Rearden's copyright infringement claim," summary judgment on Rearden's contributory copyright infringement claim, "and, following an 11-day jury trial, judgment as a matter of law on Rearden's vicarious copyright infringement claim . . . ." Mot. at 10. Rearden does not dispute that Disney is the prevailing party. Accordingly, the Court finds Disney is the "prevailing party" with respect to its copyright claims for the purpose of 17 U.S.C. § 505.

### B.     Appropriateness of Fee Award

"A court has broad equitable discretion in determining attorney [f]ees awards." *Moonbug Ent.*, 2024 WL 3697030, at *2. "The Supreme Court [has] identified the following non-exclusive list of factors to guide the award or denial of attorney's fees: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id*. (quoting *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)). "The Ninth Circuit has added the following considerations: 'the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden

5

on an impecunious plaintiff.'" *Id*. (quoting *Perfect 10 Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). "These factors may be considered but are not exclusive, and need not all be met." *Id*. Disney argues that "[t]he balance of these factors favor fee-shifting in the circumstances of this litigation." Mot. at 11.

### 1.     Objective Unreasonableness and Frivolousness

The Court begins its analysis by considering the "reasonableness of [the] losing party's legal and factual arguments." *Shame on You Prods.*, 893 F.3d at 666. Courts generally "give substantial weight to the objective reasonableness of the losing party's position." *Kirtsaeng*, 579 U.S. at 199–200. "The mere fact that [plaintiff] lost does not establish that its litigation position was objectively unreasonable." *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, No. 20-CV-06957-VKD, 2024 WL 2261947, at *4 (N.D. Cal. May 16, 2024). Rather, "[a] claim is objectively unreasonable where the party advancing it should have known from the outset that its chances of success in th[e] case were slim to none." *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2016 WL 1258690, at *5 (N.D. Cal. Mar. 31, 2016) (quotations and citation omitted). Similarly, a "frivolous claim is one in which the factual contention is 'clearly baseless,' such as factual claims that are 'fantastic or delusional scenarios.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, C 04-00371 JW, 2005 WL 2007932, at *4 (N.D. Cal. Aug. 12, 2005) (quoting *Neitzke v. Williams*, 490 U.S. 324, 325–28 (1989)).

Disney does not take the position that Rearden's vicarious copyright infringement claim was objectively unreasonable or frivolous. In fact, "Disney acknowledges that the Court may not consider th[is] factor satisfied in light of denying summary judgment on Rearden's claim for vicarious copyright infringement" but argues that a fee award would deter future "overaggressive assertions of copyright claims[.]" Mot. at 13. Disney specifically argues that Rearden's "overaggressive theory of liability and move-profits-damages claim left [Disney] with no choice but to incur substantial fees defending this case on the merits[,]" and an award of fees would therefore be appropriate in this case. *Id*. Rearden counters that its "apportioned profits case, based on the 8.9 percent of total shots in the film that used MOVA, was not 'overaggressive.'" Dkt. No. 776 ("Opp.") at 18. Rearden further argues that "both parties pursued their claims and

defenses aggressively" and "[t]he fact that both parties aggressively pursued their claims and defenses does not give rise to a finding of bad faith." *Id*. at 19. The Court agrees with Rearden.

Rearden's copyright claims in this case were not objectively unreasonable or frivolous. The Court denied Disney's motion for summary judgment on Rearden's vicarious copyright infringement claim, finding "there [was] a genuine issue of material fact as to whether Disney had the practical ability to stop or limit the infringing conduct for two reasons." Dkt. No. 555 at 9. "First, the contract between DD3 and Disney secure[d] for Disney considerable control over DD3's services such that it is possible that Disney could have, as a practical matter, taken affirmative steps to stop or limit DD3's use of MOVA." *Id*. "Second, evidence in the record creates a genuine dispute of material fact as to whether Disney could have limited or stopped DD3's use of MOVA during the production process." *Id*. at 10. That the Court ultimately found "Rearden failed to introduce legally sufficient evidence at trial that Disney had the practical ability to identify, and therefore supervise or control, whether its vendors such as DD3 were infringing copyright through the use of proprietary software and/or hardware" does not render Rearden's claims objectively unreasonable or frivolous. *See Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-CV-01414-HSG, 2018 WL 828030, at *7 (N.D. Cal. Feb. 12, 2018) ("Even though [d]efendant achieved total victory at trial, the fact that a party loses is insufficient to establish objective unreasonableness."); *Mahon v. Mainsail, LLC*, No. 4:20-CV-01523-YGR, 2024 WL 5425616, at *2 (N.D. Cal. Dec. 19, 2024) ("Mere loss on summary judgment, and particularly in a case that was 'close and difficult,' does not make the case objectively unreasonable.").

Additionally, Rearden's "movie-profits-damages claim" does not warrant an award of fees. Mot. at 13. Rearden "asked the jury for 8.9% of Disney's profits as apportioned to the infringements of the MOVA software copyright based on the percentage of total shots that used MOVA . . . ." Opp. at 19. Such a request does not strike the Court as "overaggressive," objectively unreasonable, or frivolous. This factor, to which the Court must assign "substantial weight," *Kirtsaeng*, 579 U.S. at 207, thus weighs against an award of fees.

/ / /

/ / /

7

### 2. Goals of the Copyright Act

The Court next considers the purposes of the Copyright Act. *See Shame on You Prods.*, 893 F.3d at 667; *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) ("[B]ecause the guiding principles of the Copyright Act run throughout the other factors, [this factor] remains important."). "The goal of the Copyright Act is 'to promote creativity for the public good.'" *Glacier Films*, 896 F.3d at 1041 (citation omitted). "Inherent in the Act's purpose is that 'a copyright holder has always had the legal authority to bring a traditional infringement suit against one who wrongfully copies.'" *Id.* (citation omitted). "'[F]ee awards under § 505 should encourage the types of lawsuits that promote' dual purposes: 'encouraging and rewarding authors' creations while also enabling others to build on that work.'" *Phoenix Techs.*, 2018 WL 828030, at *6 (quoting *Kirtsaeng*, 579 U.S. at 198).

Disney argues that "persevering in litigating Rearden's copyright claims to resolution on the merits and the deterrent effect of a fee award here would further the Act's 'primary objective' of 'encourag[ing] the production of original literary, artistic, and musical expression for the good of the public.'" Mot. at 11 (quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557 (9th Cir. 1996)). Disney argues that Rearden's "unprecedented and expansive" theory of liability—"that [Disney] should be held vicariously liable because one of dozens of software programs used by one of hundreds of vendors in the creation of [Disney's] copyrighted work was later found to be owned by Rearden"—"would likely have chilled the creation of large-scale works, like movies and video games, which now necessarily requires scores of third-party vendors." *Id.* at 11–12. Disney argues that its "efforts thus clarified the 'boundaries of copyright law' in a way that will 'lead to further creative pieces.'" *Id.* at 12. Rearden counters that "film studios would have been encouraged by a substantial apportioned profits award to make more of an effort to detect and thwart copyright infringement . . . . which would serve the purposes of the Copyright Act." Opp. at 13. Rearden further argues that "Disney and the film industry are not the only creators of copyrighted content to be considered" and "[f]ee shifting here could just as likely have a chilling effect on [software developers'] efforts to protect their software copyrights." *Id.* at 13–14. The Court agrees with Rearden.

8

Although "it is 'important that the boundaries of copyright law be demarcated as clearly as possible,'" it is unclear what impact, if any, Disney's success had on "defin[ing] those boundaries." *Simpson Strong-Tie*, 2024 WL 2261947, at *6 (quoting *Fogerty*, 510 U.S. at 527). That "Rearden failed to introduce legally sufficient evidence at trial that Disney had the practical ability to identify, and therefore supervise or control, whether its vendors such as DD3 were infringing copyright through the use of proprietary software and/or hardware" does not mean that Disney, or any other movie studio, cannot be held liable for vicarious copyright infringement. It only means that Rearden did not provide sufficient evidence to prove that Disney had the ability to supervise or control whether DD3 was infringing Rearden's copyrights.

Moreover, awarding Disney fees in this case could "deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014) (citation omitted). That would not serve the purposes of the Copyright Act. *See id*. ("[I]t is not the purpose of the Copyright Act 'to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.'") (citation omitted). Accordingly, the Court finds this factor weighs against an award of fees.

### 3. Degree of Success Obtained

The Court next considers "the degree of success obtained." *Shame on You Prods.*, 893 F.3d at 666. "[C]omplete succes on the merits—and not on a technical defense—weighs in favor of an award of attorney's fees." *Simpson Strong-Tie*, 2024 WL 2261947, at *3 (quotations and citation omitted). Here, Disney prevailed on all of Rearden's copyright claims, including Rearden's vicarious infringement claim. *See* ECF Nos. 60 (dismissing Rearden's direct copyright infringement claim), 555 (granting Disney's motion for summary judgment on Rearden's contributory copyright infringement claims), 758 (granting Disney's motion for judgment as a matter of law on Rearden's vicarious infringement claim).[5] Although this factor weighs in favor of an award of attorneys' fees, it is not dispositive. *Simpson Strong-Tie*, 2024 WL 2261947, at *3

---

[5] "Rearden does not dispute that if viewed only from the standpoint of the Court's JMOL order, the success factor favors fee shifting." Opp. at 17.

("[P]revailing parties in copyright cases are not entitled to attorney's fees as a matter of course.").

### 4. Motivation

The Court next considers Rearden's motivation in bringing this lawsuit. "The existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party." *Epikhin*, 2016 WL 1258690, at *1. "Such a finding may be based on 'actions that led to the lawsuit, as well as on the conduct of the litigation.'" *Id.* (citation omitted). "Courts have held a plaintiff demonstrates bad faith when alleging a copyright claim to secure benefits other than merely addressing grievances." *Mahon*, 2024 WL 5425616, at *4 (citation omitted).

Disney suggests that Rearden's motive in pursuing this litigation was to coerce settlement, arguing that "Rearden's conduct shows it 'is in the business of litigation, not protecting [its] copyright[] or stimulating artistic creativity for the general public good." Mot. at 12 (quoting *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 13695114, at *3 (N.D. Cal. Oct. 14, 2020)). Disney further argues that Rearden "chose not to pursue a direct infringement claim against DD3 or its affiliates" and instead "spent seven years aggressively litigating secondary infringement suits against deeper pockets . . . ." *Id.* at 13. Rearden counters that "Disney offers no proof that Rearden's objective was to 'coerce settlements' or that it was disinterested in enforcing the MOVA software copyright that Disney infringed . . . ." Opp. at 20. Rearden argues that "the general public benefitted from MOVA through its use in seventeen major films to animate the facts of CG characters using MOVA from 2006 until it was stolen by DD3 in 2013[,]" and it "filed its copyright infringement suits against the primary beneficiaries of DD3's direct infringement, the film studios that reaped massive profits from copyright infringement that they supervised and had the right to control." *Id*.

The record does not suggest that Rearden acted in bad faith or had an improper motive in pursuing its vicarious infringement claim. Rearden "invested 6 years and over $12 million developing MOVA and its custom software." Opp. at 13. Given Rearden's substantial investment in developing MOVA and the related software, the Court cannot say that Rearden acted in bad faith or with improper motive in pursuing vicarious infringement claims against Disney—one of

10

1  the movie studios who "reaped massive profits from [DD3's] copyright infringement." *Id*. at 20.
2  Moreover, to the extent Rearden was motivated to "obtain compensation for its work[,]" such a
3  motive is not necessarily improper. *See Phoenix Techs.*, 2018 WL 828030, at *8 ("Nor would a
4  pecuniary motivation on Plaintiff's part be improper.").

5        Additionally, that Rearden last used MOVA Contour in 2012 does not "cast doubt on
6  [Rearden's] motivations in bringing this lawsuit or pursuing its copyright claims to trial." *Atari*
7  *Interactive, Inc. v. Redbubble, Inc.*, No. 18-CV-03451-JST, 2022 WL 7467297, at *2 (N.D. Cal.
8  Sept. 12, 2022). "A copyright on old software is still a copyright." *Id*. (quoting *Phoenix Techs.*,
9  2018 WL 828030, at *8); *see also id*. ("The fact that [p]laintiff's 'BIOS program long ago lapsed
10 into obscurity' does not, on its own, render worthless its copyright."). Disney has not shown that
11 Rearden's motivation in pursuing its vicarious infringement claims was improper. *See Mahon*,
12 2024 WL 5425616, at *4 (finding factor neutral where "[n]othing in the record support[ed] bad
13 faith, as opposed to bad judgment, or that plaintiff brought his copyright claim 'to secure benefits
14 other than merely addressing grievances'"). Accordingly, the Court finds this factor is neutral.

15       **5.    Compensation and Deterrence**

16       Finally, the Court considers "the need . . . to advance considerations of compensation and
17 deterrence." *Fogerty*, 510 U.S. at 534 n.19. "Fee awards should 'encourage[] parties with strong
18 legal positions to stand on their rights and deter[] those with weak ones from proceeding with
19 litigation.'" *Simpson Strong-Tie*, 2024 WL 2261947, at *5 (quoting *Kirtsaeng*, 579 U.S. at 205).
20 "To this end, courts may award attorney's fees when plaintiffs press factually or legally baseless
21 claims to deter others like them." *Id*. "Courts may engage in 'specific deterrence' by imposing
22 attorney's fees 'to deter a party that . . . has previously filed non-meritorious actions[,]'" or
23 "'general deterrence' by 'considering whether an award of attorneys' fees will positively impact
24 the behavior of future litigants and potential litigants other than the parties to the case." *Mahon*,
25 2024 WL 5425616, at *3 (citations omitted).

26       Disney argues that "awarding fees here would ensure [it] is 'properly compensated for
27 defending against overreaching claims of copyright infringement and pressing a defense' that will
28 result in the production of more creative works for the public's enjoyment." Mot. at 14 (quoting

11

1   *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 654 (9th Cir. 2020)). Disney further argues that awarding fees "may [] deter Rearden or future litigants from bringing secondary infringement lawsuits that are designed not to promote creative expression but to pressure settlements[,]" which is "entirely consistent with the purpose of the Copyright Act." *Id.* (quotations and citation omitted).

The Court finds no need for deterrence here. While a "successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claims by the holder of a copyright[,]" *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2014 WL 5597274, at *5 (N.D. Cal. Nov. 3, 2014), "plaintiffs acting in good faith and with potentially meritorious claims should not be deterred from seeking to protect their copyrights based on the fear of a large attorney's fees award should the Court" rule against them. *Epikhin*, 2016 WL 1258690, at *8. Rearden's "claims were not frivolous or objectively unreasonable, and [Rearden] did not act in bad faith." *Id.*; *see also supra* Sections III.B.1–2, 4. The Court thus finds that the deterrence purposes of the Copyright Act would not be served by a fee award in this case.

The need for compensation also does not support an award of fees. "[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Epikhim*, 2016 WL 1258690, at *8 (quoting *Fogerty*, 510 U.S. at 527). "An award of fees may provide such encouragement[,]" but here, "such encouragement is unnecessary because [Disney] had 'ample incentive' to vigorously defend" against Rearden's claims of vicarious copyright infringement. *Id.* (citation omitted); *see also Bisson-Dath v. Sony Computer Ent. Am. Inc.*, No. CV-08-1235 SC, 2012 WL 3025402, at *3 (N.D. Cal. July 24, 2012) ("Here, Defendants had ample incentive to vigorously defend its multibillion dollar God of War franchise against claims of infringement."); *Phoenix Techs.*, 2018 WL 828030, at *8 (finding this factor neutral and noting defendant had ample incentive to defend against infringement claims).

Taking all the factors together, the Court concludes that a fee award is not appropriate. Accordingly, the Court need not address whether Disney's requested fees are reasonable.

**CONCLUSION**

The Court concludes that an award of attorneys' fees under the Copyright Act is not warranted in this case. Accordingly, Disney's motion is denied.

**IT IS SO ORDERED.**

Dated: July 31, 2025



JON S. TIGAR
United States District Judge